Alison D. Bauer
William F. Gray, Jr.
Jaclyn J. Leader
TORYS LLP
1114 Avenue of the Americas, 23rd Floor
New York, New York  10036
Tel:  212.880.6000
Fax:  212.682.0200

*Proposed Attorneys for Debtor*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------- x

In re:

                                   Case No.  19-10747 (shl)

JEFFREY LEW LIDDLE,

                    Debtor.
-------------------------------------------------------- x

### DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL, (II) SCHEDULING A FINAL HEARING AND (III) GRANTING RELATED RELIEF

Jeffrey Lew Liddle, as debtor and debtor-in-possession (the "Debtor") in the above-captioned

chapter 11 case (the "Chapter 11 Case"), by and through its undersigned counsel, hereby files this

motion (this "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A**

(the "Interim Order"), pursuant to sections 105(a), 361, 362, and 363 of title 11 of the United States

Code, 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code"), Rules 4001, 6003 and 6004 of the Federal

Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 4001-2 of the Local

Bankruptcy Rules for the Southern District of New York (the "Local  Rules") (i) authorizing the

Debtor to use Cash Collateral (as defined herein); (ii) modifying the automatic stay; (iii)

scheduling, pursuant to Bankruptcy Rule 4001, a final hearing (the "Final Hearing") granting the

relief requested in this Motion on a final basis pursuant to a final order (the "Final Order"); and

(iv) granting related relief. The facts and circumstances supporting this Motion are set forth in the

1

*Affidavit of Jeffrey L. Liddle Under Bankruptcy Rule 1007-2* filed on March 11, 2019 in the Chapter 11 Case [Dkt 1] (the "First Day Declaration"), the *Declaration of Jeffrey L. Liddle* (the "Liddle Decl." and together with the First Day Declaration, the "Declarations") filed contemporaneously herewith. In further support of this Motion, the Debtor respectfully states as follows:

## JURISDICTION

1.      The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the Southern District of New York, dated January 31, 2012. The Debtor confirms its consent, pursuant to Bankruptcy Rule 7008, to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

2.      Venue in the Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The bases for the relief requested herein are sections 105(a), 361, 362 and 363 of the Bankruptcy Code, Bankruptcy Rules 4001, 6003 and 6004 and Local Rule 4001-2.

## PRELIMINARY STATEMENT

4.      By this Motion, the Debtor seeks authority to use Cash Collateral with the consent of the Secured Party (as defined below) who has an interest in the Cash Collateral.  For purpose of this motion the use of Cash Collateral is limited to and "Cash Collateral" is defined as Mr. Liddle's fifty percent ownership interest in the Sale Proceeds ( as defined below) that were turned over to and are currently held in the Debtor's debtor-in-possession bank account pursuant to this Court's *Order Directing Custodian To Turnover Property and For an Interim Order*

2

*Authorizing the Debtor to Pay Rent Expenses and Granting Related Relief* (the "*Initial Turnover Order*")[Doc 27]. The Debtor does not seek to use or interfere with Tara Liddle's ownership claim to the other fifty percent of the Sale Proceeds, all other amounts on deposit or maintained in any account or accounts by the Debtor and any amounts generated by the collection of accounts receivable, the exercise of letter of credit rights, the sale of assets or any disposition of or proceeds of any of the foregoing. CF II, which claims a security interest in the Cash Collateral has not consented to the relief requested herein, but as will be established with all reasonable likelihood, CF II does not have a properly perfected security interest in the Sale Proceeds. CF II's sole basis for claiming a security interest in the Sale Proceeds is through an order of attachment which was not perfected. The one and only Secured Party (as defined herein) with an interest in the Sale Proceeds which constitutes the Cash Collateral for purposes of this Motion is White & Wolnerman, PLLC, the law firm that has a charging lien against the Sale Proceeds. Following negotiations, the Debtor and the Secured Party have reached an agreement for the consensual use of Cash Collateral during the course of the Chapter 11 Case which will provide the Debtor with the necessary liquidity to (i) fund the Debtor's basic living needs and provide operating capital for a short period of time to allow the Debtor to operate his law firm, (ii) retain bankruptcy attorneys and an accounting firm with expertise in bankruptcy matters, and (iii) implement and consummate a plan of reorganization to make distributions to creditors.

5.      As described in the First Day Declaration, the Debtor is an attorney in New York and has been a partner in the law firm known as Liddle & Robinson, L.L.P. (the "Firm" or "L & R") since its formation in 1979. He is the sole remaining partner of L&R and, in fact, the sole remaining lawyer. The Debtor faced significant challenges leading to the commencement of the

3

Chapter 11 Case. Against this backdrop, the Debtor determined that the best way to proceed was to seek a reorganization under the protection of chapter 11 of the Bankruptcy Code. As an individual debtor, Mr. Liddle does not hold sufficient cash on hand, and must obtain the ability to use Cash Collateral in order to meet his basic living needs and to operate his business, L&R, including to fund payroll, rent, utilities, expenses of his cases and professional fees and expenses—all with the aim of ensuring a value maximizing reorganization which will inure to the benefit of the Debtor's estate and creditors.

6.      The Debtor's law practice remains active and robust.  The Debtor through his law firm will be representing clients in many arbitrations, Finra arbitrations and actions, including without limitation, the following over the next two months, which have the potential of generating several hundreds of thousands, and possibly multi-million dollar fee awards:

- Price vs. Citigroup:  April 29 to May 3
- Jones vs. Tribal Capital:  May 13 to May 17
- Demopoulous and Fontaine v. Deutsche Bank Securities:  June 10 to June 14, June 17-21

7.      For these reasons and those set forth below, it is critical for the Debtor to be able to use Cash Collateral in order to meet his basic living needs and to efficiently continue operations of  L&R. Accordingly, the relief requested in this Motion should be granted on both interim and final bases.

## NATURE OF DEBTOR'S BUSINESS

8.      Since its original formation over 39 years ago, the Firm has always had a strong litigation practice with an emphasis on corporate, real estate and employment law.  Revenues net of expense reimbursement from 1998 or earlier, through 2015, averaged about $13.5 million per year.  This revenue generated a significant profit in virtually every year.  The business declined

4

with the departures of three partners between April 2015 and January 2016.  Associate

departures, and two more partner departures in mid-2016, led to further reduced revenue, if for

no other reason than the ability to handle the litigation was reduced due to a smaller cohort of

attorneys.  The generation of new business and the level of existing business remained robust.

