UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------- x
:
In re JEFFREY LEW LIDDLE,                                           :
:
                              Debtor,              : Case No. 19-10747 (shl)
:
:
------------------------------------------------------------------- x

**DECLARATION OF JEFFREY L. LIDDLE IN SUPPORT OF
DEBTOR'S MOTION FOR USE OF CASH COLLATERAL**

JEFFREY LEW LIDDLE, declares under penalty of perjury that:

      1.      I am the Debtor and Debtor-in-Possession in the above-captioned matter. I have personal knowledge of the facts set forth herein.

      2.      On September 18, 2018, Counsel Financial II, L.L.C. ("CF II"), filed a motion for summary judgment in lieu of complaint in the Supreme Court of the State of New York for Erie County (the "Erie County Court") for default and non-payment of a loan to Liddle & Robinson LLP ("L&R"), a law firm in which I was a partner and am now the only remaining lawyer.

      3.      Two of the former partners of L&R and I are guarantors of the CF II loan. The defendants in CF II's lawsuit are L&R, myself, and the former L&R partners. The Erie County venue was based on a contractual provision.

      4.      Two affiliates of CF II, Counsel Financial Holdings LLC and LIG Capital LLC, also made loans to L&R that were not the subject of the Erie County Court action.

      5.      My wife, Tara Liddle, is not a party to CF II's action in the Erie County Court. She was not named as a defendant, never agreed to an Erie County venue, and was not a signatory of the note, the guarantee, or security agreement. She has had no relationship to CF II or any of its affiliates.

6.     My wife and I were the owners of a cooperative apartment located at 11 Fifth Avenue, Unit 19 M/N, New York, New York (the "Manhattan apartment"), which we held as tenants by the entirety.  We listed the Manhattan apartment for sale.

7.     Prior to closing the sale of the Manhattan apartment, I entered into a stipulation and order with CF II's attorneys concerning the proceeds of the anticipated sale, which the Erie County Court entered on February 4, 2019.  Tara Liddle is not a party or a signatory of the stipulation and order.  A true and correct copy of the stipulation and order is attached hereto as **Exhibit A**.

8.     Pursuant to the stipulation and order, the closing of the sale of the Manhattan apartment would be allowed to proceed and our closing attorney, Diane Nardone, Esq. (the "Escrow Agent"), agreed to hold the remaining net proceeds in escrow pending resolution of proceedings in the Erie County Court.

9.     On February 7, 2019, my wife and I closed the sale of the Manhattan apartment. After payments were made in accordance with the stipulation, the Escrow Agent continued to hold in escrow $2,181,207.77 (the "Sale Proceeds").  The Escrow Agent, the escrow itself, Tara Liddle and I are each located in New York County.

10.    On March 5, 2019, judgment in favor of CF II against L&R and me was entered in the Office of the Clerk of the Erie County Court in the amount $6,541,924.

11.    On March 6, 2019, the Escrow Agent wrote the Erie County Court to notify the Court of her intention to release to Tara Liddle her 50% portion of the Sale Proceeds, to release $150,000 to me in accordance with the CPLR's "homestead exemption," and to continue to hold the rest in escrow.

12. On March 7, 2019, the Erie County Court issued an order of attachment in CF II's favor purporting to attach the Sale Proceeds and certain other assets owned by me and my wife and debts owed to me. The order of attachment further directed the Escrow Agent to transfer into and deposit with the Registry of the Erie County Court the entire amount of the Sale Proceeds within three business days of the entry of the order. A true and correct copy of the order of attachment is annexed hereto as **Exhibit B**.

13. CF II caused the order of attachment to be entered in the Erie County Court on March 7, 2019, which meant that March 12, 2019, was the deadline for the Escrow Agent to pay the Sale Proceeds into court pursuant to the Erie County Court's direction. *See* Ex. B. A true and correct copy of the Notice of Entry is annexed hereto as **Exhibit C**. The judgment, but apparently not the order of attachment, was docketed in New York and Suffolk Counties on March 8.

14. An attorney for CF II attested that he served the order of attachment on the Escrow Agent by e-mail on March 7, 2019, and by Federal Express overnight delivery and facsimile on March 8, 2019. A true and correct copy of the Affidavit of Michael Katz, Esq. is annexed hereto as **Exhibit D**.

15. CF II did not file an affidavit of service with the Erie County Court attesting to service of the order of attachment on anyone other than the Escrow Agent.

16. CF II did not serve the order of attachment on the New York City Sheriff, whose jurisdiction covers the Escrow Agent's location in Manhattan.

17. On March 8, 2019, I filed Notices of Appeal to the Appellate Division of the Supreme Court of the State of New York, Fourth Judicial Department, from the Erie County

Court's order of attachment and the judgment.  A true and correct copy of each Notice of Appeal is annexed hereto as **Exhibits E and F**.

18. On March 11, 2019 (the "Petition Date"), I filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  As set forth in my Affidavit under Bankruptcy Rule 1007-2 filed with this Court on the Petition Date, the filing of this chapter 11 case prevented the transfer of the Sale Proceeds out of the bankruptcy estate. (Dkt 1, ¶ 16). Pursuant to this Court's direction, the Sale Proceeds are now in the Debtor-in-Possession Account that I established shortly after the filing.

19. I believe the basis for CF II's failure to serve the New York City Sheriff with the order of attachment to levy upon the Sale Proceeds was intentional.

20. CF II and its attorneys are fully aware that CF II would have been liable to Tara Liddle for damages sustained by the Sheriff's levy on her 50% interest in the Sale Proceeds.

21. CF II was attempting an end-run around the CPLR in order to remove my wife's interest in the Sale Proceeds from the jurisdiction to force her to travel to Erie County and appear in court there to attempt to retrieve her property.

22. CF II's motivation was to deny me access to any source of liquidity.  At some point, aggressive collection efforts cross the line and become abuse of process.  That line was crossed here.  But for the filing of my Chapter 11 case on March 11 – one day before the Erie County Court's deadline to the Escrow Agent – my and my wife's sole liquid assets would have been held hostage in Erie County.

23. I have asked, and Torys LLP has agreed, to represent me in the Chapter 11 case, conditional on appropriate financial arrangements, including the payment of a retainer, the review of and clearing of any conflicts, and subject to this Court's approval.

24.     I am also in the process of engaging an accounting firm, specifically Allen Wilen of Eisner Amper LLP, to serve as Debtor's accountants, subject to the completion of their conflicts check and appropriate financial arrangements being made, including payment of a retainer, and subject to this Court's approval.

25.     Provisions for the payment of fees and expenses to Torys LLP and Eisner Amper LLP are included in the Budget.

26.     I continue to operate my business and represent clients through L&R and have a number of upcoming arbitrations and actions which have the potential of generating several hundreds of thousands, and possibly multi-million dollar fee awards, including, without limitation, Price vs. Citigroup - April 29 to May 3; Jones vs. Tribal Capital - May 13 to May 17; and Demopoulous and Fontaine v. Deutsche Bank Securities -June 10 to June 14, June 17-21.

I declare under penalty of perjury that the foregoing is true and correct. Executed on April 8, 2019.

_____
Jeffrey L. Liddle