**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------- x

In re:

                                                              Case No. 19-10747 (shl)

JEFFREY LEW LIDDLE,

                      Debtor.

-------------------------------------------------------- x

**INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362 and 363**
**(I) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL,**
**(II) GRANTING ADEQUATE PROTECTION TO THE SECURED PARTIES,**
**(III) SCHEDULING A FINAL HEARING AND (IV) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[1] of the above-referenced debtor and debtor-in-possession (the "Debtor") in the above-captioned chapter 11 case (the "Chapter 11 Case") for entry of an interim order (this "Interim Order"):

    (I)    authorizing the Debtor to use Cash Collateral;

    (II)    scheduling, pursuant to Bankruptcy Rule 4001, a final hearing (the "Final Hearing") granting the relief requested in the Motion on a final basis pursuant to the final order (the "Final Order"); and

    (III)    granting related relief;

and the interim hearing to consider the interim relief requested in the Motion having been held before the Court on April 11, 2019 (the "Interim Hearing"); and good and sufficient notice of the Motion and the Interim Hearing on the Motion having been given; and the Court having considered the Motion, the Declarations, and the evidence submitted or adduced and the arguments of counsel made at the Interim Hearing; and notice of the Interim Hearing having been given in accordance with Bankruptcy Rules 2002, 4001(b), (c), and (d), and 9014; and all objections, if any, to the interim relief requested in the Motion having been withdrawn, resolved,

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

27445631.4

or overruled by the Court *as addressed at the Interim Hearing on April 11, 2019*; and it appearing to the Court that granting the interim relief requested is necessary to avoid immediate and irreparable harm to the Debtor and his estate pending the Final Hearing, and otherwise is fair and reasonable, in the best interests of the Debtor, his estate, its creditors and all other parties-in-interest in the Chapter 11 Case, and essential to maximize the value of the Debtor's assets; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

### THIS COURT HEREBY FINDS AND CONCLUDES AS FOLLOWS:[2]

A. <u>Petition Date</u>. On March 11, 2019 (the "<u>Petition Date</u>"), the Debtor filed a voluntary petition with this Court for relief under chapter 11 of the Bankruptcy Code.

B. <u>Debtor in Possession</u>. The Debtor is in possession of its properties and continues to operate its affairs and businesses as debtor and debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Chapter 11 Case.

C. <u>Jurisdiction and Venue</u>. This Court has jurisdiction over the Chapter 11 Case and the Motion pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

D. <u>Creditors' Committee</u>. As of the date hereof, the United States Trustee for the Southern District of New York (the "<u>U.S. Trustee</u>") has not appointed an official committee of unsecured creditors in the Chapter 11 Case pursuant to section 1102 of the Bankruptcy Code (a "<u>Creditors' Committee</u>").

---

[2] Pursuant to Bankruptcy Rule 7052, any findings of fact and contained herein may be treated as conclusions of law as if set forth below, and vice versa.

27445631.4

E.  <u>Adequate Notice</u>. On April 8, 2019, the Debtor filed the Motion with the Court and pursuant to Bankruptcy Rules 2002, 4001 and 9014, and the Local Rules of this Court, the Debtor provided notice of the Motion and the Interim Hearing by electronic mail, facsimile, hand delivery or overnight delivery to the following parties and/or to their counsel as indicated below: (a) the U.S. Trustee, (b) counsel to the Secured Party, (c) creditors holding the top twenty (20) largest unsecured claims as set forth in the consolidated list filed with the Debtors' petitions, (d) those parties requesting notice pursuant to Bankruptcy Rule 2002, (e) all parties who are known, after reasonable inquiry, to have asserted a lien, encumbrance, or claim in the Cash Collateral, and (f) the Internal Revenue Service (collectively, the "<u>Notice Parties</u>"). Given the nature of the relief sought in the Motion, this Court concludes that the foregoing notice was sufficient and adequate under the circumstances and complies with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable law, and no further notice relating to this proceeding and the Interim Hearing is necessary or required.

