| | |
|---|---|
| DAVIDOFF HUTCHER & CITRON LLP<br>605 Third Avenue<br>New York, New York 10158<br>(212) 557-7200<br>David H. Wander, Esq.<br>dhw@dhclegal.com<br>*Attorneys for Counsel Financial II LLC* | **Hearing Date and Time**<br>May 1, 2019 at 11:00 a.m. |

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
In re:                                                            Chapter 11

JEFFREY LEW LIDDLE,                              Case No. 19-10747-shl

                                        Debtor.
------------------------------------------------------X

### REPLY BY COUNSEL FINANCIAL II LLC TO OBJECTIONS BY DEBTOR, TARA LIDDLE, AND ROSE REVERENDO TO RULE 2004 MOTIONS

TO THE HONORABLE SEAN H. LANE,
UNITED STATES BANKRUPTCY JUDGE:

Counsel Financial II LLC ("Counsel Financial"), by its attorneys, Davidoff Hutcher & Citron LLP, submits the following reply to the objections by the Debtor, Tara Liddle, and Rose Reverendo to Counsel Financial's Rule 2004 motions seeking their examinations and related relief, and represents and says:

**I.     Rule 2004 Motion for Examination of Debtor and Related Relief**

1.      Counsel Financial's Rule 2004 motion relating to the Debtor seeks (i) to conduct an examination of the Debtor; (ii) to have the Debtor produce documents; and (iii) to inspect the Debtor's two houses in Quiogue, New York (the "Quiogue Property") and the Debtor's Manhattan Residence.[1] Counsel Financial proposed to give the Debtor (i) three weeks to produce

---

[1] Capitalized terms not otherwise defined in this Reply shall have the meanings ascribed to them in the Rule 2004 motions.

documents (in addition to the more than 4 weeks that have passed since the filing of the motion); (ii) thirty days' notice for an examination; and (iii) two weeks' notice for inspections of the Quiogue Property and the Manhattan Residence.

2. The Debtor's objection dated April 12, 2019 (the "Objection")[2] [Doc 51] raises three issues:

    i. Should the Debtor be examined at all? See ¶ 20 of the Objection (first bulleted subparagraph).[3]

    ii. Should the Debtor have at least seven (7) weeks from entry of an order to produce documents?[4] See ¶ 20 of the Objection (second bulleted subparagraph).

    iii. Should the Debtor have at least six (6) weeks' notice for an inspection of the Quiogue Property and the Manhattan Residence? See ¶ 20 of the Objection (third bulleted subparagraph).

3. <u>Examination of the Debtor.</u> Regarding an examination of the Debtor, upon information and belief, this objection has been withdrawn. Accordingly, Counsel Financial requests that the Debtor provide proposed dates for his Rule 2004 examination during the last two weeks in June, 2019.

---

[2] The Debtor objected "to the facts set forth in the Rule 2004 Motion," (*Objection* at ¶ 9), but failed to describe any objectionable facts. Also, while the Debtor referred to "the litigious nature of the Chapter 11 Case to date," (*Objection* at ¶ 12), very little litigation has actually occurred. In fact, other than Counsel Financial's objection to the Debtor's motion for use of cash collateral, there has been no litigation between the Debtor and Counsel Financial. Moreover, with Counsel Financial's support, the Debtor also obtained a stay of pending litigation in state court against his law firm, L&R. Furthermore, even before the Court entered an order *extending* the automatic stay to L&R, Counsel Financial voluntarily rescinded all of its restraints on L&R's accounts, so the Debtor's law firm would not be forced to file for Chapter 11 relief. In sum, to date, this case has been marked by a significant breathing spell for the Debtor, who now has a team of experienced bankruptcy attorneys and a well-respected accounting firm working on this case.

[3] The Debtor's statement about Counsel Financial having the opportunity to examine the Debtor at the upcoming creditors meeting, on May 1, 2019, is not accurate. *See* Objection at ¶ 15. Counsel Financial has been advised by the U.S. Trustee's office that only thirty (30) minutes have been allotted for the Debtor's §341(a) meeting of creditors and, therefore, Counsel Financial will have very limited time to ask questions.

[4] The Debtor did not object to any particular document request.

