| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | **FOR PUBLICATION** |
| ------------------------------------------------------------x<br>In re:<br><br>Jeffrey Lew Liddle,<br><br>                                 Debtor.<br>------------------------------------------------------------x | Chapter 11<br><br>Case No. 19-10747 (SHL) |

**MEMORANDUM OF DECISION**

**A P P E A R A N C E S:**

**FOLEY HOAG LLP**
*Attorneys for Debtor*
1301 Avenue of the Americas
25th Floor
New York, New York 10019
By:    William F. Gray, Jr., Esq.
          Alison Bauer, Esq.
          James Fullmer, Esq.


**DAVID HUTCHER & CITRON LLP**
*Attorneys for Counsel Financial II LLP*
605 Third Avenue
New York, New York 10158
By:    David H. Wander, Esq.
          Michael Wexelbaum, Esq.
          Michael D. Katz, Esq.

**SEAN H. LANE**
**UNITED STATES BANKRUPTCY JUDGE**

       Before the Court is a dispute about the ability of Jeffrey Lew Liddle, the above-captioned debtor ("Liddle"), to use cash collateral over the objection of creditor Counsel Financial II LLC ("CFII"). CFII contends that it has a perfected security interest and lien in cash proceeds from the sale of a real property owned in part by Liddle. Liddle contends that CFII does not have a perfected security interest in the sale proceeds. The question at issue is whether the transfer of the sale proceeds into an escrow account held by Liddle's attorney pursuant to a state court

stipulation and order perfected a security interest for CFII under Sections 9-313(a) and (c)(2) of the New York Uniform Commercial Code (the "N.Y. U.C.C."). For the reasons set forth below, the Court finds that it does not.

## BACKGROUND

There are no disputes as to the relevant facts. CFII entered into a Security Agreement on August 5, 2016 (the "CFII Security Agreement") with Liddle's law firm, Liddle & Robinson, L.L.P. ("L&R") as borrower. *See* CFII Security Agreement at 30, attached as Ex. C to Letter of David Wander [ECF No. 55-3];[1] *Mem. of Law by Counsel Fin. II LLC in Supp. of its Perfected Security Interest in and Lien on Cash Collateral* at 2 ("CFII Brief") [ECF No. 74]. Pursuant to the CFII Security Agreement, Liddle and four other people (collectively, the "Debtors")[2] granted CFII a security interest in "Collateral", which was defined as follows:

> All of each Debtor's right, title and interest in all Goods (including, Equipment, Fixtures and Inventory), *Money*, Instruments (including Promissory Notes), Accounts, Deposit Accounts, Chattel Paper, Investment Property, Letter-of-Credit Rights, Documents and General Intangibles (including payment intangibles), Commercial Tort Claims described in the Questionnaire, Insurance Proceeds and any other personal property (whether or not subject to the UCC), and all interest, dividends and other distributions thereon paid and payable in cash or in property; and all replacements and substitutions for, and all accessions and additions to, and all profits, offspring, Products and other Proceeds of, all of the foregoing.

CFII Security Agreement at 30 (emphasis added). The CFII Security Agreement was executed to secure L&R's performance on a Revolving Promissory Note, dated August 5, 2016 (the "CFII Note"). *See* CFII Note, attached as Ex. A to Letter of David Wander [ECF No. 55-1]. Liddle and his former law partners also executed a Guaranty of Payment and Performance, dated

---

[1] Unless otherwise specified, references to the Electric Case Filing ("ECF") docket are to the above-captioned proceeding.

[2] The Security Agreement was also entered into by L&R's former partners: Blaine H. Bortnick, James Ryan Hubbard, and Christine A. Palmieri. *See* CFII Security Agreement at 30. Jeffrey Liddle, Blaine H. Bortnick, James Ryan Hubbard, and Christine A. Palmieri are each defined under the CFII Security Agreement as "Debtor" and collectively with L&R, as "Borrower", as the "Debtors." *Id.*

2

August 5, 2016 that guaranteed L&R's performance under the CFII Note. *See* Guaranty of Payment and Performance, attached as Ex. B to Letter of David Wander [ECF No. 55-2].

