Alison D. Bauer
William F. Gray, Jr.
FOLEY HOAG LLP
1301 Avenue of the Americas
New York, NY 10019
Telephone: (646) 927-5500
Facsimile: (646) 927-5599

*Attorneys for Debtor and
Debtor-in-Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- x

In re

JEFFREY LEW LIDDLE,

           Debtor

-------------------------------------------------------- x

:  Chapter 11
:
:  Case No.  19-10747 (SHL)
:
:  Jointly Administered with Case No. 19-
:  12346 (SHL)

Related to ECF No. 118

**RESPONSE OF DEBTOR JEFFREY LEW LIDDLE TO OBJECTION BY COUNSEL
FINANCIAL II LLC, LIG CAPITAL LLC, AND COUNSEL FINANCIAL HOLDINGS
LLC TO DEBTOR'S CLAIMS OF EXEMPT PROPERTY, PURSUANT TO
<u>BANKRUPTCY RULE 4003, AND FOR RELATED RELIEF [ECF NO. 118]</u>**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

        Jeffrey Lew Liddle, as debtor and debtor in possession in the above-captioned chapter 11

case (the "***Debtor***"), hereby responds to the Objection by Counsel Financial II LLC, LIG Capital

LLC, and Counsel Financial Holdings LLC to Debtor's Claims of Exempt Property, Pursuant to

Bankruptcy Rule 4003, and for Related Relief [ECF No. 118] (the "Objection", by the "CF

Entities") and respectfully states as follows:

        1.     At the outset, it should be noted that the CF Entities' Objection is implicitly

predicated on the position that Counsel Financial II LLC ("CF II") has a perfected security interest

in the proceeds of the sale of Debtor's Manhattan co-op apartment shares (the "Sale Proceeds"),

based on orders of the Supreme Court of the State of New York for the County of Erie in *Counsel*

*Financial II LLC v. Liddle & Robinson LLP et al.*, Index No. 814703/2018 (the "Erie County Action," before the "Erie County Court"). Since the CF Entities filed the Objection, however, this Court has expressly ruled that CF II does not have a security interest in the Sale Proceeds and does not have any rights as a secured creditor of the Debtor and the Debtor's estate. *See* ECF No. 185. The CF Entities' Objection should be viewed in light of this Court's findings.

2.      In any event, the CF Entities' Objection fails to undermine Debtor's claim to a homestead exemption on a portion of the Sale Proceeds. Debtor's claim is consistent with the statute and with the orders of the Erie County Court in the Erie County Action.

3.      The sale of the co-op apartment took place in the shadow of two legal actions in which certain creditors sought, directly or indirectly, to compel Debtor to sell the co-op apartment shares to satisfy money judgments.

4.      The first of these was an action by Signature Bank in the Supreme Court of the State of New York for the County of New York, *Signature Bank v. Jeffrey Liddle and Tara Liddle*, Index No. 650252/2018 (the "Signature Bank Action"), a lender through whom Debtor and his wife had taken out a home equity line of credit with the co-op apartment shares as collateral. Summons and Verified Complaint (Jan. 18, 2018), ECF No. 24-11 at PDF 18–30. Signature Bank alleged a perfected security interest in the co-op apartment shares and asserted that Debtor and his wife had defaulted on his obligations to Signature Bank. Signature Bank sought a money judgment against Debtor and his wife and an order requiring that the co-op shares (or any substitution or replacement thereof) be delivered to Signature Bank to satisfy that judgment.

5.      Subsequently, the Erie County Action was initiated by the CF Entities (acting through CF II) on September 18, 2018. In the Erie County Action, the CF II sought a judgment against Debtor's law firm, Liddle & Robinson, L.L.P. ("L&R" or the "Firm") and Debtor

personally on an alleged debt of nearly $6 million.  CF II knew that Debtor did not have the liquid

assets to satisfy a judgment of this amount, and that to satisfy such a judgment the Debtor would

have to sell an interest in real property.  CF II obtained multiple show cause orders restraining

Debtor from disposing of any proceeds from a sale of an interest in real property, including the

potential sale of the Manhattan co-op shares.  Amended Order to Show Cause (Dec. 19, 2018),

ECF No. 55-14; Second Amended Order to Show Cause (Jan. 4, 2019), ECF No. 55-16.  CF II

also filed a UCC-1 Financing Statement specifically directed at proceeds from a potential sale of

the Manhattan co-op shares.  UCC Financing Statement (Jan. 2, 2019), ECF No. 55-15.

6.      CF II was aware of the Signature Bank Action when it brought the Erie County

Action.  Affidavit of Paul Cody (Dec. 18, 2018), ECF No. 24-8 at PDF 14.

7.      As Debtor progressed toward closing a sale of the co-op shares, it became clearer

and clearer that the Sale Proceeds were the heart of the Erie County Action.  Accordingly, on

February 1, 2019, the parties entered into a Stipulation and Order containing certain provisions

designed to "facilitate the closing of the sale of the Apartment."  Stipulation and Order (Feb. 4,

2019), ECF No. 55-17.  The Stipulation and Order was entered by the Court on February 4, 2019.

8.      The sale of the co-op shares closed on February 7, 2019.

9.      From that point forward, the Erie County Court consistently assumed without

deciding that the Debtor was entitled to a homestead exemption on the Sale Proceeds.  In ruling

from the bench on February 11, 2019, the Erie County Court granted an order of attachment on

the Sale Proceeds "subject to any applicable homestead exemption."  Transcript of Court

Proceedings (Feb. 11, 2019), ECF No. 55-18.

10.      Debtor confirmed his understanding that a portion of the Sale Proceeds were, under

CPLR § 5206(a), eligible for a homestead exemption, in a letter to the Erie County Court on

February 19, 2019.  Letter from Jeffrey Liddle to Justice Deborah Chimes (Feb. 19, 2019), Exhibit A, at 8.

11.    The following day, CF II responded with an affidavit in support of CF II's proposed order of judgment.  Affidavit of Larry Hutcher (Feb. 20, 2019), Exhibit B.  In this affidavit, CF II asserted that Debtor could not apply the homestead exemption to a portion of the Sale Proceeds, citing the same case law the CF Entities now cite to this Court.  *Id.* ¶¶ 20–22.  CF II reiterated this argument in another letter sent six days later.  Letter from Larry Hutcher to Justice Deborah Chimes (Feb. 26, 2019), Exhibit C.

12.    However, the Erie County Court never adopted CF II's argument that the homestead exemption was inapplicable.  Rather, in granting an order and judgment against Debtor and the Firm, the Erie County Court specifically referred back to its bench decision on February 11, 2019, in which the Erie County Court had emphasized that any order of attachment on the Sale Proceeds was "subject to any applicable homestead exemption."  Order and Judgment (Mar. 5, 2019), Exhibit D.  The Erie County Court's Order of Attachment also incorporated this bench decision.  Order of Attachment (Mar. 7, 2019), ECF No. 55-20.

13.    CPLR § 5206(a) states, in relevant part, that "Property of one of the following types, not exceeding one hundred fifty thousand dollars for the counti[y] of . . . New York . . . owned and occupied as a principal residence, is exempt from application to the satisfaction of a money judgment, unless the judgment was recovered wholly for the purchase price thereof: . . . shares of stock in a cooperative apartment corporation . . . ."

14.    CPLR § 5206(e) states, in relevant part, that "A judgment creditor may commence a special proceeding in the county in which the homestead is located against the judgment debtor for the sale, by a sheriff or receiver, of a homestead . . . .  Money, not exceeding one hundred fifty

thousand dollars for the count[y] of . . . New York . . . paid to a judgment debtor, as representing his interest in the proceeds, is exempt for one year after the payment . . . ."

15.    At the time the Erie County Action was initiated, Debtor owned and occupied the Manhattan co-op apartment as his principal residence. There should be no dispute that, at that time, Debtor was entitled to take a homestead exemption on the Manhattan co-op shares.

