DAVIDOFF HUTCHER & CITRON LLP      **Hearing: October 22, 2019, at 10:00 am**
605 Third Avenue
New York, New York 10158
(212) 557-7200
David H. Wander, Esq.
dhw@dhclegal.com
*Attorneys for Counsel Financial Holdings LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
In re:                                             Chapter 11

JEFFREY LEW LIDDLE,                                Case No. 19-10747-shl

                          Debtor.
-------------------------------------------------------X

**OBJECTION BY COUNSEL FINANCIAL HOLDINGS LLC
("COUNSEL FINANCIAL") TO DEBTOR'S MOTION,
PURSUANT TO BANKRUPTCY RULE 2004, FOR AN ORDER
DIRECTING THE EXAMINATION OF COUNSEL FINANCIAL
AND REQUIRING THE PRODUCTION OF DOCUMENTS BY
<u>COUNSEL FINANCIAL [DOC 180]</u>**

TO THE HONORABLE SEAN H. LANE,
UNITED STATES BANKRUPTCY JUDGE:

Counsel Financial Holdings LLC ("<u>Counsel Financial</u>"), by its attorneys, Davidoff Hutcher & Citron LLP, submits the following objection to the Debtor's motion, pursuant to Bankruptcy Rule 2004, for an order directing the examination of Counsel Financial and the production of documents [Doc 180] ("<u>Motion</u>") and represents and states:

1.     The Motion fails to provide good cause for the proposed examination and production of documents.  The Motion is a boilerplate pleading and its only purpose can be to harass Counsel Financial.  For example, the Debtor proposes to examine Counsel Financial about "CF Holdings' investors," Motion, ¶ 7(c), without providing any reason why such topic is relevant.

1

2.      Counsel Financial filed a proof of claim, claim no. 18, and it includes (i) a list of all interest, fees, and payments; (ii) the loan documents signed by Jeffrey Liddle on behalf of the Debtor, and (ii) the UCC-1 statements that were filed to perfect Counsel Financial's security interest.[1]  See **Exhibit A**.

3.      While Rule 2004 is admittedly broad, it is precisely because of that breadth that courts have recognized the need to impose limits and safeguards to keep the rule from being abused. It is well-established that a party in interest seeking authority to use Bankruptcy Rule 2004 bears the burden to establish "good cause" for the relief requested. *In re Express one Int'l, Inc.*, 217 B.R.215, 217 (Bankr. E.D. Tex. 1998) ("[T]he one seeking to conduct a 2004 examination has the burden of showing good cause for the examination which it seeks." (Quoting *In re Eagle-Picher Indus., Inc.* 169 B.R. 130, 134 (Bankr. S.D. Ohio 1994)); *In re Hammond*, 140 B.R. 197, 201 (S.D. Ohio 1992) (holding that "the examiner has the burden of establishing that "good cause" exists for the taking of the [Rule 2004] examination"); *In re Coffee Cupboard, Inc.,* 128 B.R. 509, 514 (Bankr. E.D.N.Y. 1991) (Holding that just because "documents meet the requirement of relevance does not alone demonstrate that there is good cause for requiring their production.")

4.      "The burden of showing good cause is an affirmative one in that it is not satisfied merely by a showing that justice would not be impeded by production of the documents." *In re Drexel Burnham Lambert group, Inc.,* 123 B.R. 702, 712 (Bankr. S.D.N.Y. 1991). Instead, good cause only exists where the "examination sought is necessary to establish the claim of the party seeking the examination, or the denial of such request would cause the proposed examiner undue

---

[1] There is a procedure for filing objections to claims (which is also subject to Bankruptcy Rule 9011), and a Rule 2004 end-run around such procedures should not be allowed, especially when no reason is stated for the proposed examination and production of documents.

2

hardship or injustice." *In re Express one Int'l, Inc.*, 217 B.R. at 217 (citing In re Dinubilo, 177 B.R. 932, 940 (E.D. Cal. 1993)) (emphasis added).

5.      Rule 2004 requires the "balanc[ing] [of] the competing interests of the parties, weighing the relevance of and necessity of the information sought by examination." *In re Eagle-Picher Indus., Inc.* 169 B.R. at 134. "[I]f the cost and disruption to the examinee attendant to a requested examination outweigh the benefits to the examiner, the request should be denied," *In re Express One Int'l, 217 B.R. at 217.*

6.      In the present case, the Motion should be denied because the Debtor has not even attempted to show any cause, let alone good cause, for the proposed examination and production of documents.

Dated: New York, New York
        October 22, 2019

                                DAVIDOFF HUTCHER & CITRON LLP


                                By: /s/ David H. Wander
                                    David H. Wander
                                605 Third Avenue
                                New York, NY 10158
                                (212) 557-7200
                                *Attorneys for*
                                *Counsel Financial Holdings LLC*

# EXHIBIT - A

**Fill in this information to identify the case:**

Debtor 1 __Jeffrey Liddle, et al.__

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court __Southern District of New York__

Case number: __19-10747__

FILED

**U.S. Bankruptcy Court**
**Southern District of New York**

9/25/2019

**Vito Genna, Clerk**

## Official Form 410
## Proof of Claim

04/19

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

| **Part 1:** | **Identify the Claim** |
| --- | --- |

**1. Who is the current creditor?**

Counsel Financial Holdings LLC

Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom?

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Counsel Financial Holdings LLC

Name

6400 Main Street, Ste. 120
Williamsville, NY 14221

Contact phone ___212-557-7200___

Contact email ___dhw@dhclegal.com___

Where should payments to the creditor be sent? (if different)

David H. Wander

Name

605 Third Avenue

New York, NY 10158

Contact phone ___212-557-7200___

Contact email ___dhw@dhclegal.com___

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

**4. Does this claim amend one already filed?**

☑ No
☐ Yes. Claim number on court claims registry (if known)

Filed on _____

MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing?

Official Form 410                    Proof of Claim                    page 1

**Part 2:** Give Information About the Claim as of the Date the Case was Filed

| | |
|---|---|
| **6. Do you have any number you use to identify the debtor?** | ☑ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____ |

| | |
|---|---|
| **7. How much is the claim?** | $ _____2157154.12_____ **Does this amount include interest or other charges?**<br>☐ No<br>☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as healthcare information.

money loaned

**9. Is all or part of the claim secured?**

☐ No
☑ Yes. The claim is secured by a lien on property.

   **Nature of property:**
   ☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410–A) with this *Proof of Claim*.
   ☐ Motor vehicle
   ☑ Other. Describe:    all assets of debtor

   **Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

   **Value of property:**    $ _____

   **Amount of the claim that is secured:**    $ _____2157154.12_____

   **Amount of the claim that is unsecured:**    $ _____0.00_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

   **Amount necessary to cure any default as of the date of the petition:**    $ _____

   **Annual Interest Rate** (when case was filed)    18 %

   ☐ Fixed
   ☑ Variable

| | |
|---|---|
| **10. Is this claim based on a lease?** | ☑ No<br>☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ _____ |

| | |
|---|---|
| **11. Is this claim subject to a right of setoff?** | ☑ No<br>☐ Yes. Identify the property: _____ |

| 12. | Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No<br>☐ Yes. *Check all that apply:* | | Amount entitled to priority |
|---|---|---|---|---|

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). $ _____

☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). $ _____

☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). $ _____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). $ _____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). $ _____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(_) that applies $ _____

\* Amounts are subject to adjustment on 4/1/22 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3: Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.
18 U.S.C. §§ 152, 157 and 3571.**

Check the appropriate box:

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   9/25/2019
　　　　　　　　　　 MM / DD / YYYY

/s/ David H. Wander, Esq.

Signature

Print the name of the person who is completing and signing this claim:

Name   David H. Wander, Esq.
　　　　First name　　Middle name　　Last name

Title   Partner

Company   Davidoff Hutcher & Citron

Identify the corporate servicer as the company if the authorized agent is a servicer

Address   605 Third Avenue
　　　　　 Number  Street
　　　　　 New York, NY 10158
　　　　　 City  State  ZIP Code

Contact phone   212-557-7200     Email   dhw@dhclegal.com

| Official Form 410 | Proof of Claim | page 3 |
|---|---|---|

**Fill in this information to identify the case:**

Debtor 1 _Jeffrey L. Liddle_

Debtor 2 _____
(Spouse, if filing)

United States Bankruptcy Court for the: Southern District of New York

Case number _19 - 10747_

## Official Form 410

# Proof of Claim

04/16

**Read the instructions before filling out this form.** This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

### Part 1: Identify the Claim

**1. Who is the current creditor?**

_Counsel Financial Holdings, LLC_
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☒ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

_David H. Wander, Esq._
Name

_605 Third Avenue_
Number    Street

_New York    NY    10158_
City    State    ZIP Code

Contact phone _212-557-7200_

Contact email _dhw@dhclegal.com_

Where should payments to the creditor be sent? (if different)

Name _____

Number    Street

City    State    ZIP Code

Contact phone _____

Contact email _____

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

___ ___ ___ ___ ___ ___ ___ ___ ___ ___ ___ ___ ___ ___ ___ ___ ___ ___ ___ ___ ___ ___ ___ ___

**4. Does this claim amend one already filed?**

☒ No
☐ Yes. Claim number on court claims registry (if known) _____

Filed on ___/___/_____
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☒ No
☐ Yes. Who made the earlier filing? _____

**Part 2:** Give Information About the Claim as of the Date the Case Was Filed

6. Do you have any number you use to identify the debtor?

☒ No
☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____

7. How much is the claim? $ *2,157,154.12*. Does this amount include interest or other charges?

☐ No
☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

8. What is the basis of the claim?

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

*Money loaned*

9. Is all or part of the claim secured?

☐ No
☒ Yes. The claim is secured by a lien on property.

**Nature of property:**
☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.
☐ Motor vehicle
☒ Other. Describe: *all assets of debtor*

**Basis for perfection:** _____
Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property: $ *Unknown*
Amount of the claim that is secured: $ *2,157,154.12*
Amount of the claim that is unsecured: $ *∅* (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition: $ _____

Annual Interest Rate (when case was filed) _____%
☐ Fixed
☐ Variable

10. Is this claim based on a lease?

☒ No
☐ Yes. Amount necessary to cure any default as of the date of the petition. $ _____

11. Is this claim subject to a right of setoff?

☒ No
☐ Yes. Identify the property: _____

Official Form 410        Proof of Claim        page 2

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☒ No

☐ Yes. *Check one:*

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).

☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies.

Amount entitled to priority

$_____

$_____

$_____

$_____

$_____

$_____

* Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment.

---

## Part 3: Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Check the appropriate box:

☐ I am the creditor.

☒ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  9/24/2019
              MM / DD / YYYY

Signature

Print the name of the person who is completing and signing this claim:

Name        David                    H.                    Wander
            First name               Middle name           Last name

Title       Partner

Company     Davidoff Hutcher & Citron
            Identify the corporate servicer as the company if the authorized agent is a servicer.

Address     605    Third Avenue
            Number   Street
            New York                        NY            10158
            City                            State         ZIP Code

Contact phone   212 557 7200            Email   dhw@dhclegal.com

**In re Jeffrey L. Liddle, Case No. 19-10747**

Index to Attachments to Proof of Claim By Counsel Financial Holdings, LLC

1. Loan Summary
2. Revolving Promissory Note
3. Guaranty of Payment and Performance
4. Security Agreement
5. UCC-1 Financing Statement

# Attachment 1

**Counsel Financial Holdings, LLC**
6400 Main Street, Suite 120
Williamsville, NY 14221

Statement date: 4/2/2019

**Liddle & Robinson, LLP**
800 Third Avenue, 8th Floor
New York, NY 10022

| | |
|---|---|
| Total Line of Credit | $1,775,000.00 |
| Interest Rate: | 18.00% plus LIBOR over 1% |
| Principal Balance Outstanding: | $1,729,004.29 |

| Date | Transaction | Loan Principal | Loan Interest | Fees Charged | Principal Payments | Interest/Fee Payments | Account Balance | |
|---|---|---|---|---|---|---|---|---|
| 12/31/17 | Stipulated Amount dated 1/22/18 | 1,418,064.63 | 59,112.29 | 337,898.65 | 0.00 | 351,671.14 | $1,463,404.43 | Stipulated Amount |
| 01/23/18 | Principal Borrowed | 310,939.66 | 0.00 | 0.00 | 0.00 | 0.00 | $1,774,344.09 | |
| 01/23/18 | CF2 Interest Due | 0.00 | 0.00 | 160,909.66 | 0.00 | 0.00 | $1,935,253.75 | |
| 01/23/18 | Wire Transfer Charge | 0.00 | 0.00 | 30.00 | 0.00 | 0.00 | $1,935,283.75 | |
| 01/23/18 | Payment (Deducted from wire) | 0.00 | 0.00 | 0.00 | 0.00 | 160,939.66 | $1,774,344.09 | |
| 01/31/18 | Interest Calculated | 0.00 | 24,106.58 | 0.00 | 0.00 | 0.00 | $1,798,450.67 | |
| 02/28/18 | Interest Calculated | 0.00 | 24,986.03 | 0.00 | 0.00 | 0.00 | $1,823,436.71 | |
| 03/31/18 | Interest Calculated | 0.00 | 27,826.88 | 0.00 | 0.00 | 0.00 | $1,851,263.59 | |
| 04/30/18 | Interest Calculated | 0.00 | 27,203.00 | 0.00 | 0.00 | 0.00 | $1,878,466.59 | |
| 05/31/18 | Interest Calculated | 0.00 | 28,154.43 | 0.00 | 0.00 | 0.00 | $1,906,621.02 | |
| 06/01/18 | Late Fee Credit | 0.00 | 0.00 | 0.00 | 0.00 | 1,873.67 | $1,904,747.35 | |
| 06/30/18 | Interest Calculated | 0.00 | 27,375.90 | 0.00 | 0.00 | 0.00 | $1,932,123.25 | |
| 07/31/18 | Interest Calculated | 0.00 | 28,437.32 | 0.00 | 0.00 | 0.00 | $1,960,560.57 | |
| 08/31/18 | Interest Calculated | 0.00 | 28,407.54 | 0.00 | 0.00 | 0.00 | $1,988,968.11 | |
| 09/30/18 | Interest Calculated | 0.00 | 27,534.39 | 0.00 | 0.00 | 0.00 | $2,016,502.51 | |
| 10/31/18 | Interest Calculated | 0.00 | 28,690.42 | 0.00 | 0.00 | 0.00 | $2,045,192.93 | |
| 11/30/18 | Interest Calculated | 0.00 | 27,822.56 | 0.00 | 0.00 | 0.00 | $2,073,015.49 | |
| 12/31/18 | Interest Calculated | 0.00 | 28,854.20 | 0.00 | 0.00 | 0.00 | $2,101,869.69 | |
| 01/31/19 | Interest Calculated | 0.00 | 29,047.75 | 0.00 | 0.00 | 0.00 | $2,130,917.44 | |
| 02/28/19 | Interest Calculated | 0.00 | 26,236.68 | 0.00 | 0.00 | 0.00 | $2,157,154.12 | |
| 03/31/19 | Interest Calculated | 0.00 | 29,003.09 | 0.00 | 0.00 | 0.00 | $2,186,157.21 | |
| 04/02/19 | Interest Calculated | 0.00 | 1,872.13 | 0.00 | 0.00 | 0.00 | $2,188,029.34 | |
| | | $1,729,004.29 | $474,671.21 | $498,838.31 | $0.00 | $514,484.47 | $2,188,029.34 | Current Balance |

# Attachment 2

CONFIDENTIAL

# REVOLVING PROMISSORY NOTE
## Counsel Financial Holdings LLC

Delivered in Buffalo, New York

$1,000,000
June 1, 2017

For value received, **LIDDLE & ROBINSON LLP**, a limited liability partnership organized under New York law ("**Borrower**"), having its principal office located at 800 Third Avenue, 8th Floor, New York, NY 10022, promises to pay to the order of **COUNSEL FINANCIAL HOLDINGS LLC**, a Delaware limited liability company ("**Lender**"), in lawful money of the United States and immediately available funds, any of the offices of Lender at 6400 Main Street, Suite 120, Williamsville, NY 14221 the principal amount of $1,000,000 or the Outstanding Principal Amount (as defined below) if less, together with all interest, fees, charges and costs and expenses payable under this Note, all at the times and in the manner provided in Section 2 below.

