William F. Gray, Jr.
Alison D. Bauer
Jiun-Wen Bob Teoh
FOLEY HOAG LLP
1301 Avenue of the Americas
25th Floor
New York, New York 10019
Tel: (646) 927-5500
Fax: (646) 927-5599

Michael Licker
Meredith Parkinson
James Fullmer
FOLEY HOAG LLP
Seaport West
155 Seaport Boulevard
Boston, Massachusetts 02210
Tel: (617) 832-1000
Fax: (617) 832-7000

*Attorneys for Jeffrey Lew Liddle,
a Debtor and Debtor in Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------

|  |  |  |
|---|---|---|
|  | : |  |
| In re | : | Chapter 11 |
|  | : | Case No.  19-10747 (SHL) |
| Jeffrey Lew Liddle, | : | Jointly administered: Case No. 19-12346 |
|  | : | Related Docs. 249, 250 |
| Debtor | : |  |

---------------------------------------------------------- x

**OBJECTION BY DEBTOR JEFFREY LEW LIDDLE TO MOTION BY COUNSEL
FINANCIAL II LLC, LIG CAPITAL LLC, AND COUNSEL FINANCIAL HOLDINGS
LLC, PURSUANT TO § 1112(b) OF THE BANKRUPTCY CODE, TO CONVERT THIS
<u>CHAPTER 11 REORGANIZATION TO A CHAPTER 7 LIQUIDATION</u>**

### Table of Contents

Preliminary Statement ................................................................................................................. 2

BACKGROUND ......................................................................................................................... 2

ARGUMENT .............................................................................................................................. 8

    A.    The Court Has Wide Discretion in Determining Ii Cause Exists to Convert the Case .... 8

    B.    Counsel Financial Has Not Met its Burden of Proving Cause to Convert the Chapter 11
Case Under Bankruptcy Code Section 1112(b). ...................................................................... 9

        1.    The Debtor's estate does not have substantial and continuing losses. ........................... 10

        2.    The Debtor's estate has a reasonable route to rehabilitation. ........................................ 14

    C.    To the Extent Counsel Financial Seeks Conversion on Some Basis Other Than §
1112(b)(4)(A), the Unusual Circumstances of this Case Counsel Against Conversion. .......... 16

CONCLUSION ........................................................................................................................... 17

B5071839.6

**Cases**

*Ad Hoc Comm. of Bondholders v. Citicorp Venture Capital Ltd.*
2000 U.S. Dist. LEXIS 2606 (S.D.N.Y. Mar. 8, 2000) ......................................................... 10

*In re 1031 Tax Group, LLC*
374 B.R. 78 (Bankr. S.D.N.Y. 2007) ................................................................................. 9, 10

*In re Adamo*
2016 Bankr. LEXIS 694 (Bankr. E.D.N.Y. Mar. 4, 2016)........................................... passim

In re Adbrite Corp.
290 B.R. 209 (Bankr. S.D.N.Y.) ............................................................................. 14, 16, 17

In re BH S & B Holdings LLC
439 B.R. 342 (Bankr. S.D.N.Y. 2010) ..................................................................................... 15

*In re Denrose Diamond*
49 B.R. 754 (Bankr. S.D.N.Y. 1985) ............................................................................. 12, 16

*In re FRGR Managing Member LLC*
419 B.R. 576 (Bankr. S.D.N.Y. 2009) ..................................................................................... 10

*In re Kanterman*
88 B.R. 26 (S.D.N.Y. 1988).................................................................................................. 18

*In re MF Global Holdings Ltd.*
465 B.R. 736 (Bankr. S.D.N.Y. 2012) ..................................................................................... 9

*In re Nugelt, Inc.*
142 B.R. 661 (Bankr. D. Del. 1992) ......................................................................................... 9

*In re Photo Promotion Assocs.*
47 B.R. 454 (Bankr. S.D.N.Y. 1985) ................................................................................... 8, 9

*In re Preferred Door Co.*
990 F.2d 547 (10th Cir. 1993)................................................................................................ 9

In re Sillerman
605 B.R. 631 (Bankr. S.D.N.Y. 2019) ............................................................................ 15, 18

*In re Sunnyland Farms, Inc.*
517 B.R. 263 (Bankr. D.N.M. 2014)..................................................................................... 10

*In re Tracey Service Co., Inc.*
17 B.R. 405 (Bankr. E.D. Pa. 1982)...................................................................................... 16

*In re Woodbrook Associates*
19 F.3d 312 (7th Cir. 1994).................................................................................................... 9

*In re Young*
    76 B.R. 376 (Bankr. D. Del. 1987) ........................................................................ 9