The Firm still has a valuable practice that can be reorganized, including over 30 ongoing

litigation matters.

9.      The Debtor's Firm leases offices at 1177 Avenue of the Americas, 5th Floor, New

York, New York 10036.  There are no other offices.

10.      The Debtor's  Firm has one salaried employee.

11.      The Debtor is currently renting an apartment in New York City where he resides

with his wife, Tara Liddle.

12.      On March 11, 2019 (the "Petition Date"), Debtor filed a voluntary petition for

relief under Chapter 11 of the Bankruptcy Code.

**THE ERIE ACTION**

13.      On September 18, 2018, Counsel Financial II, L.L.C. ("CF II"), filed a motion for

summary judgment in lieu of complaint (the "Erie Action") in the Supreme Court of the State of

New York for Erie County (the "Erie County Court") for non-payment and default by L&R of a

promissory note and related loan documents (the "CF II Loan").  Debtor  and two of the former

partners of L&R are each guarantors of the CF II Loan. The defendants in the Erie Action are

L&R, Debtor, and two former partners of L&R.  The Erie County venue was based on a

contractual provision. (Liddle Decl. ¶ 2.)

27407092.6

14.     Debtor's wife, Tara Liddle, is not a party to the Erie Action in the Erie County

Court. (Liddle Decl. ¶ 3) She was not named as a defendant, never agreed to an Erie County

venue, and was not a signatory of the note, the guarantee, or security agreement.  Upon

information and belief, Tara Liddle has had no relationship to CF II or any of its affiliates.

(Liddle Decl. ¶ 3.); also *see Statement in Support of Turnover Motion Subject to White

&Wolnerman, PLLC Charging Lien* [Dkt 18 ] ("White Statement") ¶ 3.

15.     CF II doesn't seem to dispute Tara Liddle's ownership interest but rather argues

that somehow the Debtor's conduct or commitments provokes a forfeiture of her property.  There

is no document signed by Mrs. Liddle supporting this argument, which seems rooted in a view of

a wife's property rights long since discredited.

16.     Debtor and his wife were the owners of cooperative shares of the apartment where

they resided at 11 5th Avenue, Apartment 19MN, New York, New York 10003 (the "Manhattan

apartment"), which they held as tenants by the entirety.  (Liddle Decl. ¶ 6.)

17.     On February 7, 2019, Debtor and his wife closed the sale of the Manhattan

apartment.  (Liddle Decl. ¶ 9.) Pursuant to a Stipulation and Order, dated February 1, 2019 and

entered by the Erie County Court on February 4, 2019 (White Statement, Exh. D; Liddle Decl.

Exh. A), proceeds of the sale of the Manhattan apartment, after payment of certain expenses and

taxes, in the amount of $2,181,207.77 (the "Sale Proceeds") were held in escrow by the Debtor

and Tara Liddle's real estate lawyer, Diane Nardone, Esq. (the "Escrow Agent"), who is located

in Manhattan, in her Attorney IOLA Account.  (Liddle Decl. ¶¶ 8-10.; White Statement, Exh. D.

¶3.).   Tara Liddle was not a party or a signatory to said Stipulation and Order. The Sale Proceeds

were the subject of the Initial Turnover Order.

6

18.    On March 5, 2019, judgment in favor of CF II against L&R and the Debtor was entered in the Office of the Clerk of the Erie County Court in the amount $6,541,924. (Liddle Decl. ¶ 10.)

19.    On March 7, 2019, the Erie County Court issued an Order of Attachment in CF II's favor purporting to attach:  (1) the Sale Proceeds, (2) the Quioque house, and (3) "any and all debts owing" to Debtor.  The Order of Attachment further directed the Escrow Agent to transfer into and deposit with the Registry of the Erie County Court the entire amount of the Sale Proceeds within three business days of the entry of the order.  (Liddle Decl., Ex. B.)

20.    CF II caused the Order of Attachment to be entered in the Erie County Court on March 7, 2019.  Accordingly, the Escrow Agent was to transfer the entire amount of the Sale Proceeds to the Erie County Court by March 12, 2019.  (Liddle Decl. ¶ 13.)

21.    An attorney for CF II attested that he served the Order of Attachment on the Escrow Agent by e-mail on March 7, 2019, and by Federal Express overnight delivery and facsimile on March 8, 2019.  (Liddle Decl., Ex. D.)  (*Response by Counsel Financial II LLC to Debtor's Motion (i) Under 11 U.S.C. §§ 105,542 and 543 for Turnover of Property by Escrow Agent or Custodian; and (II) Under 11 U.S.C. § 363 for Use of Cash Collateral* [Dkt 23]  ("CF II Turnover Response") ¶ 25).  CF II also represents that the judgement in the Erie Action has been docketed and filed in both New York County and Suffolk County. (CF II Turnover Response ¶ 24; Exhibits L and M.)

22.    But CF II does not assert, nor have they propounded any evidence in response to inquiry by Debtor's proposed counsel, that the Order of Attachment was served on the New York

City Sheriff, whose jurisdiction covers the location of the Manhattan apartment, the location of the closing, and Escrow Agent's location in Manhattan. (Liddle Decl. ¶16.)

23.    Debtor filed notices of appeal from the Order of Attachment and the judgment on March 8, 2019. (Liddle Decl. ¶ 17.)

24.    The filing of UCC-1 financing statements by CF II against Debtor Mr. Liddle did not and could not create a security interest in the shares of the Manhattan Apartment or the Sale Proceeds.

25.    The Chapter 11 Cases were commenced on the Petition Date before the Escrow Agent transferred the Sale Proceeds to the Erie County Court.  Pursuant to the Initial Turnover Order, the Sale Proceeds were deposited into the debtor in possession bank account.

## Legal Argument Regarding CF II's Lack of a Security Interest

*CF II Has No Lien On The Cash Collateral Because It Did Not Satisfy The CPLR's Requirements For Serving The Order Of Attachment*

26.    CF II's basis for asserting that it has a security interest in the Sale Proceeds is because of the Order of Attachment.  That was not properly perfected and therefore CF II does not have a security interest in the Sale Proceeds.