F.  <u>Necessity for Relief Requested; Immediate and Irreparable Harm</u>. The Debtor requested entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2). The Debtor has an immediate need to use the Cash Collateral to, among other things, fund the Debtor's basic needs and provide operating capital for a short period of time to allow the Debtor to operate his law firm, including to fund payroll, rent, utilities, expenses of his cases and professional fees and expenses preserve, and maintain the value of the Debtor's assets, absent which immediate and irreparable harm will result to the Debtor, his estate and the creditors. The preservation and maintenance of the Debtor's assets and his business are necessary to maximize the value of the Debtor's estate. Absent the Debtor's ability to use the Cash Collateral, the Debtor would not have sufficient available sources of liquidity and would be unable to pay for his basic living needs and

3

27445631.4

the operating expenses of L&R or to maintain his assets, to the severe detriment of the estate and creditors. Accordingly, the relief requested in the Motion and the terms herein are (i) critical to the Debtor's ability to maximize the value of the estate, (ii) in the best interests of the Debtor and the estate, and (iii) necessary, essential, and appropriate to avoid immediate and irreparable harm to the Debtor, the creditors, the assets, remaining business, goodwill, and reputation.

      G.    <u>Good Cause</u>. Good cause has been shown for immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2) and the Local Rules, and the entry of this Interim Order is in the best interests of the Debtor, the estate and the creditors. The relief granted herein will provide the Debtor funds to pay for food, shelter and utilities, among other things, and to minimize disruption of the Debtor's business and permit the Debtor to preserve and maintain the value of the Debtor's assets. The stipulated terms of the Debtor's use of the Cash Collateral as set forth in this Interim Order, are fair and reasonable under the circumstances, and reflect the Debtor's exercise of prudent business judgment with respect to L&R.

      H.    <u>Good Faith</u>. The Debtor's use of Cash Collateral has been negotiated in good faith and at arms' length among the Debtor, the Secured Party and Tara Liddle. The Secured Party and Tara Liddle's consent to the Debtor's use of Cash Collateral has been made in "good faith."

      **BASED UPON THE STIPULATED TERMS SET FORTH HEREIN AND THE FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED:**

1.    <u>Motion Granted.</u> The Motion is GRANTED to the extent provided herein on an interim basis. Any objection to the Motion to the extent not withdrawn or resolved is hereby overruled.

2.    <u>Authorization to Use Cash Collateral.</u> The Debtor is authorized to use Cash Collateral pursuant to the terms and conditions provided herein.

27445631.4

3. <u>Budget</u>.

   a. Except as otherwise provided herein, the Debtors may only use Cash Collateral in the manner set forth in the budget approved by the Secured Party as the same may be updated in accordance with the terms of this Interim Order (the "<u>Budget</u>") and for no other purposes. The initial Budget (the "<u>Initial Budget</u>"), which includes the budget for the Debtor and the budget for L&R which total expenses are incorporated into the Debtor's Budget, is attached hereto as **Exhibit A**.

   b. The Debtors shall be deemed to be in compliance with the Budget so long as:

      i. commencing for the week ending April 15, 2019, actual "Total Personal Expenses" are not more than 20% in excess of the projected "Total Personal Expenses" line item in the Budget for any rolling two (2) week period, such variance tested on each Thursday for the period ending in the immediately preceding week; and

      ii. commencing for the week ending April 15, 2019, actual "Total Operating Cash Flow Expenses – L&R" are not more than 20% in excess of the projected "Total Operating Cash Flow Expenses – L&R" line item in the Budget for any rolling two (2) week period, such variance tested on each Thursday for the period ending in the immediately preceding week.

   c. Commencing on the first Thursday following the week entry of this Interim Order and continuing every Thursday thereafter, the Debtor shall deliver to the Secured Party and CF II a weekly variance report comparing the actual results from the previous week to the Initial Budget and providing revised projections for the remainder of the term of the Initial Budget.

   d. The Debtors shall remain bound by the Initial Budget, subject to the variances noted above. Any amendment to the Initial Budget (an "Amended Budget") shall require the consent of the Secured Party and CF II, which consent shall not be unreasonably withheld. Amendments to the Initial Budget need not be approved by nor filed with the Court; provided that copies shall be provided to the U.S. Trustee and counsel to any Creditors' Committee.