4. <u>Document Production</u>. The Debtor's request that he be given another seven weeks to produce documents seems excessive.[5] However, if the Debtor agrees to produce the documents on a rolling basis, Counsel Financial will agree that the Debtor can have until June 12, 2019, to produce all of the requested documents.[6]

5. <u>Physical inspections of Quiogue Property and Manhattan Residence</u>.[7] There is no reason to delay inspections of the Quiogue Property and the Manhattan Residence. Counsel Financial's collateral, which includes all of the Debtor's personal property, presumably is located at both the Quiogue Property and the Manhattan Residence and, for that reason alone, Counsel Financial has an absolute right to immediately inspect both locations.

6. In addition, Counsel Financial seeks to have the Quiogue Property inspected by real estate brokers for a possible rental for the summer season and, also, to have it appraised for a possible sale. One of the two houses appears to be unencumbered and the other house may have significant equity.

7. There is no reason these inspections should be delayed.

---

[5] Many of the documents requested in Exhibit A to the CFII Rule 2004 Motion should be easy for the Debtor and his professionals to produce, e.g. (i) monthly bank statements for 2017, 2018, 2019; (ii) a list of L&R's accounts receivable as of the Petition Date; (iii) inventory of any collectibles including wine collection; (iv) closing statement from the sale of the New York Property; and (vi) monthly statements for financial accounts for 2017, 2018, 2019. Presumably the Debtor has, or should have, already reviewed many of these documents to prepare and file his schedules of assets and liabilities, statement of financial affairs, and the other statements and lists recently filed by the Debtor. Also, the Debtor now has a team of bankruptcy attorneys working on his case along with an experienced accounting firm.

[6] The Debtor's alleged need to "redact, as necessary, the responsive documents to preserve privileges belonging to Debtor's and L&R's clients," *Objection* at ¶16, is a red herring for two reasons: first, it is unclear what documents Counsel Financial is seeking that likely involve privileged information; and, second, CFII already agreed to the sealing of any confidential information.

[7] Now that the Debtor disclosed he has 25 containers of personal items, including rugs, in storage (see SOFA at # 22), Counsel Financial also seeks to inspect those items at the storage facility so everything of value can be inventoried.

## II. Rule 2004 Motion for Examination of Debtor's Spouse and Related Relief

8. Counsel Financial's Rule 2004 motion relating to the Debtor's spouse seeks (i) to conduct an examination of the Debtor's spouse on fifteen days' notice; and (ii) to have the Debtor's spouse produce documents within three weeks. Notably, the Debtor recently filed Schedules of Assets and Liabilities (the "Schedules") **(Exhibit A)** and a Statement of Financial Affairs ("SOFA") **(Exhibit B)** and these documents connect the Debtor's spouse to various assets of the Debtor's estate worth hundreds of thousands of dollars, including household goods and furnishings, collectibles, other personal property, and other property of any kind.[8]

| Schedule A/B, #6 | Household goods and furnishings -see separate sheet for description[9] | $1000-Debtor/$3,000-Debtor & Spouse | $4,000 |
|---|---|---|---|
| Schedule A/B, #8 | Collectibles of value -see separate sheet for description[10] | $100,000 Debtor & wife/$9,500 Debtor | $109,500 |
| Schedule A/B, #14 | Any other personal and household items | Wine (owned with wife and daughter, and not readily ascertainable value) | $125,000 |
| Schedule A/B, #53 | Other property of any kind | Joint ownership of two bath cabins at Swordfish Beach Club | |
| SOFA, #22 | Stored property in a storage unit | 25 containers of personal items, rugs, rug pads | Access also with Tara Liddle |

---

[8] The Debtor's wine collection alone is worth over $100,000, depending on how much of the wine is actually owned by the Debtor's wife and daughter. See Schedule A/B, # 8 and #14.

[9] Notably, the Debtor determined that certain household goods and furnishings were owned by him and his wife jointly (e.g., appliances, linens, and kitchenware), while other items she owned alone (e.g. china and silverware).

[10] The Debtor's supplement sheet states: "All antiques, figurines, paintings, and prints, pictures or other art objects are owned by wife or jointly by Debtor and wife, with exception of 15 Richard Stone Reeves prints and one painted silk Indian wedding painting, size 13' x 3.5'. Value of Debtor's individual items about $4,500 (Reeves), $5,000 (Indian Wedding painting)."

9. The objection by the Debtor's spouse dated April 29, 2019 (the "Spouse Objection") [Doc 67] raises various issues that are easily addressed.