In 2018, L&R defaulted on the CFII Note. *See* Aff. of Paul Cody ¶ 3 (the "Cody Affidavit"), attached as Ex. I to *Resp. by Counsel Financial II LLC to Debtor's Motion (I) Under 11 U.S.C. §§ 105, 524 and 543 for Turnover of Property by Escrow Agent or Custodian; and (II) Under 11 U.S.C. § 363 for Use of Cash Collateral* [ECF No. 24-8]; *see also* CFII Brief at 10. In September 2018, CFII filed a motion for summary judgment in lieu of a complaint against L&R and Liddle in the Supreme Court of the State of New York, Erie County. *See Counsel Financial II LLC v. Liddle & Robinson LLP, Jeffrey L. Liddle, Blaine H. Bortnick and James Ryan Hubbard*, Index No. 814703/2018 (the "Lawsuit"). CFII subsequently became aware that Liddle was in the process of selling an apartment he owned jointly with his wife, Tara Liddle, in a cooperative apartment building located at 11 Fifth Avenue, New York, New York (the "N.Y. Co-op"), and CFII sought a temporary restraining order and an order of attachment from the state court. *See* Cody Aff. ¶¶ 1, 62-76; CFII Brief at 6. On January 14, 2019, the state court issued an order granting CFII a temporary restraining order preventing the disbursement of proceeds from any sale of Liddle's real property. *See* Second Amended Order to Show Cause (the "TRO"), attached as Ex. P to Letter of David Wander [ECF No. 55-16]. The TRO required that the sale funds from the N.Y. Co-op be held in escrow by Mr. Liddle while the request for an order of attachment was decided. More specifically, the TRO provided that:

> pending a hearing and determination on the Motion, defendant Jeffrey Liddle, his designees, and/or any person or entity acting on his behalf, are hereby restrained and prohibited from transferring, dissipating, or otherwise disposing of any proceeds of any sales of Mr. Liddle's residential real properties located at . . . 11 Fifth Avenue, Apts. 19M and 19N, New York, New York …. *which funds shall be held in escrow by Mr. Liddle* pending the determination of this Motion.

3

*Id.* at 2 (emphasis added). Less than a month later, the state court signed a Stipulation and Order to allow the closing of the sale of the N.Y. Co-op notwithstanding the parties' existing legal dispute. *See* Stipulation and Order (the "Stipulated Order"), attached as Ex. Q to Letter of David Wander [ECF No. 55-17]. Consistent with the spirit of the TRO, the Stipulated Order instructed that:

> the net proceeds of sale (i.e., the sales price of $6,600,000.00 less the eleven authorized payments listed in Paragraph 2 hereof) shall be *held in escrow by Diane C. Nardone, Esq. ("Nardone"), the closing attorney for Liddle and Tara Liddle on the sale of the Apartment, in her Attorney IOLA Account*, subject to the TRO pending the hearing and determination of Plaintiff's motion for an order of attachment and a further order of this Court disposing of that motion for an order of attachment.

*Id.* ¶ 3 (emphasis added). It further provided, "Nardone shall confirm her agreement to serve as Escrow Agent pursuant hereto and shall signify her acknowledgement of and agreement to be bound by the escrow provisions of this Stipulation and Order by signing where indicated below." *Id.* ¶ 6. The Stipulated Order was signed by Diane C. Nardone, Esq. "[a]s Escrow Agent for Jeffrey Liddle and Tara Liddle." *Id.* at 4.

An order of attachment ultimately was entered in CFII's benefit on March 7, 2019 (the "Order of Attachment"), as to sale proceeds from the N.Y. Co-op that were "currently held in escrow by . . . Nardone . . . , counsel for Liddle in connection with the sale . . . ."; the Order of Attachment required Nardone to transfer into and deposit the funds with the Registry of the Court. Order of Attachment at 3, attached as Ex. D to Letter of David Wander [ECF No. 114-4]. Before the sale proceeds could be transferred to the state court, Liddle filed a Chapter 11 petition in this Court. *See* Chapter 11 Voluntary Petition for Individual, filed March 11, 2019 [ECF No.