16.    At the time the Erie County Action was initiated, the Manhattan co-op apartment was already subject to the collection action against the co-op shares brought by Signature Bank. CF II was aware of this and was aware that, in response to this threat, Debtor was compelled to consider the sale of the Manhattan co-op shares.

17.    Through initiating the Erie County Action, CF II further pressured Debtor into a situation where he was left with very few options to marshal the resources necessary to satisfy a potential judgment. One easily foreseeable option was through the sale of his interest in the Manhattan co-op shares. Through CF II's actions in the Erie County Action, including the terms of the show cause orders it obtained and the UCC-1 it filed subsequently, it became clear that CF II welcomed this development. In essence, the action against Debtor and his Firm had turned into an action against the interest in property itself. CPLR § 5206(e) provides that a homestead exemption may properly apply to sale proceeds generated by certain actions initiated by a judgment creditor. While Debtor concedes that the neither the Signature Bank Action nor the Erie County Action does not satisfy the literal requirements of § 5206(e), the intent behind the statute— to prevent judgment creditors from using the judicial process to rip away both an interest in real property and the ability to claim a homestead exemption, in one fell swoop—is implicated by CF II's pursuit of the Erie County Action following on the heels of the Signature Bank Action.

18.    Most crucially, however, even after the interest in the real property had been converted into the Sale Proceeds, the Erie County Court assumed without deciding that the CPLR's homestead exemption could apply to a portion of the Sale Proceeds.  Despite CF II's repeated protestations, the Erie County Court never ruled that a homestead exemption was unavailable to Debtor.  The Erie County Court's Order of Attachment, entered without notice, is certainly not dispositive of the homestead exemption issue.  An attachment order is a provisional remedy under the CPLR, meant to maintain the status quo; it does not alter or otherwise determine substantive rights, including the entitlement to a homestead exemption.

19.    Debtor thus has an ample basis to claim a homestead exemption on a portion of the Sale Proceeds.[1]

20.    The CF Entities' Objection does not change this analysis.  The CF Entities cite two bankruptcy court decisions, as well as one state trial court decision.  None of these cases are binding on this Court.  *See In re 400 Madison Ave. Ltd. P'ship*, 213 B.R. 888 (Bankr. S.D.N.Y. 1997) ("[I]n this district, which has both a multi-judge bankruptcy court and a multi-judge district court, only decisions of the Second Circuit Court of Appeals are binding.").

21.    The CF Entities also overstate what the non-binding authorities do say.  For example, they state that "a person seeking to exercise this homestead exemption must own and occupy the real property at the time the exemption is sought," Objection at 3, but this statement is not so clear as the CF Entities seem to believe.  *See, e.g.*, *In re Pearlman*, 54 B.R. 455, 456 (Bankr. S.D.N.Y. 1985) (upholding homestead exemption with respect to cooperative apartment that

---

[1] Given the reasonableness of Debtor's position, Debtor of course disputes the CF Entities' assertion that Debtor acted "unreasonably, vexatiously and in bad fait[h]," Objection at 4 n.4, in taking the position that it was entitled to the homestead exemption.  The CF Entities are not entitled to attorney's fees even if they prevail in their Objection.

debtor did not occupy, and citing other cases where "courts allowed the claimed homestead exemption notwithstanding that the debtor did not actually occupy the homestead property").

22.    With respect to the CF Entities' objection to Debtor's claim of a personal property exemption including, *inter alia*, a certain amount of household goods, the objection is not well taken.  The CF Entities object on the basis that there is "no list of this property" on Debtor's Schedule C.  This is a staggeringly disingenuous basis for an objection, as Schedule C itself only requires a "Brief description of the property and line on ***Schedule A/B that lists this property***."  The list that the CF Entities claim is missing is, in fact, exactly where it is supposed to be—on Schedule A/B.  Further, the property is appropriate for exemption under CPLR §§ 5205(a)(1)&(5).

WHEREFORE the Debtor respectfully requests that the Court overrule the CF Entities' Objection to Debtor's claims of exemption and grant such other and further relief as the Court may deem just and appropriate.


Dated:  September 27, 2019         FOLEY HOAG LLP
     New York, New York

                                */s/ Alison D. Bauer*
                                Alison D. Bauer
                                William F. Gray, Jr.
                                FOLEY HOAG LLP
                                1301 Avenue of the Americas, 25th Floor
                                New York, NY 10019
                                Telephone: 646-927-5500
                                Fax: 646-927-5599
                                abauer@foleyhoag.com
                                wgray@foleyhoag.com


                                *Attorneys for Debtor and Debtor-in-Possession*

**<u>Exhibit A</u>**
**<u>Letter from Jeffrey Liddle to Justice Deborah Chimes (Feb. 19, 2019)</u>**

# LIDDLE & ROBINSON, L.L.P.

1177 Avenue of the Americas
5th Floor
NEW YORK, N.Y. 10036

———

Tel: (646) 452-7211
www.liddlerobinson.com
Fax: (646) 452-7001
EMAIL: jliddle@liddlerobinson.com

JEFFREY L. LIDDLE
(Direct Dial: (646) 452-7210)

February 19, 2019

**VIA NYSCEF & OVERNIGHT MAIL**
Honorable Deborah A. Chimes, J.S.C.
Supreme Court of the State of New York
County of Erie
Part 33 – Ninth Floor
50 Delaware Avenue
Buffalo, New York 14202

      Re:    Counsel Financial II LLC v. Liddle & Robinson L.L.P. et al.;
             Index No. 814703/2018

Dear Justice Chimes:

        This letter is in response to the "Order and Judgment" proposed by Counsel Financial II, LLC ("CFII") in response to Your Honor's direction that "plaintiff is to submit the order, attaching a copy of the decision to the order."

        The Proposed Order and Judgment ("POJ") should be rejected for several reasons.

        First, the POJ is inconsistent with the Court's bench order in that a different amount is stated on page 3 of the POJ than in the bench order. The Court ordered judgment in the amount Plaintiff used in the motion for summary judgment in lieu of complaint of $5,980,500. The POJ uses "$5,878,565." The Court's order does not award "prejudgment interest" at all, and certainly not at "the [alleged] contractual default rate of 24.9% per annum from September 19, 2018." Nor does the Notice of Motion for Summary Judgment in Lieu of Complaint seek interest on the

LIDDLE & ROBINSON, L.L.P.

Hon. Deborah A. Chimes                    - 2 -                    February 19, 2019

balance, if any. The "Revolving" Promissory Note (para 3.b. "Loans") and the Affidavit of Paul

Cody, dated December 17, 2018, at paragraphs 6 and 60 admit that "$1.2 million" was a personal,

non-business loan. As such, the POJ itself contains a usurious interest rate (18%) as to that portion

of the CFII loan that was not for business purposes but, as Plaintiff admits, for personal purposes.

*See* N.Y. GOL § 5-501.1; N.Y. Banking Law § 14-a (prescribing 16% as the civil usury rate).

Second, as the Court stated, the "Allonges"[1] [sic] are part of the "Revolving"

promissory note. Here, the "Allonges" are not Allonges at all, but significant modifications of the

terms and conditions of the Revolving Promissory Note. It is submitted that the choice of the word

"Allonge" is intended by Plaintiff to confuse, especially since they describe these documents as

amendments, etc. frequently. One "Allonge" references that the Revolving Promissory Note is

"subject to" a Security Agreement referenced on page 19 of the Revolving Promissory note

between Counsel Financial Holdings, LLC [a non-party], and its "wholly owned subsidiary

Counsel Financial II, LLC" [the plaintiff], and the Bank of America, N.A. [a non-party] and

"certain other parties" "as amended, supplemented, replaced, restated or otherwise modified from

time to time." That document, its terms, and the amendments, supplements, replacements,

restatements and other modifications, of course, were not before the Court, but should have been.