1. **DEFINITIONS.** For purposes of this Note:

a. **"Advance Period"** means the period starting on the date of this Note and ending on July 31, 2018.

b. **"Amortizing Period"** means the period starting immediately following the end of the Advance Period and ending on the Maturity Date.

c. **"Budget"** means the budget attached hereto as **Exhibit A** or a budget for any subsequent year approved by Holder in its sole discretion.

d. **"Collateral"** means the "Collateral" as defined in the Security Agreement or any other collateral securing from time to time the obligations of Borrower or any Guarantor to Holder.

e. **"Credit"** means a revolving credit facility made available by Lender to Borrower in the maximum principal amount equal to the Maximum Amount.

f. **"Event of Default"** means "Event of Default" as defined in Section 5 hereof.

g. **"Guarantor"** means, other than Borrower, any Person (i) who or that is now or hereafter liable, whether directly or indirectly or absolutely or contingently, for the payment of any of the Outstanding Principal Amount or any interest or other amount payable pursuant to this Note or (ii) any asset of whom or which now or hereafter directly or indirectly secures the payment of any of the Outstanding Principal Amount or any such interest or other amount.

h. **"Holder"** means Lender or any transferee of this Note.

i. **"Hamptons Property"** means that certain real estate owned by Jeffrey L. Liddle located at 560 Main Street and 554 Main Street, Quiogue, New York that is subject to a mortgage in favor of Lender.

j. **"LIBOR Rate"** means the one-month London Interbank Offered Rate, as fixed by the British Bankers Association for United States dollar deposits in the London interbank market at approximately 11:00 a.m. London, England time (or as soon thereafter as practicable) each day, as determined by Lender from any broker, quoting service or commonly available source utilized by Lender or a comparable rate or index selected by Lender should such London Interbank Offered Rate cease to be determined in such manner, cease to exist or otherwise become unavailable.

Initials

19-10747-shl 19-10747-shl Doc 208 Claim 23-1 Filed 10/22/19 Part 2 Entered 10/22/19 18:53:04 Filed 09/25/19 Pg 9 of 9 Main Document
Pg 16 of 56

19-10747-shl    Doc 55-10    Filed 04/22/19    Entered 04/22/19 16:44:04    Exhibit J
Pg 3 of 17

CONFIDENTIAL

k. **"Loan"** means any loan by Holder pursuant to the Credit.

l. **"Loan Documents"** means collectively (a) this Note, (b) the Security Agreement, (c) each other security agreement, assignment, mortgage, document, instrument, letter and certificate that has been or is hereafter executed and delivered in connection with any of the foregoing and (d) each amendment, increase, extension, amendment and restatement or replacement of any of the foregoing.

m. **"Loan Request"** means any oral (including, but not limited to, telephonic), written or other (including, but not limited to, facsimile or email) request for a Loan.

n. **"Maturity Date"** has the meaning set forth in Section 2(a)(ii) of this Note.

o. **"Maximum Amount"** means $1,000,000 US currency, as reduced in accordance with Section 2 (b) (ii) of this Note.

p. **"Net Fees and Expenses"** means all legal fees and any other amounts paid or reimbursed to Borrower for Costs, and Expenses (as defined in the next sentence), resulting from any client representation or referral (whether contingent, hourly, fixed fee or other) after payment of all amounts owing to third party lawyers (other than employees or partners of Borrower) for assistance or referral with respect to such client representation. **"Costs and Expenses"** as used in the preceding sentence means all costs, disbursements, advances and other expenses, however denominated, of any type or character, whether an out-of-pocket expense or an internal cost or expense that is allocated by Borrower to specific clients, including without limitation, all court and filing fees, witness, expert and private investigators fees and expenses, search and research charges, and reproduction, meal, travel, mailing, fax, overtime, secretarial and delivery and courier charges, that are reimbursable or payable to Borrower.

q. **"New York Property"** means that certain real estate owned by Jeffrey L. Liddle located at 11 Fifth Avenue, Apts. 19M and 19N, New York, New York.

r. **"Outstanding Principal Amount"** means the outstanding principal amount of this Note from time to time.

s. **"Person"** means (i) any individual, corporation, partnership, limited liability company, joint venture, trust or unincorporated association, (ii) any court or other governmental authority or (iii) any other entity, body, organization or group.

t. **"Security Agreement"** means the Security Agreement by Borrower and by Jeffrey L. Liddle to Lender dated on or about the date hereof.

u. **"Uniform Commercial Code"** means the Uniform Commercial Code as in effect from time to time in the State of New York.

2. **Payments.** The payment of principal, interest, fees and costs and expenses under this Note shall be subject to the following terms and conditions:

a. **Regularly Scheduled Payments of Interest and Principal.**

(i) *Monthly Interest.* Borrower shall pay monthly all interest that has accrued on the Outstanding Principal Amount through the last day of each calendar month (beginning with the calendar month containing the date of this Note), no later than the 10th day following the end of such calendar month, calculated at the rate and in the manner set forth in Section 2(d) below.

(ii) *Principal Payment Schedule During Amortization Period.* In addition to the mandatory prepayments

4

Initials

CONFIDENTIAL

required under Section 2(b) below, Borrower shall pay the Outstanding Principal Amount during the Amortization Period in twenty-four (24) consecutive monthly installments commencing on August 1, 2018 and continuing on the same day of each month thereafter with the final payment due and payable on July 1, 2020 (the "Maturity Date"). Borrower shall pay each monthly installment payable for a calendar month no later than the 10th day following the end of such calendar month.

(iii) *Monthly Principal Amount; Effect of Prepayment on Monthly Principal Amount.* Each such monthly principal installment payable during the Amortization Period shall be in an equal amount, sufficient to amortize in full in 24 installments the Outstanding Principal Amount determined as of the last day of the Advance Period. In the event of a mandatory prepayment or optional prepayment of this Note during the Amortization Period, the amount of each remaining monthly principal installment shall be recalculated so as to equal the level monthly amount sufficient to amortize the then Outstanding Principal Amount after giving effect to such mandatory or optional prepayment over the then remaining Amortization Period (and the term of this Note shall not be shortened).

b. **Mandatory Prepayments Based on Net Fees and Expenses.**

(i) *Payments Based on Net Fees and Expenses.* During the Advance Period and subject to the last sentence of this paragraph, Borrower shall pay to Holder within 3 business days of the receipt of any Net Fees and Expenses, an amount equal to 100% of all revenue, as received by the Borrower, in excess of the Budget until the aggregate principal debt of the Borrower to Lender and/or its affiliates is reduced to $3,000,000, thereafter an amount equal to 75% of all revenue, as received by the Borrower, in excess of the Budget, each to be applied in the manner set forth below. Borrower shall continue to hold in Borrower's trust account any Net Fees and Expenses received until the applicable amount of such Net Fees and Expenses is transmitted to Holder. Borrower, and each Guarantor acting on behalf of Borrower, holds all Net Fees and Expenses received by Borrower subject to an express trust as further described in Section 16 and is required to remit 100% of Net Fees and Expenses to Lender under the circumstances described in Section 16. Provided that, if the Hamptons Property is sold, Borrower and/or Guarantor (as applicable) shall use the sale proceeds from such sale to prepay the Borrower's debt with Lender and/or its affiliates. In the event that the Borrower and/or Guarantor (as applicable) sells the New York Property, any sale proceeds in excess of the mortgage amount on the Hamptons Property shall be used to prepay the Borrower's debt with Lender and/or its affiliates. Specifically, Borrower hereby agrees that upon the sale of the Hamptons Property and/or New York Property, applicable sale proceeds will be used to pay off all indebtedness of Borrower as follows: first, to payoff the indebtedness owing to LIG Capital, LLC ("LIG"), second to payoff the indebtedness owing to Lender, and third any remaining proceeds shall be used to reduce the principal amount owed to Counsel Financial II LLC ("CF"). Proceeds received from the Hamptons Property sale can be re-borrowed pursuant to an agreed upon Budget.

(ii) *Application during the Advance Period.* During the Advance Period, any payments based on Net Fees and Expenses received by Holder will be applied as a mandatory prepayment, first to prepay accrued and unpaid interest and fees and then to prepay the Outstanding Principal Amount.

(iii) *Application during the Amortization Period.* During the Amortization Period, each such payment received by Holder based on Net Fees and Expenses shall be applied first to offset Borrower's obligation to make the regularly scheduled monthly principal installment payable for the month in which Holder receives such payment (but such offset shall only be to the extent of such payment received by Holder and shall not affect Borrower's obligation to pay the balance of such regularly scheduled monthly principal installment). If Net Fees and Expenses in any month exceeds the monthly principal installment for such month, the excess will be applied as a mandatory prepayment of the Outstanding Principal Amount and

Initials

CONFIDENTIAL

shall not be applied to satisfy all or any portion of Borrower's obligation to make any monthly interest payment. Any such mandatory prepayment shall have the effect set forth in Section 2(a)(iii) on the remaining monthly principal installments payable during the Amortization period.

c. **Optional Prepayments.** Borrower shall have the option of prepaying, without penalty or premium, the Outstanding Principal Amount to Holder in full or part at any time and from time to time provided, that (a) the Outstanding Principal Amount must exceed $50,000 at all times during the first one hundred twenty (120) days after the date of this Note, and (b) upon prepaying the Outstanding Principal Amount in full, Borrower shall pay to Holder all interest and other amounts payable pursuant to this Note and remaining unpaid. Any such optional prepayment made during the Amortization Period shall have the effect set forth in Section 2(a)(iii) on the remaining monthly principal installments payable during the Amortization Period.

d. **Interest Rates and Calculation.**

    (i) *Calculation of Interest.* Interest shall be calculated on the basis of a 360 day year for the actual number of days of each year (365 or 366, as applicable), on the Outstanding Principal Amount for each day from and including the date of this Note to but not including the date the Outstanding Principal Amount is paid in full. Notwithstanding the foregoing, at Lender's option without further consent by the Borrower, Lender may compound interest on a monthly or annual basis as determined by the Lender in its sole discretion.

    (ii) *Interest Rate.* Interest will accrue on the Outstanding Principal Amount at the rate of 18% per annum, except as set forth below.

    (iii) *Increase in Interest Rate.* If on the first business day of any calendar month, the LIBOR Rate equals more than 1.0% per annum, the interest rate applicable on each day during such calendar month will equal (A) 18% per annum, plus (B) the excess of the LIBOR Rate on such first business day of such calendar month over 1.0%.

    (iv) *Default Interest.* On and after the occurrence of an Event of Default, the interest rate applicable to this Note shall equal the rate per year that is the lesser of (i) 24.9% or (ii) the maximum rate permitted by applicable law ("Default Interest"). Default Interest shall be payable during any period of default and up to and including the date of the next payment made after such period of default. Default Interest, and not any rate set by statute, shall be computed in any entry of judgment pertaining to this Note, and further, shall be paid subsequent to the entry of such judgment, and until actual satisfaction of said judgment. The judgment shall include both the action and the obligation itself. In such event, the Default Interest rate shall continue up through and including all foreclosure proceedings and proceedings for payment of monies, including but not limited to surplus money proceedings and shall be computed in the entry of any judgment, and further, subsequent to the entry of any judgment, and until actual satisfaction of this Note and said judgment.

    (v) *Maximum Applicable Rate.* In no event shall such interest be payable at a rate in excess of the maximum rate permitted by applicable law. Any amount payable under this Note that is interest, or that is treated as interest, and that would cause such maximum rate to be so exceeded shall be deemed to have been a mistake and automatically canceled. If any such amount that causes the maximum rate to be exceeded is received by Holder, such amount shall be refunded to Borrower or applied to the Outstanding Principal Amount, as determined by Holder. It is the intention of Lender and Borrower that interest not be payable at a rate in excess of such maximum rate.

    (vi) *One Month's Advance Interest.* If requested by the Lender, Borrower must maintain on account with

6

Initials

CONFIDENTIAL

Holder at all times one month's advance payment of interest. The required amount of such advance payment will initially be determined based on the Outstanding Principal Amount on the date of the first Loan under this Note. Thereafter, the amount of the required advance payment to be held by Lender will be adjusted so that it equals one month's advance interest on the Outstanding Principal Amount determined as of the later of the date of the most recent Loan under this Note or the last day of the most recently ended calendar month, and Borrower will be required to pay any increase in the required amount to Holder (or if there is a reduction in the required amount, Holder will apply any excess held by Holder against other amounts then or thereafter payable by Borrower to Holder). Holder does not pay any interest on such advance payment amount or provide any discount in consideration of such advance payment. Any such advance payment will be commingled with Holder's other funds. Holder will hold such advance payment on account, and may apply any such advance payment in such manner as it determines to any amount owing to Holder that is not paid when due or to the final payment to be made to Holder under this Note.

(vii) *Availability Block/Interest Reserve.* At all times during the Advance Period, Borrower shall maintain unused borrowing availability with Holder equal to 60 days' interest based on the Outstanding Principal Amount determined as of the later of the date of the most recent Loan under this Note or the last day of the most recently ended calendar month during the term of this Note. Holder may, but shall not be obligated to, make a Loan (without any express authorization from Borrower), to pay interest that is due and payable on the Outstanding Principal Sum. On or after conclusion of the Advance Period, Lender may require Borrower to fund from time to time, an amount sufficient to establish and replenish as necessary a reserve for the payment of interest for such 60 day period (a "Reserve"). Lender may commingle any Reserve with its other funds and shall have no obligation to pay any interest on any Reserve. Lender shall be entitled to set off against any Reserve any amount that is not paid to Holder when due and payable under this Note. Borrower's obligation under this paragraph to maintain unused availability or a Reserve to cover 60 days' interest is in addition to the required one months' advance payment of interest contemplated by (vi) above.

e. **Electronic Funds Transfer.** At all times during the Advance Period and thereafter until all amounts payable under this Note have been irrevocably paid in full, Borrower shall maintain an authorization for electronic funds transfer by Holder at a bank and from an account designated by Borrower and reasonably acceptable to Holder for payments under this Note. Lender may authorize an electronic funds transfer from such designated account of Borrower for any amount that is not paid to Holder when due and payable under this Note.

f. **Late Payment Charges.** If any principal, interest or other amount (including mandatory prepayments), payable pursuant to this Note is not paid by the date it becomes due, Borrower shall pay on demand by Holder, a monthly late charge for each month or part thereof that such overdue payment remains unpaid of the greater of (i) 5% of the overdue payment or (ii) $50.

g. **Special Delinquency Charges.** If any document or information required to be provided to Holder under this Note is not delivered when due or within 10 business days following request from Holder, Borrower shall pay a late charge of $250 per month until such documentation has been provided to Holder. If after the scheduling of an audit, Borrower (i) cancels the audit within five (5) business days prior to the scheduled date or (ii) fails at the audit to provide Holder's representative with the necessary books and records to permit Holder's representative to complete the audit, Borrower shall promptly reimburse Holder for the costs associated with such cancelled or failed audit, including all costs incurred by Holder with respect to its representative such as compensation and travel expenses, in an amount equal to the greater of $500 or actual costs.

h. **Expenses.** On demand by Holder, Borrower shall pay each cost and expense (including, but not limited to, the reasonable

7

Initials

CONFIDENTIAL

fees and disbursements of counsel, whether retained for advice, litigation or any other purpose) incurred by Holder in endeavoring to (i) collect any of the Outstanding Principal Amount or any interest or other amount payable pursuant to this Note, (ii) preserve or exercise any right or remedy of Holder pursuant to this Note or (iii) preserve or exercise any right or remedy of Holder relating to any Collateral including the payment of unpaid insurance premiums, taxes, assessments or other obligations.