**Statutes**

11 U.S.C. § 1112(b)(1) ............................................................................................... 8

11 U.S.C. § 1112(b)(4)(A) .......................................................................................... 8

**Other Authorities**

7 Collier on Bankruptcy P 1112.04 (16th ed. 2019) ...................................................... 9

B5071839.6

Jeffrey Lew Liddle, as debtor and debtor-in-possession (the "Debtor"), in the above-captioned Chapter 11 case (the "Chapter 11 Case"), hereby files this objection (the "Objection") to the *Motion of Counsel Financial II LLC, LIG Capital LLC, and Counsel Financial Holdings LLC Pursuant to § 1112(b) of the Bankruptcy Code, to Convert This Chapter 11 Reorganization to a Chapter 7 Liquidation* [Doc. No. 249] (the "CF Motion").  In support of this Objection, the Debtor relies on: the *Affidavit of Jeffrey L. Liddle Under Bankruptcy Rule 1007-2* filed on March 11, 2019, in this Chapter 11 Case [Doc. No. 1] (the "Individual First Day Affidavit"); the *Affidavit of Jeffrey L. Liddle Under Bankruptcy Rule 1007-2* filed on July 22, 2019 in the Chapter 11 case of *In re Liddle & Robinson L.L.P.*, Case No. 19-12346 jointly administered herewith [Doc. No. 2] (the "Firm First Day Affidavit"); the *Affidavit of Jeffrey L. Liddle In Opposition to the Conversion Motions* filed contemporaneously herewith (the "Liddle Objection Affidavit" and collectively with the Individual First Day Affidavit and the Firm First Day Affidavit, the "Liddle Affidavits"); and the *Declaration of Allen Wilen in Support of: (I) Omnibus Objection by Debtor Liddle & Robinson, L.L.P to: (A) Motion by Counsel Financial II LLC, LIG Capital LLC, and Counsel Financial Holdings LLC, Pursuant to § 1112(B) of the Bankruptcy Code, to Convert this Chapter 11 to a Chapter 7, (B) Motion by Blaine H. Bortnick Pursuant to Section 1112(B) of the Bankruptcy Code, to Convert this Chapter 11 Reorganization to a Chapter 7 Liquidation and (C) United States Trustee's Motion: (I) Pursuant to 11 U.S.C. § 1112, for Conversion of the Corporate Case to a Case under Chapter 7, or in  the Alternative, (II) Pursuant to 11 U.S.C. § 1104, for Appointment of a Chapter 11 Trustee; and (II) Objection by Debtor  Jeffrey Lew Liddle to (I) Motion by Counsel Financial II LLC,  LIG Capital LLC, and Counsel Financial Holdings LLC, Pursuant  to § 1112(B) of the Bankruptcy Code, To Convert  This Chapter 11 To a Chapter 7 Liquidation* (the "Wilen Declaration" and collectively with the Liddle Affidavits, the "Supporting Affidavits") filed

1

contemporaneously herewith.  In further support of this Objection, the Debtor respectfully states as follows:

**Preliminary Statement**

Movants Counsel Financial II LLC ("CFII"), LIG Capital LLC ("LIG"), and Counsel Financial Holdings LLC ("Holdings", and together with CFII and LIG, "Counsel Financial") seek to convert this Chapter 11 Case to Chapter 7.  They assert a single basis to do so, arguing that the Debtor's estate is suffering substantial and continuing losses and has no reasonable likelihood of rehabilitation.  This theory is based on the faulty premise that the Debtor is burning cash and is not generating income through his law practice.  To the contrary, the Debtor's law practice is thriving and his continued ability to serve his clients as a debtor in possession provides the best—and only—opportunity for the Debtor to satisfy his creditors.  Moreover, Counsel Financial's asserted concerns about the time and expense of the Debtor's reorganization ring hollow in light of the fact that it is Counsel Financial that has run up the Debtor's legal fees and bogged down the Debtor's progress in reorganizing through its overly litigious conduct throughout the proceedings (and, indeed, before these proceedings began).  Since the Debtor has freed himself of Counsel Financial's improperly asserted security interest in his and his wife's sale proceeds in their co-op apartment, the Debtor's law practice is generating fee income at a remarkable clip.  An effective reorganization is in sight and indeed likely.  Counsel Financial's motion should be denied.

**BACKGROUND**

1.      On March 11, 2019 (the "Petition Date"), the Debtor filed a voluntary petition in this Court for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

B5071839.6

2.      The Debtor is an attorney in the State of New York who has been a partner at the law firm Liddle & Robinson, L.L.P. (the "Firm" or "Liddle & Robinson") since the Firm was formed on June 4, 1979.  Individual First Day Affidavit ¶ 1

3.      Jeffrey L. Liddle is the sole remaining partner of the Firm.  Firm First Day Affidavit ¶ 4.

4.      On July 22, 2019, the Firm commenced a Chapter 11 case, *In re Liddle & Robinson L.L.P.*, Case No. 19-12346, jointly administered herewith (the "Firm Debtor Case").  The Firm is a debtor-in-possession.

5.      The relationship between Mr. Liddle, the Firm, and the movants here dates to August 2016, when the Firm commenced a relationship with Counsel Financial.  Firm First Day Affidavit ¶ 3.  Counsel Financial is a litigation funder comprised of multiple distinct pools of investors who take speculative interests in contingency fee cases.  Liddle Objection Affidavit ¶ 19.