27.    CF II's service of the Order of Attachment directly on the Escrow Agent – and not by serving it on the New York City Sheriff – was ineffective and failed to establish any lien of, for or by CF II, much less a senior secured priority interest in, to and on the Sale Proceeds.

28.    Pursuant to CPLR 6211, an order of attachment must be "directed to the sheriff" of the county where a garnishee may be served.  N.Y.C.P.L.R. § 6211(a).

8

29.    A plaintiff's lien accrues upon delivery of the order of attachment to the sheriff. *See* N.Y.C.P.L.R. § 6203; 12 Weinstein, Korn & Miller ¶ 6203.02 (2d ed. 2016) ("The attachment lien takes effect when the plaintiff delivers the order of attachment to the sheriff.")

30.    The Erie County Court's Order of Attachment does not comply with CPLR § 6211 because it is not directed to any sheriff.

31.    Moreover, CF II did not serve the Order of Attachment on the New York City Sheriff, who has jurisdiction over the Escrow Agent's location in Manhattan.  Because CF II did not serve the Order of Attachment on the Sheriff, it "never obtained a statutory priority under [CPLR] Article 62." *In re IDI Constr. Co., Inc.*, 345 B.R. 60, 68 (Bankr. S.D.N.Y. 2006).

**The Order Of Attachment Is Invalid Under The CPLR**

32.    In addition to CF II's failure to obtain a lien on Debtor's assets identified in the Order of Attachment, including the Sale Proceeds, the Erie County Court's direction to the Escrow Agent to transfer into and deposit the funds with the Registry of the Erie County Court was invalid.

33.    Article 62 of the CPLR, which governs orders of attachment, contains no provision authorizing a court to direct the payment of attached assets into the court.

34.    Instead, the scope of a New York state court's authority to order a payment into court is governed by CPLR § 2701.  And under Section 2701, a court may issue such an order only against a "party" – not a third-party garnishee like the Escrow Agent – for property capable of delivery that is "the subject of the action."  Generally, only equitable actions have a "subject"

9

that may be ordered paid into the court under Section 2701.  5 Weinstein, Korn & Miller ¶ 2701.05 (2d ed. 2016)

35.    Accordingly, a "court may not direct such payment simply to provide security for satisfaction of a possible judgment." *Pepe v. Miller & Miller Consulting Actuaries*, 221 A.D.2d 512 (2d Dep't 1995); *see also* 5 Weinstein, Korn & Miller, at ¶ 2701.05 (CPLR § 2701 "may not be utilized in an ordinary action for money damages.")

36.    CF II's lawsuit against the Debtor and other defendants sought a money judgment for L&R's default of the note.  (Liddle Decl. ¶ 2.)  The lawsuit has nothing to do with the Manhattan apartment or the Sale Proceeds.  Therefore, the Sale Proceeds are not "the subject of the action" and the Escrow Agent is not a party to the lawsuit.  Accordingly, the Erie County Court's direction to the Escrow Agent to pay the Sale Proceeds into the Court had no valid basis under CPLR Article 62 or § 2701.

37.    The Order of Attachment also is defective because it purports to attach Tara Liddle's share of and interest in the Sale Proceeds.  When a marital couple owns real property as a tenancy by the entirety, the proceeds of sale are held by them as tenants in common each with a 50% interest.  *Gossweiler v. Fin. Inv. Co. (Bermuda), Ltd.,* 163 A.D.2d 776, 779-80 (3d Dep't 1990).  Accordingly, 50% of the Sale Proceeds belong to Tara Liddle, not the Debtor, and the Erie County Court could not attach her property interest in the Sale Proceeds. It is undisputed that Tara Liddle was not a party defendant in the Erie County Action (Liddle Decl. ¶ 20), was not afforded an iota of notice or due process, and cannot have her property taken under the attachment provisions of the CPLR. CF II's argument that it was incumbent on Tara Liddle to intervene in the Erie Action to retrieve her property (*see* CF II Turnover Response ¶6)

10

completely subverts the legal process and the Constitutional safeguards against taking of property without due process at law.

### Creditors with a valid Lien or Security Interest in the Sale Proceeds
*White and Wolnerman*

38.    As set forth in the *Statement in Support of Turnover Motion Subject to White & Wolnerman , PLLC Charging Lien* [Dkts 18, 19], White & Wolnerman, PLLC ("W&W") represented the Debtor and his wife, Tara Liddle ("Tara" and with the Debtor, collectively the "Liddles") in a contested lawsuit brought by Signature Bank ("Signature") against the Liddles in the Supreme Court, New York County under Index No. 650252/2018 (the "Signature State Court Action"). Signature claimed that the Defendants defaulted under a Home Equity Line of Credit (the "HELOC"), against which Signature claimed a security interest on the Liddles' shares, constituting a second lien against the Manhattan apartment.  W&W defended the State Court Action on behalf of the Liddles, defeated Signature's motion for a prejudgment attachment and opposed Signature's Motion for Summary Judgment.  The Summary Judgment Motion, including the Liddles' claims and defenses, was never determined on the merits as the Liddles settled with the Bank, resulting in satisfaction of Signature's claim from the sale of the Manhattan apartment and procurement of the Sale Proceeds. But for the interference of CF II, W&W was to have been paid the balance of its fees $46,893.60 from the proceeds of the sale at closing, which fees, together with interest, create a charging lien against the Sale Proceeds pursuant to Judiciary Law § 475 (the "Secured Obligations"). Judiciary Law § 475 states that "an attorney who appears for a party has a lien upon his or her client's cause of action, claim or counterclaim, which attaches to a verdict, report, determination, decision, award, settlement, judgment or final order in his or her client's favor, and

11

the proceeds thereof in whatever hands they may come." Accordingly W&W is a secured creditor (the "Secured Party").