4. W&W's interest in the Cash Collateral is adequately protected and no additional adequate protection is necessary at this time.

5. <u>CF II</u>. Within seven (7) days of entry of this Interim Order, CF II shall disclose all documents concerning the status of their asserted security interest in or to, or a lien upon, the Cash Collateral, including any documents demonstrating CF II's satisfaction of the requirements for serving the Order of Attachment pursuant to the CPLR.

27445631.4

6. Unless the parties otherwise reach agreement, an adversary proceeding may be brought by the Debtor to determine whether CF II has a security interest in or to, or a lien upon the Cash Collateral.

7. <u>Reporting Requirements</u>. The Debtors shall provide the Secured Party with all reporting and other information required to be provided to the Secured Party and CF II under this Interim Order including with respect to the Budget variance reports.

8. <u>Reversal, Modification, Vacatur, or Stay</u>. Any reversal, modification, vacatur, or stay of any or all of the provisions of this Interim Order (other than in accordance with the Final Order) shall not affect the validity or enforceability of any claim, lien, security interest, or priority authorized or created hereby and incurred prior to the effective date of such reversal, modification, vacatur, or stay. Notwithstanding any reversal, modification, vacatur, or stay (other than in accordance with the Final Order), (a) this Interim Order shall govern, in all respects, any use of Cash Collateral prior to the effective date of such reversal, modification, vacatur, or stay, and (b) the Secured Party shall be entitled to all the benefits and protections granted by this Interim Order with respect to any such use of Cash Collateral.

9. <u>Reservation of Rights of the Secured Party and Tara Liddle</u>. Notwithstanding any other provision in this Interim Order to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair any of the rights of the Secured Party or Tara Liddle (a) to seek any other or supplemental relief in respect of the Debtor including the right to seek additional adequate protection at the Final Hearing; and (b) under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right of the Secured Party or Tara Liddle to (i) request modification of the automatic stay of

section 362 of the Bankruptcy Code, (ii) request dismissal of the Chapter 11 Case, conversion of the Chapter 11 Case to a case under chapter 7, or appointment of a chapter 11 trustee or examiner with expanded powers in the Chapter 11 Case, (iii) seek to propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans; or (c) any other rights, claims, or privileges (whether legal, equitable, or otherwise) of the Secured Party or Tara Liddle.

10.  <u>No Waiver for Failure to Seek Relief</u>. The failure or delay of the Secured Party or Tara Liddle to seek relief or otherwise exercise any of their respective rights and remedies under this Interim Order or applicable law, as the case may be, shall not constitute a waiver of any rights hereunder, thereunder, or otherwise, by the Secured Party or Tara Liddle.

11.  <u>Modification of the Automatic Stay</u>. The Debtor is authorized and directed to perform all acts and to make, execute and deliver any and all instruments as may be reasonably necessary to implement the terms and conditions of this Interim Order and the transactions contemplated hereby. The stay of section 362 of the Bankruptcy Code is hereby modified to permit the Debtor and the Secured Party to accomplish the transactions contemplated by this Interim Order including, without limitation, to permit the Debtors to incur all liabilities and obligations to the Secured Party under this Interim Order.

12.  <u>Good Faith</u>. Pursuant to sections 105, 361, and 363 of the Bankruptcy Code, the Secured Party and Tara Liddle are hereby found to be entities that have acted in "good faith" in connection with the negotiation and entry of this Interim Order, and the Secured Party and Tara Liddle are entitled to the protections provided to such entities under section 363(m) of the Bankruptcy Code.