10. Irrelevant Facts. First, the fact that the Debtor's spouse "is not in contractual privity" with Counsel Financial, has no interest in the Debtor's law firm, and did not sign a personal guaranty, (see *Objection* at ¶ 6), is irrelevant. Counsel Financial seeks to examine the Debtor's spouse, primarily, about the Debtor's assets and her ownership claims to them. As set forth above, the Debtor, himself, has connected his wife to hundreds of thousands of dollars of his personal property and determining which of these assets constitute property of the Debtor's estate is integral to the administration of this case.

11. Boilerplate Objections. The objections in ¶¶ 7, 8, 9, and 11 of the Spouse Objection are boilerplate objections commonly found in state court discovery and inspection motion practice, and these objections are not appropriate objections for a Rule 2004 document request. Nor are any of these boilerplate objections substantively valid.

12. Regarding the Debtor's spouse's demand for a showing of "good cause," see Spouse Objection at ¶13-14, good cause is clearly established by the Debtor's Schedules and SOFA which show Ms. Liddle has claims to ownership interests in hundreds of thousands of dollars of property that, otherwise, would be assets of the Debtor's estate.[11]

---

[11] Any reliance of the Debtor's spouse on In re Sunedision, Inc., 572 B.R. 482 (Bankr. S.D.N.Y. 2017) to oppose Counsel Financial's Rule 2004 motion is misplaced because the factual background of that case is easily distinguishable. *See Spouse Objection* at ¶ 10. In that case, the debtors sought to use "Rule 2004 to discover the merits of claims asserted in third party litigation against a subsidiary in order to value its stock ownership." Id. at 491. Notably, Judge Bernstein also quoted the District Court's decision in In re Belton, No 15 CV 1934 (VB), 2015 WL 6163083, at *2 n.3 (S.D.N.Y Oct. 14, 2015):

> A Rule 2004 examination is a very broad, pre-litigation discovery process designed to assist the trustee in revealing the nature and extent of the estate, ascertaining assets, and discovering whether any wrongdoing has occurred.

Thus, the proposed topics for the examination of the Debtor's spouse fall well-within the permissible scope of Rule 2004.

13. Regarding the Debtor's spouse's claim of undue hardship, (see Spouse Objection at ¶ 15-16), there simply is no undue hardship shown in connection with her proposed examination. The examination of Debtor's spouse can be done on a mutually agreeable date and time. In fact, the Debtor's spouse can propose reasonable dates in June for her examination.

14. Finally, the scandalous and scurrilous language in paragraph "17" of the Spouse Objection, specifically the reference to the Supreme Court of the State of New York, Erie County as a "kangaroo court," is completely unprofessional and inappropriate (and sanctionable) and we will not dignify it with a substantive response.

15. Accordingly, the objections by the Debtor's spouse should be denied.

### III. Rule 2004 Motion for Examination of Rose Reverendo and Related Relief

1. Counsel Financial's Rule 2004 motion relating to the Debtor's assistant, Rose Reverendo, seeks (i) to conduct an examination of Ms. Reverendo on at least 15-days' notice; and (ii) to have the Debtor's assistant produce documents within 21-days.

2. As set forth in the Debtor's objection dated April 25, 2019 ("Assistant Objection") [Doc 60], Ms. Reverendo "has worked on maintaining L&R's books since the retirement of its comptroller in August 2018... ." *Assistant Objection* at ¶ 11. Other than the Debtor, she has been the only employee of L&R for some time now. Since L&R is, upon information and belief, the Debtor's most valuable asset, an examination of Ms. Reverendo regarding the topics listed in paragraph 13 of the motion is well within the permissible scope of a Rule 2004 examination.

3. To address the Debtor's objections and request that Ms. Reverendo be given seven weeks to produce documents, see Assistant Object at ¶ 14, Counsel Financial will agree to

the production of documents by June 12, 2019, and the Debtor and Ms. Reverendo can propose dates for her examination sometime in the later part of June or in mid-July.

4.  In accordance with the foregoing, the Debtor's objections to the Rule 2004 motion of the Debtor's assistant should be denied.

Dated: New York, New York
April 30, 2019

                      DAVIDOFF HUTCHER & CITRON LLP

                      By: /s/ David H. Wander
                          David H. Wander
                      605 Third Avenue
                      New York, New York 10158
                      (212) 557-7200
                      dhw@dhclegal.com
                      *Attorneys for Counsel Financial II LLC*