4

1]. The Order of Attachment was not served on the county sheriff before the filing of this bankruptcy.[3]

After the filing of this bankruptcy, the Debtor filed a motion for use of the cash collateral, which identified the cash collateral as Liddle's fifty percent ownership in the sale proceeds from the N.Y. Co-op. *See Debtors' Mot. for Entry of Interim and Final Orders (I) Authorizing the Debtors to Use Cash Collateral, (II) Scheduling a Final Hearing and (III) Granting Related Relief* at 2 (the "Cash Collateral Motion") [ECF No. 37]. The Cash Collateral Motion does not name CFII as a secured party. *See id.* ¶ 4.[4] CFII filed an objection to the use of cash collateral based on CFII's purported security interest in the sale proceeds. *See Obj. by Counsel Financial II LLC to Debtor's Second Cash Collateral Motion* [ECF No. 47].

Liddle argues that CFII did not perfect a security interest in the sale proceeds because CFII never served the state court Order of Attachment on the county sheriff. *See Debtor's Resp. and Mem. of Law in Opp. to Counsel Financial II LLC's Claim of a Perfected Security Interest In and Lien on Certain Cash Collateral* at 9 (the "Response") [ECF No. 84]. CFII contends that it is not relying on the order of attachment but instead upon the placement of the escrow funds with Nardone pursuant to the Stipulated Order as constituting possession of the funds by CFII under the N.Y. U.C.C. More specifically, CFII contends that the Stipulated Order made Nardone an agent of CFII for purposes of Section 9-313(a). *See* CFII Brief at 11-15; *see also Reply Mem.*

---

[3] N.Y. C.P.L.R. 6203 provides in relevant part: "Where a plaintiff has delivered an order of attachment to a sheriff, the plaintiff's rights in a debt owed to the defendant or in an interest of the defendant in personal property against which debt or property a judgment may be enforced, are superior to the extent of the amount of the attachment to the rights of any transferee of the debt or property . . . ." N.Y. C.P.L.R. 6203.

[4] The Cash Collateral Motion states, "CF II, which claims a security interest in the Cash Collateral has not consented to the relief requested herein, but as will be established with all reasonable likelihood, CF II does not have a properly perfected security interest in the Sale Proceeds. CF II's sole basis for claiming a security interest in the Sale Proceeds is through an order of attachment which was not perfected." Cash Collateral Motion ¶ 4. The Cash Collateral Motion lists White & Wolnerman, PLLC as the sole secured party. *See id.*

5

*of Law by Counsel Financial II LLC in Further Support of its Perfected Security Interest in and Lien Upon the Cash Collateral* at 12-13 (the "Reply") [ECF No. 95]. In the alternative, CFII contends that—even if the funds remained outside CFII's possession—the requirements for perfection by recording under Section 9-313(c) of the N.Y. U.C.C. were satisfied. *See id.*[5]

## DISCUSSION

A. <u>Security Interest Under N.Y. U.C.C. Section 313(a)</u>

Under the N.Y. U.C.C., a party may perfect a security interest in money by taking possession of it. More specifically, Section 9-313(a) provides for perfection by possession or delivery, whereby "a secured party may perfect a security interest in tangible negotiable documents, goods, instruments, money, or tangible chattel paper by taking possession of the collateral." N.Y. U.C.C. § 9-313(a); *see also* N.Y. U.C.C. § 9-312(b)(3) ("Except as otherwise provided in Section 9-315 (c) and (d) for proceeds . . . a security interest in money may be perfected only by the secured party's taking possession under Section 9-313.").

Possession is not defined in Article 9. The Official Comments note that the Section "adopts the general concept as it developed under former Article 9." *See Raiton v. G&R Prop. (In re Raiton),* 139 B.R. 931, 937 (B.A.P. 9th Cir. 1992) ("[I]t has been left to the courts to determine what constitutes possession.") (citations omitted); *Marlow v. Rollins Cotton Co. (In re Julien Co.)*, 146 F.3d 420, 424 (6th Cir. 1998) (citing commentary for proposition that possession was left undefined for the courts to determine); *Bank R.I. v. Mixitforme, Inc.*, 2007 R.I. Super. LEXIS 9, at *40 (R.I. Super. Ct. Jan. 11, 2007). "[U]nder former Article 9, in

---

[5] Liddle's initial brief addressed a number of potential arguments for CFII's security interest. *See* Response at 5-13. But CFII has not asserted most of these as a basis for its position, instead relying solely on the placement of the sale proceeds in escrow with Nardone. *See* CFII Brief at 11-15; *see also* Reply at 12-13.

determining whether a particular person has possession, the principles of agency apply." N.Y. U.C.C. § 9-313 cmt. n. 3.