Obviously, this goes to the Court's holding that the "instrument [for the payment of money only]

is a Revolving promissory note together with its "Allonges." In reality, there is no such

"instrument." Instead, there are, among other things, modifications, amendments, and a multi-party

---

[1] However, an Allonge is not a modification or amendment to a document as Plaintiff seems to think it is; instead, it is an "endorsement, i.e., a signature or other marking intended to act as an endorsement to an instrument such as a promissory note but made on a separate piece of paper." Anders Dictionary of Law (1889) cited in Law; Dictionary (Wiki Encyclopedia of Law Project); see also The Law Dictionary, Black's Law Dictionary Online (2d Ed.), explaining when an Allonge is used ("...when the indorsement on a bill or note have filled all the customary blank space, it is customary to annex a strip of paper, called an 'allonge,' to receive further indorsements." Indeed, an allonge is never used as a term (except by Plaintiff) for amendments, restrictions, new terms, etc.

LIDDLE & ROBINSON, L.L.P.

Hon. Deborah A. Chimes                    - 3 -                    February 19, 2019

Guarantee involving myself, the defendant Blaine Bortnick, the defendant James R. Hubbard, and

the non-party Christine A. Palmieri.

The "2d Allonge," dated October 13, 2016, made material changes to the Revolving

Promissory Note including reducing the maximum principal amount that could be borrowed. The

"3rd Allonge," dated December 22, 2016, again changed the maximum principal amount that could

be borrowed, and although an 18% per annum interest rate was applied to the first $5.5 million, it

set out a new 21% per annum interest charge to the amount available above $5.5 million.

Third, the interest rate was not fixed but floated (only upwards) as a function of

LIBOR. For example, if the 18% rate was in effect and 1-year LIBOR moved from 50 bps to its

current 293 bps, the rate would be increased by 2.43% (293 bps − 50 bps = 243 bps = 2.43% +

18% = new effective interest rate 20.43%). LIBOR is calculated daily and varies frequently.

Documentation of the loan balance, for these reasons, among others, cannot be accurately

calculated on the face of the "instrument."

Fourth, the asserted "reasonable" attorneys' fees cannot be calculated by reference

to the "Revolving" promissory note. There is no "formula" as would appear in some simple,

straightforward promissory notes. This alone makes it impossible to determine the amount owed

from looking at the "Revolving" promissory note, a requirement of a motion for summary

judgment in lieu of complaint. The "reasonable attorneys' fees" requested by Plaintiff's counsel

are grossly excessive, manifestly inappropriate, and provably incurred in furtherance of various

unlawful actions, such as induced breach of partnership obligations between Plaintiff and the other

guarantors, each of whom continues to have various duties and obligations to Liddle & Robinson,

L.L.P. and to myself as a partner. There is no way to determine the "reasonableness" of the fees

from the heavily redacted time records, and the many unredacted entries that relate to undisclosed

**LIDDLE & ROBINSON, L.L.P.**

Hon. Deborah A. Chimes                   - 4 -                   February 19, 2019

negotiations between Plaintiff's attorneys and the former partners of Liddle & Robinson. No such

negotiations could have been complete without reference to the two other entities, non-party

Counsel Financial Holdings LLC and LIG Capital LLC. Not surprisingly, according to the time

records submitted, the 16-page "Fee Details" what appears to be at least 12 attorneys and 4

paralegals from the Davidoff firm alone, performed services at what appear to be partner hourly

rates, generally between $675/hour and $900/hour; associates work at $350/hour to $550/hour,

and paralegals at $235/hour to $260/hour. These are hardly Buffalo, New York or Erie County

rates. Moreover, Plaintiff's New York counsel alleges 615.25 hours were put into the case, just by

them, and apparently think that they are entitled to "disbursements" that are above and beyond the

statutory disbursements of $400 shown on the bill of costs and disbursements. These other

disbursements include filing fees (duplicating the asserted "costs of plaintiff"), staff overtime,

online research, "business" meals, local transportation, etc. As to the nature of the services, the

settlement negotiations between Plaintiff and the two other guarantors ($5.5 mm each, $11 mm in

toto), including the nature of any settlement, their contributions, and their individual liability under

the loan agreements remain undisclosed to me or the firm. Some items, such as reviewing former

partner Blaine Bortnick's proposed opposition papers, memorandum of law, and the settlement

with him remain completely undisclosed to Liddle & Robinson or to me, other than in the time

sheets just presented. Indeed, in one 7-day period (January 16-22), Michael D. Katz's 30.25 hours

are fully redacted despite the charges exceeding $15,000. It is clear that this amount cannot be

subject to judgment or an attachment and cannot be accepted by the Court as part of a judgment

rendered by motion for summary judgment in lieu of complaint.

Fifth, it is clear from the proposed order seeking a decree that this "judgment" be

awarded against Liddle & Robinson, L.L.P. and Jeffrey L. Liddle, "jointly and severally," that

LIDDLE & ROBINSON, L.L.P.
Hon. Deborah A. Chimes                    - 5 -                    February 19, 2019

more than "an instrument for the payment of money only" was before the Court. The Court's finding in the bench order is that the "...action is based upon _**an**_ instrument [note the singular, as in the CPLR] for the payment of money only" (emphasis supplied), and that "[p]ursuant to the note, the amount due and the interest can be determined from the four corners of _**the**_ instrument...[that] therefore qualifies as _**an instrument**_ for the payment of money only," (emphasis supplied), belies the fact that there are at least 7 instruments at a minimum, that affect, modify, and comprise this one "instrument." Those documents include: (1) the "revolving promissory note" dated August 5, 2016; (2) the Guarantor Agreement to promissory note covenants (August 5, 2016); (3) the "Allonge" to Revolving Promissory Note (August 5, 2016); (4) the security agreement dated September 17, 2009 between CF Holdings "and its wholly owned subsidiary CFII" and "granted to Bank of America, N.A.; (5) the "Allonge" dated October 13, 2016, and the more referenced in the "allonge" which was not provided to the Court and which was made between Liddle & Robinson, L.L.P. and LIG Capital, L.L.C. (upon information and belief, a non-party owned by non-party Counsel Financial Holdings, L.L.C.); (6) an "Allonge" (dated December 2, 2016) further the Revolving Promissory Note (document (1) above), and the amendment of October 16, 2016 (document (5) above) [described on its fact that document (5) above is an amendment]; and (7) the Guaranty of Payment and Performance dated August 5, 2016. At least two other documents, not before the Court or shown to Liddle & Robinson, L.L.P. or myself, are the "settlements" between Bortnick and Hubbard and Counsel Financial II, LLC, Counsel Financial Holdings LLC, and LIG Capital LLC, as set forth in Exhibit C to the Paul Cody Affidavit in support of the Amended Order to Show Cause.

Sixth, there may be an impression that by "revolving promissory note," the principal amount was fixed and merely rolled over monthly. In reality, there were 134 different

LIDDLE & ROBINSON, L.L.P.
Hon. Deborah A. Chimes                    - 6 -                    February 19, 2019

principal balances over the 25 months between August 2016 and the institution of the motion for

summary judgment in lieu of complaint. On top of that, the interest calculation charged monthly,

and the interest rate on the face of the ledger sheet made an exhibit to Megan Payne's affidavit,

16%, was in short, NEVER in effect. Its appearance on that document is a tacit acknowledgement

that the higher rates cause an issue as to usury. Just who ordered the change, and under what

circumstances, that lesser rate found its way onto the document may be for a later day, but the

document given to the Court is altered by Plaintiff. NONE of the interest amounts shown as

charged on the document are less than 18%; the alteration is to make Plaintiff look compliant with

the N.Y. GOL § 5-501, et seq.