3. **LOANS.**

a. **Timing and Procedure.** At any time during the Advance Period, Borrower may make a Loan Request, which Request shall be irrevocable, that specifies (i) the amount requested as the principal amount of the Loan, (ii) the purpose of the loan (which must comply with (b) below), and (iii) the business day of Holder on which such Loan is requested to be made. **Notwithstanding anything contained in this Note to the contrary, commencing August 1, 2018 Borrower shall not be permitted to make any further Loan Requests under this Note.**

b. **Purpose of Loans.** All Loan Requests shall be used solely by Borrower as follows: (1) $500,000 to fund monthly interest payments on the indebtedness of the Borrower to CF and LIG; and (2) up to $500,000 to fund the operating expenses of Borrower including $185,000 to be advanced on the date hereof for payroll, insurance and other payables and thereafter any request shall not exceed the amount set forth in the Budget for any calendar month without the written consent of Holder. Borrower shall not obtain or use the proceeds of any Loan for any purpose other than for law firm purposes, that is, for working capital of Borrower including payments to any Guarantor, but only to the extent any such payment to any Guarantor or other use of the loan proceeds would not violate the covenant concerning the Budget set forth in Section 4 hereof. Borrower covenants that no Loan proceeds shall be used by Borrower for other than a business or commercial purpose of Borrower. No Loan Requests may be made to fund the activities or operations of any Guarantor or any third party entity. The Borrower further acknowledges, warrants and represents to, and agrees with, the Lender that the Lender has made no representation to the Borrower regarding the adequacy of the Budget or of any loans or advances made to the Borrower pursuant to this Note for purposes of conducting the Borrower's legal practice or other business operations.

c. **Minimum Unused Credit Availability.** Borrower shall maintain unused credit availability at all times under this Note in an amount equal to not less than 60 days' interest based on the Outstanding Principal Amount on the later of the date of the most recent Loan under this Note or the last day of the most recently ended calendar month during the term of this Note as contemplated by Section 2(d)(vii) of this Note.

d. **Holder's Discretion.** The decision whether to honor such Loan Request and make such Loan shall be in the sole discretion of Holder. Without limiting Lender's discretion to fund or not fund any Loan, no Loan shall be made with respect to any principal amount prepaid until at least one (1) business day after the date of such prepayment.

e. **Reliance by Holder.** Holder may treat as made by Borrower and rely upon, and Borrower shall be bound by, any Loan Request that Holder in good faith believes to be valid and to have been made in the name or on behalf of Borrower by any officer, manager, member, partner or other individual authorized to act on behalf of Borrower, and Holder shall not incur any liability to Borrower or any other Person as a direct or indirect result of honoring such Loan Request and making such Loan.

f. **Limitation on Outstanding Principal Amount. Borrower shall not at any time permit, and Holder shall not at any time be obligated to permit, the Outstanding Principal Amount to exceed the Maximum Amount. If the Maximum Amount is exceeded at any time, Borrower shall forthwith repay to Lender the amount of any such excess.**

g. **Schedule of Advances or Loan Account.** There shall be payable as principal pursuant to this Note only so much of the Maximum Amount as shall have been advanced by Holder as a Loan or Loans and is outstanding. Holder shall set forth

8


Initials

CONFIDENTIAL

on a schedule or loan account (including, but not limited to, any schedule or loan account maintained in computerized records) annotations evidencing (a) the date and principal amount of each Loan, (b) the date and amount of each payment applied to the Outstanding Principal Amount and (c) the Outstanding Principal Amount after each Loan and each such payment. Each such annotation shall, in the absence of manifest error, be conclusive and binding upon Borrower. No failure by Holder to make and no error by Holder in making any annotation on such schedule or loan account shall affect Borrower's obligation to repay the principal amount of each Loan, Borrower's obligation to pay interest on the outstanding principal amount of each Loan or any other obligation of Borrower to Holder pursuant to this Note or otherwise.

4. **COVENANTS.** So long as any obligations are owing to Holder under this Note, Borrower and each Guarantor, to the extent applicable to such Guarantor, shall comply with the following covenants:

a. **Reporting Obligations:** Borrower shall provide or cause to be provided to Holder, and each Guarantor shall provide to Holder to the extent relating to such Guarantor, within the time periods indicated below each of the following:

    (i) *Tax Returns.* Copies of Borrower's and each Guarantor's annual federal tax returns no later than the earlier of (A) three days after filing or (B) the 15th day of the tenth month of each fiscal year for the immediately preceding fiscal year;

    (ii) *Case Status Report; Fee Sharing and Referral Agreements.* Updated complete and accurate case and status list with respect to the clients and cases of Borrower and a copy of each fee sharing agreement or referral agreement and any amendments thereto, with any law firm or lawyer (including a lawyer that may be a shareholder, member or employee of the Borrower) with respect to any case or matter described in such list, at least once each calendar quarter;

    (iii) *Bank Statements.* Copies of monthly bank statements of Borrower from each of its bank accounts (operating and trust) and monthly settlement report no later than the 10th day of each month;

    (iv) *Financial Statements.* Current updated financial statements of Borrower, compiled by an independent third party accountant, not later than the 15th day of each calendar quarter in the same form delivered to Holder on or before execution of this Note;

    (v) *Personal Financial Statements.* A current updated personal financial statement for each Guarantor to be delivered on or before April 15th of each year in the form completed by such Guarantor and delivered to Holder on or before execution of this Note;

    (vi) *Malpractice and Life Insurance.* Evidence of coverage under a current malpractice insurance policy for Borrower, and of continuing coverage under any life insurance policy that has been assigned as part of the Collateral, on each anniversary date of coverage, and copy of any notice of cancellation, revocation or non-renewal of any malpractice insurance or any such life insurance policy within five (5) business days after receipt thereof by Borrower or any Guarantor;

    (vii) *Notice of Certain Material Events or Material Change.* Notice of any tax audit with respect to Borrower or any Guarantor, any investigation by any governmental agency or regulatory body affecting Borrower or any Guarantor, any litigation commenced against Borrower or any Guarantor, or any material change in the business, clients or prospects of Borrower, in each case as soon as Borrower or any Guarantor is aware, or should be aware, of such audit, investigation, litigation or change;

    (viii) *Default Notices.* A copy of any default notice or other notice of the existence of facts or circumstances

9

Initials

CONFIDENTIAL

that with the passage of time will constitute such a default, under any obligation of Borrower to any party, in each case immediately following receipt by Borrower; and

(ix) *Other Information*. Any documentation or information reasonably requested by Holder that relates to the business or assets of Borrower or such Guarantor, in each case promptly following each request by Holder.

b. **Accuracy and Access to Books and Records**. Borrower shall maintain accurate books and records regarding its financial condition, including, but not limited to, aged listings of accounts payable and accounts receivable, all expenses and disbursements, business operations, and the status and condition of the Collateral; and shall grant Holder access thereto at any time upon reasonable notice to inspect and audit such books, records, and accounts, and to make copies thereof.

c. **Life Insurance**. Borrower shall cause to be maintained in effect life insurance on the life of Jeffrey L. Liddle in a minimum amount equal to $1,000,000 that is subject to an effective collateral assignment to Holder at all times while this Note is outstanding.

d. **Minimum Collateral Coverage**. Borrower shall not permit legal fees collectible by Borrower from the Collateral as estimated by Holder at any time to be less than **FIVE TIMES** the Outstanding Principal Amount plus interest on this Note. In making such estimate, Holder may take into consideration, among other matters, Holder's assessment of the actual client files of Borrower from time to time and any law, judicial decision, administrative order, or professional ethics opinion that may affect the rights of law firms to sue clients for the collection of legal fees or expenses, and will reduce such estimate by the amount of any indebtedness or obligation of Borrower having priority over the collection rights of Holder.

e. **Minimum Net Worth Requirement**. Jeffrey L. Liddle shall refrain from selling, gifting, transferring or otherwise disposing of assets or incurring indebtedness that reduces the personal net worth (including his or her indirect interest in Borrower's assets and his or her interest in joint assets) of such Guarantor to less than $3,000,000.

f. **Restriction on Additional Indebtedness**. Borrower and each Guarantor shall not incur or assume, on or after the date of this Note, any indebtedness or liability (including any indebtedness or liability to any member or shareholder of Borrower or any Guarantor or any affiliate of any Guarantor) other than indebtedness that is:

(i) owing to Lender;

(ii) constituting unsecured normal trade debt incurred upon customary terms in the ordinary course of Borrower's or any Guarantor's business or in the case of any Guarantor that is an individual, ordinary consumer debt;

(iii) arising from the endorsement in the ordinary course of Borrower's or any Guarantor's business of any check or other negotiable instrument for deposit or collection;

(iv) secured by a Permitted Lien as defined in the Security Agreement; or

(v) incurred with the prior written consent of Holder which consent may require that the proceeds of such financing be used to repay this Note in whole or in part and that repayment of such financing be subordinated to repayment of the indebtedness due to Holder on terms acceptable to Holder.

g. **Restriction on Liens**. Borrower and each Guarantor shall refrain from creating, assuming or suffering to exist any mortgage, security interest, judgment or lien (including tax liens) on any of its assets now or hereafter acquired, other

Initials

CONFIDENTIAL

than a Permitted Lien or a security interest relating to consumer debt.

**h. No Other Law Practice.** Borrower and each Guarantor shall not own or hereafter acquire, without the prior written consent of Holder, an ownership interest, either direct or indirect, in any entity engaged in the practice of law other than Borrower.

**i. License to Practice Law.** Borrower and each Guarantor shall not permit any license to practice law held by Borrower or such Guarantor, as the case may be, to be suspended or revoked.

**j. No Payments Beyond Budget.** Borrower shall not pay any operating expense, including but not limited to salary, draws, bonuses etc. made to Jeffrey L. Liddle or any family member, related party or other affiliate, which exceeds the amount set forth for such expense in the Budget.

**k. Fee Sharing and Referral Agreements.** Without the prior written approval of Lender, Borrower shall not enter into a fee sharing or referral agreement unless such agreement is entered into in the ordinary course of business and on an arms-length basis and shall not modify any fee sharing or referral agreement in any way that would reduce the fees or other amounts payable to Borrower thereunder or that would otherwise prejudice Lender.

## 5. EVENTS OF DEFAULT AND REMEDIES.

**a. Events of Default.** The existence or occurrence of any of the following events or circumstances shall each constitute an "Event of Default" under this Note:

(i) *Failure to Pay Amounts due Under this Note.* Borrower defaults in the payment when due, whether by acceleration or otherwise, of any of the Outstanding Principal Amount or any interest or other amount payable pursuant to this Note; or

(ii) *Breach of Covenants or Other Obligations to Holder.* Borrower or any Guarantor fails to comply with any of the covenants in Section 4 of this Note or defaults in the payment or performance when due of any other obligation to Holder, whether now existing or hereafter arising or accruing and whether under this Note or any other present or future agreement with Holder; or

(iii) *Obligations Owing to Third Parties.* Borrower or any Guarantor defaults in the payment or performance of any obligation owing by Borrower or any Guarantor to any third party or there exists a default or event of default under any agreement evidencing such obligation owing to such third party; or

(iv) *Obligations Owing to the Government.* Borrower or any Guarantor defaults in the payment of any taxes or other charges owing to any governmental entity; or

(v) *Cessation of Business and Other Material Events.* Borrower or any Guarantor is dissolved, ceases to exist, participates or agrees to participate in any merger, consolidation or other absorption, assigns or otherwise transfers or disposes of a majority of his, her or its assets, makes or permits what might be a fraudulent transfer or fraudulent conveyance of any of his, her or its assets, becomes insolvent (however such insolvency is evidenced), generally fails to pay his, her or its debts as they become due, fails to pay, withhold or collect any tax as required by applicable law, suspends or ceases its business or has served, filed or recorded against him, her or it or any of his, her or its assets any judgment, order or award of any court, other governmental authority or arbitrator or any lien; or

11

Initials

CONFIDENTIAL

(vi) *Death or Incompetency.* Borrower or any Guarantor dies or becomes incompetent; or

(vii) *Termination or Revocation.* Borrower or any Guarantor purports to terminate his, her or its obligations pursuant to any guaranty or other agreement with or for the benefit of Holder; or

(viii) *Insolvency.* Borrower or any Guarantor has any receiver, trustee, custodian or similar Person for him, her or it or any of his, her or its assets appointed (whether with or without his, her or its consent), makes any assignment for the benefit of creditors, admits in writing his, her or its inability to pay debts generally as they become due, or commences or has commenced against him, her or it any bankruptcy or insolvency proceeding or any formal or informal proceeding for the dissolution, liquidation or winding up of the affairs of or the settlement of claims against him, her or it; or

(ix) *Representations and Warranties.* Any representation or warranty heretofore made to Lender or hereafter made to Holder, or any financial statement heretofore provided to Lender or hereafter provided to Holder, by or on behalf of Borrower or any Guarantor, proves, as of the date thereof, to have been incorrect or misleading in any material respect, or before the execution and delivery to Lender by Borrower of this Note, there occurred and was not disclosed to Lender any material adverse change in any information disclosed in any such representation or warranty or in any such financial statement so provided; or

(x) *Change in Management or Control.* There occurs any change in the management of, or the beneficial ownership of any stock of or other ownership interest in, Borrower that is, in the opinion of Holder, adverse to its interest and is not corrected to its full satisfaction within 30 days after it gives to Borrower a notice that it considers such change adverse to its interest; or

(xi) *Collateral Value.* There occurs any change in the value of the Collateral or Borrower's or any Guarantor's ownership interest in the Collateral, that is, in the opinion of Holder, adverse to its interest and is not corrected to its full satisfaction within 10 days after Holder gives to Borrower a notice that Holder considers such change adverse to its interest; or

(xii) *Other Loan Document Default.* There occurs or exists any event or condition of default under any guaranty or any security agreement or other writing evidencing or relating to any Collateral or the Credit.

b. **Acceleration.** Upon or at any time or from time to time after the occurrence or existence of any Event of Default other than, with respect to Borrower, an Event of Default described in clause (viii) above (an "Insolvency Event"), the Outstanding Principal Amount and all interest and other amounts payable pursuant to this Note and remaining unpaid shall, at the sole option of Holder and without any notice, demand, presentment or protest of any kind (each of which is knowingly, voluntarily, intentionally and irrevocably waived by Borrower), become immediately due. Upon the occurrence or existence of, with respect to Borrower, any Insolvency Event, the Outstanding Principal Amount and all such interest and other amounts shall, without any notice, demand, presentment or protest of any kind (each of which is knowingly, voluntarily, intentionally and irrevocably waived by Borrower), automatically become immediately due.

6. **CHANGES AND WAIVERS; PARTIALLY INVALIDITY.** No course of conduct pursued, accepted or acquiesced in, and no oral, written or other agreement or representation made, by or on behalf of Holder in the future will change this Note or waive any right or remedy of Holder under or arising as a result of this Note. Any change in this Note or waiver of any right or remedy of Holder under or arising as a result of this Note must be made in a writing signed by or on behalf of Holder. Whenever possible, each provision of this Note shall be interpreted in such manner as to be effective and valid under applicable law. If, however, any such provision shall be prohibited by or invalid under such law, it shall be deemed modified to conform to the minimum requirements of such law, or, if for any reason it is not deemed so modified, it shall


Initials

CONFIDENTIAL

be prohibited or invalid only to the extent of such prohibition or invalidity without the remainder thereof or any other such provision being prohibited or invalid.

7. **DISCLAIMER. EXCEPT AS SET FORTH IN THE LOAN DOCUMENTS, LENDER HAS NOT MADE, NOR HAS BORROWER RELIED UPON, ANY TERM, PROMISE, REPRESENTATION, GUARANTEE OR WARRANTY OF ANY KIND (ORAL, EXPRESS, STATUTORY OR IMPLIED), DIRECTLY OR THROUGH ANY THIRD-PARTY (EACH, AN "EXTRINSIC TERM"), INCLUDING, WITHOUT LIMITATION, ANY EXTRINSIC TERM WITH RESPECT TO BORROWING OR ANY LOAN PRODUCT, ANY PARTICULAR CLAIM OR LITIGATION, ANY PAST OR PRESENT CLIENTS OF LENDER, ANY ATTORNEY OR LAW FIRM OR ANY AGREEMENT OR ARRANGEMENT THEREWITH, OR PARTICIPATION IN ANY PROGRAM ADMINISTERED, IN WHOLE OR IN PART, BY LENDER RELATING TO (A) PAST PERFORMANCE, RETURNS OR RESULTS THEREOF, (B) THE QUALITY, CHARACTER, NUMBER OR VALUE OF OPPORTUNITIES OR OUTCOMES THEREFROM, OR (C) THE FINANCIAL OR LEGAL BENEFITS, REQUIREMENTS, IMPLICATIONS OR ADVISABILITY (INCLUDING ANY RELEVANT TAX OR PROFESSIONAL RESPONSIBILITY MATTERS) THEREWITH, AND THE EXISTENCE OF ANY SUCH EXTRINSIC TERM (INCLUDING, WITHOUT LIMITATION, ANY WARRANTY OF FITNESS FOR PARTICULAR PURPOSE OR ANY WARRANTY ARISING FROM COURSE OF PERFORMANCE, COURSE OF DEALING, OR USAGE OF TRADE), AND RELIANCE THEREUPON BY BORROWER, IS EXPRESSLY DISCLAIMED TO THE FULLEST EXTENT PERMITTED BY LAW.**

8. **ENTIRE AGREEMENT.** This Note and the Loan Documents contain the entire agreement between Borrower and Lender and supersede each action heretofore taken or not taken, each course of conduct heretofore pursued, accepted or acquiesced in, and each oral, written or other agreement and representation heretofore made, by or on behalf of Lender with respect thereto.

9. **GOVERNING LAW.** This Note shall be governed by and construed, interpreted and enforced in accordance with the internal laws of the State of New York, without regard to principles of conflicts of law or to the law of any other jurisdiction.