6.      Between August 2016 and June 2017, a series of loans were made by the Counsel Financial entities to the Firm.  Mr. Liddle personally guaranteed these loans.  Firm First Day Affidavit ¶¶ 10-12.

7.      At this same time, the Firm's financial situation was entering a difficult phase. While the Firm's litigation practice continued to thrive (and still continues to do so), a series of departures at both the partner and associate level necessarily hampered the Firm's capacity to take new cases, and revenue declined.  Firm First Day Affidavit ¶ 3.

8.      Although the borrower on the Counsel Financial loans had been the Firm, and Mr. Liddle was simply a guarantor, Counsel Financial saw the opportunity to use the guarantee that Mr. Liddle had made on behalf of the Firm to obtain a portion of the proceeds from the sale of his and his wife's shares in their Manhattan co-op apartment (the "NY Co-op Shares").  In 2018, CFII

3

brought suit in the Erie County Supreme Court (the "Erie County Action") via the abbreviated process of Summary Judgment in Lieu of Complaint under NY CPLR § 3213, which afforded the Firm and Mr. Liddle no opportunity to assert defenses, counterclaims, bring in other parties (such as LIG or CFH), or conduct discovery. Firm First Day Affidavit ¶ 18.

9. CFII obtained a judgment against Mr. Liddle and an order attaching the sale proceeds from the NY Co-op Shares. Despite the fact that Mr. Liddle's wife was not a party to any of the Counsel Financial loans, and was not a party to the Erie County Action, CFII sought to attach her portion of the sale proceeds as well. Firm First Day Affidavit ¶ 18.

10. With Counsel Financial having attached essentially all of the Debtor's liquid assets, as well as those of his wife, the Debtor was compelled to file for bankruptcy.

11. At that time, however, the Debtor had a straightforward path toward reorganization. The Debtor had received a written offer of partnership and a "guaranteed employment contract" (collectively, the "Offer") from a well-established national litigation firm that would have allowed him to move the Firm, including all staff and associates, to a solid platform for the continued practice of law. The proceeds of that practice were to be used for the benefit of all the Debtor's creditors and to fund a reorganization plan. That offer was withdrawn on the day that the Chapter 11 Case was filed. The Debtor was informed by the managing partner of the offering firm that Counsel Financial interfered with and caused the revocation of the Offer. The Debtor was further told by the managing partner that Counsel Financial wanted the Liddle & Robinson cases to be sent over to the new firm, which would split the fees earned with Counsel Financial but that neither Debtor nor any of the associates or staff would be hired. Firm First Day Affidavit ¶ 19.

12. Counsel Financial has acted in concert with former partners of the Firm to direct existing business away from the Firm and instruct fee-paying clients to pay LIG (on behalf of CFII

B5071839.6

and Holdings as well as itself) directly rather than pay the Firm the fees due for services rendered, a diversion of payment that has caused the Firm severe financial distress. Firm First Day Affidavit ¶ 20.

13.    In the months preceding the filing of the Chapter 11 Case, Counsel Financial, through counsel, also directly or indirectly contacted the Firm's clients demanding direct payment to them of fees due the Firm. Firm First Day Affidavit ¶ 21.

14.    After the filing of the Chapter 11 Case, Counsel Financial has continued to cost the estate time, money and focus through its litigiousness. Most notably, Counsel Financial continued its crusade to deprive both the estate and the Debtor's non-party wife of each of their portions of the NY Co-op Share sale proceeds. Counsel Financial objected to the Debtor's motion for turnover of the Debtor's wife's portion [Doc. No. 23], sought a Rule 2004 examination of the Debtor's wife [Doc. No. 33], objected to the Debtor's motion to approve use of the estate's cash collateral [Doc. No. 57], filed a Memorandum of Law in support of its claim to the sale proceeds [Doc. No. 74], filed a Reply Memorandum of Law asserting an entirely new theory of why it was entitled to the sale proceeds [Doc. No. 95], objected to the Debtor's proposed order embodying the Court's decision that CF II had no security interest in the sale proceeds [Doc. No. 172], and finally appealed the Court's decision [Doc. No. 194]. Counsel Financial has failed to directly deprive the estate of the use of its cash collateral, but its unnecessary actions have been directly responsible for the incurring of significant professional fees to be paid from that cash, which was not Counsel Financial's collateral, and distracting the Debtor from working on his cases and reorganizing.

15.    These actions by Counsel Financial have hindered, but not crippled, the Debtor's efforts to reorganize. The success of the Firm will be key to the Debtor's successful reorganization. Many, but not all, of the Debtor's and the Firm's creditors overlap, including Counsel Financial,

5

as Mr. Liddle's personal liabilities arise in large part from guarantees of the Firm's obligations. These include every claim in excess of $150,000 save one, and three other claims in excess of $50,000.[1]  In total, of the approximately $76.75 million in claims listed on Debtor's Schedules D and E/F (over $50 million of which is attributable to contingent litigation claims), nearly $70.5 million is based on Mr. Liddle's guarantees of the Firm's debts.  The only creditor with a claim in excess of $150,000 that is not also a creditor of the Firm is M&T Bank, with a claim for $2,672,254 that is listed on both Schedule D and Schedule E/F and therefore accounts for over 80% of the amounts claimed by creditors of the Debtor that are not also creditors of the Firm.[2]  *See* Doc. No. 56; Doc. No. 60 in Case No. 19-12346.