39.     The Secured Obligations are secured by the Sale Proceeds.

40.     W&W has consented to the use of Cash Collateral pursuant to the budget annexed to the proposed Interim Order attached hereto (as the same may be updated in accordance with the terms of the Interim Order, the "Budget").  The Budget for the Debtor includes retainers for restructuring counsel and accountants to be employed by the Debtor, subject to this Court's approval upon proper applications being filed in the Chapter 11 Case.  The Budget also includes the budget for L&R and the expenses of L&R are included as a line item – Total Operating Cash Flow Expenses of L&R - in the Debtor's Budget.

41.     Due to the amount of W&W's claim secured by its charging lien compared to the amount of the funds in the Sale Proceeds, including, its claim against Tara Liddle's portion of the Sale Proceeds, no provision of adequate protection is proposed.

***Tara Liddle***

42.     While Tara Liddle asserts an ownership claim to fifty percent (50%) of the Sale Proceeds,  Tara Liddle is not a secured party asserting a security interest in and lien upon the Debtor's fifty percent (50%) ownership interest in the Sale Proceeds which are the subject of this Motion for use of Cash Collateral.  To the extent that Tara Liddle is determine to have a security interest in the Cash Collateral, she has consented to its use according to the Budget.

## RELIEF REQUESTED

43.    By this Motion, the Debtor requests entry of the Interim Order and the Final

Order (ii) authorizing the Debtor's use of Cash Collateral, (ii) granting adequate protection to the

Secured Party, (iii) scheduling a Final Hearing, and (iv) granting related relief.

## CONCISE STATEMENT OF THE MATERIAL TERMS OF THE INTERIM ORDER

44.    Pursuant to Fed. R. Bankr. P. 4001(b)(1) and Local Bankruptcy 4001-2(b), the

Debtors provide the following summary and highlight the following provisions relating to the

proposed use of Cash Collateral and the location of such provisions in the Interim Order:[2]

| Required Information / Highlighted Provision | Summary of Material Terms and Location |
|---|---|
| Entities Interest in the Cash Collateral FRBP 4001(b)(1)(B)(i) | The Secured Party. (Interim Order, ¶[F]) |
| Purposes for Use of Cash Collateral FRBP 4001(b)(1)(B)(ii), (iii) LBR 4001-2(a)(2) | The Debtors are authorized to use Cash Collateral in the manner set forth in the Budget approved by the Secured Party (as the same may be updated in accordance with the terms of the Interim Order, the "Budget") and for no other purposes. (Interim Order ¶[3(a)], Exhibit A) |
| Amount of Cash Collateral to Be Used LBR 4001-2(a)(1) | See Budget annexed to the Interim Order as Exhibit A. (Interim Order, Exhibit 1) |

## BASIS FOR RELIEF

### The Use of Cash Collateral Is Warranted and Should Be Approved

45.    Section 363(c)(1) of the Bankruptcy Code authorizes a debtor in possession to use

property of the estate in the ordinary course of business. To use cash collateral, however, one of

two conditions must be satisfied: (1) each entity with an interest in the cash collateral consents to

13

its use or (2) the court, after notice and a hearing, authorizes such use. 11 U.S.C. § 363(c)(2). In

the latter instance, the court is instructed to prohibit or condition the use of cash collateral as is

necessary to provide adequate protection for the interests of the secured party. 11 U.S.C. §

363(e).

46.      In this Chapter 11 Case, ample cause exists to grant the Debtor authority to use

Cash Collateral pursuant to the Budget. Without the ability to use Cash Collateral, there will be

no way for the Debtor to pay for his basic living needs, operate his business, manage his assets

and to maximize value. The Debtor has the consent of the Secured Party to the use of Cash

Collateral as described herein and in the Interim Order. Accordingly, the Debtor submits that the

use of Cash Collateral is in the best interests of the Debtor's estate and should be approved.

47.      In addition, pursuant to section 105(a) of the Bankruptcy Code, the Bankruptcy

Court may issue any order, process, or judgment that is necessary or appropriate to carry out the

provisions of the Bankruptcy Code. 11 U.S.C. § 105(a). The Debtor respectfully submits that the

entry of an order authorizing use of Cash Collateral under the circumstances in necessary and

appropriate to enable them to maximize the value of their assets and should be approved.

### IMMEDIATE INTERIM RELIEF IS NECESSARY TO AVOID IMMEDIATE AND IRREPARABLE HARM

48.      Bankruptcy Rule 4001(b) provides that a final hearing on a motion to use cash

collateral pursuant to Section 363 of the Bankruptcy Code may not be commenced earlier than 14

days after the service of such motion. Upon request, however, the court is empowered to conduct

an interim expedited hearing on a motion to use cash collateral at which it may authorize a debtor

to use cash collateral to the extent necessary to avoid immediate and irreparable harm to a debtor's

estate. See Fed. R. Bankr. P. 4001(b)(2). Section 363(c)(3) of the Bankruptcy Code authorizes the

14

court to conduct a preliminary hearing and to authorize the use of cash collateral "if there is a reasonable likelihood that the [debtor] will prevail at the final hearing under [section 363(e) of the Bankruptcy Code]." 11 U.S.C. § 363(c)(3). Local Bankruptcy Rule 4001-2(g) further requires that the Debtor show that immediate or irreparable harm will be caused to the Debtor's estates if immediate relief is not granted before the final hearing.

49.     Absent the ability to use Cash Collateral, the Debtor would not have sufficient funds to pay for food, shelter, utilities and his employees and professionals and otherwise satisfy his ongoing liquidity needs. The Debtor therefore has an immediate need to use Cash Collateral and the continued use of Cash Collateral is vital to preserve and maximize the value of the Debtor's estates. Accordingly, the Debtor requests that the Court conduct a preliminary hearing on this Motion and authorize the Debtor to use Cash Collateral on an emergency interim basis on the terms set forth in the Interim Order to prevent immediate and irreparable harm to the Debtor's estates pending the Final Hearing pursuant to Bankruptcy Rule 4001(b).

## DEBTORS SATISFY BANKRUPTCY RULE 6003

50.     Bankruptcy Rule 6003 provides that, "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, grant relief regarding . . . a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate . . . ." Fed. R. Bankr. P. 6003(b).

51.     The Debtor has an immediate need to use the Cash Collateral, to, among other things, preserve and maintain the value of the Debtor's assets, including the Firm, absent which immediate and irreparable harm will result to the Debtor and his estates The preservation and maintenance of the Debtor's assets are necessary to maximize the value of the Debtor's estates.