27445631.4

13.    <u>Limitation of Liability</u>. In permitting the use of the Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to this Interim Order, neither the Secured Party nor Tara Liddle shall be deemed to be in control of the operations of the Debtor or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtor's business (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 et seq. as amended, or any similar federal or state statute), nor shall they owe any fiduciary duty to the Debtor, its creditors or estate, or shall constitute or be deemed to constitute a joint venture or partnership with the Debtor or L&R. Furthermore, nothing in this Interim Order shall in any way be construed or interpreted to impose or allow the imposition upon the Secured Party or Tara Liddle of any liability for any claims arising from the prepetition or post-petition activities of the Debtor.

14.    <u>Final Hearing</u>. A hearing on the Debtors' request for a Final Order approving the Motion has not been scheduled at this time. Within three (3) business days after entry of this Interim Order, the Debtors shall serve, or cause to be served, by first class mail or other appropriate method of service, copies of a notice of entry of this Interim Order, together with a copy of this Interim Order and the Motion, to the parties having been given notice of the hearing April 11, 2019 and to any party that has filed prior to such date a request for notice with this court and to counsel for any statutory committee of unsecured creditors appointed pursuant to Section 1102 of the Bankruptcy Code (the "Creditors' Committee").

27445631.4

15. Order Effective Upon Entry. Notwithstanding any applicability of any Bankruptcy Rules, the terms and conditions of this Interim Order shall be immediately effective and enforceable upon its entry.

16. Controlling Effects of Order. To the extent any provision of this Order conflicts or is inconsistent with any provision of the Motion, the provisions of this Order shall control.

17. Survival of this Order. Without limiting anything in this Order, the provisions of this Order and any actions taken pursuant hereto shall survive entry of any order which may be entered: (a) confirming any Plan in the Chapter 11 Case, (b) converting the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code, (c) dismissing the Chapter 11 Case, (d) withdrawing of the reference of the Chapter 11 Case from this Court, or (e) providing for abstention from handling or retaining of jurisdiction of the Chapter 11 Case in this Court.

18. Bankruptcy Rules. The requirements of Bankruptcy Rules 4001, 6003 and 6004, in each case to the extent applicable, are satisfied by the contents of the Motion.

19. Retention of Jurisdiction. The Court has and will retain jurisdiction to enforce this Order in accordance with its terms and to adjudicate any and all matters arising from or related to the interpretation or implementation of this related to the interpretation or implementation of this Interim Order.