The Official Comments state that "if the collateral is in possession of an agent of the secured party for the purposes of possessing on behalf of the secured party, and if the agent is not also an agent of the debtor, the secured party has taken actual possession. . . ." N.Y. U.C.C. § 9-313 cmt. n. 3.  But this not true where the agent "is so closely connected to or controlled by a debtor that the debtor has retained effective possession. . . ." *Id.*  Courts have observed that "[t]he rationale underlying perfection by possession is that the debtor's lack of possession coupled with actual possession by the creditor, the creditor's agent or the bailee serves to provide notice to prospective third party creditors that the debtor no longer has unfettered use of [his] collateral." *Hassett v. Blue Cross & Blue Shield of Greater N.Y. (In re O.P.M. Leasing Services, Inc.)*, 46 B.R. 661, 670 (Bankr. S.D.N.Y. 1985) (finding that under U.C.C. Section 9-305, which in the Revised Article 9 was replaced by Section 9-313, the transfer of funds into an escrow account subject to an escrow agreement that created the security interest in the money in question sufficiently satisfied the possession requirement for perfection by the secured party) (internal citations omitted); *cf. In re Singer Prod. Co.*, 102 B.R. 912, 925 (Bankr. E.D.N.Y. 1989) ("[U]nless a putative secured party's possession of pledged instruments rises to the level of 'actual and exclusive possession' as required at common law, his security interest has not been perfected. . . . The rationale for this rule is really quite simple—the debtor's lack of possession coupled with actual possession by the creditor, the creditor's agent or the bailee serves to provide notice to prospective third party creditors that the debtor no longer has unfettered use of [its] collateral. . . .") (internal citations omitted).

Applying these principles here, the Court concludes that CFII has not perfected a security interest by possession under Section 9-313(a).  CFII contends that by appointing Nardone to act

7

as escrow agent, the Stipulated Order essentially made Nardone CFII's agent and perfected CFII's security interest in the cash proceeds once Nardone took possession of the funds. *See* CFII Brief at 11 ("When Nardone took possession of the Sale Proceeds, CF2's security interest in and lien upon the Cash Collateral became perfected under applicable state law. Specifically, under N.Y. U.C.C. § 9-313(a), CF2's security interest and lien were perfected when Nardone took 'possession' of the Sale Proceeds as CF2's escrow agent."). But Nardone was holding the sale proceeds as an agent of the Debtor, not for CFII. That is, in fact, exactly what the Stipulated Order says. *See* Stipulated Order at 4 (signature block of the Stipulated Order specifying that Nardone is the "Escrow Agent of Jeffrey Liddle and Tara Liddle"). This arrangement is consistent with the TRO entered less than a month earlier, which specifically provided that the sale proceeds "*shall be held in escrow by Mr. Liddle* pending the determination of this Motion." TRO at 2 (emphasis added). Additionally, the Stipulated Order as well as the subsequent Order of Attachment both refer to Nardone as the Liddles' counsel. *See id.* at 2-3; *see also* Order of Attachment at 3 (identifying Nardone as counsel to Liddle). And consistent with Nardone's status as Lidddle's counsel, the sale proceeds were held in Nardone's attorney IOLA account. *See* Stipulated Order ¶ 3.

CFII relies, among other things, on the Official Comments to the UCC that the prospect of dual agency is not dispositive of possession. *See* N.Y. U.C.C. § 9-313 cmt. n. 3. But the Official Comments carve out situations where, as here, the agent is "so closely connected to or controlled by a debtor that the debtor has retained effective possession. . . ." *Id.* This exception is satisfied here because Nardone was identified as escrow agent only for the Liddles, which is consistent with her pre-existing relationship as the Liddle's counsel for the sale of the N.Y. Co-op. *See* Stipulated Order ¶ 3 (identifying Ms. Nardone as "the closing attorney for Liddle and Tara Liddle on the sale of the Apartment. . . ."). By contrast, there is nothing in the Stipulated

8

Order—or in any document—that identifies Nardone as CFII's agent, or even describes Nardone as acting more generally as the agent for the parties. *See* 1A Secured Transactions Under the UCC § 6A.04[2][b] ("The possession-by-agency technique, which continues to be available today under Article 9, contemplates the collateral being held or controlled by a party who is aligned with the secured party.").