### The Attachment

On December 19, 2018, after expending 216.25 hours[2] of "billable" time on this

matter, and having participated in discussions with myself, Bortnick, Hubbard, and various

attorneys (including two who had represented me individually), Counsel Financial II, LLC's

attorneys presented to this Court ex parte and without notice or an opportunity to be heard, and

"Amended" Order to Show Cause, ultimately seeking an attachment but on an interim basis

seeking a temporary restraining order under CPLR 6212. Plaintiff did this ex parte and without

notice gambit twice.

The TRO granted was seriously defective in several respects. First, 6212(a) requires

that the "amount demanded exceeds all counterclaims" known to the Plaintiff. Instead, the Paul

Cody affidavit stated that Cody, a non-lawyer, but a participant in many prior conversations with

---

[2] Unknown is how much time Hodgson Russ had spent.

LIDDLE & ROBINSON, L.L.P.
Hon. Deborah A. Chimes                   - 7 -                    February 19, 2019

representatives of Liddle & Robinson, L.L.P. and with myself, asserted that the "Defendants have

no basis upon which to assert counterclaims against Plaintiff." Of course, there is a very tiny grain

of truth in that: because Counsel Financial II was proceeding pursuant to CPLR 3213, there never

was a right to assert counterclaims, third party claims, add any parties such as CF Holdings and

LIG Capital, assert claims against them, conduct discovery, or the like. What Cody did know

substantively, however, is that there were numerous claims of Liddle & Robinson and its partners

to be brought to sort this situation out, among which were civil usury claims (which would require

repayment of all interest), penal usury claims (that would cancel all indebtedness and requirement

payment of interest), potential RICO claims regarding "loan sharking," lender liability claims

relating to attempting to force Liddle & Robinson to become part of a law firm Counsel Financial

Holdings was restructuring and is financing by taking out pre-existing debt and refusing to pay

certain debts, claims relating to the attempt to "pay off" directly, and compromise, an attorney for

myself and Liddle & Robinson, L.L.P., tortious interference with prospective advantage and

existing contractual relationships, collusion and deceit under Judiciary Law § 487, inducing breach

of fiduciary duty, conversion, and breach of contract. These were among the serious matters that

had been brought to Paul Cody's, and CF's attorneys' attention, starting back in 2017 thereafter

and which were still being vigorously debated after this the 3213 motion was served.

Second, at all times, Counsel Financial II, its affiliates, Paul Cody, Megan Payne,

Felice Callahan, and their attorneys knew that they were seeking an attachment and a TRO against

the property of my wife and myself, held by us as tenants by the entirety. Among many other

discoverable documents in Plaintiff's possession is a personal financial statement clearly showing

that the 11 5th Avenue apartment was jointly owned. (See Exhibit R to the Cody Affidavit). This

and many prior financial statements provided at CF's request clearly delineated the ownership.

LIDDLE & ROBINSON, L.L.P.
Hon. Deborah A. Chimes                    - 8 -                    February 19, 2019

Indeed, former partner and defendant Bortnick had raised this issue successfully in thwarting CF's

threats to recover from him by "going after" his (and his wife's) purported $16 million townhouse

on W. 12th Street in New York City. This Court restrained the transfer or sale of my wife's and

my property and ordered that such resulting property (held now as tenants in common) be

restrained. There was no authority for this TRO, or the subsequent one issued on January 4, or the

modified TRO in early February. In toto, the TRO was in effect for 55 days prior to an opportunity

to be heard, and it affected and still apparently affects property of a non-party who is not subject

to this Court's jurisdiction, property that is not located in Erie County, and property that was not

a judgment debtor's, or a garnishee's. By its very nature, one-half of the "Escrow" account should

be immediately released to Tara Liddle, and $150,000 of the other half (CPLR 5206(a)) should be

released to me. It is not enough for the attachment referred to in the POJ to be "granted in its

entirety;" it is essential that it be granted in accordance with law, and that it not offend a

fundamental tenet of our Constitution that "no person shall be deprived of ... property without

Due Process of law." CPLR 6210 clearly allows only a temporary restraining order "prohibiting

the transfer of assets by a garnishee." (emphasis supplied). No authority exists for granting a TRO

in aid of an attachment against a defendant. Indeed, an amendment to allow TROs under Article

62 to apply to a defendant failed when proposed in 1977. Further, Tara Liddle is neither a defendant

nor a garnishee under CPLR 105(i) or CPLR 5201.

        Finally, the order seeks to attach property (560 Main Street and 554 Main Street in

Quiogue) that has not been established to be at risk of the transfers categorized under CPLR

6201(3). Plaintiff cannot and has not shown that anything required by CPLR 6201(3) is occurring

and it is not. It is a thoroughly ludicrous suggestion, as Plaintiff's counsel made at oral argument,

that each item of CPLR 6201(3) be addressed directly by me in light of the fact that none of the

LIDDLE & ROBINSON, L.L.P.
Hon. Deborah A. Chimes                    - 9 -                    February 19, 2019

actions in the section have occurred. But if needed, yet again, I will say none have occurred. Rather,

CPLR 6201(3) mandates a heavy burden on the party seeking the attachment, and not that the

defendant disprove allegations.


## The Undertaking

As stated twice earlier, the undertaking is grossly inadequate due to the probable

damage from the TRO and now the proposed attachment.


## Due Process and Fundamental Fairness

At a very minimum, our system requires (1) notice and (2) an opportunity to be

heard. Our CPLR proceeds on the assumption that ex parte and without notice determinations are

completely inappropriate. This is why CPLR 3213 motions are disfavored and normally require

strict adherence to the procedures set forth. That is why I argued that there is no such thing as a

Motion for *Partial* Summary Judgment in Lieu of Complaint, as sought by Plaintiff. Evidently,

this is what Plaintiff's counsel is still seeking through this POJ. Indeed, the amount is inconsistent

with Your Honor's bench order, Plaintiff wants an attorneys' fee calculation to be accepted without

review, and an attachment on the heels of a TRO that was improvidently granted under CPLR

6210 in that such TROs cannot apply to a defendant, only to a garnishee, and which has been

applied to the property of a defendant and a non-party, non-garnishee who is not under the

jurisdiction of this Court.

The ramifications to myself and especially to my non-party wife are overwhelming.

That two TROs (under Article 62) were granted without notice, and ex parte, on us (a defendant,

myself, and a non-party, my wife, who is also not a garnishee) is devastating enough. That the

LIDDLE & ROBINSON, L.L.P.
Hon. Deborah A. Chimes                  - 10 -                    February 19, 2019

TROs have been in effect since December 19, 2019 is even more difficult to comprehend. That the

amount so restrained is not de minimus makes for an even greater Constitutional[3] concern.


Respectfully submitted,

Jeffrey L. Liddle


cc:    Michael Wexelbaum, Esq. (via NYSCEF)
       Martin Samson, Esq. (via NYSCEF)
       Larry Hutcher, Esq. (via NYSCEF)
       Michael Katz, Esq. (via NYSCEF)
       Richard Grimm, Esq. (via NYSCEF)
       Steven Wells, Esq. (via NYSCEF)
       Arnold Reiter, Esq. (via NYSCEF)
       Diane C. Nardone, Esq. (via email)

---

[3] As Associate Justice John J. Harlan said in his concurring opinion in *Snaidach*, 395 U.S. 337, 342 (1969) in a situation where $31.59 in wages was being garnished: "The 'property' of which petitioner has been deprived is the *use* of the garnished portion of her wages during the interim period between the garnishment and the culmination of the main suit. Since this deprivation cannot be characterized as *de minimis*, she must be accorded the usual requisites of procedural due process: notice and a prior hearing." (emphasis in original).