10. **CONSENT TO JURISDICTION. AS PART OF THE CONSIDERATION FOR NEW VALUE RECEIVED AND REGARDLESS OF ANY PRESENT OR FUTURE DOMICILE OR PRINCIPAL PLACE OF BUSINESS OF BORROWER OR HOLDER, BORROWER HEREBY CONSENTS AND AGREES THAT ANY CLAIMS OR DISPUTES BETWEEN BORROWER AND HOLDER PERTAINING TO THIS NOTE OR TO ANY MATTER ARISING OUT OF OR RELATED TO THIS NOTE SHALL BE BROUGHT ONLY IN THE SUPREME COURT OF THE STATE OF NEW YORK LOCATED IN THE COUNTY OF ERIE WHICH SHALL BE DEEMED TO BE THE COURT OF SOLE AND EXCLUSIVE VENUE FOR THE BRINGING OF ANY LEGAL OR EQUITABLE ACTION; PROVIDED, HOWEVER, HOLDER MAY AT ITS OPTION, COMMENCE ANY ACTION, SUIT OR PROCEEDING IN ANY OTHER APPROPRIATE FORUM OR JURISDICTION TO OBTAIN EQUITABLE RELIEF OR TO ENFORCE ANY JUDGMENT OR ORDER OBTAINED BY HOLDER AGAINST BORROWER, TO ENFORCE ANY OTHER RIGHT OR REMEDY UNDER THIS NOTE, OR TO OBTAIN ANY OTHER RELIEF DEEMED APPROPRIATE BY HOLDER. BORROWER EXPRESSLY SUBMITS AND CONSENTS IN ADVANCE TO SUCH JURISDICTION IN ANY ACTION OR SUIT COMMENCED IN THE SUPREME COURT OF THE STATE OF NEW YORK LOCATED IN ERIE COUNTY, AND BORROWER HEREBY WAIVES ANY OBJECTION WHICH BORROWER MAY HAVE BASED UPON LACK OF PERSONAL JURISDICTION, IMPROPER VENUE OR**

13


Initials

CONFIDENTIAL

FORUM NON CONVENIENS AND HEREBY CONSENTS TO THE GRANTING OF SUCH LEGAL OR EQUITABLE RELIEF AS IS DEEMED APPROPRIATE BY SUCH NEW YORK COURT. BORROWER REPRESENTS AND WARRANTS THAT IT HAS REVIEWED THIS CONSENT TO JURISDICTION PROVISION WITH ITS LEGAL COUNSEL, AND HAS MADE THIS WAIVER KNOWINGLY AND VOLUNTARILY.

11. WAIVER OF TRIAL BY JURY. BORROWER KNOWINGLY, VOLUNTARILY, INTENTIONALLY AND IRREVOCABLY WAIVES EACH RIGHT BORROWER MAY HAVE TO A TRIAL BY JURY WITH RESPECT TO (A) THE CREDIT, ANY LOAN OR COLLATERAL, THIS NOTE OR ANY OTHER WRITING HERETOFORE OR HEREAFTER EXECUTED IN CONNECTION WITH THE CREDIT OR ANY LOAN OR COLLATERAL, (B) ANY TRANSACTION ARISING OUT OF OR OTHERWISE RELATING TO THE CREDIT, ANY LOAN OR COLLATERAL, THIS NOTE OR ANY SUCH OTHER WRITING OR (C) ANY NEGOTIATION, ADMINISTRATION, PERFORMANCE OR ENFORCEMENT OF THE CREDIT, ANY LOAN OR COLLATERAL, THIS NOTE OR ANY SUCH OTHER WRITING.

12. SERVICE OF PROCESS. PROCESS ON BORROWER IN ANY SUIT, ACTION OR PROCEEDING ARISING OUT OF THIS NOTE WILL BE DEEMED TO HAVE BEEN GIVEN WHEN GIVEN IN ANY <u>ONE</u> OF THE FOLLOWING WAYS: (A) PERSONALLY DELIVERED, (B) TWO (2) BUSINESS DAYS AFTER DEPOSITED WITH A NATIONALLY RECOGNIZED OVERNIGHT COURIER, CHARGES PREPAID, THAT ROUTINELY ISSUES RECEIPTS, OR (C) FOUR (4) BUSINESS DAYS AFTER SENT BY CERTIFIED MAIL BY THE UNITED STATES POSTAL SERVICE, POSTAGE PREPAID, RETURN RECEIPT REQUESTED, ADDRESSED TO BORROWER AT THE ADDRESS SET FORTH AT THE BEGINNING OF THIS NOTE. Such service shall be deemed in every respect effective service of process upon Borrower and shall, to the fullest extent permitted by law, be taken and held to be valid personal service upon Borrower. Nothing in this Section shall affect Holder's right to serve process in any other manner permitted by law. Borrower may add additional addresses or change its address for purposes of service of process by giving 10 days' prior written notice of such change to Holder in accordance with the notice provisions of the Security Agreement.

13. SECURITY AGREEMENT. Repayment of this Note is secured by the Collateral in accordance with the terms of the Security Agreement and any other agreements relating to the Collateral.

14. SOLVENCY. On the date hereof, and immediately prior to and after giving effect to the borrowing represented by this Note and the use of the proceeds thereof, Borrower's assets will exceed its liabilities and Borrower will be solvent, will be able to pay its debts as they mature and will have capital sufficient to carry on its business as then constituted.

15. SIGNATURES. In the event that any signature is delivered by facsimile transmission or by e-mail delivery of a \".pdf\" format data file, such signature shall create a valid and binding obligation of the party executing (or on whose behalf such signature is executed) with the same force and effect as if such facsimile or \".pdf\" signature page were an original thereof.

16. BORROWER'S FIDUCIARY OBLIGATION TO LENDER/EXPRESS TRUST. All Net Fees and Expenses received by Borrower are subject to an express trust in favor of Lender. Borrower and any Guarantor that acts on behalf of Borrower, holds all Net Fees and Expenses as a fiduciary for the benefit of Lender and any use of any Net Fees and Expenses that is not authorized by Lender is a defalcation by Borrower and any such Guarantor so acting on Borrower's behalf. Before maturity of this Note (by acceleration or otherwise), and only after Borrower has timely remitted to Lender Net Fees and Expenses as required by Section 2(b) hereof, Lender authorizes Borrower to use any such Net Fees and Expenses for its operations in the ordinary course of business and in a manner consistent with the Budget unless Lender has notified Borrower after the occurrence and during the continuation of an Event of Default that Lender is revoking such authorization. **After maturity of this Note (whether by acceleration or otherwise) or if Lender so revokes the**

14

Initials

CONFIDENTIAL

foregoing authorization following the occurrence and during the continuance of an Event of Default, Borrower shall remit to Lender 100% of Net Fees and Expenses for application to Borrower's obligations under this Note in such manner as Lender shall determine.

17. **CONFIDENTIALITY.** Borrower and each Guarantor agrees that by execution of this Note, Borrower and such Guarantor becomes bound by and agrees to keep this Note, any other Loan Document, and any facts of and details surrounding the relationship between the parties hereto reflected by the Loan Documents, confidential and not to disclose the existence of this Note or any other Loan Document, or its terms, except as required by law or as otherwise necessary to implement the terms of the Loan Documents. Nothing in this Note, any other Loan Document, or otherwise shall prevent Holder from disclosing the existence of this Note, any Loan Document, and its terms, to Holder's respective affiliates, officers, directors, agents, partners, members, employees, investors, lenders, attorneys, auditors, affiliates (including investment managers) and any other similarly situated persons where Holders have a reasonable business purpose for such disclosure. The Borrower and each Guarantor agrees that the Loan Documents may not be used in connection with, or as the basis of documents for, any other transaction by Borrower (other than a transaction with Holder), except as consented to in writing by Holder.

18. **RIGHT OF FIRST REFUSAL AND PARTICIPATIONS.** In the event that the Borrower elects to refinance this Note with a different lender, the Borrower will provide the Lender with the terms of such refinancing and the Lender shall have the right, but not the obligation, to refinance this Note on such terms; provided it gives notice to the Borrower within fifteen (15) days after receipt of such terms. Lender, at its option, may at any time and from time to time, grant to one or more lenders (each a "Participant") participating interests in Lender's rights with respect to this Note and the other Loan Documents. In the event of such a grant by Lender of a participating interest to a Participant, Borrower shall continue to deal solely and directly with Lender in connection with Lender's rights hereunder, and Lender shall retain the sole right to approve, without the consent of any Participant, any amendment, modification or waiver of any provision of the Loan Documents which Lender is entitled to approve pursuant to this Note. Lender may furnish any information concerning Borrower in its possession from time to time to prospective Participants, provided that Lender shall require any prospective Participant to agree in writing to maintain the confidentiality of such information.

Dated: June 2017

LIDDLE & ROBINSON LLP

By: _____
Jeffrey L. Liddle, Partner

15


Initials

CONFIDENTIAL

## GUARANTOR AGREEMENT TO PROMISSORY NOTE COVENANTS

Each of the undersigned individually agree(s) to those covenants set forth in Section 4 of this Note that are applicable to the undersigned as Guarantor and agrees to be bound by the provisions of Sections 16 and 17 of this Note.

Date: June 2, 2017

_____
Jeffrey L Liddle

## GUARANTOR ACKNOWLEDGEMENT FOR PROMISSORY NOTE

STATE OF NEW YORK
                                        : SS.
COUNTY OF NEW YORK

On the 2ND day of June in the year 2017 before me, the undersigned, a notary public in and for said state, personally appeared Jeffrey L. Liddle personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he (she) executed the same, and that by his (her) signature on the instrument, the individual, or other person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

Rose M. Reverendo
Notary Public - State of New York
No. 01RE4908329
Qualified in New York County
My Commission Expires Feb. 28, 2018

17

Initials

CONFIDENTIAL

**ALLONGE TO REVOLVING PROMISSORY NOTE, DATED JUNE ___, 2017 ISSUED BY LIDDLE &
ROBINSON LLP
TO COUNSEL FINANCIAL HOLDINGS LLC**

NOTICE: THIS NOTE IS SUBJECT TO A SECURITY INTEREST GRANTED BY COUNSEL FINANCIAL
HOLDINGS LLC, TO BANK OF AMERICA, N.A. PURSUANT TO A SECURITY AGREEMENT, DATED
SEPTEMBER 17, 2009, AMONG SUCH PARTIES AND CERTAIN OTHER PARTIES, AS AMENDED,
SUPPLEMENTED, REPLACED, RESTATED OR OTHERWISE MODIFIED FROM TIME TO TIME.

18



Initials

# Attachment 3

CONFIDENTIAL

## GUARANTY OF PAYMENT AND PERFORMANCE

**THIS GUARANTY** ("Guaranty") from Jeffrey L. Liddle, individually, with a principal address at 11 Fifth Avenue Apt. 19M, New York, NY 10003 ("Guarantor") to COUNSEL FINANCIAL HOLDINGS LLC, a Delaware limited liability company with a place of business at 6400 Main Street, Suite 120, Williamsville, NY 14221 ("Lender").

### W I T N E S S E T H :

**WHEREAS**, Liddle & Robinson LLP ("Borrower") on the date hereof, has executed and delivered to Lender that certain Revolving Promissory Note in the principal amount of $1,000,000 as the same may be amended, renewed, increased or replaced from time to time ("Note") pursuant to which Lender is extending certain credit facilities (collectively the "Credit Facilities") to Borrower; and

**WHEREAS**, Lender is unwilling to extend the Credit Facilities to Borrower unless it receives this Guaranty; and

**WHEREAS**, each Guarantor is willing to execute and deliver this Guaranty to Lender in order to induce Lender to extend the Credit Facilities and each Guarantor has approved the form and substance of each and all of the documents relating to the Credit Facilities including the Note, the Security Agreement (as defined in the Note) and all certifications, agreements, letters and other documents executed with respect to the Credit Facilities.

**NOW, THEREFORE**, in order to induce Lender to extend the Credit Facilities to Borrower and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, each Guarantor agrees as follows with Lender:

### ARTICLE 1
### REPRESENTATIONS AND WARRANTIES OF GUARANTORS

Each Guarantor hereby represents and warrants to Lender (with respect to himself, herself or itself and not any other Guarantor) that:

**Section 1.1     Capacity of Guarantors**. Such Guarantor:

(A)     has the capacity to enter into this Guaranty; and

(B)     has his or her principal residence or its primary office at the address set forth in the first paragraph of this Guaranty.

**Section 1.2     No Violation of Restrictions**. Neither the execution and delivery of this Guaranty, the consummation of the transactions contemplated hereby nor the fulfillment of or compliance with the provisions of this Guaranty will conflict with or result in a breach of any of the terms, covenants, conditions or provisions of any agreement, judgment or order to which such Guarantor is a party or by which such Guarantor is bound, or will constitute a default under any of the foregoing, or result in the creation or imposition of any lien of any nature whatsoever.

**Section 1.3     Compliance with Law**. Such Guarantor is not in violation of any law, ordinance, governmental rule, regulation, order or judgment to which such Guarantor may be subject which is likely to materially affect the financial condition of such Guarantor.

**Section 1.4     Financial Statements and Other Information**. The financial statements and any other information submitted by such Guarantor to Lender fairly represent the financial condition as of the date of each statement and there

Initials

CONFIDENTIAL

has been no material adverse change in the financial condition of such Guarantor since the date of the respective statements submitted to Lender.

**Section 1.5** <u>**Solvency of Guarantors and Borrower**</u>. Such Guarantor's assets exceed his, her or its liabilities (without in any way limiting any obligation that any Guarantor may have to maintain a specified minimum net worth). Such Guarantor has made an appropriate financial investigation of Borrower and has determined that Borrower is solvent at the time of execution of this Guaranty.

## ARTICLE 2
## COVENANTS AND AGREEMENTS

**Section 2.1** <u>**Guaranty of Payment and Performance**</u>. Each Guarantor irrevocably, absolutely and unconditionally (and jointly and severally if there is more than one Guarantor) guarantees to Lender, the punctual payment and performance of the Obligations as hereafter defined.

"<u>Obligations</u>" means all the present and future monetary and other obligations of Borrower to Lender, of whatever nature or character, and whether absolute or contingent, arising under the Note and all of the other Loan Documents, including, without limitation any obligation of Borrower to pay any principal, interest, fee, charge, cost or expense under the Loan Documents, whether or not any such amounts arise or are accrued after the commencement of any bankruptcy or other insolvency proceeding and whether or not allowed as a claim in any such proceeding.

"<u>Loan Documents</u>" shall have the same meaning as defined in that certain Revolving Promissory Note by and between Lender and Borrower dated June __, 2017.

**Section 2.2** <u>**Obligations Unconditional**</u>. This Guaranty shall remain in full force and effect until the Obligations are irrevocably paid in full and the Loan Documents are terminated, irrespective of any interruptions in the business relationships of Borrower or any Guarantor with Lender. No Guarantor's obligation hereunder shall be affected, modified or impaired by any state of facts or the happening from time to time of any event, including, without limitation, any of the following, whether or not with notice to or the consent of such Guarantor or any other Guarantor:

(A)     The invalidity, irregularity, illegality or unenforceability of, or any defect in, any Loan Document or any collateral security for the Credit Facilities or any Guaranty (collectively, the "<u>Collateral</u>"), including, without limitation, the Collateral under the Security Agreement, or the failure to perfect any security interest in or assignment of any of the Collateral, or the amendment, release or termination of any such security interest or assignment.

(B)     Any present or future law or order of any government (de jure or de facto) or of any agency thereof purporting to reduce the Obligations or amend or otherwise affect any Loan Document or any other obligation of Borrower or any other obligor under the Loan Documents or any other terms of payment.

(C)     The waiver, compromise, settlement, release or termination of any or all of the obligations, covenants or agreements of Borrower under any Loan Document, of any Guarantor under any Loan Document, of any other guarantor of the Credit Facilities or any part thereof, or of any other party who has given collateral as security for the payment of the Credit Facilities or any part thereof.

(D)     The failure to give notice to any Guarantor of the occurrence of an event of default under any Loan Document.

(E)     The loss, release, sale, exchange, surrender or other change in any Collateral.

(F)     The extension of the time for payment or performance or renewal of any of the Obligations.

20

Initials

CONFIDENTIAL

(G)    The modification or amendment (whether material or otherwise) of any obligation, covenant or agreement set forth in any Loan Document.

(H)    The performance of, or the omission to perform, any of the actions referred to in any Loan Document.

(I)    Any failure, omission or delay on the part of Lender to enforce, assert or exercise any right, power or remedy conferred on Lender in any Loan Document.

(J)    The voluntary or involuntary liquidation, dissolution, sale or other disposition of all or substantially all the assets, marshaling of assets and liabilities, receivership, insolvency, bankruptcy, assignment for the benefit of creditors, reorganization, arrangement, composition with creditors or readjustment of, or other similar proceedings affecting, any Guarantor or Borrower or any of their respective assets, or any allegation or contest of the validity of any Loan Document.

(K)    The default or failure of any Guarantor to fully perform any obligation set forth in this Guaranty.