16.    Moreover, the Firm's business is the source of a substantial majority of the Debtor's personal income and provides the financial underpinning for distributions to creditors in both this Chapter 11 Case and the Firm Debtor Case.  Firm First Day Affidavit at ¶ 5.

17.    This Court has made clear that the value of the individual estate rested upon the assets of the law firm.  The Firm filing was at the suggestion of the Bankruptcy Court, the insistence of creditor Kasowitz Benson Torres and the implied consent of Counsel Financial.  *See* Transcript at 32:15-33:7 (Mar. 28, 2019) (the Court describing the Firm case as a "Chinese nesting doll" and a case within the Debtor's case); Transcript at 21:21-21:24 (Apr. 11, 2019) (Counsel Financial's attorney explaining that it released restraining notices on the Firm's account and stating

---

[1] In descending order of claim amount, these are the claims by Andrea Paparella (listed at Schedule E/F, Item 4.1, claiming $32,000,000), Effat Emamian (Schedule E/F, Item 4.2, $15,000,000), CF II (listed at both Schedule D Item 2.2 and Schedule E/F Item 4.3, $6,546,448.83), Michael Barr (Schedule E/F, Item 4.4, $6,500,000), Holdings (Schedule E/F, Item 4.6, $1,906,621), LIG (Schedule E/F, Item 4.7, $634,910), 800 Third Avenue (Schedule E/F, Item 4.8, $426,000), Kasowitz Benson Torres LLP (Schedule E/F, Item 4.10, $208,730.59), De Lage Landen Financial Services (listed at both Schedule D Item 2.5 and Schedule E/F Item 4.9, $197,310.50), Eisner, P.C. (Schedule E/F, Item 4.12, $138,948.42), Blank Rome LLP (Schedule E/F, Item 4.16, $83,269.58), and Globe Storage & Moving Co. (Schedule E/F, Item 4.32, $55,556.63).

[2] The Debtor is actively engaged in finding a consensual resolution to the M&T Bank claim by marketing and selling the Hamptons property.

6

"And if the debtor makes a business decision that it's in the best interests of the estate to file, he should do that."); Transcript at 14:2-14:7 (May 1, 2019) (Kasowitz Benson Torres requesting a timeline directing the Firm Debtor to file).[3]

18.    Likewise, income to the Debtor's estate is set to increase significantly. The Budgets approved by the Court with respect to the Firm's use of cash collateral have provided for a $15,000 monthly draw payment to the Debtor. *See, e.g.*, Third Interim Order (1) Authorizing Use of Cash Collateral by Liddle & Robinson LLP, (2) Granting Adequate Protection, (3) Modifying the Automatic Stay, and (4) Scheduling a Final Hearing [Doc. No. 81 in 19-12346]. Total draw payments from the commencement of the case through the end of October have been under the budgeted amount, for a total of $50,150, with the Debtor's monthly income augmented by $3,701 in Social Security payments monthly. *See* Monthly Operating Report for October at 3 [Doc. No. 234]. The Firm's gross receipts in the final quarter of 2019 alone, however, are on target to be in excess of $3.5 million. There is a valuable active law practice that should be sustained in Chapter 11 to achieve the best results for the benefit of creditors and other parties in interest. Liddle Objection Affidavit ¶ 5.

19.    Despite the progress that has been and continues to be made, Counsel Financial, Mr. Blain Bortnick, a former partner in the Firm, and the United States Trustee have each filed motions to convert the Firm Debtor Case to a Chapter 7 case.[4]

---

[3] Fees incurred in the filing of the Firm Debtor case, while initially allocated to the Debtor's estate, should ultimately be allocated to the Firm's estate.

[4](A) *Motion of Counsel Financial II LLC, LIG Capital LLC, and Counsel Financial Holdings LLC Pursuant to § 1112(b) of the Bankruptcy Code, to Convert This Chapter 11 Reorganization to a Chapter 7 Liquidation* [Case No. 19-12346, Doc. No 103] (the "CF Firm Motion"); (B) the *Motion by Blaine H. Bortnick Pursuant to § 1112(b) of the Bankruptcy Code, to Convert This Chapter 11 Reorganization to a Chapter 7 Liquidation* [Case No. 19-12346, Doc. No. 130] (the "Bortnick Firm Motion"); and (C) *United States Trustee's Motion: (I) Pursuant to 11 U.S.C. § 1112, for Conversion of the Corporate Case to a Case under Chapter 7, or in the Alternative, (II) Pursuant to 11 U.S.C. § 1104, for Appointment of a Chapter 11 Trustee* Doc. No. 257 filed in 19-10747, Notice of Motion filed in 19-12346 at Doc. No. 155] (the "U.S. Trustee Motion").