27407092.6

Absent the Debtor's ability to use the Cash Collateral, the Debtor would not have sufficient available sources of financing and would be unable to pay for his basic living needs, his Firm's operating expenses or maintain their assets, to the severe detriment of the estate and creditors.

52.     The Debtor submits that, because the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtor for the reasons set forth herein, Bankruptcy Rule 6003 has been satisfied.

## WAIVER OF STAY UNDER BANKRUPTCY RULES 4001(A)(3) AND 6004(H)

53.     The Debtor also requests that the Court waive the stays imposed by Bankruptcy Rule 4001(a)(3) ("[a]n order granting a motion for relief from an automatic stay made in accordance with [a motion to use property of the estate pursuant to section 363(e)] is stayed until the expiration of fourteen days after entry of the order, unless the court orders otherwise") and Bankruptcy Rule 6004(h) ("[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise"). Fed. R. Bankr. P. 4001(a)(3), Fed. R. Bankr. P. 6004(h). As described above, the relief that the Debtor seeks in this Motion is necessary for the Debtor to operate without interruption and to preserve value for their estates. Accordingly, the Debtor respectfully requests that the Court waive the 14-day stays imposed by Bankruptcy Rules 4001(a)(3) and 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

## REQUEST FOR A FINAL HEARING

54.     Pursuant to Bankruptcy Rule 4001(b)(2), the Debtor requests that the Court set a date for the Final Hearing that is as soon as practicable and fix the time and date prior to the Final Hearing for parties to file objections, if any, to this Motion.

16

## MOTION PRACTICE

55.     This Motion includes citations to the applicable rules and statutory authorities upon

which the relief requested herein is predicated and a discussion of their application to this Motion.

Accordingly, the Debtor submits that this Motion satisfies Local Rule 9013-1(a).

## NOTICE

56.     The Debtor will provide notice of this Motion to: (a) the Office of the U.S. Trustee

for the Southern District of New York; (b) counsel for the Secured Party; (c) the parties listed in

the list of twenty (20) largest unsecured creditors filed by the Debtor in the Chapter 11 Case; (d)

the Internal Revenue Service; (e) all parties who are known, after reasonable inquiry, to have

asserted a lien, encumbrance, or claim in the Cash Collateral; (f) the Office of the United States

Attorney for the Southern District of New York; and (g) any other party entitled to notice pursuant

to Local Rule 9013-1(b). The Debtor submit that, in light of the nature of the relief requested, no

other or further notice need be given.

## NO PRIOR REQUEST

57.     No previous request for the relief sought herein has been made to this Court or any

other court.

## CONCLUSION

WHEREFORE, for the reasons set forth above and in the First Day Declaration, the Debtor

respectfully requests the Court enter the Interim Order, substantially in the form annexed hereto,

27407092.6

and the Final Order granting the relief requested in this Motion and granting such other and

further relief as may be just and proper.

Dated:  April 8, 2019                                                    Respectfully submitted,
        New York, New York

                                                                        */s/ Alison D. Bauer*
                                                                        _____
                                                                        TORYS LLP
                                                                        Alison D. Bauer
                                                                        William F. Gray
                                                                        Jaclyn J. Leader
                                                                        1114 Avenue of the Americas, 23rd Floor
                                                                        New York, New York  10036
                                                                        Tel:   212.880.6000
                                                                        Fax:  212.682.0200
                                                                        abauer@torys.com
                                                                        wgray@torys.com
                                                                        jleader@torys.com

                                                                        *Proposed Attorneys for Debtor*

## **EXHIBIT A**

**PROPOSED INTERIM ORDER**

27407092.6

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------- x

In re:                                              Case No.  19-10747 (shl)

JEFFREY LEW LIDDLE,

                          Debtor.
-------------------------------------------------------- x

### INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362 and 363 (I) AUTHORIZING THE DEBTORS' TO USE CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION TO THE SECURED PARTIES, (III) SCHEDULING A FINAL HEARING AND (IV) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[1] of the above-referenced debtor and debtor-in-possession (the "Debtor") in the above-captioned chapter 11 case (the "Chapter 11 Case") for entry of an interim order (this "Interim Order"):

(I)    authorizing the Debtor to use Cash Collateral (as defined herein);

(II)    scheduling, pursuant to Bankruptcy Rule 4001, a final hearing (the "Final Hearing") granting the relief requested in the Motion on a final basis pursuant to the final order (the "Final Order"); and

(III)    granting related relief;

and the interim hearing to consider the interim relief requested in the Motion having been held before the Court on April __, 2019 (the "Interim Hearing"); and good and sufficient notice of the Motion and the Interim Hearing on the Motion having been given; and the Court having considered the Motion, the Declarations, and the evidence submitted or adduced and the arguments of counsel made at the Interim Hearing; and notice of the Interim Hearing having been given in accordance with Bankruptcy Rules 2002, 4001(b), (c), and (d), and 9014; and all

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

1

objections, if any, to the interim relief requested in the Motion having been withdrawn, resolved, or overruled by the Court; and it appearing to the Court that granting the interim relief requested is necessary to avoid immediate and irreparable harm to the Debtor and his estate pending the Final Hearing, and otherwise is fair and reasonable, in the best interests of the Debtor, his estate, its creditors and all other parties-in-interest in the Chapter 11 Case, and essential to maximize the value of the Debtor's assets; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

**THIS COURT HEREBY FINDS AND CONCLUDES AS FOLLOWS:[2]**

A.     <u>Petition Date</u>. On March 11, 2019 (the "<u>Petition Date</u>"), the Debtor filed a voluntary petition with this Court for relief under chapter 11 of the Bankruptcy Code.

B.     <u>Debtor in Possession</u>. The Debtor is in possession of its properties and continues to operate its affairs and businesses as debtor and debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Chapter 11 Case.

C.     <u>Jurisdiction and Venue</u>. This Court has jurisdiction over the Chapter 11 Case and the Motion pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

D.     <u>Creditors' Committee</u>. As of the date hereof, the United States Trustee for the Southern District of New York (the "<u>U.S. Trustee</u>") has not appointed an official committee of unsecured creditors in the Chapter 11 Case pursuant to section 1102 of the Bankruptcy Code (a "<u>Creditors' Committee</u>").