Dated: April 15, 2019
New York, New York

 */s/ Sean H. Lane*
 HONORABLE SEAN H. LANE
 UNITED STATES BANKRUPTCY JUDGE

27445631.4

**JEFFREY LEW LIDDLE, DEBTOR**

| Week Ending | 4/8/19 | 4/15/19 | 4/22/19 | 4/29/19 | 5/6/19 | 5/13/19 | 5/20/19 | 5/27/19 | | |
|---|---|---|---|---|---|---|---|---|---|---|
| **Cash Receipts:** | | | | | | | | | | |
| Non L&R Income (Closing Refund) | $3,000 | | | | | | | | | |
| L&R Income (Retainers) | $15,000 | $22,500 | | | | | | | | |
| **Total Personal Income:** | $18,000 | $22,500 | $0 | $0 | $0 | $0 | $0 | $0 | | |
| **Personal Expenses:** | | | | | | | | | | |
| Rent | $7,500 | | | | $7,500 | | | | | |
| Property Taxes | | | | | | | | | | |
| Insurance (Personal/Renter's /Auto) | | | | | $3,300 | | | | | |
| Utilities | | $1,000 | | | $1,500 | | | | | |
| Cable/Internet/Phone/Cellular | | | | | $800 | | | | | |
| Food | | $750 | | | $1,500 | | | | | |
| Dining Out | | | | | $500 | | | | | |
| Membership Dues | | | | | | | | | | |
| Charitable Donations | | | | | | | | | | |
| Clothing | | $1,500 | | | | | | | | |
| Personal Care | | | | | $200 | | | | | |
| Credit Card Payments/Fees | | | | | | | | | | |
| Car Payments | | | | | $1,750 | | | | | |
| Auto Insurance (included above) | | | | | | | | | | |
| Garage/Gasoline/Tolls | | $400 | $400 | | $800 | | | | | |
| Medical Health Insurance | | | | | | | | | | |
| Out of Pocket Health Expenses | | | $100 | | $200 | | | | | |
| Travel/Vacation | | | | | | | | | | |
| Mass Transit | | | | | | | | | | |
| Child Care Expenses (Tuition/Rent) | | | | | $6,000 | | | | | |
| Estimated Taxes (Federal/State/Local) | | | | | | | | | | |
| **Total Personal Expenses:** | 7500 | 3650 | 500 | 0 | 24050 | 0 | 0 | 0 | | |
| **Cumulative Personal Expenses** | 7500 | 11150 | 11650 | 11650 | 35700 | 35700 | 35700 | 35700 | | |
| **Personal Cash Flow** | $10,500 | $18,850 | ($500) | $0 | ($24,050) | $0 | $0 | $0 | | |
| **Cumulative Operating Cash Flow** | $10,500 | $29,350 | $28,850 | $28,850 | $4,800 | $4,800 | $4,800 | $4,800 | | |
| | | | | | | | | | | |
| **Case-Related Disbursements** | | | | | | | | | | |
| UST Fees | | | | | | | | | | |
| Restructuring Fees (Bankruptcy Counsel Retainer) | | $250,000 | | | | | | | | |
| Restructuring Fees & Exp. (Accountants Retainer) | | $50,000 | | | | | | | | |
| Unsecured Creditors Advisors & Counsel | | | | | | | | | | |
| | | | | | | | | | | |
| **Total Non-Operating Disbursements** | 0 | ($300,000) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | | | | | | | | | | |
| Beginning Bank Cash | $1,090,000 | $1,061,100 | $750,950 | $738,350 | $738,350 | $624,800 | $624,800 | $602,700 | | |
| Increase (Decrease) per Above | ($10,500) | ($303,650) | ($500) | $0 | ($24,050) | $0 | $0 | $0 | | |
| Total Operating Cash Flow Expenses - L&R | ($18,400) | ($6,500) | ($12,100) | $0 | ($89,500) | $0 | ($22,100) | $0 | | |
| Ending Bank Cash | $1,061,100 | $750,950 | $738,350 | $738,350 | $624,800 | $624,800 | $602,700 | $602,700 | | |

| LIDDLE & ROBINSON, L.L.P. | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| **Operating Expense Budget** | | | | | | | | | |
| | | | | | | | | | |
| **Week Ending** | **4/8/2019** | **4/15/19** | **4/22/19** | **4/29/19** | **5/6/19** | **5/13/19** | **5/20/19** | **5/27/19** | |
| | | | | | | | | | |
| **Operating Expenses:** | | | | | | | | | |
| Rent | $9,400 | | | | $9,400 | | | | |
| Attorney Payroll* | | | | | $15,000 | | $15,000 | | |
| HeadHunter* | | | | | $20,000 | | | | |
| JLL Draw | $1,000 | $6,500 | | | $15,000 | | | | |
| Staff Payroll | | | $7,100 | | $7,100 | | $7,100 | | |
| New Hire (Paralegal/Assistant)** | | | $5,000 | | $5,000 | | | | |
| Health Insurance | | $6,000 | | | $6,000 | | | | |
| Malpractice Insurance | | $6,000 | | | $6,000 | | | | |
| Utilities | | | | | | | | | |
| Office Services (Solaris technologies) | | $2,000 | | | $2,000 | | | | |
| Repairs/Maintenance | | | | | | | | | |
| Other Operating Expenses | | | | | | | | | |
| Accounting Services | | | | | $5,000 | | | | |
| **Total Operating Cash Flow Expenses:** | **$10,400** | **$20,500** | **$12,100** | **$0** | **$90,500** | **$0** | **$22,100** | **$0** | |
| **Cumulative Operating Cash Flow** | $10,400 | $30,900 | $43,000 | $43,000 | $133,500 | $133,500 | $155,600 | $155,600 | |
| | | | | | | | | | |
| * Attorneys have not yet been hired | | | | | | | | | |
| ** New staff has not yet been hired | | | | | | | | | |