To the extent that CFII argues that an agency relationship between Nardone and CFII should be implied in this circumstance, that argument runs afoul of principles of agency. It is well established that the formation of an agency relationship requires a manifestation of consent from both parties. *See* Restatement (Third) of Agency §1.01 (2006) ("Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act."); *see also In re Shulman Transport Enterprises, Inc.*, 744 F.2d 293, 295 (2d Cir. 1984) ("An essential characteristic of an agency relationship is that the agent acts subject to the principal's direction and control."); *cf. Qube Films Ltd v. Padell*, 2016 U.S. Dist. LEXIS 25328, at *4 (S.D.N.Y. Mar. 1, 2016) ("The scope of an Escrow Agent's fiduciary duty is defined by the scope of its contractual duty under the Escrow Agreement."). Thus, "parties to an escrow agreement cannot impose upon [the escrow agent] any obligations in addition to its limited duties under the express terms of its contract." *H&H Acquisition Corp. v. Fin. Intranet Holdings, Inc.*, 669 F.Supp. 2d 351, 363 (S.D.N.Y. 2009) (citations and quotations omitted). There is no evidence that Nardone was willing to act as agent on behalf of CFII, which is not surprising given that she was serving as

counsel to the Liddles. Without Nardone as CFII's agent, there is no basis to conclude that CFII obtained possession of the sale funds when they were transferred to Nardone.[6]

CFII emphasizes that possession under U.C.C. Article 9 focuses in significant part on the importance of notice to third parties of a potential encumbrance on a debtor's property. *See* CFII Brief at 13-14; *see also In re Copeland*, 531 F.2d 1195, 1203-04 (3d Cir. 1976) ("Historically and prior to the Code, possession of collateral by a creditor or third party has served to impart notice to prospective creditors of the possessor's possible interest therein. The Code carries forward the notice function which the creditor's possession formerly provided. . . [I]t is clear that possession by the debtor or an individual closely associated with the debtor is not sufficient to alert prospective creditors of the possibly that the debtor's property is encumbered. . . ."); *Ingersoll-Rand Fin. Corp. v. Nunley*, 671 F.2d 842, 844-45 (4th Cir. 1982) ("The rationale underlying perfection pursuant to s 9-305 is that the debtor's lack of possession coupled with actual possession by the creditor, the creditor's agent or the bailee serves to provide notice to prospective third party creditors that the debtor no longer has unfettered use of [his] collateral.") (internal citations and quotations omitted); *Hassett v. Blue Cross and Blue Shield of Greater New York (In re O.P.M. Leasing Services, Inc.)*, 46 B.R. 661, 670 (Bankr. S.D.N.Y. 1985) (same).

But a focus on notice alone risks ignoring the concepts of control or ownership embedded in the very idea of "possession." "Possession" is commonly understood as: "(1) (a) the act of having or taking into control; (b) control or occupancy of property without regard to ownership;

---

[6] To support its position on agency, CFII relies on *Bank R.I. v. Mixitforme, Inc.*, 2007 R.I. Super. LEXIS 9 (R.I. Super. Ct. Jan 11, 2007). In *Mixitforme*, the Rhode Island court found that a stipulated order functioned as an escrow agreement which created the security interest in question. *See id.* at *31-36. The *Mixitforme* court then determined that there was perfection by possession because "the Registry escrow arrangement made the Court the equivalent of an 'agent' of [the creditor] for purposes of determining possession." *Id.* at *43; *see also id.* at *43-44 (court acknowledged the peculiarity of this conclusion). But respectfully, the *Mixitforme* decision is quicker to find an agency relationship than this Court would be, given the concern about casting a court as an agent for one party to a dispute when a court's role is to impartially resolve disputes as a neutral arbiter for all parties.