**Exhibit B**
**Affidavit of Larry Hutcher (Feb. 20, 2019)**

FILED: ERIE COUNTY CLERK 02/20/2019 05:26 PM
NYSCEF DOC. NO. 163
INDEX NO. 814703/2018
RECEIVED NYSCEF: 02/20/2019
19-10747-shl    Doc 186    Filed 09/27/19    Entered 09/27/19 14:09:43    Main Document
Pg 20 of 39

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ERIE

-------------------------------------------------------------------x

COUNSEL FINANCIAL II LLC,

                               Plaintiff,

          -against-

LIDDLE & ROBINSON LLP,
JEFFREY L. LIDDLE,
BLAINE H. BORTNICK, and
JAMES RYAN HUBBARD,

                             Defendants.

-------------------------------------------------------------------x

Index No.: 814703/2018

Hon. Deborah A. Chimes, J.S.C.

Part 33

**AFFIDAVIT OF LARRY HUTCHER IN FURTHER SUPPORT OF PLAINTIFF'S PROPOSED ORDER AND JUDGMENT**

STATE OF NEW YORK    )
                               ) ss.:
COUNTY OF NEW YORK  )

        LARRY HUTCHER, being duly sworn, deposes and says:

        1.       I am a member of Davidoff Hutcher & Citron LLP, co-counsel for Plaintiff Counsel Financial II LLC ("Plaintiff") in the above-entitled action. I submit this affidavit in response to Defendants Liddle & Robinson LLP's ("L&R") and Jeffrey L. Liddle's ("Liddle," and together with L&R, "Defendants") letter to this Court dated February 19, 2019, and in further support of Plaintiff's proposed Order and Judgment.

        2.       While ostensibly styled as a letter in "response to the 'Order and Judgment' proposed" and submitted by Plaintiff as directed by the Court, Defendants' ten-page letter is further evidence of Defendants' utter disdain for this Court's rules and procedures. Specifically, Defendants' letter seeks to improperly reargue Plaintiff's motion for summary judgment in lieu of complaint and motion for an order of attachment (the "Motions"). It regurgitates the same rejected arguments Defendants made in their opposition to the Motions and also in untimely and unauthorized sur-reply papers served and filed after the Motions were fully briefed and

FILED: ERIE COUNTY CLERK 02/20/2019 05:26 PM    INDEX NO. 814703/2018

NYSCEF DOC. NO. 173    19-10747-shl    Doc 186    Filed 09/27/19    Entered 09/27/19 14:09:43    Main Document    RECEIVED NYSCEF: 02/20/2019

Pg 21 of 39

submitted. Since all of these arguments have already been rejected by this Court, I will not address them at length herein.

3.      To the extent that Defendants were even allowed to submit a "response" to Plaintiff's proposed Order and Judgment, such response should have been limited to asserting any objections they have to the specific terms of the proposed Order and Judgment.

4.      If Defendants believe the Court erred in granting the Motions, they are free to move for leave to reargue or renew them or to appeal the Court's Decision.[1] What they should not be allowed to do is continue to disrespect and abuse this Court's rules and procedure as they see fit and without consequence.

5.      Thus, unless the Court instructs Plaintiff differently, it will limit its response herein to addressing Defendants' objections to the specific terms of the proposed Order and Judgment and will not respond to Defendants' improper and repeated arguments for why the Motions should not have been granted in the first place.

6.      First, Defendants complain that the proposed Order and Judgment should be rejected because it is "inconsistent with the Court's bench order in that a different amount is stated on page 3 of the POJ than in the bench order. The Court ordered judgment in the amount Plaintiff used in the motion for summary judgment in lieu of complaint of $5,980,500. The POJ uses '$5,878,565.'" Defendants are surely the first litigant to complain that a judgment is not high enough.

7.      In order to ensure that it acted in an utterly transparent manner and in good faith, Plaintiff made certain that the proposed Order and Judgment was accurate. As explained in the Affidavit of Megan B. Payne in Support of Motion for Summary Judgment ("Payne Aff.") and Reply Affidavit of Megan B. Payne in Support of Plaintiff's Motions for (A) Summary Judgment

_____

[1] Any such motion or appeal would be meritless.

FILED: ERIE COUNTY CLERK 02/20/2019 05:26 PM                    INDEX NO. 814703/2018

NYSCEF DOC. NO. 173    19-10747-shl    Doc 186    Filed 09/27/19    Entered 09/27/19 14:09:43    Main Document RECEIVED NYSCEF: 02/20/2019

Pg 22 of 39

in Lieu of Complaint, and (B) an Order of Attachment ("Payne Reply Aff."), the amount due

under the Note and for which Plaintiff seeks judgment is $5,878,565. *See* Payne Aff. ¶ 11; Payne

Reply Aff. ¶ 9.

8.      However, due to scrivener's errors/errors in draftsmanship, both Plaintiff's Notice

of Motion for Summary Judgment in Lieu of Complaint and Memorandum of Law in Support of

Its Motion for Summary Judgment in Lieu of Complaint listed the amount due under the Note

incorrectly as $5,980,530. *See* Payne Reply Aff. ¶ 9 n.2.   The Memorandum of Law also

erroneously cross-referenced paragraph 12 of the Payne Aff., rather than paragraph 11 thereof.

*See id.* In opposition to the Motions, Liddle pointed out that discrepancy. *See id.* Thus, in reply,

Plaintiff explained all of the above and that the correct amount due under the Note is $5,878,565.

*See id.* ¶¶ 9-10; Ex. B.

9.      In Your Honor's Decision, You erroneously quoted the $5,980,530 number. *See*

Affirmation of Larry Hutcher ("Hutcher Aff."), Ex. A at 2.   Plaintiff included the correct amount

due under the Note of $5,878,565 in the proposed Order and Judgment.

10.      Second, Defendants claim that the Court's decision "does not award 'prejudgment

interest' at all, and certainly not at 'the alleged contractual default rate of 24.9% per annum from

September 19, 2018.' Nor does the Notice of Motion for Summary Judgment in Lieu of

Complaint seek interest on the balance, if any." This is wrong on both accounts.

11.      In support of Plaintiff's motion for summary judgment in lieu of complaint,

Plaintiff clearly requested interest at the contractual default rate of 24.9% per annum until

satisfaction of judgment. Specifically, in its moving papers in support of the motion, it stated

that, "[u]pon the date of default and each day thereafter, the Note provides that the interest rate

per annum is the 'lesser of (i) 24.9% or (ii) the maximum rate permitted by law,' and that such

FILED: ERIE COUNTY CLERK 02/20/2019 05:26 PM

NYSCEF DOC. NO. 143 19-10747-shl    Doc 186    Filed 09/27/19    Entered 09/27/19 14:09:43    Main Document
INDEX NO. 814703/2018
RECEIVED NYSCEF: 02/20/2019

Pg 23 of 39

'default interest, and not any rate set by statute, shall be computed in any entry of judgment pertaining to this Note, and further, shall be paid subsequent to the entry of such judgment, and until actual satisfaction of said judgment." Payne Aff. ¶ 9. Thus, Plaintiff clearly set forth its entitlement to pre-judgment interest (and post-judgment interest) at the contractual default rate of 24.9% per annum in its motion for summary judgment in lieu of complaint.

12.    Moreover, the Court clearly awarded such interest. In particular, the Court stated that "[p]ursuant to the note, the amount due and *the interest* can be determined from the four corners of the instrument and therefore qualifies as an instrument for the payment of money only. Defendant failed to raise a question of fact on either the instrument itself or the amount due. Therefore, plaintiff's motion is granted." Hutcher Aff., Ex. A at 2 (emphasis added). Since Your Honor stated that "the interest" due under the Note could be determined from the four corners of the instrument, You clearly awarded the interest due thereunder.[2]

13.    Third, Defendants complain about the amount of reasonable attorneys' fees and disbursements requested by Plaintiff. They conclusory claim that the attorneys' fees were "provably incurred in furtherance of various unlawful actions, such as induced breach of partnership obligations between Plaintiff and the other guarantors, each of whom continues to have various duties and obligations to Liddle & Robinson, L.L.P. and to [Liddle] as a partner." Defendants' allegations are ludicrous and should be rejected outright. If Defendants believe Plaintiff acted wrongfully, they should raise this claim in a plenary proceeding, not in objection to Plaintiff's request for attorneys' fees and expenses as part of its proposed Order and Judgment.