(L)    Any event or action that would, in the absence of this paragraph, result in the release or discharge of any Guarantor from the performance or observance of any obligation, covenant or agreement contained in this Guaranty (other than the irrevocable payment in full of the Obligations or a written release provided by Lender to such Guarantor).

(M)    Any other circumstances which might otherwise constitute a legal or equitable discharge or defense of a surety or a guarantor.

## Section 2.3    Waivers by Guarantors.

(A) Each Guarantor waives any and all rights that are or may become available to such Guarantor by statute or otherwise to require Lender to (i) proceed against Borrower; (ii) proceed against or exhaust any security held from Borrower; or (iii) pursue any other remedy in Lender's power whatsoever. Lender may, at its election, exercise any right or remedy it may have against each Guarantor or any Collateral now or hereafter held by or for the benefit of Lender including, without limitation, the right to foreclose upon any such Collateral by judicial or nonjudicial sale, without affecting or impairing in any way the liability of any Guarantor hereunder except to the extent the Obligations may thereby be paid and performed, even though any rights which any Guarantor may have or otherwise might obtain by subrogation against others might be diminished or destroyed. Each Guarantor acknowledges that any such exercise of a right or remedy with respect to Collateral may result in a loss, in part or whole, of Lender's right to collect from Borrower any deficiency that may remain after any such exercise of such a right or remedy and that, where such a loss occurs, each Guarantor will also suffer a loss of any rights and remedies, arising in law or equity, which such Guarantor may have to collect any amount from Borrower; and each Guarantor agrees to remain bound notwithstanding any such loss. Each Guarantor waives all rights and defenses arising out of an election of remedies by Lender, even though that election of remedies, such as a nonjudicial foreclosure with respect to any Collateral, has destroyed each Guarantor's right of subrogation and reimbursement against Borrower by the operation of law or otherwise. Only the net proceeds from any such foreclosure, after deduction of all costs and expenses authorized to be deducted pursuant to the documents under which such Collateral is held or by law, shall be applied against the Obligations. Lender may at its discretion purchase all or any part of such Collateral so sold or offered for sale for its own account and may apply against the amount bid therefor all or any part of the Obligations for which such Collateral is held; and in such case, only that portion of the Obligations so applied, after deduction of all costs and expenses authorized to be deducted by law or pursuant to the documents under which such Collateral is held, shall be applied against the Obligations. Each Guarantor waives any defense arising out of the absence, impairment or loss of any right to reimbursement or subrogation or other right or remedy of such Guarantor against Borrower or any such Collateral, whether resulting from the election by Lender to exercise any right or remedy it may have against any person, any defect in, failure of, or loss or absence of priority with respect to Lender's interest in such Collateral, or otherwise. In the event that any foreclosure sale is deemed to be not commercially reasonable, each

21

Initials

CONFIDENTIAL

Guarantor waives any right that he, she or it may have to have any portion of the Obligations discharged except to the extent of the amount actually bid and received by Lender at any such sale. Lender shall not be required to institute or prosecute proceedings to recover any deficiency as a condition of payment or performance hereunder or enforcement hereof.

(B) **Waiver of Notices and Demands.** Each Guarantor waives all presentments, demands for performance, notices of nonperformance, protests, notices of protest, notices of dishonor, notices of default, and notices of acceptance of this Guaranty and of the existence, creation or incurring of new or additional Obligations. At the option of Lender, each Guarantor may be joined in any action or proceeding commenced by Lender against Borrower in connection with or based upon the Obligations or any Collateral and recovery may be had against such Guarantor in such action or proceeding, without any requirement that Lender first assert, prosecute or exhaust any remedy or claim against Borrower. Without limiting the foregoing, each Guarantor acknowledges that repeated and successive demands may be made and payments or performance made hereunder in response to such demands as and when, from time to time, Borrower may default in payments or performance of the Obligations. Notwithstanding any such performance hereunder, this Guaranty shall remain in full force and effect and shall apply to any and all subsequent defaults by Borrower in payment or performance of the Obligations.

(C) **Waiver of Defenses.** Each Guarantor waives any defense arising by reason of any disability or defense of Borrower or by reason of the cessation from any cause whatsoever of the liability of Borrower. Each Guarantor waives any setoff, defense or counterclaim which Borrower or such Guarantor may have or claim to have against Lender.

(D) **Real Property Waivers.** Each Guarantor waives all rights and defenses that such Guarantor may have because Borrower's debt, or any guaranty thereof, is secured by real property, including but not limited to any life insurance. This means, among other things: (i) that Lender may collect from any Guarantor without first foreclosing on any real property; and (ii) if Lender forecloses on any real property Collateral: (A) the amount of the debt may be reduced only by the price for which that Collateral is sold at the foreclosure sale, even if the Collateral is worth more than the sale price, and (B) Lender may collect from each Guarantor even if Lender, by foreclosing on the real property Collateral, has destroyed any right such Guarantor may have to collect from Borrower. This is an unconditional and irrevocable waiver of any rights and defenses that any Guarantor may have because Borrower's debt or any guaranty is secured by real property.

(E) **No Waiver; Remedies.** In addition to, and not in limitation of the waivers, no failure on the part of Lender to exercise, and no delay in exercising, any right hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any right thereunder preclude any other or further exercise thereof or the exercise of any other right. The remedies herein provided are cumulative and not exclusive of any remedies provided by law.

(F) **Guarantors' Understanding With Respect To Waivers.** Each Guarantor warrants and agrees that each of the waivers set forth above is made with such Guarantor's full knowledge of its significance and consequences, and that under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any of such waivers is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law.

**Section 2.4** **Nature of Guaranty.** This Guaranty is a guaranty of payment and not of collection and each Guarantor hereby waive the right to require that any action be brought first against Borrower, any other Guarantor or any other party, or to require any security, or to require that resort be made to any security or to any balance of any deposit account or credit on the books of Lender in favor of Borrower or of any Guarantor.

**Section 2.5** **Continuation of Guaranty.** Each Guarantor further agrees that the obligations hereunder shall continue to be effective or reinstated, as the case may be, if at any time payment of all or any part thereof of the Credit Facilities is rescinded or must otherwise be restored by Lender upon the bankruptcy or reorganization of Borrower, any Guarantor or otherwise.

22

Initials

CONFIDENTIAL

**Section 2.6** **Subordination of Debt.** Each Guarantor hereby subordinates any and all indebtedness of Borrower now or hereafter owed to such Guarantor to all indebtedness of Borrower to Lender and agree with Lender that, from and after the date whereon Lender notifies such Guarantor that an event of default under one or more of the Loan Documents has occurred and is continuing, such Guarantor shall not demand or accept any payment from Borrower of any such indebtedness, shall not claim any offset or other reduction of such Guarantor's obligations hereunder because of any such indebtedness and shall not take any action to obtain any interest in any of the security described in and encumbered by the Loan Documents; provided, however, that, if Lender so requests, such indebtedness shall be collected, enforced and received by such Guarantor as trustee for Lender and paid over to Lender on account of the indebtedness of the Borrower to Lender, but without reducing or affecting in any manner the liability of any Guarantor under the other provisions of this Guaranty except to the extent the principal amount of such outstanding indebtedness shall have been reduced by such payment.

**Section 2.7** **Financial Statements and Other Information.** Each Guarantor agrees to deliver to Lender (A) on or before April 15 of each year, personal financial statements and information applicable to such Guarantor on Lender's standard form or other form acceptable to Lender and (B) copies of such Guarantor's annual federal tax return to be delivered on the sooner of (i) three days after filing or (ii) October 15 of each year for, as applicable, the immediately preceding fiscal or calendar year. Each Guarantor agrees to promptly deliver to Lender from time to time any additional documentation or information reasonable requested by Lender that relates to the business or assets of such Guarantor.

**Section 2.8** **Transfer of Interest.** Except as expressly permitted pursuant to the Loan Documents, each Guarantor agree not to make or permit to be made, by voluntary or involuntary means, any transfer of the interest of such Guarantor in Borrower, without first obtaining the prior written consent of Lender.

**Section 2.9** **Compliance with Note Covenants.** Each Guarantor shall comply with all covenants applicable to such Guarantor that are set forth in the Note. Any Guarantor that acts on behalf of Borrower has the fiduciary obligations described in the Note with respect to Net Fees and Expenses as defined in the Note.

## ARTICLE 3
## EVENTS OF DEFAULT

**Section 3.1** **Events of Default Defined.** An "Event of Default" shall exist if any of the following events occurs and is continuing:

(A) Any Guarantor fails to perform or observe any covenant contained herein.

(B) Any warranty, representation or other statement by or on behalf of any Guarantor contained in this Guaranty or in any Loan Document is false or misleading in any material respect when made.

(C) A receiver, liquidator or trustee of any Guarantor or any of his, her or its property is appointed by court order, or any party named as a Guarantor is adjudicated bankrupt or insolvent or any of his, her or its property is sequestered by court order and such order remains in effect for more than sixty (60) days, or a petition is filed against any Guarantor under any bankruptcy, reorganization, arrangement, insolvency, readjustment of debt, dissolution or liquidation law of any jurisdiction, whether now or hereafter in effect, and is not dismissed within ninety (90) days of such filing.

(D) Any Guarantor files a bankruptcy petition or seeks relief under any provision of any reorganization, arrangement, insolvency, readjustment of debt, dissolution or liquidation law of any jurisdiction, whether now or hereafter in effect, or consents to the filing of any petition against it under any such law.

23


Initials

CONFIDENTIAL

(E)     Any Guarantor makes an assignment for the benefit of creditors or admits in writing inability to pay debts generally as they become due, or consents to the appointment of a receiver, trustee or liquidator of all or any part of his, her or its property.

(F)     The occurrence of an Event of Default under the Note or any other Loan Document.

**Section 3.2     Remedies on Default.** If an Event of Default exists, Lender may proceed to enforce the provisions hereof and to exercise any other rights, powers and remedies available to Lender without prior written notice to any Guarantor.

**Section 3.3     Waiver and Notice.**

(A)     No remedy herein conferred upon or reserved to Lender is intended to be exclusive of any other available remedy or remedies, but each and every such remedy shall be cumulative and shall be in addition to every other remedy given under this Guaranty now or hereafter existing at law or in equity or by statute.

(B)     No delay or omission to exercise any right or power accruing upon the occurrence of any Event of Default shall impair any such right or power or shall be construed to be a waiver thereof, but any such right or power may be exercised from time to time and as often as may be deemed expedient.

(C)     In order to entitle Lender to exercise any remedy reserved to it in this Guaranty, it shall not be necessary to give any notice, other than such notice as may be expressly required in this Guaranty.

(D)     No waiver, amendment, release or modification of this Guaranty shall be established by conduct, custom or course of dealing.

## ARTICLE 4
## MISCELLANEOUS

**Section 4.1     Construction.** If this Guaranty is executed by two or more parties, they shall be jointly and severally liable hereunder and the term "Guarantors" whenever used herein shall be construed to refer to each of the parties in the same manner and with the same effect as if each party had signed a separate guaranty.

**Section 4.2     Governing Law.** This Guaranty shall be governed by and construed, interpreted and enforced in accordance with the internal laws of the State of New York, without regard to principles of conflicts of law or to the laws of any other jurisdiction.

**Section 4.3     Successors and Assigns.** This Guaranty shall inure to the benefit of and be binding upon the heirs, administrators, successors and assigns of each of the parties hereto.

**Section 4.4     Notices.** Any notice required or permitted to be given hereunder must be in writing and delivered or transmitted to a party at the address or any fax number for such party set forth at the head of this Guaranty, or to such other address or fax number as such party may designate in writing as provided herein for the purpose of receiving notices hereunder. Any such notice to a party is effective if by personal delivery, upon such delivery; if, by nationally recognized overnight courier, on the next business day after delivery to such courier; if by fax transmission, upon receipt by the sender of an electronic confirmation of a successful transmission; and otherwise upon receipt of such notice by such party.

**Section 4.5     Entire Agreement.** This Guaranty and the Loan Documents constitute the entire understanding between Borrower, each Guarantor and Lender and to the extent that any writings not signed by Lender or oral statements or

24

Initials

CONFIDENTIAL

conversations at any time made or had are inconsistent with the provisions of this Guaranty or the other Loan Documents, the same shall be null and void.

**Section 4.6    Amendments.** No amendment, change, modification, alteration or termination of this Guaranty shall be made except upon the written consent of Lender and any Guarantor to be bound thereby.

**Section 4.7    Assignment.** This Guaranty is assignable by Lender in whole or in part in conjunction with an assignment of the Loan Documents and any assignment hereof or any transfer or assignment of the Loan Documents or portions thereof shall operate to vest in any such assignee the rights and powers, in whole or in part, as appropriate, herein conferred upon and granted to Lender.

**Section 4.8    Partial Invalidity.** Whenever possible, each provision of this Guaranty shall be interpreted in such manner as to be effective and valid under applicable law. If, however, any such provision shall be prohibited by or invalid under such law, it shall be deemed modified to conform to the minimum requirements of such law, or, if for any reason it is not deemed so modified, it shall be prohibited or invalid only to the extent of such prohibition or invalidity without the remainder thereof or any other such provision being prohibited or invalid.

**Section 4.9    SUBMISSION TO JURISDICTION.** EACH GUARANTOR HEREBY IRREVOCABLY AND UNCONDITIONALLY AGREES THAT ANY SUIT, ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS GUARANTY SHALL BE BROUGHT ONLY IN THE SUPREME COURT OF THE STATE OF NEW YORK LOCATED IN THE COUNTY OF ERIE, WHICH SHALL BE DEEMED TO BE THE COURT OF SOLE AND EXCLUSIVE VENUE FOR THE BRINGING OF ANY LEGAL ACTION, AND EACH GUARANTOR WAIVES ANY RIGHT TO OBJECT TO JURISDICTION WITHIN THE FOREGOING FORUM BY LENDER. NOTHING CONTAINED HEREIN SHALL PREVENT LENDER FROM BRINGING ANY SUIT, ACTION OR PROCEEDING OR EXERCISING ANY RIGHTS AGAINST ANY COLLATERAL, AGAINST ANY GUARANTOR PERSONALLY OR AGAINST ANY PROPERTY OF ANY GUARANTOR, WITHIN ANY OTHER JURISDICTION, AND THE INITIATION OF SUCH SUIT, ACTION OR PROCEEDING OR TAKING OF SUCH ACTION IN ANY SUCH OTHER JURISDICTION SHALL IN NO EVENT CONSTITUTE A WAIVER OF THE AGREEMENTS CONTAINED HEREIN WITH RESPECT TO THE LAWS OF THE STATE OF NEW YORK GOVERNING THE RIGHTS AND OBLIGATIONS OF THE PARTIES HERETO OR THE AGREEMENT OF EACH GUARANTOR TO SUBMIT TO PERSONAL JURISDICTION WITHIN THE STATE OF NEW YORK AND COUNTY OF ERIE.

**Section 4.10    WAIVER OF JURY TRIAL.** EACH GUARANTOR HEREBY EXPRESSLY WAIVES ANY AND ALL RIGHTS HE, SHE OR IT MAY HAVE TO TRIAL BY JURY OF ANY CLAIM, DEMAND, ACTION, OR CAUSE OF ACTION (A) ARISING UNDER THIS GUARANTY OR ANY OTHER INSTRUMENT, DOCUMENT, OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH OR (B) IN ANY WAY CONNECTED WITH OR RELATED OR INCIDENTAL TO THE DEALINGS OF THE PARTIES HERETO OR ANY OF THEM WITH RESPECT TO THIS GUARANTY OR ANY OTHER INSTRUMENT, DOCUMENT, OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH, OR THE TRANSACTIONS RELATED HERETO OR THERETO, IN EACH CASE WHETHER NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE, AND EACH GUARANTOR HEREBY AGREES AND CONSENTS THAT ANY SUCH CLAIM, DEMAND, ACTION, OR CAUSE OF ACTION SHALL BE DECIDED BY COURT TRIAL WITHOUT A JURY, AND LENDER MAY FILE AN ORIGINAL COUNTERPART OF A COPY OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF EACH GUARANTOR'S CONSENT TO THE WAIVER OF HIS, HER OR ITS RIGHT TO TRIAL BY JURY. EACH GUARANTOR REPRESENTS AND WARRANTS THAT HE, SHE OR IT HAS REVIEWED THIS JURY WAIVER PROVISION WITH HIS, HER OR ITS LEGAL COUNSEL, AND HAVE MADE THIS WAIVER KNOWINGLY AND VOLUNTARILY.