B5071839.6

20.     The CF Firm Motion and the Bortnick Firm Motion are premised on the (incorrect) argument that a limited liability partnership with one partner "has been dissolved by operation of law," "must wind up its affairs," cannot avail itself of reorganization in Chapter 11 and therefore must be converted to a Chapter 7 liquidation.  CF Firm Motion ¶ 1.

21.     Then, the day after a hearing before this Court in which the Court implored the parties to decrease the enmity between them as it is costing the estate money to litigate, Counsel Financial filed this motion. *See* Transcript at 24:3-24:19 (Nov. 26, 2019).

## **ARGUMENT**

### A.     **The Court Has Wide Discretion in Determining Ii Cause Exists to Convert the Case**

22.     Bankruptcy Code section 1112(b)(1) provides, in relevant part, that on request of a party in interest, "the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause . . . ."  11 U.S.C. § 1112(b)(1).  "It is settled law that the burden to establish cause for conversion to Chapter 7 rests squarely on the party seeking such relief."  *In re Photo Promotion Assocs.*, 47 B.R. 454, 458 (Bankr. S.D.N.Y. 1985).

23.     Section 1112(b)(4) lists sixteen examples of circumstances that can support a court's finding of cause to convert or dismiss a Chapter 11 case.  Counsel Financial alleges just one of these grounds:  that there is a "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation."  11 U.S.C. § 1112(b)(4)(A).  When a party seeks to convert or dismiss a case under section 1112(b)(4)(A), it bears a two-part burden.  *See In re 1031 Tax Group, LLC*, 374 B.R. 78, 93 (Bankr. S.D.N.Y. 2007) ("[A] party moving under § 1112(b)(1) must establish both the 'continuing loss or diminution of the estate *and* absence of a

8

reasonable likelihood of rehabilitation.'" (quoting *In re Photo Promotion Assocs.*, 47 B.R. 454, 458 (Bankr. S.D.N.Y. 1985))).

24.     Although section 1112(b)(4) provides a non-exhaustive list of what may constitute cause, whether cause exists is determined on a case-by-case basis, and courts have "wide discretion" in determining to dismiss or convert a case. *In re MF Global Holdings Ltd.*, 465 B.R. 736, 742 (Bankr. S.D.N.Y. 2012).[5] "As a general rule, if continuing a particular chapter 11 case would promote the twin goals of preserving viable businesses and maximizing the creditors' return, then the case is probably not a candidate for conversion or dismissal under section 1112(b)." 7 Collier on Bankruptcy P 1112.04 (16th ed. 2019).

### B.     Counsel Financial Has Not Met its Burden of Proving Cause to Convert the Chapter 11 Case Under Bankruptcy Code Section 1112(b).

25.     Counsel Financial only purports to rely on one of the sixteen enumerated statutory examples of cause in support of its motion. *See* CF Motion ¶ 53. The remaining fifteen enumerated circumstances, as well as other circumstances giving rise to cause such as gross misconduct, malfeasance, and fraud, are plainly not present in this case.[6]

---

[5] Courts in other jurisdictions agree that "cause" under section 1112(b) is a factual determination, to be made on a case-by-case basis within the discretion of the court. *See, e.g., In re Preferred Door Co.*, 990 F.2d 547, 549 (10th Cir. 1993); *In re Woodbrook Associates*, 19 F.3d 312, 316 (7th Cir. 1994); *In re Nugelt, Inc.*, 142 B.R. 661, 665 (Bankr. D. Del. 1992); *In re Young*, 76 B.R. 376, 378 (Bankr. D. Del. 1987).

[6] In its Statement of Facts, *see* CF Motion ¶ 10-50, Counsel Financial refers to certain other circumstances surrounding the lead-up to Debtor's filing, which seem to serve no purpose other than casting aspersions on the Debtor. Counsel Financial does not rely on any of them to support its argument that cause for conversion exists. Nor can it. Counsel Financial asserts that Debtor failed to pay pre-petition taxes, CF Motion ¶ 21-22, but "[u]npaid prepetition taxes are not relevant in the cause analysis." *In re Sunnyland Farms, Inc.*, 517 B.R. 263, 268 (Bankr. D.N.M. 2014). Likewise, alleged fraudulent transfers to family members, standing alone, do not support conversion for cause. *See Ad Hoc Comm. of Bondholders v. Citicorp Venture Capital Ltd.*, No. 99 Civ. 3177 (HB), 2000 U.S. Dist. LEXIS 2606, at *9-13 (S.D.N.Y. Mar. 8, 2000) (declining to find cause to convert or appoint trustee, despite potential claims against insiders, based on "strong presumption that a debtor will remain in possession and control of its assets"). The case Counsel Financial cites to support the "need for an independent fiduciary" involves not transfers to family members but litigation claims pursued by the Debtor's principal without a valid purpose for the Debtor's estate. *See In re FRGR Managing Member LLC*, 419 B.R. 576, 582 (Bankr. S.D.N.Y. 2009). To the extent that Counsel Financial does seek conversion on any as-yet undisclosed basis, the unusual circumstances of this case weigh against any such argument.