---

[2] Pursuant to Bankruptcy Rule 7052, any finds of fact and contained herein may be treated as conclusions of law as if set forth below, and vice versa.

27407092.6

E.        Adequate Notice. On April 8, 2019, the Debtor filed the Motion with the Court

and pursuant to Bankruptcy Rules 2002, 4001 and 9014, and the Local Rules of this Court, the

Debtor provided notice of the Motion and the Interim Hearing by electronic mail, facsimile, hand

delivery or overnight delivery to the following parties and/or to their counsel as indicated below:

(a) the U.S. Trustee, (b) counsel to the Secured Party (as defined herein), (c) creditors holding

the top twenty (20) largest unsecured claims as set forth in the consolidated list filed with the

Debtors' petitions, (d) those parties requesting notice pursuant to Bankruptcy Rule 2002, (e) all

parties who are known, after reasonable inquiry, to have asserted a lien, encumbrance, or claim

in the Cash Collateral, (f) the Office of the United States Attorney for the Southern District of

New York, and (g) the Internal Revenue Service (collectively, the "Notice Parties"). Given the

nature of the relief sought in the Motion, this Court concludes that the foregoing notice was

sufficient and adequate under the circumstances and complies with the Bankruptcy Code, the

Bankruptcy Rules, the Local Rules, and any other applicable law, and no further notice relating

to this proceeding and the Interim Hearing is necessary or required.

F.        Necessity for Relief Requested; Immediate and Irreparable Harm. The Debtor

requested entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2). The Debtor has

an immediate need to use the Cash Collateral to, among other things, fund the Debtor's basic

needs and provide operating capital for a short period of time to allow the Debtor to operate his

law firm, including to fund payroll, rent, utilities, expenses of his cases and professional fees and

expenses preserve, and maintain the value of the Debtor's assets, absent which immediate and

irreparable harm will result to the Debtor, his estate and the creditors. The preservation and

maintenance of the Debtor's assets and his business are necessary to maximize the value of the

Debtor's estate. Absent the Debtor's ability to use the Cash Collateral, the Debtor would not have

3

sufficient available sources of liquidity and would be unable to pay for his basic living needs and the operating expenses of L&R or to maintain his assets, to the severe detriment of the estate and creditors. Accordingly, the relief requested in the Motion and the terms herein are (i) critical to the Debtor's ability to maximize the value of the estate, (ii) in the best interests of the Debtor and the estate, and (iii) necessary, essential, and appropriate to avoid immediate and irreparable harm to the Debtor, the creditors, the assets, remaining business, goodwill, and reputation.

G.    <u>Good Cause</u>. Good cause has been shown for immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2) and the Local Rules, and the entry of this Interim Order is in the best interests of the Debtor, the estate and the creditors. Among other things, the relief granted herein will provide the Debtor funds to pay for food, shelter and utilities, among other things, and to minimize disruption of the Debtor's business and permit the Debtor to preserve and maintain the value of the Debtor's assets. The stipulated terms of the Debtor's use of the Cash Collateral as set forth in this Interim Order, are fair and reasonable under the circumstances, and reflect the Debtor's exercise of prudent business judgment with respect to L&R.

H.    <u>Good Faith</u>. The Debtor's use of Cash Collateral has been negotiated in good faith and at arms' length among the Debtor, the Secured Party and Tara Liddle.  The Secured Party and Tara Liddle's consent to the Debtor's use of Cash Collateral has been made in "good faith."

I.    <u>CF II</u>. CF II does not have a security interest in or to, or a lien upon, the Cash Collateral because CF II did not satisfy the CPLR's requirements for serving the Order of Attachment and the Order of Attachment is invalid under the CPLR.

4

**BASED UPON THE STIPULATED TERMS SET FORTH HEREIN AND THE FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED:**

1.    <u>Motion Granted.</u> The Motion is GRANTED to the extent provided herein on an interim basis. Any objection to the Motion to the extent not withdrawn or resolved is hereby overruled.

2.    <u>Authorization to Use Cash Collateral.</u> The Debtor is authorized to use Cash Collateral pursuant to the terms and conditions provided herein.

3.    <u>Budget</u>.

    a. Except as otherwise provided herein, the Debtors may only use Cash Collateral in the manner set forth in the budget approved by the Secured Party as the same may be updated in accordance with the terms of this Interim Order (the "<u>Budget</u>") and for no other purposes. The initial Budget (the "<u>Initial Budget</u>"), which includes the budget for the Debtor and the budget for L&R which total expenses are incorporated into the Debtor's Budget, is attached hereto as **Exhibit A**.

    b. The Debtors shall be deemed to be in compliance with the Budget so long as:

        i.    commencing for the week ending April 15, 2019, actual "Total Personal Expenses" are not more than 20% in excess of the projected "Total Personal Expenses" line item in the Budget for any rolling two (2) week period, such variance tested on each Thursday for the period ending in the immediately preceding week; and

        ii.    commencing for the week ending April 15, 2019, actual "Total Operating Cash Flow Expenses – L&R" are not more than 20% in excess of the projected "T Total Operating Cash Flow Expenses – L&R" line item in the Budget for any rolling two (2) week period, such variance tested on each Thursday for the period ending in the immediately preceding week.

    c. Commencing on the first Thursday following the week entry of this Interim Order and continuing every Thursday thereafter, the Debtor shall deliver to the Secured Party a weekly variance report comparing the actual results from the previous week to the Initial Budget and providing revised projections for the remainder of the term of the Initial Budget.

    d. The Debtors shall remain bound by the Initial Budget, subject to the variances noted above. Any amendment to the Initial Budget (an "Amended Budget") shall require the consent of the Secured Party, which consent shall not be unreasonably withheld. Amendments to the Initial Budget need not be approved by nor filed with the Court; provided that copies shall be provided to the U.S. Trustee and counsel to any Creditors' Committee.

27407092.6

4.      W&W's interest in the Cash Collateral is adequately protected and no additional adequate protection is necessary at this time.