10

(c) OWNERSHIP . . . ; (2) something owned, occupied, or controlled : PROPERTY; (3) (a) domination by something (such as an evil spirit, a passion, or an idea) . . . ." *Possession Definition*, Merriam-Webster, https://www.merriam-webster.com/dictionary/possession; *see also In re Singer Prod.*, 102 B.R. at 925. Such concepts cannot be glossed over when examining an escrow arrangement, as is the case here. "[A]n escrow is generally defined as a written instrument entrusted by a grantor to a third party agent or trustee who, in accordance with instructions, subsequently delivers the instrument to the grantee once certain conditions are met." *99 Commercial Street, Inc. v. Goldberg*, 811 F. Supp. 900, 905 (S.D.N.Y. 1993) (Sotomayor, J.). "[L]egal title to property placed in escrow remains with the grantor until the occurrence of the condition specified in the escrow agreement." *Alarmex Holdings, LLC v. Gowan (In re Drier LLP)*, 527 B.R. 126, 133 (S.D.N.Y. 2014) (citing *In re O.P.M. Leasing*, 46 B.R. at 667). The deposit of funds in escrow creates "in the grantee such an equitable interest in the property that upon full performance of the conditions according to the escrow agreement, title will vest at once in him." *Id.* (citations omitted). Thus, "[i]n a very real sense, ownership [in an escrow] is held in stasis, the instrument available neither to grantor nor grantee, awaiting disposition by the agent in accordance with the terms of the agreement." *99 Commercial Street*, 811 F. Supp. at 906.

The Court's conclusion about CFII's lack of possession is further confirmed by the interim nature of the Stipulated Order. Like the prior TRO, the Stipulated Order appears to have been entered to maintain the status quo. It did so by permitting the sale of the N.Y. Co-op but preserving the parties' rights to the resulting funds pending an adjudication of CFII's request for an order of attachment. There is nothing in the Stipulated Order—or elsewhere—to suggest that the parties intended to fundamentally change their rights from those set forth in the TRO, where

11

the money had been specifically placed in the possession of the Liddles.[7] CFII's position is also undermined by the fact that the Stipulated Order was entered while CFII was seeking—but before it had been granted—an order of attachment. "Attachment [is] a provisional remedy, with the object of securing a debt by preliminary levy upon property to conserve it for eventual execution. . . ." *Penoyar v. Kelsey*, 150 N.Y. 77, 80 (1896). It is unclear what purpose an order of attachment would have served if the Stipulated Order is deemed to have already granted CFII a perfected security interest. Indeed, the Order of Attachment would appear unnecessary under CFII's reading.[8]

---

[7] CFII submitted a post-hearing letter where, among other things, it objects to Liddle's counsel's argument on the nature of a TRO and the Stipulated Order as "freezing things in place while the court adjudicates the motion for an order of attachment." Letter of David Wander, dated July 1, 2019 at 1 (the "Post-Hearing Submission") [ECF No. 114] (quoting Hr'g Tr. 24:22-23 (June 24, 2019) [ECF No. 113]). CFII alleges that this is a new argument presented after briefing and thus prohibited. *See id.* CFII's objection is misplaced. The nature of the Stipulated Order is central to resolving the question of perfection under Section 9-313. Indeed, the Court specifically raised this issue from the very beginning of the hearing irrespective of any comments by counsel. *See* Hr'g Tr. 11:22-12:13 (June 24, 2019). Indeed, this was a question asked by the Court to CFII during oral argument:

> [C]ourts will do this sort of thing on a not infrequent basis, where the parties say, we have a dispute, and to avoid an issue they'll throw it into an escrow agreement; . . . [A]nd so the involvement of the court—does it change anything where basically it's saying that this stipulation is subject to approval by the Court and basically that the money is essentially being made subject to the Court's determination. . . .

*Id.* at 11:22-12:6. In response to the Court's question, CFII's counsel states that CFII "went in for a TRO to lock up the funds. . . ." *Id*. at 13:14-15. The Court further elaborated, "So my concern is that I—again, perhaps because of the Court's involvement, it seems to essentially say, well, there's a dispute about attachment and that's going to be decided. You want to make sure the money isn't going to wander off somewhere. So this a protective measure." *Id*. at 17:12-16. The Court specifically asked CFII "would you say you have a security interest based solely on the escrow agreement, or does it take the act of the court granting the order of attachment, to make it a possessory—to satisfy the possession requirement of the UCC?" *Id*. at 19:10-14. Clearly, the Court was interested in this question from the start of the hearing, and Liddle's counsel subsequent discussion on the matter was in response to the Court's inquiries.

[8] The Court is concerned that adopting CFII's position would discourage parties from reaching interim agreements like the Stipulated Order to preserve the status quo while providing a court sufficient time to rule on the underlying merits of a dispute. After all, what party would risk entering into such a stipulation if it might mean the party ceded its legal rights on the ultimate issue in dispute?