14.    Moreover, Defendants claim that there is no way to determine the reasonableness of the fees from the heavily redacted time records.  That is nonsense. The time entries are not

_____

[2] Notably, Defendants do not object to Plaintiff's request for *post-judgment interest* at the contractual default rate of 24.9% per annum.

"heavily redacted," but rather redacted only to the extent necessary to prevent the disclosure of attorney-client communications and attorney-work product. There is more than enough detail for the Court to determine whether the attorneys' fees Plaintiff seeks are reasonable.[3]

15.    Next, Defendants complain about the propriety of some of the legal services provided. However, it bears repeating that pursuant to the Note, L&R agreed that it "shall pay each cost and expense (including, but not limited to, the reasonable fees and disbursements of counsel, whether retained for advice, litigation or any other purpose) incurred by [Counsel Financial II LLC] in endeavoring to (i) collect any of the Outstanding Principal Amount or any interest or other amount payable pursuant to this Note, (ii) preserve or exercise any right or remedy of [Counsel Financial II LLC] pursuant to this Note[,] or (iii) preserve or exercise any right or remedy of [Counsel Financial II LLC] relating to any Collateral including the payment of unpaid insurance premiums, taxes, assessments or other obligations." Additionally, pursuant to the Guaranty, Liddle absolutely and unconditionally guaranteed the payment of and performance of the Note by L&R. All of the attorneys' fees Plaintiff seeks are such costs and expenses.

16.    Defendants also complain that Plaintiff seeks disbursements in excess of the statutory disbursements that it is entitled to under the law. However, putting aside the statutory disbursements that Plaintiff is entitled to, as just discussed, pursuant to the Note, it is also entitled to recover any and all disbursements/costs and expenses incurred in trying to collect under the Note. Thus, all disbursements Plaintiff requests to be reimbursed for are proper.

17.    Finally, Defendants complain that certain of the attorneys' fees Plaintiff seeks are for legal services that were not fully disclosed to them. However, Defendants are not surprisingly

---

[3] Moreover, Plaintiff has already made it clear that it will provide the Court with unredacted billing entries, *in camera*, if the Court deems it necessary to determine the reasonableness of the legal services performed.

644547v.2

5

unable to cite to any authority for why the performance of such legal services needed to be disclosed to them before Plaintiff would be entitled to recover reasonable attorneys' fees incurred for such services. All that matters is that the attorneys' fees Plaintiff seeks were for legal services provided to recover the amounts due under the Note. Plaintiff has unequivocally demonstrated that they all were.

18.     Thus, for all of the above reasons, Defendants' complaints about the attorneys' fees and expenses Plaintiff seeks as part of its proposed Order and Judgment should be rejected and Plaintiff should be awarded attorneys fees' in the amount of $357,798.75 and disbursements in the amount of $7,282.44, for a total of $365,081.19 that it seeks.

19.     Alternatively, if the Court determines that it is unable on the record before it to determine the amount of reasonable attorneys' fees and disbursements to be awarded and requires further briefing and/or a hearing on the matter, Plaintiff respectfully requests that the Court grant Plaintiff's proposed Order and Judgment and sever its request for attorneys' fees and disbursements. That issue should be set down for further briefing and/or a hearing. An alternative proposed Order and Judgment providing for that is annexed hereto as Exhibit A. This proposed Order and Judgment is identical to the prior proposed Order and Judgment submitted by Plaintiff other than that it severs its request for attorneys' fees and disbursements.

20.     Fourth, with regard to the order of attachment granted by the Court, Liddle argues that $150,000 of the sale proceeds of $2,181,207.77 from the sale of the Cooperative Apartment Units 19M and 19N (the "Apartment") located in the cooperative apartment building at 11 Fifth Avenue, New York, New York 10003 (the "New York Property"), currently held in escrow by Diane C. Nardone, Esq., counsel for Liddle in connection with the sale of the New York

Property, should not be subject to the order of attachment and should be released to him pursuant to CPLR § 5206(a).

21.     Simply put, Liddle is wrong and he is not entitled to any homestead exemption, and even if he is, he has already used it.

22.     A person seeking to exercise the homestead exemption granted by CPLR § 5206(a) must "both own and actually occupy the real property at issue" at the time he seeks the exemption. *In re Santiago*, No. 11-12843, 2012 WL 393405, at *2 (Bankr. S.D.N.Y. Feb. 6, 2012). *See also First Fed. Sav. & Loan Ass'n of Rochester v. Brown*, 78 A.D.2d 119, 123, 434 N.Y.S.2d 306, 310 (4th Dep't 1980) ("The 'homestead exemption' under section 5206 (subd. (a)) of the CPLR exempts only 'real property' from application to the satisfaction of money judgments. Inasmuch as the surplus money arising out of this foreclosure sale becomes personal property, section 5206 has no application to such funds."). Here, Liddle has voluntarily sold the New York Property and thus no longer owns or occupies it. As a result, the homestead exemption he seeks under § 5206(a) is not applicable. What he is actually seeking here is a homestead exemption as to the proceeds of the voluntary sale of the New York Property. While CPLR § 5206(e) does provide for a limited homestead exemption for the proceeds from a sale of homestead property, it only applies to the proceeds of an involuntary foreclosure sale, not a voluntary sale. *See, e.g., In re Santiago*, 2012 WL 393405, at *2 ("In this case, the Debtor neither owned nor occupied the Property on the petition date because she sold any interest she had in it nine months before filing for bankruptcy. This makes CPLR 5206(a) inapplicable for an exemption in the Debtor's favor. New York's limited exemption for sale proceeds under CPLR 5206(e) is similarly inapplicable because the Debtor and her mother sold the Property voluntarily. Thus, the Debtor's homestead exemption has no statutory basis and must be

7

stricken."); *In re Murdock*, No. 07-61934, 2008 WL 728879, at *4 (Bankr. N.D.N.Y. Mar. 17, 2018) ("NYCPLR § 5206(e) applies only to *involuntary* sales. Like New Mexico, the New York legislature has had ample opportunity to exempt proceeds from the voluntary sale of a homestead, most recently when it amended the statute in 2005 to increase the limit of the homestead exemption from $10,000 to $50,000. It made no such amendment."). Here, again, Liddle's sale of the New York Property was voluntary and not the product of an involuntary foreclosure or sale. New York law simply does not provide for a homestead exemption for the proceeds of a voluntary sale of homestead property. Thus, while the Court granted Plaintiff an order of attachment subject to any applicable homestead exemption, no such exemption is applicable to the proceeds of the sale of the New York Property.