25



Initials

CONFIDENTIAL

**Section 4.11    SERVICE OF PROCESS.** PROCESS ON ANY GUARANTOR IN ANY SUIT, ACTION OR PROCEEDING ARISING OUT OF THIS GUARANTY WILL BE DEEMED TO HAVE BEEN GIVEN WHEN GIVEN IN ANY ONE OF THE FOLLOWING WAYS: (A) PERSONALLY DELIVERED, (B) TWO BUSINESS DAYS AFTER DEPOSITED WITH A NATIONALLY RECOGNIZED OVERNIGHT COURIER, ALL CHARGES PREPAID, THAT ROUTINELY ISSUES RECEIPTS, OR (C) 4 BUSINESS DAYS AFTER SENT BY CERTIFIED MAIL BY THE UNITED STATES POSTAL SERVICE, POSTAGE PREPAID, RETURN RECEIPT REQUESTED, ADDRESSED TO EACH GUARANTOR AT THE APPLICABLE ADDRESS FOR SUCH GUARANTOR .SET FORTH AT THE BEGINNING OF THIS GUARANTY. Such service on a Guarantor shall be deemed in every respect effective service of process upon such Guarantor and shall, to the fullest extent permitted by law, be taken and held to be valid personal service upon such Guarantor. Nothing in this Section shall affect Lender's right to serve process in any other manner permitted by law. Any Guarantor may add additional addresses or change an address for purposes of service of process by giving 10 days' prior written notice of such change to Lender.

**Section 4.12    Unlimited Guaranty.** This Guaranty is unlimited in amount.

**Section 4.13    Counterparts.** This Guaranty may be executed in two or more counterparts, each of which together shall be deemed an original, but all of which together shall constitute one and the same instrument. In the event that any signature is delivered by facsimile transmission or by e-mail delivery of a \".pdf\" format data file, such signature shall create a valid and binding obligation of the party executing (or on whose behalf such signature is executed) with the same force and effect as if such facsimile or \".pdf\" signature page were an original thereof.

**IN WITNESS WHEREOF,** each Guarantor has executed this Guaranty as of the day and year set forth.

_____                     Dated: June 2, 2017
Jeffrey L. Liddle, Individually

**ACKNOWLEDGEMENTS (FOR GUARANTY)**

STATE OF NEW YORK
COUNTY OF NEW YORK

On the 2ND day of June in the year 2017 before me, the undersigned, a notary public in and for said state, personally appeared Jeffrey L. Liddle personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he (she) executed the same in his (her) capacity, and that by his (her) signature on the instrument, the individual, or other person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

Rose M. Reverendo
Notary Public - State of New York
No. 01RE4908329
Qualified in New York County
My Commission Expires Feb. 28, 2018

26

Initials

# Attachment 4

CONFIDENTIAL

## SECURITY AGREEMENT
## COUNSEL FINANCIAL HOLDINGS LLC

In consideration of **Counsel Financial Holdings LLC**, a Delaware limited liability company having its chief executive office at 6400 Main Street, Suite 120, Williamsville, NY 14221 ("Secured Party") heretofore or hereafter (1) extending or agreeing to extend any credit or other financial accommodation to or relying on any guaranty, endorsement or other assurance of payment of **LIDDLE & ROBINSON LLP**, having an office at 800 Third Avenue, 8th Floor, New York, NY 10022 ("Borrower") or (2) agreeing to any direct or indirect extension, renewal, refinancing or other modification or replacement of or waiving or forbearing from exercising any right or remedy relating to any obligation heretofore or hereafter arising or accruing as a result of any such credit or other financial accommodation to Borrower, and for other valuable consideration, the receipt and adequacy of which is acknowledged, **Borrower and Jeffrey L. Liddle**, individually, with a principal address at 11 Fifth Avenue Apt. 19M, New York, NY 10003 (Borrower and each such individual being, a "Debtor" and collectively the "Debtors"), agrees with Secured Party as follows:

I.    **DEFINITIONS.** In this Security Agreement (the "Agreement"):

a.    **Account Debtor.** "Account Debtor" means any person or entity with an obligation to pay or transfer cash, property or proceeds to any Debtor on an Account, Chattel Paper, General Intangible regardless whether such obligation arises from business or personal matters or assets of such Debtor.

b.    **Collateral.** "Collateral" means collectively the following:

All of each Debtor's right, title and interest in all Goods (including, Equipment, Fixtures and Inventory), Money, Instruments (including Promissory Notes), Accounts, Deposit Accounts, Chattel Paper, Investment Property, Letter-of-Credit Rights, Documents and General Intangibles (including payment intangibles), Commercial Tort Claims described in the Questionnaire, Insurance Proceeds and any other personal property (whether or not subject to the UCC), and all interest, dividends and other distributions thereon paid and payable in cash or in property; and all replacements and substitutions for, and all accessions and additions to, and all profits, offspring, Products and other Proceeds of, all of the foregoing. Each Debtor is prohibited from granting additional security interest in the Collateral or the Proceeds of the Collateral. (Notice to potential competing creditors under Official Note 5 of UCC Section 9-331).

The Collateral includes, without limitation, any right to payment of any Debtor for client representation or referral (whether such right to payment is on a contingent, hourly, fixed fee or other basis) and for Costs and Expenses (as defined in the Note), whether or not yet earned by performance, and the proceeds thereof, including Net Fees and Expenses (as defined in the Note).

c.    **Event of Default.** An "Event of Default" occurs or exists if:

(i)    there occurs or exists any event or condition of default under any Revolving Promissory Note or other instrument (A) now or hereafter evidencing any of the Obligations, hereinafter defined, or (B) the payment of which is now or hereinafter guaranteed by any Debtor (including, but not limited to, that certain Note, dated the date of this Agreement, issued by Borrower to Secured Party, or any direct or indirect extension, renewal, refinance or other modification or replacement of such Note); or

(ii)    there occurs or exists any event or condition of default under any guaranty of the Obligations; or

(iii)    Secured Party deems itself insecure with respect to the Obligations or is of the opinion that the Collateral is or may not be sufficient or has decreased or may decrease in value, whether or not Secured Party has sought any Other Collateral from any Debtor or any Guarantor.

Initials

CONFIDENTIAL

d.      **Fiduciary Obligations.** "Fiduciary Obligations" means the fiduciary obligations of any Debtor, as set forth in the Note, relating to Net Fees and Expenses as defined in the Note.

e.      **Guarantor.** "Guarantor" means any Person, including Jeffrey L. Liddle who or that is now or hereafter liable, whether directly or indirectly or absolutely or contingently, for the payment of any of the Obligations.

f.      **Loan Documents.** "Loan Documents" shall have the same meaning as set forth in the Note.

g.      **Note.** "Note" means the Revolving Promissory Note, dated on or about the date hereof, from Borrower to Secured Party as amended, increased, extended, amended and restated or replaced from time to time.

h       **Obligations.** "Obligations" means collectively all obligations that are now owing or in the future owing by each Debtor (including, any direct or indirect successor of any Debtor or any direct or indirect assignee or other transferee of all or substantially all of the assets of any Debtor) to Secured Party for the payment of any money or the performance of any other obligation under the Loan Documents, regardless of type, class or form, whether direct or indirect, absolute or contingent (whether pursuant to any guaranty, endorsement or other assurance of payment or otherwise), whether for any business or commercial purpose or otherwise, including without limitation any such present and future obligations owing under the Loan Documents, (i) for the payment of any principal, interest, fee, charge, cost or expense, whether or not any such amounts arise or accrue after the commencement of any bankruptcy or other insolvency proceeding and whether or not allowed in any such proceeding, (ii) by such Debtor alone or with others, and (iii) whether owing from inception to Secured Party or acquired by assignment or other transfer to Secured Party.

i.      **Other Collateral.** "Other Collateral" means, other than the Collateral, any collateral, subordination, guaranty, endorsement or other security or assurance of payment, whether now existing or hereafter arising or accruing, that now or hereafter secures the payment of or is otherwise applicable to any of the Obligations.

j.      **Permitted Liens.** "Permitted Liens" means (i) any security interest in or other lien on any of the Collateral in favor of Secured Party or (ii) any security interest in or other lien on any of the Collateral existing on this date that is (A) fully and accurately described in the response to question 7 contained in the Questionnaire set forth in Exhibit A attached to and made a part of this Agreement but only to the extent such security interest or other lien secures the indebtedness described in such response or (B) consented to in writing by Secured Party.

k.      **Person.** "Person" means (i) any individual, corporation, partnership, limited liability company, joint venture, trust, unincorporated association, government or political subdivision, (ii) any court, agency or other governmental body or (iii) any other entity, body, organization or group.

l.      **Record.** "Record" means any information that is now or hereafter (i) inscribed on a tangible medium or (ii) stored in an electronic or other medium and retrievable in perceivable form, except to the extent constituting confidential information (whether contained in any client file of any Debtor or otherwise) that any Debtor is not permitted to disclose to Secured Party by reason of any ethical or disciplinary rule, regulation or law governing such Debtor's conduct.

m.      **Security Interest.** "Security Interest" means any security interest or other lien granted or otherwise created pursuant to the first sentence of Section 2 of this Agreement.

n.      **Uniform Commercial Code.** "Uniform Commercial Code" or "UCC" means the Uniform Commercial Code in effect at any time in the State of New York.

o.      **Other Terms.** All capitalized terms not otherwise defined in this Agreement shall have the meanings set forth in

28

Initials

CONFIDENTIAL

the Uniform Commercial Code.

**2. GRANT OF SECURITY INTEREST.** To secure the payment and performance of the Obligations, each Debtor grants to Secured Party a security interest in and assigns, pledges and hypothecates to Secured Party the Collateral. Each Security Interest is a continuing, absolute and unconditional security interest or other lien.

**3. REINSTATEMENT OF OBLIGATIONS.** Each portion of the Obligations heretofore or hereafter paid or satisfied by any of the Collateral, or any money or Other Collateral, heretofore or hereafter received, applied or retained by Secured Party and later recovered from Secured Party as a result of any claim (including, but not limited to, any claim involving preference or fraudulent conveyance or any allegation that any money received by Secured Party constituted trust funds), however asserted and whether now existing or hereafter arising or accruing, shall be reinstated as part of the Obligations for purposes of this Agreement as of the date it originally arose or accrued.

**4. COVENANTS.**

**a. Affirmative Covenants.** Each Debtor shall (i) maintain complete and accurate Records relating to the Collateral, (ii) before the end of any applicable grace period, pay each tax, assessment, fee and charge imposed by any government or political subdivision upon any of the Collateral, this Agreement or any agreement, instrument or other Record evidencing any of the Collateral or any of the Obligations, (iii) defend the Collateral against each demand, claim, counterclaim, setoff and defense asserted by any Person (including, but not limited to, any Account Debtor) other than Secured Party and (iv) promptly notify Secured Party of (A) any threat or commencement of any action or other legal proceeding, any entry of any judgment or order of any court, agency or other governmental body, or any assertion by any Person (including, but not limited to, any Account Debtor) other than Secured Party of any demand, claim, counterclaim, setoff or defense, relating to any of the Collateral, (B) any occurrence or existence of any Event of Default, any event or condition that, after notice, lapse of time or both notice and lapse of time, would constitute any Event of Default or any event or condition that has or will or might have any material adverse effect on (I) any of the Collateral, (II) any Debtor, (III) any Guarantor or (IV) the business, operations, assets, affairs or condition (financial or other) of any Debtor or any Guarantor and (C) any change in the location of the chief executive office or principal place of business of any Debtor or the residence of any Debtor that is an individual.

**b. Negative Covenants.** Without the prior written consent of Secured Party, no Debtor shall (i) sell or otherwise dispose of any of the Collateral or any interest or right in any of the Collateral except in the ordinary course of business and in compliance with any Fiduciary Obligations relating thereto, or (ii) provide to Secured Party or permit to be provided to Secured Party on his, her or its behalf any certificate, financial statement or other Record that contains any statement of fact that is incorrect or misleading in any material respect or omits to state any fact necessary to make any statement of fact contained therein not incorrect or misleading in any material respect, or (iii) permit to be filed or remain on file in any public office any financing statement or amendment of any financing statement relating to any of the Collateral and naming any Person other than Secured party as a secured party, except for any financing statement or amendment of any financing statement heretofore consented to by Secured Party in writing or relating solely to any Permitted Liens, or (iv) upon or at any time after any occurrence or existence of any Event of Default, (A) enforce, extend, renew, refinance or otherwise modify or replace, request, demand, accept, collect or otherwise realize upon, compromise, cancel, discharge, subordinate, accelerate, give any receipt, release or discharge relating to, commence, prosecute or settle any action or other legal proceeding relating to, waive or forbear from exercising any right or remedy relating to or adversely affect any obligation of any Person (including, but not limited to, any Account Debtor obligated with respect to any of the Collateral) relating to any of the Collateral, or (B) agree or otherwise incur any obligation to do anything described in clause (iv)(A) of this sentence, or (v) without giving Secured Party at least 30 days' prior written notice (A) change its location for purposes of Article 9 of the Uniform Commercial Code (including, but not limited to, its jurisdiction of organization if it is a Registered Organization), (B) make any change in its name, identity or structure or (C) participate in any merger, consolidation or other absorption, or (vi) grant or otherwise create, permit to exist or agree

29



Initials

19-10747-shl Doc 208 Filed 10/22/19 Entered 10/22/19 18:53:04 Main Document
19-10747-shl Claim 16-1 Part Filed 09/23/19 Pg 36 of 49
Pg 43 of 56

19-10747-shl Doc 55-12 Filed 04/22/19 Entered 04/22/19 16:44:04 Exhibit L
Pg 5 of 15

CONFIDENTIAL

or otherwise incur any obligation to grant or otherwise create or permit to exist any security interest in or other lien on any of the Collateral other than Permitted Liens, or (vii) use any money of Borrower, funds in any Deposit Account of Borrower or funds represented by any certificate of deposit of Borrower in partial or complete satisfaction of any obligation of Borrower except for obligations incurred in the ordinary course of the business of Borrower and in full compliance with the Fiduciary Obligations, or (viii) create, incur, assume or have any indebtedness or other obligation (A) arising from the borrowing of any money or (B) pursuant to any guaranty or other contingent obligation, except for indebtedness and other obligations (I) to Secured Party, (II) constituting unsecured normal trade debt incurred upon customary terms in the ordinary course of its business or for any Debtor that is an individual, ordinary consumer debt, (III) arising from the endorsement in the ordinary course of its business of any check or other negotiable instrument for deposit or collection or (IV) fully and accurately described in the response to question 7 contained in the Questionnaire set forth in Exhibit A attached to and made a part of this Agreement.

c. **Additional Covenants Triggered by Request of Secured Party.** Promptly upon the request of Secured Party, each Debtor shall (i) deliver to Secured Party each financing statement, amendment of any financing statement and other Record, and take each other action (including, but not limited to, making any endorsement), requested by Secured Party to perfect, maintain the validity, perfection or priority of, or enforce, any Security Interest, otherwise protect the interest of Secured Party in or collect, sell or otherwise dispose of or otherwise realize upon any of the Collateral, whether under applicable law or otherwise, verify any of the Collateral or otherwise accomplish any purpose of this Agreement, (ii) deliver to Secured Party each Record included in the Collateral, together with each endorsement, instrument of assignment and other Record that Secured Party requests to accomplish the assignment or other transfer of such Record to Secured Party, and, until such delivery, hold such Record in trust for Secured Party, (iii) cause each Instrument representing Proceeds or other proceeds of any of the Collateral to be made payable, as requested by Secured Party, to Secured Party alone or Secured Party and any one or more of Debtors jointly, (iv) provide to Secured Party all information requested by Secured Party and relating to (A) any of the Collateral, (B) any Person (including, but not limited to, any Account Debtor) obligated with respect to any of the Collateral, (C) any Debtor, (D) any Guarantor or (E) the business, operations, assets, affairs or condition (financial or other) of any Debtor or any Guarantor (including, but not limited to, financial statements prepared in a form satisfactory to Secured Party and, if requested by Secured Party, audited, reviewed or compiled by an independent certified public accountant satisfactory to Secured Party) and (v) permit each officer, employee, accountant, attorney and other agent of Secured Party to inspect the Collateral and audit, copy and extract each Record included in the Collateral.

d. **Collateral Collections.** After an Event of Default shall have occurred, Secured Party shall have the right at any and all times to enforce any Debtor's rights against Account Debtors and other parties obligated on Collateral, including, but not limited to, the right to: (i) notify and/or require any Debtor to notify any or all Account Debtors and other parties obligated on Collateral to make payments directly to Secured Party or in the care of a post office lock box under the sole control of Secured Party established at Debtors' expense subject to Secured Party's customary arrangements and charges therefor, and to take any or all action with respect to Collateral as Secured Party shall determine in its sole discretion, including, without limitation, the right to demand, collect, sue for and receive any money or property at any time due, payable or receivable on account thereof, compromise and settle with any person liable thereon, and extend the time of payment or otherwise change the terms thereof, without incurring liability or responsibility to any Debtor; (ii) revoke any prior authorization given to any Debtor to use Net Fees and Expenses held in trust by such Debtor pursuant to the Fiduciary Obligations and require any Debtor to also segregate and hold in trust for Secured Party any other Collateral not subject to the Fiduciary Obligations, and, on the day of such Debtor's receipt thereof, transmit to Secured Party in the exact form received by such Debtor (except for such assignments and endorsements as may be required by Secured Party), all cash, checks, drafts, money orders and other items of payments constituting Collateral or proceeds of Collateral; and/or (iii) establish and maintain at Secured Party a "Repayment Account," which shall be under the exclusive control and subject to the sole order of Secured Party and which shall be subject to the imposition of such customary charges as are imposed by Secured Party from time to time upon such accounts, for the deposit of cash, checks, drafts, money orders and other items of payments constituting Collateral or proceeds of Collateral from which