9

26.    The one circumstance Counsel Financial attempts to rely on also fails.  While Counsel Financial would need to show *both* substantial and continuing losses *and* the lack of a viable route to rehabilitation, *see In re 1031 Tax Group, LLC*, 374 B.R. at 93, it can do neither.

1.    The Debtor's estate does not have substantial and continuing losses.

27.    "In determining whether a substantial or continuing loss to, or diminution of, the estate exists, 'a court must make a full evaluation of the present condition of the estate, not merely look at the debtor's financial statements.'"  *In re Adamo*, No. 14-73640-las, 2016 Bankr. LEXIS 694, at *30-31 (Bankr. E.D.N.Y. Mar. 4, 2016) (quoting *In re AdBrite Corp.*, 290 B.R. 209, 215 (Bankr. S.D.N.Y. 2003)).  Here, despite Counsel Financial's attempts to obfuscate matters, a full evaluation of the Debtor's *present* condition points to not only a steady stabilization of his estate, but a strong probability of a successful reorganization based on the increasing profits of the Firm.

28.    Counsel Financial's primary argument is that the Debtor is suffering continuous monthly losses based on information in the Debtor's monthly operating reports.  Counsel Financial derives these faulty calculations by incorrectly equating the Debtor's $15,000 monthly draws with income.  By using this fallacious method, Counsel Financial calculates that the Debtor suffered a $12,230 loss in the month of October.  *See* CF Motion ¶ 49.[7]

29.    A draw, however, is not income; it is an advance against the Debtor's capital account with the Firm.  The Debtor's actual income will be calculated at year end when the Firm's profit can be determined and is in fact likely to be significantly higher than the $15,000 draws based on the Firm's recent successes.  Counsel Financial's flawed methodology is contrary

---

[7] Presumably, this is based on taking the Debtor's personal receipts of $6,701 (a $3,000 draw plus $3,701 in social security payments), *see* Monthly Operating Report for October at 5, plus the $12,000 in draw funds that the Debtor was authorized to take but did not, and subtracting his personal disbursements of $30,931, *see id.* at 2.

10

to fundamental accounting principles and says nothing about the Debtor's present financial condition. *See* Wilen Declaration ¶ 19. Moreover, like any equity partner, the Debtor's cycles of cash flow and earned income do not necessarily line up. Income, even when steady on paper, is only distributed at various intervals. It should not be surprising, and is certainly not contradictory, that a large amount of cash on hand will decline over time while expenses are paid, and earned income is not realized until some later date.

30.    As the sole remaining partner of the Firm, the Debtor's income is inextricably tied to the Firm's success. And the Firm has had great success of late. As can be seen from the Firm's October 2019 Monthly Operating Report, the Net Operating Income before restructuring expenses was $1.9 million for the month, and $1.7 million on a cumulative basis since the Firm Petition Date. Wilen Declaration ¶ 19. At the end of November 2019, the Firm had approximately $1.5 million in cash in its bank account and is projecting to collect an additional $1.3 million in client fee payments by the end of the year. *Id.* The Firm's cash flow budget estimated cash collections of approximately $860,000 from the Firm Petition Date to the end of October, while actual collections came in at approximately $2 million, more than *double* the projections. *Id.* With the Firm's receipts exceeding $3.5 million in the final quarter of 2019 alone, the Debtor's monthly income, when fully calculated at the end of the year, is likely to be significantly higher than his $15,000 monthly draw. *Id.* In addition, Firm expenses have consistently tracked below the budget. *Id.*

31.    The Firm is thus thriving under the Debtor's management. The Debtor is taking illiquid assets—the Firm's cases—and turning them into liquid assets as a result of his numerous litigation successes. Wilen Declaration ¶ 20. The Firm's projected 2019 income suggests that the Debtor's individual income will be more than ample to fund a plan.

11

32.    It is indeed Counsel Financial, not the Debtor, which relies on fuzzy math.  To the extent the Debtor's expenses may still have exceeded his income during a dry period for the Firm's receipts, "short-term operating losses where there exists a realistic possibility of rehabilitation do not warrant conversion."  *In re Denrose Diamond*, 49 B.R. 754, 756 (Bankr. S.D.N.Y. 1985).  It is "not unusual for estate assets to decline during the early stage of a chapter 11 case" and it is only when a "persistent loss" endures and harms the interests of creditors that conversion should be considered.  *In re Adamo*, 2016 Bankr. LEXIS 694, at *32.