5.      CF II does not have a security interest in or to, or a lien upon, the Cash Collateral.

6.      <u>Reporting Requirements</u>. The Debtors shall provide the Secured Party with all reporting and other information required to be provided to the Secured Party under this Interim Order including with respect to the Budget variance reports.

7.      <u>Reversal, Modification, Vacatur, or Stay</u>. Any reversal, modification, vacatur, or stay of any or all of the provisions of this Interim Order (other than in accordance with the Final Order) shall not affect the validity or enforceability of any claim, lien, security interest, or priority authorized or created hereby and incurred prior to the effective date of such reversal, modification, vacatur, or stay. Notwithstanding any reversal, modification, vacatur, or stay (other than in accordance with the Final Order), (a) this Interim Order shall govern, in all respects, any use of Cash Collateral prior to the effective date of such reversal, modification, vacatur, or stay, and (b) the Secured Party shall be entitled to all the benefits and protections granted by this Interim Order with respect to any such use of Cash Collateral.

8.      <u>Reservation of Rights of the Secured Party and Tara Liddle</u>. Notwithstanding any other provision in this Interim Order to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair any of the rights of the Secured Party  or Tara Liddle (a) to seek any other or supplemental relief in respect of the Debtor including the right to seek additional adequate protection at the Final Hearing; and (b) under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right of the Secured Party or Tara Liddle to (i) request modification of the automatic stay of

6

section 362 of the Bankruptcy Code, (ii) request dismissal of the Chapter 11 Case, conversion of

the Chapter 11 Case to a case under chapter 7, or appointment of a chapter 11 trustee or examiner

with expanded powers in the Chapter 11 Case, (iii) seek to propose, subject to the provisions of

section 1121 of the Bankruptcy Code, a chapter 11 plan or plans; or (c) any other rights, claims,

or privileges (whether legal, equitable, or otherwise) of the Secured Party or Tara Liddle.

9.      <u>No Waiver for Failure to Seek Relief</u>. The failure or delay of the Secured Party or Tara

Liddle to seek relief or otherwise exercise any of their respective rights and remedies under this

Interim Order or applicable law, as the case may be, shall not constitute a waiver of any rights

hereunder, thereunder, or otherwise, by the Secured Party or Tara Liddle.

10.     <u>Modification of the Automatic Stay</u>. The Debtor is authorized and directed to perform all

acts and to make, execute and deliver any and all instruments as may be reasonably necessary to

implement the terms and conditions of this Interim Order and the transactions contemplated

hereby. The stay of section 362 of the Bankruptcy Code is hereby modified to permit the Debtor

and the Secured Party to accomplish the transactions contemplated by this Interim Order

including, without limitation, to permit the Debtors to incur all liabilities and obligations to the

Secured Party under this Interim Order.

11.     <u>Good Fait</u>h. Pursuant to sections 105, 361, and 363 of the Bankruptcy Code, the Secured

Party and Tara Liddle are hereby found to be entities that have acted in "good faith" in connection

with the negotiation and entry of this Interim Order, and the Secured Party and Tara Liddle are

entitled to the protections provided to such entities under section 363(m) of the Bankruptcy Code.

7

12.     <u>Proofs of Claim</u>. The Secured Party shall not be required to file a proof of claim in the Chapter 11 Case or successor cases in respect of the Secured Obligations, and the Debtors' acknowledgment of the Secured Obligations shall be deemed to constitute a timely filed proof of claim against the Debtor. Any order entered by the Court in relation to the establishment of a bar date for any claim (including without limitation, administrative claims) in the Chapter 11 Case or successor cases shall not apply to the Secured Party with respect to the Secured Obligations.

13.     <u>Limitation of Liability</u>. In permitting the use of the Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to this Interim Order, neither the Secured Party nor Tara Liddle shall be deemed to be in control of the operations of the Debtor or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtor's business (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 et seq. as amended, or any similar federal or state statute), nor shall they owe any fiduciary duty to the Debtor, its creditors or estate, or shall constitute or be deemed to constitute a joint venture or partnership with the Debtor or L&R. Furthermore, nothing in this Interim Order shall in any way be construed or interpreted to impose or allow the imposition upon the Secured Party or Tara Liddle of any liability for any claims arising from the prepetition or post-petition activities of the Debtor.

14.     <u>Final Hearing</u>. A hearing on the Debtors' request for a Final Order approving the Motion is scheduled for [●] [●], 2018, at [●] [a.m./p.m.] (prevailing Eastern time) before this Court. Within three (3) business days after entry of this Interim Order, the Debtors shall serve, or cause to be served, by first class mail or other appropriate method of service, a copy of the Motion (to

8

the extent the Motion was not previously served on a party) and this Interim Order on (i) the Notice Parties, and (ii) counsel to any Creditors' Committee. Any responses or objections to the Motion shall be made in writing, conform to the applicable Bankruptcy Rules and Local Rules, be filed with the Bankruptcy Court, set forth the name of the objecting party, the basis for the objection, and the specific grounds therefor, and be served so as to be actually received no later than [●] [●], 2018, at 4:00 p.m. (prevailing Eastern time) by (i) the Debtors (ii) the Notice Parties and (ii) counsel to any Creditors' Committee.

15.   <u>Order Effective Upon Entry</u>. Notwithstanding any applicability of any Bankruptcy Rules, the terms and conditions of this Interim Order shall be immediately effective and enforceable upon its entry.

16.   <u>Controlling Effects of Interim Order.</u> To the extent any provision of this Interim Order conflicts or is inconsistent with any provision of the Motion, the provisions of this Interim Order shall control.

17.   <u>Survival of this Order</u>. Without limiting anything in this Interim Order, the provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered: (a) confirming any Plan in the Chapter 11 Case, (b) converting the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code, (c) dismissing the Chapter 11 Case, (d) withdrawing of the reference of the Chapter 11 Case from this Court, or (e) providing for abstention from handling or retaining of jurisdiction of the Chapter 11 Case in this Court.

18.   <u>Bankruptcy Rules</u>. The requirements of Bankruptcy Rules 4001, 6003 and 6004, in each case to the extent applicable, are satisfied by the contents of the Motion.