12

B. <u>Security Interest under N.Y. U.C.C. Section 313(c)</u>

CFII also claims a security interest based on Section 9-313(c)(2) of the N.Y. U.C.C. Under that section, a security interest exists when the collateral is in possession of someone other than the debtor or the secured party but certain requirements have been met:

> With respect to collateral other than certificated securities and goods covered by a document, a secured party takes possession of collateral in the possession of a person other than the debtor, the secured party, or a lessee of the collateral from the debtor in the ordinary course of the debtor's business, when . . . the person takes possession of the collateral after having authenticated a record acknowledging that it will hold possession of collateral for the secured party's benefit.

N.Y. U.C.C. § 9-313(c)(2).

A "Record" is defined as "information that is inscribed on a tangible medium or which is stored in an electronic or other medium and is retrievable in perceivable form." N.Y. U.C.C. § 9-102(a)(70). The statute defines "Authenticate" as "(A) to sign; or (B) with present intent to adopt or accept a record, to attach to or logically associate with the record an electronic sound, symbol, or process." N.Y. U.C.C. § 9-102(a)(7). Pursuant to Section 9-313(c)(2), the record must acknowledge that it is being held for the secured party's benefit. *See* N.Y. U.C.C. § 9-313 cmt. n. 4 ("[P]erfection does not occur unless the third person authenticates an acknowledgement that it holds possession of the collateral for the secured party's benefit."); *see also Heyer v. Conesus Milk Producers Coop. Ass'n (In re Clayson)*, 341 B.R. 137, 140 (Bankr. W.D.N.Y. 2006) ("To establish possession for purposes of perfection, it no longer suffices to show that a bailee had received notification of a security interest. Rather, the bailee must *acknowledge that it possesses on behalf of the secured creditor* and that acknowledgement must be in a record.") (emphasis added); *Mixitforme,* 2007 R.I. Super. LEXIS 9, at *42 ("Section 313(c) serves as a safety measure for parties when it is uncertain whether the person in possession would be deemed an agent of the secured party: 'In some cases, it may be uncertain whether a person who

13

has possession of collateral is an agent of the secured party or a non-agent bailee. Under those circumstances, prudence might suggest that the secured party obtain the person's acknowledgement to avoid litigation and ensure perfection by possession regardless of how the relationship between the secured part[y] and the person is characterized.'") (quoting N.Y. U.C.C. § 9-313 cmt. n. 4).

CFII contends that the Stipulated Order satisfied the requirements of Section 9-313(c)(2) because it is a record authenticated by Nardone's signature whereby she agrees to hold the sale proceeds. *See* CFII Brief at 15-17. However, for many of the same reasons set forth above, CFII fails to show that Nardone acknowledged holding the proceeds for CFII's benefit. The Stipulated Order states that "Nardone shall confirm her agreement to serve as Escrow Agent pursuant hereto and shall signify her acknowledgement of and agreement to be bound by the escrow provisions of this Stipulation and Order by signing where indicated below." Stipulated Order ¶ 6. This language stipulated only Nardone's agreement to be held bound to the escrow provisions of the Stipulated Order; it does not speak to Nardone's acknowledgment of holding the funds for CFII's benefit. As explained more fully above, the Stipulated Order contemplated that the funds were held by Nardone as escrow agent for the Liddles, consistent with the TRO, and thus did not satisfy the requirements of Section 9-313(c)(2).

## CONCLUSION

For the reasons above, the Court concludes that CFII does not have a perfected security interest in the cash proceeds from the sale of the N.Y. Co-op because it did not satisfy the requirements of Section 9-313(a) or Section 9-313(c)(2) of the N.Y. U.C.C. As such, the Court overrules CFII's objection to the use of cash collateral on the basis of its purported status as a secured creditor.

Liddle should settle an order on three days' notice. The proposed order must be

submitted by filing a notice of the proposed order on the Case Management/Electronic Case Filing docket, with a copy of the proposed order attached as an exhibit to the notice. A copy of the notice and proposed order shall also be served upon counsel to CFII.

Dated: New York, New York
       September 6, 2019

                                      */s/ Sean H. Lane*
                                      UNITED STATES BANKRUPTCY JUDGE