23.    Even assuming, arguendo, that there is an applicable homestead exemption to the proceeds of a voluntary sale of a homestead—which there is not—Liddle has already used up his entire exempt amount of $150,000 by making the following eight payments to unsecured creditors out of the proceeds of the sale of the New York Property, which total $542,796.26:

| | | | |
|---|---|---|---|
| A. | The Third Brevoort Corporation.............................. Maintenance Arrears for 19M/N | $ | 65,683.71 |
| B. | The Third Brevoort Corporation.............................. 2% Transfer Fee (Flip Tax) | $ | 132,000.00 |
| C. | Warburg Realty...................................................... Broker's Commission | $ | 196,000.00 |
| D. | TitleVest ............................................................... Includes Eagle 9 Policy, NY City Property Transfer Tax, NY State Transfer Tax, Filing Fees, etc. | $ | 120,885.00 |
| E. | Diane C. Nardone ................................................... Legal Fees for Liddle's closing attorney 11 Fifth Avenue - Unit 19M/N | $ | 26,000.00 |
| F. | Abrams Garfinkel Margolis Berman ........................ Legal Fees for Sterling Banks Closing Attorney | $ | 575.00 |

FILED: ERIE COUNTY CLERK 02/20/2019 05:26 PM
NYSCEF DOC. NO. 473
19-10747-shl    Doc 186    Filed 09/27/19    Entered 09/27/19 14:09:43    Main Document
INDEX NO. 814703/2018
RECEIVED NYSCEF: 02/20/2019
Pg 28 of 39

G.   Douglas Elliman Property Management................................. $         747.80
     Management Closing Fee plus $.05 x 956 stock transfer

H.   The Third Brevoort Corporation............................................. $        904.75
     Final Electric Invoice

24.     In short, Liddle cannot use the proceeds of the sale of the New York Property that
would otherwise be subject to the order of attachment in order to pay personal obligations and
then claim an additional homestead exemption. That is a classic case of "double dipping" and not
what the statute intended.

25.     For all of these reasons, Liddle's request for a $150,000 homestead exemption
should be rejected.

## CONCLUSION

26.     For all of the reasons set forth herein, Plaintiff's proposed Order and Judgment
should be entered, and Liddle's request to secure a homestead exemption should be denied.

WHEREFORE, it is respectfully requested that Plaintiff's proposed Order and Judgment
be granted in its entirety.

LARRY HUTCHER

Sworn to before me this
20th day of February, 2019

Notary Public

JOSEPHINE VITIELLO
Notary Public, State of New York
No. 01VI6037595
Qualified in Putnam County
Commission Expires February 22, 2022

**<u>Exhibit C</u>**
**<u>Letter from Larry Hutcher to Justice Deborah Chimes (Feb. 26, 2019)</u>**



# DAVIDOFF HUTCHER & CITRON LLP

ATTORNEYS AT LAW

605 THIRD AVENUE
NEW YORK, NEW YORK 10158

TEL: (212) 557-7200
FAX: (212) 286-1884
WWW.DHCLEGAL.COM

FIRM OFFICES

GARDEN CITY
ATTORNEYS AT LAW
200 GARDEN CITY PLAZA
GARDEN CITY, NY 11530
(516) 248-6400

ALBANY
GOVERNMENT RELATIONS
150 STATE STREET
ALBANY, NY 12207
(518) 465-8230

WASHINGTON, D.C.
GOVERNMENT RELATIONS
201 MASSACHUSETTS AVENUE N.E.
WASHINGTON, D.C. 20002
(202) 347-1117

WRITER'S DIRECT: (646) 428-3248
E-MAIL: LKH@dhclegal.com

February 26, 2019

**Via NYSCEF Filing & By Hand**

Honorable Deborah A. Chimes, J.S.C.
Supreme Court of the State of New York
County of Erie
Part 33 - Ninth Floor
50 Delaware Avenue
Buffalo, New York 14202

Re:  **Counsel Financial II LLC v. Liddle & Robinson LLP et al.**
     **Index No. 814703/2018**

Dear Justice Chimes:

While I am loathe to burden this court with yet additional papers, especially in view of the fact that Your Honor has established a call for tomorrow morning, Wednesday, February 27, 2019, Ms. Nardone's letter leaves me with no choice but to respond.

Ms. Nardone, who is currently serving as Escrow Agent and holding the sum of $2,181,207.77 in escrow in her Attorney IOLA Account pursuant to the Stipulation and Order that was "So Ordered" by the Court on February 4, 2019, should be admonished. That she has the utter audacity to tell Your Honor that she "intend[s] to release $1,090,603.88 to Tara Liddle no later than Friday, March 1, 2019 . . . and will also release $150,000 to Jeffrey Liddle on that same date" is simply shocking. Ms. Nardone then goes on to ask the Court for its written confirmation that she is authorized to proceed as she "intends" to do.

Since Ms. Nardone has identified herself to the Court as a real estate attorney, it is clear that she knows nothing about litigation. However, since she is serving as escrow agent, this is not a valid excuse for her intemperate conduct and the Court should remove her as escrow agent as more fully described infra.

In stating that she intends to release from escrow any part of the funds that have been deposited with her as Escrow Agent, Ms. Nardone blatantly ignores Paragraph 3 of the Stipulation and Order that was "So Ordered" by the Court on February 4, 2019, which provides that the net proceeds of sale from the sale of the subject Apartment "shall be held in escrow by Diane C. Nardone, Esq. ("Nardone") . . . in her Attorney IOLA Account, subject to the TRO

645327v.1

DAVIDOFF HUTCHER & CITRON LLP

Honorable Deborah A. Chimes, Justice
Supreme Court of the State of New York
County of Erie
February 26, 2019
Page 2

pending the hearing and determination of Plaintiff's motion for an order of attachment and a further order of this Court disposing of that motion for an order of attachment." To date, no such "further order of this Court" has been entered. Thus, it is entirely improper for Ms. Nardone to shift the responsibility for the release of the escrow funds to a condition that she unilaterally established that contradicts Your Honor's prior instructions.

Pursuant to our prior submissions, we have previously pointed out that:

A.     In my Affidavit in Further Support of Plaintiff's Proposed Order and Judgment, sworn to on the 20th day of February, 2019, Counsel Financial has clearly demonstrated that there is no "applicable homestead exemption" with respect to the net proceeds of the sale that Ms. Nardone is holding in escrow (*see* ¶ 22 of the Hutcher Affidavit). In addition, assuming, *arguendo*, that there was an "applicable homestead exemption" with respect to those net proceeds of sale, Jeffrey L. Liddle has already used up that homestead exemption, and the net proceeds of sale that Ms. Nardone is holding in escrow are not subject to any further homestead exemption in favor of Mr. Liddle (*see* ¶¶ 23 and 24 of the Hutcher Affidavit).

B.     Tara Liddle, Mr. Liddle's wife, is not a party to this action and has no standing in the pending litigation.  Accordingly, the entirety of the escrowed funds that are subject to the TRO in effect and that will be subject to the order of attachment to be entered by the Court may not be invaded for the benefit of Mrs. Liddle. If and when Mrs. Liddle intervenes in this action and asserts any claim to the escrowed funds, we shall oppose those claims based, *inter alia*, upon fraud, aiding and abetting fraud, waiver, estoppel, and relinquishment.

To release any funds to Mrs. Liddle at this time without first affording Counsel Financial the opportunity to prove its claim against her would cause Counsel Financial extreme prejudice since it is clear that these funds will be dissipated unless held in escrow. Unlike the Liddles, Counsel Financial is certainly able to account for and pay any money that would ultimately be owed to Mrs. Liddle.

Finally, and as aforesaid, Ms. Nardone has demonstrated that she is not an appropriate party to serve as the escrow agent any longer with respect to the escrowed funds. Therefore, we respectfully request that my firm be designated as the new escrow agent for those funds or direct that they be deposited with the Court.

We look forward to speaking with Your Honor on the call tomorrow to further flesh out these arguments if necessary.

645327v.1

DAVIDOFF HUTCHER & CITRON LLP

Honorable Deborah A. Chimes, Justice
Supreme Court of the State of New York
County of Erie
February 26, 2019
Page 3

Respectfully submitted,

Larry Hutcher

cc:   Steven Wells, Esq. (via NYSCEF)
      Jeffrey L. Liddle, Esq. (via NYSCEF)
      Diane C. Nardone, Esq. (via email)
      Arnold Reiter, Esq. (via NYSCEF)

**<u>Exhibit D</u>**
**<u>Order and Judgment (Mar. 5, 2019)</u>**

At IAS Part 33 of the Supreme Court
of the State of New York, held in
and for the County of Erie in the City
of Buffalo, New York, on the 1 1
day of February, 2019.