Initials

CONFIDENTIAL

Secured Party may, in its sole discretion, at any time and from time to time, withdraw all or any part. Secured Party's collection and enforcement of Collateral against Account Debtors and other persons obligated thereon shall be deemed to be commercially reasonable if Secured Party exercises due care and follows the procedures that Secured Party generally applies to the collection of obligations owed to Secured Party. All cash and non-cash proceeds of the Collateral may be applied by Secured Party upon Secured Party's actual receipt of cash proceeds against such of the Obligations, matured or unmatured, as Secured Party shall determine in its sole discretion. Secured Party may defer the application of non-cash proceeds of Collateral, including, but not limited to, non-cash proceeds collected from Account Debtors and other persons obligated on Collateral, to the Obligations until cash proceeds are actually received by Secured Party.

e.    **Care of Collateral.** Each Debtor shall have all risk of loss of the Collateral. Secured Party shall have no liability or duty, either before or after an Event of Default, to collect or enforce any of its rights against the Collateral, to collect any income accruing on the Collateral, or to preserve rights against Account Debtors or other parties with any prior interest in the Collateral. If Secured Party actually receives any notices requiring action with respect to Collateral of a Debtor in Secured Party's possession, Secured Party shall take reasonable steps to forward such notices to such Debtor. Each Debtor is responsible for responding to notices concerning the Collateral, voting the Collateral, and exercising rights and options, calls and conversions of the Collateral. Secured Party's sole responsibility is to take such action as is reasonably required by such Debtor in writing, provided, however, Secured Party is not required to take any action that, in Secured Party's sole judgment, would adversely affect the value of the Collateral as security for the Obligations. While Secured Party is not required to take certain actions, if action is needed, in Secured Party's sole discretion, to preserve and maintain the Collateral, each Debtor authorizes Secured Party to take such actions, but Secured Party is not obligated to do so.

5.    **POWER OF ATTORNEY.** Upon the occurrence or existence of any Event of Default, each Debtor irrevocably and unconditionally appoints Secured Party as the attorney-in-fact of such Debtor, with full power of substitution and revocation, to take, in the name and on behalf of such Debtor or otherwise, each action relating to any of the Collateral that such Debtor could take (subject to the limitations contained in Section 12(j) of this Agreement), provided such appointment and power does not violate any code of professional conduct and the ethical rules thereunder applicable to the legal profession. The power of attorney given pursuant to the preceding sentence is coupled with an interest in favor of Secured Party.

6.    **CERTAIN RIGHTS, REMEDIES AND DUTIES.**

a.    **Rights and Remedies Pursuant to Applicable Law.** With respect to the Collateral, Secured Party shall have each applicable right and remedy pursuant to applicable law (including, but not limited to, the Uniform Commercial Code) or this Agreement.

b.    **Additional Rights Without Event of Default.** Secured Party shall have the right to (i) file in any public office each financing statement or amendment of any financing statement relating to any of the Collateral that Secured Party desires to file (which may describe the collateral as "all assets" or "all personal property and fixtures" of a Debtor or using other supergeneric terms) and (ii) verify any of the Collateral in any manner or through any medium, whether directly with any Person (including, but not limited to, any Account Debtor) obligated with respect thereto or otherwise or in the name of any Debtor or otherwise.

c.    **Additional Rights Upon or After Event of Default.** Upon or at any time after any occurrence or existence of any Event of Default, Secured Party, for the purpose of preserving or enhancing the value of any of the Collateral or exercising any right or remedy of Secured Party pursuant to this Agreement or arising or accruing as a result of this Agreement, shall have the right to (i) perform each obligation of any Debtor pursuant to this Agreement and (ii) revoke any prior authorization given to any Debtor to use Net Fees and Expenses held in trust by such Debtor pursuant to the Fiduciary Obligations, require such Debtor to forthwith remit to Secured Party all Net Fees and Expenses and take

31

*Initials*

CONFIDENTIAL

control of all Proceeds and other proceeds thereof.

**d.    Application of Proceeds.** Secured Party shall apply all proceeds received by Secured Party from any collection, sale or other disposition of or other recovery upon or otherwise on account of any of the Collateral (including, but not limited to, as money payable pursuant to any insurance on any of the Collateral) first to liabilities, costs and expenses described in Section 7 of this Agreement and then to the remainder of the Obligations, whether due or not due, in any order determined by Secured Party.

**e.    Notice of Disposition.** Debtor agrees with Secured Party that commercial reasonableness and good faith require Secured Party to give each Debtor no more than ten days' prior written notice of the time and place of any public disposition of Collateral or of the time after which any private disposition or other intended disposition is to be made. Debtor also agrees with Secured Party that it is commercially reasonable for Secured Party to disclaim all warranties which arise with respect to the disposition of the Collateral.

**7.    EXPENSES; INDEMNIFICATION.**

**a.    Expenses.** Each Debtor shall pay to Secured Party on demand each cost and expense (including, but not limited to, if Secured Party retains counsel for advice, litigation or any other purpose, reasonable attorneys' fees and disbursements) heretofore or hereafter incurred by Secured Party in (i) searching for, filing or recording or obtaining any information relating to any financing statement, amendment of any financing statement or other Record relating to any of the Collateral or otherwise obtaining any information relating to any Debtor or any of the Collateral or (ii) endeavoring to (A) enforce any obligation of any Debtor pursuant to this Agreement or preserve or exercise any right or remedy of Secured Party pursuant to this Agreement or arising or accruing as a result of this Agreement or (B) preserve or exercise any right or remedy relating to or collect, sell or otherwise dispose of or otherwise realize upon any of the Collateral. After such demand for the payment of any cost or expense incurred by Secured Party in performing any obligation of any Debtor pursuant to this Agreement, Debtors shall pay interest at an annual rate equal to the lesser of 24.9% or the highest rate permitted by applicable law on the portion of such cost or expense remaining unpaid.

**b.    Indemnification.** Each Debtor shall indemnify and defend Secured Party and each officer, employee, accountant, attorney, banker or lender and other agent of Secured Party on demand, without any limitation as to amount, against each liability, cost and expense (including, but not limited to, if Secured Party retains counsel for advice, litigation or any other purpose, reasonable attorneys' fees and disbursements) heretofore or hereafter imposed on, incurred by or asserted against Secured Party or such officer, employee, accountant, attorney or other agent as a result of any claim (including, but not limited to, any claim involving any allegation of any violation of applicable law (including, but not limited to, any criminal statute)), however asserted and whether now existing or hereafter arising or accruing, arising out of any collection, sale or other disposition of any of the Collateral or any breach by any Debtor of any representation or warranty or any covenant or other agreement contained in, or any other fact or circumstance relating to, this Agreement, except to the extent any such liability, cost or expense is determined in a final, non-appealable judgment of a court of competent jurisdiction to have been caused by the gross negligence, bad faith or willful misconduct of Secured Party or such officer, employee, accountant, banker, lender, attorney or other agent.

**8.    TERMINATION.** This Agreement shall remain in full force and effect until and shall terminate only upon the final and indefeasible payment in full of the Obligations and the termination of the Loan Documents, irrespective of any interruptions in the business relationships of any Debtor with Secured Party.

**9.    REPRESENTATIONS, WARRANTIES AND ADDITIONAL COVENANTS.** Each Debtor represents, warrants and covenants with and to Secured Party as follows:



Initials

CONFIDENTIAL

**a.** **Authority.** The execution, delivery to Secured Party and performance of this Agreement and the grant or other creation of each Security Interest by such Debtor (i) do not and will not violate applicable law, any judgment or order of any court, agency or other governmental body by which such Debtor is bound or, if such Debtor is not an individual, any certificate or articles of incorporation or organization, by-laws, operating or partnership agreement or other charter, organizational or other governing document of such Debtor or any resolution or other action of record of such shareholders, members, partners, directors or managers of such Debtor, (ii) do not and will not violate or constitute any default under any agreement, instrument or other Record by which such Debtor is bound or to which such Debtor's property is subject, (iii) if such Debtor is not an individual, are and will be in furtherance of the purposes and within the power and authority of such Debtor and (iv) do not and will not require any authorization of, notice to or other act by or relating to any Person (including, but not limited to, any Account Debtor or, if any Debtor is not an individual, any shareholder, member, partner, director or manager of such Debtor) that has not been duly obtained, given or done and is not in full force and effect.

**b.** **Enforceability.** This Agreement is enforceable in accordance with its terms against each Debtor. All of each Debtor's Accounts, Chattel Paper, Deposit Accounts, Documents, General Intangibles, Instruments, Investment Property, Letter-of-Credit Rights and other liens, contracts, leases and agreements constituting the Collateral are and shall be valid, genuine and legally enforceable obligations and rights belonging to such Debtor and not subject to any claim, defense, set-off, or counterclaim of any kind.

**c.** **Ownership.** Debtors are and shall remain the owners of the Collateral.

**d.** **Questionnaire.** Each answer contained in any questionnaire submitted by or on behalf of any Debtor to Secured Party in connection with this Agreement (including, but not limited to, the Questionnaire set forth in Exhibit A attached to and made a part of this Agreement) is complete and accurate.

**e.** **Rights and Obligations with Respect to Collateral.** Except as heretofore disclosed by any Debtor to Secured Party in writing, there exists (i) no security interest in or other lien on any of the Collateral other than Permitted Liens, (ii) no presently effective financing statement or amendment of any financing statement relating to any of the Collateral and naming any Person other than Secured Party as a secured party other than those relating solely to Permitted Liens, (iii) no contractual or other restriction on the grant or other creation of any security interest in or assignment, pledge or hypothecation of any of the Collateral, and (iv) no demand, claim, counterclaim, setoff or defense, no action or other legal proceeding, and no outstanding judgment or order of any court, agency or other governmental body, relating to any of the Collateral. Each Debtor (i) shall defend the Collateral against all claims and demands of all persons at any time claiming any interest therein; (ii) shall cooperate with Secured Party in obtaining and maintaining control with respect to all Deposit Accounts, Investment Property, Letter-of-Credit Rights and electronic chattel paper constituting the Collateral; (iii) shall not become a party to any restructuring of its form of business or participate in any consolidation, merger, liquidation or dissolution without Secured Party's prior written consent; (iv) shall not change its state of organization without first notifying Secured Party in writing; (v) shall immediately advise Lender in writing of any change in address of any Debtor or the Collateral; and (vi) shall provide Secured Party with possession of all Chattel Paper, Documents, Instruments and Investment Property constituting the Collateral that are embodied in a tangible document, instrument or certificate.

**f.** **Actions with Respect to Collateral.** Except as heretofore disclosed by any Debtor to Secured Party in writing, no Debtor has (i) sold or otherwise disposed of any of the Collateral or any interest or right in any of the Collateral or (ii) extended, renewed, refinanced or otherwise modified or replaced, compromised, canceled, discharged, subordinated, accelerated, waived, forborne from exercising any right or remedy relating to or adversely affected any obligation of any Person (including, but not limited to, any Account Debtor) relating to any of the Collateral.

**g.** **Accounts and General Intangibles.** Each Account and General Intangible included in the Collateral is or, if not

33


Initials

CONFIDENTIAL

now existing, will be genuine, in all respects what it purports to be and enforceable in accordance with its terms against each Person (including, but not limited to, any Account Debtor) obligated with respect thereto, subject to no demand, claim, counterclaim, setoff or defense.

**h.     Incorrect or Misleading Information.** Each Debtor has not provided to Secured Party or permitted to be provided to Secured Party on his, her or its behalf any certificate, financial statement or other Record that contains any statement of fact that is incorrect or misleading in any material respect or omits to state any fact necessary to make any statement of fact contained therein not incorrect or misleading in any material respect.

**i.     Taxes.** Each Debtor has duly filed all applicable income or other tax returns and has paid all income or other taxes when due, and there are no outstanding tax liens against the assets of any Debtor.

## 10.    CERTAIN CONSENTS AND WAIVERS.

**a.     Consents.** Except to the extent expressly provided in this Agreement, this Agreement shall not be modified or terminated, no Security Interest, no obligation of any Debtor pursuant to this Agreement and no right or remedy of Secured Party pursuant to this Agreement or arising or accruing as a result of this Agreement shall be impaired or otherwise adversely affected, and no such right or remedy shall be waived, by any act, omission or other thing, whether heretofore occurred or hereafter occurring. Each Debtor knowingly, voluntarily, intentionally and irrevocably consents, without any notice, to each act, omission and other thing, whether heretofore occurred or hereafter occurring, that would or might, but for such consent, modify or terminate this Agreement, impair or otherwise adversely affect any Security Interest or any such obligation, right or remedy or operate as a waiver of any such right or remedy.

**b.     Waivers.** Each Debtor knowingly, voluntarily, intentionally and irrevocably waives, without any notice, each act and other thing upon which, but for such waiver, any Security Interest, any obligation of such Debtor pursuant to this Agreement or any right or remedy of Secured Party pursuant to this Agreement or arising or accruing as a result of this Agreement would or might be conditioned.

**11.     NOTICES.** Any notice required or permitted to be given hereunder must be in writing and must be delivered or transmitted to a party at the address or any fax number for such party set forth at the beginning of this Agreement or on the Signature Page to this Agreement, or to such other address or fax number as such party may designate in writing as provided herein for the purpose of receiving notices hereunder. Any such notice to a party is effective if by personal delivery, upon such delivery; if by nationally recognized overnight courier, on the next business day after delivery to such nationally recognized overnight courier; if by fax transmission, upon receipt by the sender of an electronic confirmation of a successful transmission; and otherwise upon receipt of such notice by such party. Each requirement under applicable law of reasonable notice of any event by Secured Party to any Debtor shall be deemed to have been met if a notice of such event is given by Secured Party to such Debtor at least 10 days before the date on or after which such event is to occur.

## 12.    MISCELLANEOUS.

**a.     Reliance by Other Persons.** Each Person (including, but not limited to, any Account Debtor) obligated with respect to any of the Collateral may accept without any question any exercise by Secured Party of any right or remedy of Secured Party pursuant to this Agreement or arising or accruing as a result of this Agreement.

**b.     Limitation on Security Interest.** The payment of the Obligations shall not be secured by any Security Interest to the extent of any amount in excess of the maximum amount the payment of which can be so secured without rendering such Security Interest unenforceable under applicable law as a fraudulent conveyance or transfer.