33.    In one of its many other improper attempts to disparage the Debtor and his professionals, Counsel Financial accuses the Debtor's accountants of "manufacturing $1.1 million in 'phantom income,'" CF Motion ¶ 3, by recording pre-petition sale proceeds from his co-op apartment as "cash receipts" in a monthly operating report.  This is another false accusation. The Debtor never characterized the cash receipt from the co-op apartment sale proceeds as income.  If Counsel Financial sees "phantom income" in the Debtor's records of cash flow to the estate, such an understanding does not come from anything in the Debtor's filings.  Rather, the monthly operating report template form requires the Debtor to provide a record of what cash came into the estate's bank accounts, and what cash went out.[8]  That is exactly what the Debtor's accountants did here, intentionally describing the sale proceeds as cash receipts rather than income and footnoting the entry with a transparent explanation as to how the proceeds were derived.  Monthly Operating Report for April, Doc. No. 86, at 2, 5, 16.

---

[8] While Counsel Financial points out, with emphasis, that the sale proceeds were generated pre-petition, *see* CF Motion ¶ 3, the actual release of the funds for the unencumbered use of the estate was delayed until well after the petition by Counsel Financial's litigiousness.  Even now, it seems that Counsel Financial has not fully given up on its long-running effort to try to control the sale proceeds, even the portion belonging to the Debtor's wife, as Counsel Financial suggests that the Debtor's wife should fund the estate with her portion.  CF Motion ¶ 67.

B5071839.6

34.     The *Adamo* case cited above is an on-point example of how courts look beyond the type of cherry-picked financial analysis that Counsel Financial has proffered here.  In *Adamo*, as here, creditors contended that a debtor's reported income and expenses indicated a negative cash flow, which the creditors blamed on the debtor's purportedly "lavish lifestyle."[9]  *Id.* at \*39-40. The debtor's net disbursements from his employment varied greatly from month to month, and at times the debtor withdrew funds from a retirement account to help meet expenses.  *Id.* at \*40-41. The court noted that although the debtor's expenses had risen, and there were several cash-negative months, that the debtor was meeting his expenses, that to the extent he was using assets to fund those expenses he had disclosed those assets, and that there was no dispute that "business at [the debtor's employer] was improving thereby resulting in a rise in his income." *Id.* at \*46.  In denying a motion to convert, the court asked, rhetorically and perhaps a bit incredulously, "what is it about this picture that the [creditors] find so troubling?" *Id.* at \*45-46.

35.     Nor do the cases that Counsel Financial cites have any relevance to the facts here. *In re Adbrite Corp.* involved an entity whose single asset was a patent and which had "never earned any revenue, and [had] filed only one tax return in its existence."  290 B.R. 209, 214 (Bankr. S.D.N.Y.).  The Debtor here is the Managing Partner of an active law firm with a forty-year track record of litigation success and a full complement of ongoing cases.  *In re BH S & B Holdings LLC* involved an entity with nearly $130 million in cumulative losses since it filed for bankruptcy.  439 B.R. 342, 347 (Bankr. S.D.N.Y. 2010).  Even taking Counsel Financial's assessment of the Debtor's financials as correct, the Debtor's losses here are *three orders of magnitude less* than the losses deemed substantial in *BH S & B Holdings*.  Finally, in *In re*

---

[9] In echoes of Counsel Financial's arguments here, the creditors in *Adamo* complained of the debtor's club memberships, support of his children's education costs, car leases, and the residences in which he chose to house his children.  *Id.* at \*43-44.

B5071839.6

*Sillerman*, the Debtor's income was limited to his social security payments and the estate's cash on hand was buoyed only by "the unauthorized sale of estate property and an unexplained transfer from one of the Debtor's wholly owned affiliate entities." 605 B.R. 631, 656 (Bankr. S.D.N.Y. 2019). Here, the Debtor's earned income through the Firm will be significant, and the increase in the estate's cash on hand due to the influx of the NY Co-op Share proceeds was specifically authorized by the Court.

36.    Contrary to the gloomy picture painted by Counsel Financial's selective reading of the Debtor's monthly operating reports, the Debtor is well-positioned to re-organize, buoyed by the success of the Firm.

2.    <u>The Debtor's estate has a reasonable route to rehabilitation.</u>

37.    Because Counsel Financial fails to meet its burden of proving substantial or continuing loss to or diminution of the estate, the CF motion must be denied. *In re Adamo*, 2016 Bankr. LEXIS 694 at *49 (where movant fails to establish "substantial or continuing loss to or diminution of the estate, the Court need not address whether there is 'no reasonable likelihood of rehabilitation'"). But even if the Court reaches the second element, Counsel Financial's argument rests on the same faulty premise as the rest of the CF Motion. Most notably, it ignores the recent success of the Debtor's law practice, which suggests a strong probability of rehabilitation.

38.    As the CF Motion acknowledges, Counsel Financial bears the heavy burden of proving "there is no more than a hopeless and unrealistic prospect of rehabilitation." CF Motion at ¶ 60 (quoting *In re Adbrite Corp.*, 290 B.R. 209, 215 (Bankr. S.D.N.Y. 2003)); *see also In re Tracey Service Co., Inc.*, 17 B.R. 405, 410 (Bankr. E.D. Pa. 1982) (describing conversion as appropriate where rehabilitation is nothing more than "a nebulous speculative venture"). In the context of § 1112(b)(4), rehabilitation means to "put back in good condition and reestablish on a

14

sound basis." *Adamo*, 2016 Bankr. LEXIS 694 at \*32. "The debtor must be reestablished on a secured financial basis, which implies establishing a cash flow from which its current obligations can be met." *Id.* (quotations omitted). A finding of inability to rehabilitate is typically limited to those cases where the Debtor ceases operating or producing income. *See In re Denrose Diamond*, 49 B.R. 754, 757 (Bankr. S.D.N.Y. 1985) ("The cessation of business, as evidenced by an absence of inventory, employees, equipment and/or income, makes unlikely the ability to rehabilitate.").