9

19.    <u>Retention of Jurisdiction</u>. The Court has and will retain jurisdiction to enforce this Interim

Order in accordance with its terms and to adjudicate any and all matters arising from or  related

to the interpretation or implementation of this related to the interpretation or implementation of

this Interim Order.


Dated:  April __, 2019
        New York, New York


_____
HONORABLE SEAN H. LANE
UNITED STATES BANKRUPTCY JUDGE

10

Exhibit A to Interim Order
<u>BUDGET</u>

| **JEFFREY LEW LIDDLE, DEBTOR** | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | |
| **Week Ending** | **4/8/19** | **4/15/19** | **4/22/19** | **4/29/19** | **5/6/19** | **5/13/19** | **5/20/19** | **5/27/19** | | |
| **Cash Receipts:** | | | | | | | | | | |
| Non L&R Income (Closing Refund) | $3,000 | | | | | | | | | |
| L&R Income (Retainers) | $15,000 | $22,500 | | | | | | | | |
| **Total Personal Income:** | **$18,000** | **$22,500** | **$0** | **$0** | **$0** | **$0** | **$0** | **$0** | | |
| **Personal Expenses:** | | | | | | | | | | |
| Rent | $7,500 | | | | $7,500 | | | | | |
| Property Taxes | | | | | | | | | | |
| Insurance (Personal/Renter's /Auto) | | | | | $3,300 | | | | | |
| Utilities | | $1,000 | | | $1,500 | | | | | |
| Cable/Internet/Phone/Cellular | | | | | $800 | | | | | |
| Food | | $1,500 | | | $2,500 | | | | | |
| Dining Out | | | | | $2,000 | | | | | |
| Membership Dues | | | | | $4,575 | | | | | |
| Charitable Donations | | | | | | | | | | |
| Clothing | | $1,500 | | | $1,500 | | | | | |
| Personal Care | | | | | $200 | | | | | |
| Credit Card Payments/Fees | | | | | | | | | | |
| Car Payments | | | | | $1,750 | | | | | |
| Auto Insurance (included above) | | | | | | | | | | |
| Garage/Gasoline/Tolls | | $400 | $400 | | $800 | | | | | |
| Medical Health Insurance | | | | | | | | | | |
| Out of Pocket Health Expenses | | | $100 | | $200 | | | | | |
| Travel/Vacation | | | | | | | | | | |
| Mass Transit | | | | | | | | | | |
| Child Care Expenses (Tuition/Rent) | | | | | $6,000 | | | | | |
| Estimated Taxes (Federal/State/Local) | | | | | | | | | | |
| **Total Personal Expenses:** | **7500** | **4400** | **500** | **0** | **32625** | **0** | **0** | **0** | | |
| **Cumulative Personal Expenses** | **7500** | **11900** | **12400** | **12400** | **45025** | **45025** | **45025** | **45025** | | |
| **Personal Cash Flow** | **$10,500** | **$18,100** | **($500)** | **$0** | **($32,625)** | **$0** | **$0** | **$0** | | |
| **Cumulative Operating Cash Flow** | **$10,500** | **$28,600** | **$28,100** | **$28,100** | **($4,525)** | **($4,525)** | **($4,525)** | **($4,525)** | | |
| | | | | | | | | | | |
| **Case-Related Disbursements** | | | | | | | | | | |
| UST Fees | | | | | | | | | | |
| Restructuring Fees (Bankruptcy Counsel Retainer) | | $250,000 | | | | | | | | |
| Restructuring Fees & Exp. (Accountants Retainer) | | $50,000 | | | | | | | | |
| Unsecured Creditors Advisors & Counsel | | | | | | | | | | |
| | | | | | | | | | | |
| **Total Non-Operating Disbursements** | **0** | **($300,000)** | **0** | **0** | **0** | **0** | **0** | **0** | **0** | **0** |
| | | | | | | | | | | |
| Beginning Bank Cash | $1,090,000 | $1,061,100 | $750,200 | $737,600 | $737,600 | $615,475 | $615,475 | $593,375 | | |
| Increase (Decrease) per Above | ($10,500) | ($304,400) | ($500) | $0 | ($32,625) | $0 | $0 | $0 | | |
| Total Operating Cash Flow Expenses - L&R | ($18,400) | ($6,500) | ($12,100) | $0 | ($89,500) | $0 | ($22,100) | $0 | | |
| Ending Bank Cash | $1,061,100 | $750,200 | $737,600 | $737,600 | $615,475 | $615,475 | $593,375 | $593,375 | | |

**LIDDLE & ROBINSON, L.L.P.**

Operating Expense Budget

| Week Ending | 4/8/2019 | 4/15/19 | 4/22/19 | 4/29/19 | 5/6/19 | 5/13/19 | 5/20/19 | 5/27/19 | |
|---|---|---|---|---|---|---|---|---|---|
| **Operating Expenses:** | | | | | | | | | |
| Rent | $9,400 | | | | $9,400 | | | | |
| Attorney Payroll* | | | | | $15,000 | | $15,000 | | |
| HeadHunter | | | | | $20,000 | | | | |
| JLL Draw | $1,000 | $6,500 | | | $20,000 | | | | |
| Staff Payroll | | | $7,100 | | $7,100 | | $7,100 | | |
| New Hire (Paralegal/Assistant)** | | | $5,000 | | $5,000 | | | | |
| Supplies/Postage/Mailing | | | | | | | | | |
| Insurance | $6,000 | | | | $6,000 | | | | |
| Utilities | | | | | | | | | |
| Office Services (Solaris technologies) | $2,000 | | | | $2,000 | | | | |
| Repairs/Maintenance | | | | | | | | | |
| Other Operating Expenses | | | | | | | | | |
| Accounting Services | | | | | $5,000 | | | | |
| **Total Operating Cash Flow Expenses:** | **$18,400** | **$6,500** | **$12,100** | **$0** | **$89,500** | **$0** | **$22,100** | **$0** | |
| **Cumulative Operating Cash Flow** | $18,400 | $24,900 | $37,000 | $37,000 | $126,500 | $126,500 | $148,600 | $148,600 | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| * Attorneys have not yet been hired | | | | | | | | | |
| ** New staff has not yet been hired | | | | | | | | | |