PRESENT: <u>HON. DEBORAH A. CHIMES, J.S.C.</u>

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ERIE

-----------------------------------------------------------x

COUNSEL FINANCIAL II LLC,

         Plaintiff,

    -against-

LIDDLE & ROBINSON LLP,
JEFFREY L. LIDDLE,
BLAINE H. BORTNICK, and
JAMES RYAN HUBBARD,

         Defendants.

-----------------------------------------------------------x

Index No.: 814703/2018

**ORDER AND JUDGMENT
AGAINST DEFENDANTS LIDDLE
& ROBINSON LLP AND
<u>JEFFREY L. LIDDLE</u>**

    Plaintiff Counsel Financial II LLC ("Plaintiff"), by and through its attorneys, Davidoff

Hutcher & Citron LLP, having moved pursuant to CPLR § 3213 for summary judgment in lieu

of complaint against Defendants Liddle & Robinson LLP ("L&R") and Jeffrey L. Liddle

("Liddle," and collectively with L&R, "Defendants") (the "Motion for Summary Judgment");

    **NOW**, upon reading Plaintiff's Notice of Motion For Summary Judgment in Lieu of

Complaint, dated September 18, 2018, the Affidavit of Megan B. Payne in Support of Motion

For Summary Judgment, sworn to on September 18, 2018, and the exhibits annexed thereto, and

Plaintiff's Memorandum of Law in Support of Its Motion For Summary Judgment in Lieu of

Complaint, dated September 18, 2018, all submitted in support of the Motion for Summary

Judgment; Defendants' Memorandum of Law in Opposition to Plaintiff's Motion For an

Attachment in Support of Its Pending 3213 Motion, and to Vacate the Temporary Restraining

Order, and For Such Other and Further Relief as May Be Just and Proper, dated January 18, 2019, and the Affidavit of Jeffrey L. Liddle, sworn to on January 18, 2019, and the exhibits annexed thereto, all submitted, *inter alia*, in opposition to the Motion for Summary Judgment; and the Reply Affidavit of Megan B. Payne in Support of Plaintiff's Motions For (A) Summary Judgment in Lieu of Complaint, and (B) an Order of Attachment, sworn to on January 24, 2019, and the exhibits annexed thereto, the Affidavit of James Ryan Hubbard, sworn to on January 24, 2019, the Affidavit of Blaine H. Bortnick, sworn to on January 24, 2019, and the Reply Memorandum of Law in Further Support of Plaintiff's Motion For Summary Judgment in Lieu of Complaint and Motion For an Order of Attachment, dated January 24, 2019, all submitted, *inter alia*, in further support of the Motion for Summary Judgment; and

Upon oral argument conducted before the Honorable Deborah A. Chimes, Justice, on February 11, 2019, with Plaintiff having appeared by its attorney, Larry Hutcher, Esq., of Davidoff Hutcher & Citron LLP, and Defendants Liddle and L&R having appeared *pro se*; and

Upon the Court having had an opportunity to review and consider all of the prior pleadings and proceedings heretofore had herein, the papers submitted in support of and in opposition to the Motion for Summary Judgment, and the factual and legal issues relating thereto, and pursuant to the Court's bench decision on February 11, 2019, a copy of the stenographic transcript of which is attached hereto as **"Exhibit A,"** it is hereby:

**ORDERED,** that Plaintiff's Motion for Summary Judgment is hereby granted in its entirety; and it is further

**ORDERED,** that this Court hereby directs the Clerk of the Court to enter Judgment as follows:

2

**IT IS HEREBY:**

**ADJUDGED AND DECREED,** that Plaintiff is awarded judgment against Defendants Liddle & Robinson LLP and Jeffrey L. Liddle, jointly and severally, in the amount of FIVE MILLION EIGHT HUNDRED SEVENTY-EIGHT THOUSAND FIVE HUNDRED SIXTY-FIVE DOLLARS ($5,878,565), plus pre-judgment interest at the contractual default rate of 24.9% per annum from September 19, 2018, to the date of entry of judgment in the amount of $662,759, plus costs and disbursements as taxed by the Clerk in the amount of $ _600.00_ , amounting in all to a judgment in the total amount of $_6,541,924_ , and post-judgment interest at the contractual default rate of 24.9% per annum, and Plaintiff shall have execution therefor; and it is further

**ADJUDGED AND DECREED,** that with respect to Plaintiff's request for reasonable attorneys' fees and disbursements, on the issue of liability, judgment is rendered in favor of Plaintiff, and on the issue of the amount of reasonable attorneys' fees and disbursements to be awarded, that issue is hereby severed for a determination as to said amount.

ENTERED:

_Deborah A. Chimes_  3/5/19

HON. DEBORAH A. CHIMES, J.S.C.

JUDGMENT ENTERED ON FEBRUARY __, 2019

_____

CLERK OF THE COURT

3

1

1   STATE OF NEW YORK     :     SUPREME COURT
    COUNTY OF ERIE        :     PART 35
2   ─────────────────────────────────────────

3   COUNSEL FINANCIAL LLC
              Plaintiff,
4
        -against-                    INDEX # 814703-2018
5
    LIDDLE & ROBINSON, LLP, ET AL,
6             Defendants.

7   ─────────────────────────────────────────

                              50 Delaware Avenue
8                             Buffalo, New York
                              February 11, 2018
9

10  B e f o r e:
                     HONORABLE DEBORAH H. CHIMES,
11                   Supreme Court Justice

12

13  A p p e a r a n c e s:

14             LARRY HUTCHER, ESQ.,
               Appearing for the Plaintiff.
15
               JEFFREY L. LIDDLE, ESQ.,
16             Appearing Pro Se.

17

18

19                           TAMARA M. PISCITELLO
                             Senior Court Reporter
20

21

22

23

24

25

2

1          THE COURT:  All right.  Court's ready to make a

2     decision.  Plaintiff moves for summary judgment under CPLR

3     3213 under NYCEF motion number one directing entry of

4     judgment in the amount of $5,980,530 plus costs,

5     disbursements and attorney fees and for an order of

6     attachment under CPLR 6201 subsection 3 filed under NYCEF

7     motion number two.

8          CPLR 3213 allows a plaintiff to file a motion

9     for summary judgment in lieu of complaint when an action

10     is based upon an instrument for the payment of money only.

11     Here the instrument is a revolving promissory note

12     together with its allonges.  Pursuant to the note, the

13     amount due and the interest can be determined from the

14     four corners of the instrument and therefore qualifies as

15     an instrument for the payment of money only.  Defendant

16     failed to raise a question of fact on either the

17     instrument itself or the amount due.  Therefore,

18     plaintiff's motion is granted.  Regarding --

19          MR. HUTCHER:  Excuse me, plaintiff's emotion?

20          THE COURT:  Yes.  Regarding motion for

21     attachment, the plaintiff established the necessary

22     elements pursuant to CPLR 6201 subsection 3 and 6212.  An

23     order of attachment is granted subject to any applicable

24     homestead exemption and the undertaking previously posted

25     is continued.  Plaintiff is to submit the order, attaching

FILED: ERIE COUNTY CLERK 03/05/2019 02:05 PM
INDEX NO. 814703/2018
NYSCEF DOC. NO. 147
RECEIVED NYSCEF: 03/05/2019

19-10747-shl    Doc 186    Filed 09/27/19    Entered 09/27/19 14:09:43    Main Document
Pg 39 of 39

3

1              a copy of the decision to the order.  Thank you.

2                    MR. HUTCHER:  Thank you, Your Honor.

3

4                         *       *       *       *

5

6

7              This is to certify that the foregoing is a

8    correct transcription of the proceedings recorded by me in

9    this matter.

10

11

12                    TAMARA M. PISCITELLO
13                    Senior Court Reporter

14

15

16

17

18

19

20

21

22

23

24

25