Initials

CONFIDENTIAL

c. **Obligations Relating to Collateral.** The grant or other creation of any Security Interest shall not constitute an assignment by any Debtor to Secured Party of any obligation of such Debtor relating to any of the Collateral. Each Debtor shall remain obligated to perform each such obligation, and Secured Party shall not be obligated to perform any such obligation, whether or not Secured Party exercises any right or remedy pursuant to this Agreement or arising or accruing as a result of this Agreement. The only obligations of Secured Party relating to the Collateral shall be, to the extent required by applicable law, to act in a commercially reasonable manner in exercising with respect to any of the Collateral any right or remedy pursuant to this Agreement or arising or accruing as a result of this Agreement.

d. **Liability.** If more than one Person executes this Agreement, (i) each of them shall be jointly and severally liable pursuant to this Agreement, and (ii) this Agreement shall be construed, interpreted and enforced, whether in any action or other legal proceeding or otherwise, as to each of them as though each of them had executed and delivered to Secured Party a separate agreement identical to this Agreement.

e. **Assignment or Grant of Participation.** In conjunction with any assignment or other transfer of or grant of any participation in any of the Obligations by Secured Party, Secured Party shall have the right to assign or otherwise transfer or grant any participation in this Agreement, any Security Interest, any obligation of any Debtor pursuant to this Agreement or any right or remedy of Secured Party pursuant to this Agreement or arising or accruing as a result of this Agreement.

f. **Binding Effect.** This Agreement shall be binding upon each Debtor and each direct or indirect legal representative, successor and assignee of each Debtor and shall inure to the benefit of and be enforceable by Secured Party and each direct or indirect successor and assignee of Secured Party.

g. **Entire Agreement, Modifications and Waivers.** This Agreement contains the entire agreement between Secured Party and each Debtor with respect to the subject matter of this Agreement and supersedes each action heretofore taken or not taken, each course of conduct heretofore pursued, accepted or acquiesced in, and each oral, written or other agreement and representation heretofore made, by or on behalf of Secured Party with respect thereto. No action heretofore or hereafter taken or not taken, no course of conduct heretofore or hereafter pursued, accepted or acquiesced in, no oral, written or other agreement or representation heretofore made, and no agreement or representation hereafter made other than in writing, by or on behalf of Secured Party shall modify or terminate this Agreement, impair or otherwise adversely affect any Security Interest, any obligation of any Debtor pursuant to this Agreement or any right or remedy of Secured Party pursuant to this Agreement or arising or accruing as a result of this Agreement or operate as a waiver of any such right or remedy. No modification of this Agreement or waiver of any such right or remedy shall be effective unless made in a writing duly executed by Secured Party and specifically referring to such modification or waiver.

h. **Rights and Remedies Cumulative.** All rights and remedies of Secured Party pursuant to this Agreement or arising or accruing as a result of this Agreement shall be cumulative, and no such right or remedy shall be exclusive of any other such right or remedy.

i. **Extent of Consents and Waivers.** Each consent and waiver of any Debtor contained in this Agreement shall be deemed to have been given to the extent permitted by applicable law.

j. **Exercise of Rights; Requests.** Except as expressly provided in this Agreement, each right and remedy of Secured Party pursuant to this Agreement or arising or accruing as a result of this Agreement may be exercised (i) at any time and from time to time, (ii) in the sole discretion of Secured Party, (iii) without any notice or demand of any kind and (iv) whether or not any Event of Default or any other event or condition of default relating to any of the Obligations, any of the Collateral or any Other Collateral has occurred or existed, but Secured Party shall not be obligated to exercise any such right or remedy. Each such right and remedy may be exercised only to the extent that the exercise thereof does not

Initials

CONFIDENTIAL

(i) violate applicable law or (ii) if requiring any Debtor to take any action, require any Debtor to violate any ethical or disciplinary rule, regulation or law governing non-disclosure of confidential information by an attorney or prohibiting the unauthorized practice of law. Each request by Secured Party pursuant to this Agreement may be made (i) at any time and from time to time, (ii) in the sole discretion of Secured Party and (iii) whether or not any Event of Default or any other event or condition of default relating to any of the Obligations, any of the Collateral or any Other Collateral has occurred or existed.

k.   **Severability.** Whenever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law. If, however, any such provision shall be prohibited by or invalid under such law, it shall be deemed modified to conform to the minimum requirements of such law, or, if for any reason it is not deemed so modified, it shall be prohibited or invalid only to the extent of such prohibition or invalidity without the remainder thereof or any other such provision being prohibited or invalid.

l.   **Governing Law.** This Agreement shall be governed by and construed, interpreted and enforced in accordance with the internal laws of the State of New York, without regard to principles of conflicts of law or to the law of any other jurisdiction.

m.   **Headings.** In this Agreement, headings of sections are for convenience of reference only and have no substantive effect.

n.   **Counterparts.** This Agreement may be executed in two or more counterparts, each of which together shall be deemed an original, but all of which together shall constitute one and the same instrument. In the event that any signature is delivered by facsimile transmission or by e-mail delivery of a \".pdf\" format data file, such signature shall create a valid and binding obligation of the party executing (or on whose behalf such signature is executed) with the same force and effect as if such facsimile or \".pdf\" signature page were an original thereof.

13.   **CONSENTS AND WAIVERS RELATING TO LEGAL PROCEEDINGS.**

a.   **JURISDICTIONAL CONSENTS AND WAIVERS. EACH DEBTOR KNOWINGLY, VOLUNTARILY, INTENTIONALLY AND IRREVOCABLY CONSENTS AND AGREES THAT ANY ACTION OR OTHER LEGAL PROCEEDING COMMENCED BY SECURED PARTY SHALL BE BROUGHT ONLY IN THE SUPREME COURT OF THE STATE OF NEW YORK LOCATED IN ERIE COUNTY, WHICH SHALL BE DEEMED TO BE THE COURT OF SOLE AND EXCLUSIVE VENUE FOR THE BRINGING OF SUCH ACTION; PROVIDED, HOWEVER, SECURED PARTY MAY, AT ITS OPTION, COMMENCE ANY ACTION, SUIT OR PROCEEDING IN ANY OTHER APPROPRIATE FORUM OR JURISDICTION TO OBTAIN POSSESSION OR FORECLOSURE UPON ANY COLLATERAL, TO OBTAIN EQUITABLE RELIEF OR TO ENFORCE ANY JUDGMENT OR ORDER OBTAINED BY SECURED PARTY AGAINST DEBTOR OR WITH RESPECT TO ANY COLLATERAL, TO ENFORCE ANY OTHER RIGHT OR REMEDY UNDER THIS AGREEMENT OR TO OBTAIN ANY OTHER RELIEF DEEMED APPROPRIATE BY SECURED PARTY. DEBTOR EXPRESSLY SUBMITS AND CONSENTS IN ADVANCE TO PERSONAL JURISDICTION IN ANY ACTION OR SUIT COMMENCED IN THE SUPREME COURT OF THE STATE OF NEW YORK LOCATED IN ERIE COUNTY, AND DEBTOR HEREBY WAIVES ANY OBJECTIONS WHICH DEBTOR MAY HAVE BASED UPON LACK OF PERSONAL JURISDICTION, IMPROPER VENUE OR FORUM NON CONVENIENS AND HEREBY CONSENTS TO THE GRANTING OF SUCH LEGAL OR EQUITABLE RELIEF AS IS DEEMED APPROPRIATE BY SUCH NEW YORK COURT.**

b.   **WAIVER OF TRIAL BY JURY. EACH DEBTOR KNOWINGLY, VOLUNTARILY, INTENTIONALLY AND IRREVOCABLY WAIVES EACH RIGHT SUCH DEBTOR MAY HAVE TO A TRIAL BY JURY WITH RESPECT TO ANY ACTION OR OTHER LEGAL PROCEEDING, WHETHER BASED ON ANY**


Initials

CONFIDENTIAL

**CONTRACT OR NEGLIGENT, INTENTIONAL OR OTHER TORT OR OTHERWISE, ARISING OUT OF OR OTHERWISE RELATING TO THIS AGREEMENT, ANY OF THE OBLIGATIONS, ANY OF THE COLLATERAL OR ANY OTHER COLLATERAL.**

c.    **SERVICE OF PROCESS.** PROCESS ON DEBTORS IN ANY SUIT, ACTION OR PROCEEDING ARISING OUT OF THIS AGREEMENT WILL BE DEEMED TO HAVE BEEN GIVEN TO A DEBTOR WHEN GIVEN IN ANY <u>ONE</u> OF THE FOLLOWING WAYS: (I) PERSONALLY DELIVERED, (II) TWO (2) BUSINESS DAYS AFTER DEPOSITED WITH A NATIONALLY RECOGNIZED OVERNIGHT COURIER, CHARGES PREPAID, THAT ROUTINELY ISSUES RECEIPTS, OR (III) FOUR (4) BUSINESS DAYS AFTER SENT BY CERTIFIED MAIL BY THE UNITED STATES POSTAL SERVICE, POSTAGE PREPAID, RETURN RECEIPT REQUESTED, ADDRESSED TO SUCH DEBTOR AT THE APPLICABLE ADDRESS SET FORTH IN THIS AGREEMENT. Such service on any Debtor shall be deemed in every respect effective service of process upon and shall, to the fullest extent permitted by law, be taken and held to be valid personal service upon such Debtor. Nothing in this Section shall affect Secured Party's right to serve process in any other manner permitted by law. Each Debtor may add additional addresses or change the address for purposes of service of process by giving 10 days' prior written notice of such change to Secured Party.

Dated: June 2, 2017

LIDDLE & ROBINSON LLP

By: _____
Jeffrey L. Liddle, Partner
Facsimile No. 646-388-9255

_____
Jeffrey L. Liddle, Individually
Facsimile No. 646-388-9255

37

Initials

CONFIDENTIAL

# EXHIBIT A

## QUESTIONNAIRE

1.  What is Borrower's legal name?

    LIDDLE & ROBINSON LLP

2.  What is Borrower's jurisdiction of organization and business structure:

    A limited liability partnership under the laws of New York

3.  What is Borrower's Federal Employer Identification Number or Social Security Number?

    13-3226440

4.  What is the address (including state, county and zip code) of a business office of Borrower?

    800 Third Avenue, 8th and 9th Floor, New York, NY 10022

5.  What is the address (including state, county and zip code) of each location at which any Record included in the Collateral is or will be kept other than the locations the addresses of which are indicated in the answers to question 4?

    800 Third Avenue, 8th and 9th Floor, New York, NY 10022
    11 Fifth Avenue Apt. 19M, New York, NY 10003

6.  **Deposit Accounts owned by each Debtor**

    For each deposit account of each Debtor, what is the name and address of the bank maintaining such account, what type of account is such account (include each trust account but indicate its status as a trust account) and what is the account number of each such account?

| Debtor Name | Name & Address of Depository Bank | Type of Account | Account Number |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |

7.  **Existing Liens**

    In the case of any security interest or other lien covering any of the Collateral and existing on the date of this Agreement in favor of any Person other than Secured Party, what are the complete name and address of each such Person in whose favor such security interest or other lien exists, and what is the nature of such security interest or other lien and the debt secured thereby?

38

Initials

CONFIDENTIAL

| Debtor Name | Name & Address of the Secured Party holding the Permitted Lien | Description of Collateral and Debt Secured Including Principal Amount of such Debt |
|---|---|---|
|  |  |  |

8.  What is the legal name and principal residence address of each Debtor other than Borrower?

Jeffrey L. Liddle – 11 Fifth Avenue Apt. 19M, New York, NY 10003

9.  Description of any Commercial Tort Claims owned by any Debtor

In the case of any Commercial Tort Claim existing on the date of this Agreement, which Debtor is the owner of such claim and what is the description of such claim?

| Debtor Name | Description of Commercial Tort Claim |
|---|---|
|  |  |

39


Initials

CONFIDENTIAL

ACKNOWLEDGEMENT (SECURITY AGREEMENT)

STATE OF NEW YORK
COUNTY OF *NEW YORK*

On the *2ND* day of June in the year 2017 before me, the undersigned, a notary public in and for said state, personally appeared Jeffrey L. Liddle personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity as Partner of Liddle & Robinson LLP and that by his signature on the instrument, the entity upon behalf of which the individual acted, executed the instrument.

Notary Public

Rose M. Reverendo
Notary Public - State of New York
No. 01RE4908329
Qualified in New York County
My Commission Expires Feb. 28, 2018

STATE OF NEW YORK
COUNTY OF *NEW YORK*

On the *2ND* day of June in the year 2017 before me, the undersigned, a notary public in and for said state, personally appeared Jeffrey L. Liddle personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he (she) executed the same in his (her) capacity, and that by his (her) signature on the instrument, the individual, or other person upon behalf of which the individual acted, executed the instrument.

Notary Public

Rose M. Reverendo
Notary Public - State of New York
No. 01RE4908329
Qualified in New York County
My Commission Expires Feb. 28, 2018

40

Initials

# Attachment 5

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER [optional]**
Phone: (800) 331-3282 Fax: (818) 662-4141

CT Lien Solutions
Representation of filing

**This filing is Completed**
File Number : 201706025657136
File Date : 02-Jun-2017

**B. SEND ACKNOWLEDGMENT TO: (Name and Address)**

CT Lien Solutions
P.O. Box 29071
Glendale, CA 91209-9071

59157304

NYNY

File with: Secretary of State, NY

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names**

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Liddle & Robinson LLP | | | | |

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 800 Third Avenue, 8th Floor | New York | NY | 10022 | USA |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | LLP | NY | ☒ NONE |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names**

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|
| Liddle | Jeffrey | L. | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 11 Fifth Avenue, Apt. 19M | New York | NY | 10003 | USA |

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | ☐ NONE |

**3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)**

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| C T Corporation System, as representative | | | | |

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
|---|---|---|---|---|

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 330 N Brand Blvd, Suite 700; Attn: SPRS | Glendale | CA | 91203 | USA |

**4. This FINANCING STATEMENT covers the following collateral:**

All right, title and interest in all Goods (including, Equipment, Fixtures and Inventory), Money, Instruments (including Promissory Notes), Accounts, Deposit Accounts, Chattel Paper, Investment Property, Letter-of-Credit Rights, Documents and General Intangibles (including payment intangibles), Commercial Tort Claims described in the Questionnaire, Insurance Proceeds and any other personal property (whether or not subject to the UCC), and all interest, dividends and other distributions thereon paid and payable in cash or in property; and all replacements and substitutions for, and all accessions and additions to, and all profits, offspring, Products and other Proceeds of, all of the foregoing. Each Debtor is prohibited from granting additional security interest in the Collateral or the Proceeds of the Collateral. (Notice to potential competing creditors under Official Note 5 of UCC Section 9-331).

The Collateral includes, without limitation, any right to payment of any Debtor for client representation or referral (whether such right to payment is on a contingent, hourly, fixed fee or other basis) and for Costs and Expenses (as defined in the Note), whether or not yet earned by performance, and the proceeds thereof, including Net Fees and Expenses (as defined in the Note).

| 5. ALTERNATIVE DESIGNATION [if applicable]: | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR | ☐ SELLER/BUYER | ☐ AG. LIEN | ☐ NON-UCC FILING |
|---|---|---|---|---|---|---|

| 6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Attach Addendum [if applicable] | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | ☐ All Debtors | ☐ Debtor 1 | ☐ Debtor 2 |
|---|---|---|---|---|

**8. OPTIONAL FILER REFERENCE DATA**
59157304

FILING OFFICE COPY - UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

Prepared by Lien Solutions, P.O. Box 29071,
Glendale, CA 91209-9071 Tel (800) 331-3282

**765925**          **2017 Jun 02 PM03:25**

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]
Gisella Melendez 800-331-3282

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

⌐ CT Lion Solutions
P.O. Box 29071
Glendale, CA 91209-9071, USA
efiling@wolterskluwer.com
(Fax)818-662-4141 ⌐

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME Liddle & Robinson LLP | | | | | |
|---|---|---|---|---|---|
| OR | 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 1c. MAILING ADDRESS 800 Third Avenue, 9th Floor | | CITY New York | STATE NY | POSTAL CODE 10022 | COUNTRY USA |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION LLP | 1f. JURISDICTION OF ORGANIZATION NY | 1g. ORGANIZATIONAL ID #, if any None | |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names          [X] NONE

| 2a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| OR | 2b. INDIVIDUAL'S LAST NAME Liddle | FIRST NAME Jeffrey | MIDDLE NAME L. | | SUFFIX |
| 2c. MAILING ADDRESS 11 Fifth Avenue, Apt. 19M | | CITY New York | STATE NY | POSTAL CODE 10003 | COUNTRY USA |

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any None | |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)          [X] NONE

| 3a. ORGANIZATION'S NAME C T Corporation System, as representative . | | | | | |
|---|---|---|---|---|---|
| OR | 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 3c. MAILING ADDRESS 330 N Brand Blvd, Suite 700; Attn: SPRS | | CITY Glendale | STATE CA | POSTAL CODE 91203 | COUNTRY USA |

4. This FINANCING STATEMENT covers the following collateral:
All right, title and interest in all Goods (including, Equipment, Fixtures and Inventory), Money, Instruments (including Promissory Notes), Accounts, Deposit Accounts, Chattel Paper, Investment Property, Letter-of-Credit Rights, Documents and General Intangibles (including payment intangibles), Commercial Tort Claims described in the Questionnaire, Insurance Proceeds and any other personal property (whether or not subject to the UCC), and all interest, dividends and other distributions thereon paid and payable in cash or in property; and all replacements and substitutions for, and all accessions and additions to, and all profits, offspring, Products and other Proceeds of, all of the foregoing. Each Debtor is prohibited from granting additional security interest in the Collateral or the Proceeds of the Collateral. (Notice to potential competing creditors under Official Note 5 of Section 9-331).

The Collateral includes, without limitation, any right to payment of any Debtor for client representation or referral (whether such right to payment is on a contingent, hourly, fixed fee or other basis) and for Costs and Expenses (as defined in the Note), whether or not yet earned by performance, and the proceeds thereof, including Net Fees and Expenses (as defined in the Note).

| 5. ALTERNATIVE DESIGNATION (if applicable): | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Attach Addendum [if applicable] | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | | All Debtors | Debtor 1 | Debtor 2 |
| 8. OPTIONAL FILER REFERENCE DATA NY-0-59157304-53407484 | | | | | | |

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

**Filing Number-201706025657136**