39.     Far from a "hopeless and unrealistic prospect of rehabilitation," the Debtor's law practice is booming. He is on target for $3.5 million in receipts in the final quarter of 2019. This amounts to approximately $15 million on an annual basis, which rivals some of the Firm's most profitable years. Counsel Financial's argument that the Debtor will not be able to pay even administrative and priority creditors is based on the faulty math and accounting principles described above and ignores the present reality. Additionally, the Debtor spent much of the earlier parts of this case attempting to free the proceeds from the sale of his and his wife's jointly owned New York co-op apartment from Counsel Financial's improper attempts to seize them. The ability to use these proceeds toward his reorganization efforts marked a turning point and the Firm has collected fees at an extraordinary clip since.

40.     Counsel Financial also omits the Debtor's other efforts to pave the way toward a successful rehabilitation, including addressing his outstanding tax liability, working with M&T to market and sell the Hamptons properties, moving to set a bar date [Doc No. 261], and making progress toward settling malpractice claims under an insurance policy. These efforts, combined with the recent successes of the Debtor's law firm readily demonstrate the re-establishment of the Debtor's financial situation on a "sound basis."

15

41.     None of the inapposite cases cited by Counsel Financial alter this analysis.  The cases all involve debtors that had essentially stopped operating and had no prospect of generating income unlike the Debtor's presently thriving law practice.  *See In re Adbrite Corp.*, 290 B.R. at 219 (debtor had only a single asset, no employees, was not paying its bills post-petition, had not made profits post-petition, made misrepresentations about the use of funds and provided no evidence to suggest financial viability was forthcoming); *In re Kanterman*, 88 B.R. 26, 28 (S.D.N.Y. 1988). (debtor had "no independent source of income"); *In re Sillerman*, 605 B.R. 631, 656-57 (Bankr. S.D.N.Y. 2019) (debtor conceded that plan was liquidating plan and failed to follow court orders and make timely required disclosures).

### C.     To the Extent Counsel Financial Seeks Conversion on Some Basis Other Than § 1112(b)(4)(A), the Unusual Circumstances of this Case Counsel Against Conversion.

42.     Even if the Court finds that cause exists, Section 1112(b)(2) applies an exception to conversion based on a finding of "unusual circumstances" demonstrating that conversion or dismissal is not in the best interests of creditors.  In addition to unusual circumstances, the estate must establish that (1) there is a reasonable likelihood that a plan will be confirmed within the timeframes established under section 1121(e) and 1129(e), or, if such sections are inapplicable, within a reasonable time and that (2) there is a reasonable justification for the act or omission of the debtor constituting cause and the act or omission will be cured within a reasonable time.[10]

43.     Counsel Financial has not pointed to any basis for conversion other than section 1112(b)(4)(A).  Should it do so, however, the unusual circumstances of this case, in which an individual Chapter 11 debtor has a clear path to rehabilitation via a now-thriving law practice,

---

[10] The "unusual circumstances" provision does not apply if the court finds conversion is appropriate under section 1112(b)(4)(A).  While Counsel Financial has not pointed to any other basis for conversion, the "unusual circumstances" presented by this case would prevent it from belatedly attempting to do so.

16

providing for a positive resolution for all parties (including Counsel Financial), counsel that this case remain in Chapter 11.

## CONCLUSION

For the reasons set forth above, the Debtor respectfully requests that the Court deny the relief requested in the Motions, allow the Debtor to continue as a debtor-in-possession in a case under Chapter 11 of the Bankruptcy Code and issue such other and further relief as is just and proper under the circumstances.

Dated: December 13, 2019
      New York, New York

Respectfully submitted,

*/s/ William F. Gray, Jr.*

FOLEY HOAG LLP
William F. Gray, Jr.
Alison D. Bauer
Jiun-Wen Bob Teoh
1301 Avenue of the Americas
New York, New York 10019
Tel:    646.927.5500
Fax:   646.927.5599
wgray@foleyhoag.com
abauer@foleyhoag.com
jteoh@foleyhoag.com

Michael J. Licker
Meredith S. Parkinson
James S. Fullmer
155 Seaport Boulevard
Boston, Massachusetts 02210
Tel:    617.832.1000
Fax:   617.832.7000
mlicker@foleyhoag.com
mparkinson@foleyhoag.com
jfullmer@foleyhoag.com

*Attorneys for Jeffrey Lew Liddle,*
*a Debtor and Debtor in Possession*

17

B5071839.6