James Halter                                    **Hearing Date: February 5, 2020 at 2:00 p.m.**
c/o Rasco Klock Perez & Nieto, LLC
555 Fifth Avenue, 17th Floor
New York, New York 10017
Tel:    (305) 476-7100
Fax:    (305) 718-0639
*Creditor, Pro se*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| JEFFREY LEW LIDDLE, | Case No. 19-10747 (SHL) (Jointly Administered with Case No. 19-12346) |
| Debtor. | |
| In re: | Chapter 11 |
| LIDDLE & ROBINSON, L.L.P., | Case No. 19-12346 (SHL) (Jointly Administered with Case No. 19-10747) |
| Debtor. | |

**OBJECTION AND DECLARATION OF JAMES HALTER IN OPPOSITION TO
DEBTORS' MOTION PURSUANT TO BANKRUPTCY RULE 2004 AND § 105(a) OF
THE BANKRUPTCY CODE, FOR AN ORDER DIRECTING (I) EXAMINATION OF
JAMES W. HALTER, AND (II) PRODUCTION OF DOCUMENTS BY JAMES W.
HALTER, ALONG WITH RELATED RELIEF**

I, James W. Halter, an attorney duly admitted to practice in the courts of the State of New

York and the United States Bankruptcy Court for the Southern District of New York, pursuant to

28 U.S.C. § 1746, declare under penalty of perjury, based on my personal knowledge, as follows:

1.    Neither Debtor has any basis to examine me under Federal Rule of Bankruptcy

Protection 2004. I am a former employee and, now, a creditor of Liddle & Robinson, L.L.P.

("Liddle & Robinson").[1] The basis of my creditor claim is threefold.

---

[1] Before Liddle & Robinson filed for bankruptcy and, in Mr. Liddle's personal bankruptcy, he
disclosed that he was taking funds from the firm so I filed a similar proof of claim in the personal
bankruptcy.

2.      *First*, at the time I left Liddle & Robinson, the firm was seven months behind in paying me any compensation at all. Liddle & Robinson still owes me that compensation – more than $100,000 plus interest. Notably, I generated revenue for the firm during that time – both on cases I originated and by doing work on cases originated by other attorneys – but received no compensation at all. In addition to Liddle & Robinson violating New York law by such conduct – I did not even receive minimum wage much less the agreed-upon compensation for my work – working for free was not sustainable for me or my family.

3.      *Second*, the firm owes me client expenses that I personally paid because the firm could not afford to advance such expenses. Specifically, towards the end of my employment, I paid a $1,575 filing fee for a client matter on my personal credit card. Although the client was billed for that advance and sent Liddle & Robinson a check for that amount, the firm refused to reimburse me despite my repeated requests that it do so. Having inquired about the reimbursement during the 341 examinations of the Debtors, and having substantially reviewed the schedules and statements of the Debtors, it now appears the Debtors diverted that payment for other purposes.

4.      *Third*, the firm failed to convey approximately $10,000 to me from my fully-vested account in the Liddle & Robinson Profit Sharing Plan.

5.      My claims are straightforward and not controversial. Indeed, the requested Rule 2004 examination does not appear to address these claims at all. Instead, the Rule 2004 appears focused on meritless conspiracy theories and client decisions to follow me to my current firm, including privileged communications from those clients to me. On these facts, and as set forth in further detail below, there is no basis to grant Debtors' request for a Rule 2004 examination.

I.      **Debtor Liddle & Robinson's Motion Is Not Ripe Because The Court Held All of the Firm's 2004 Examination Requests in Abeyance Until the Trustee Decides How to Proceed**

6.      Debtors filed their request for a 2004 Examination of me on December 17, 2019 – the day before a lengthy hearing regarding whether to convert the Liddle & Robinson bankruptcy to Chapter 7 or to appoint a trustee. Apparently, Mr. Liddle wanted to get this request on the docket before he lost control of the case.

7.      As the Court is aware, at the December 18, 2019 hearing, the Court appointed a trustee and held the pending motions in abeyance until the trustee could review the matter and decide how to proceed. Thus, with respect to the request on behalf of Liddle & Robinson, the motion and this objection are not ripe for determination.

8.      The newly-appointed Trustee will presumably see this request for the meritless harassment it is and chose not to pursue the matter.

II.     **I Was Never an Equity Partner of Liddle & Robinson and, Therefore, Owed No Duty to Jeff Liddle**

9.      Debtors base their Rule 2004 Examination request on the assertion that "James Halter was a partner of the Firm for approximately six years." (No. 19-10747 Dkt. No. 281 at ¶ 5). This assertion is misleading, however, because I was never an *equity* partner of Liddle & Robinson – I never owned any portion of the firm. Nor did I ever sign any agreement with the firm – partnership or otherwise – and, thus, I was merely an employee with the title "partner."

10.     As a non-equity partner of Liddle & Robinson, unlike actual members of a partnership, I did not owe any particular duty to Mr. Liddle. As discussed in greater detail below, I went out of my way to help Liddle & Robinson and Mr. Liddle, at significant personal detriment to my family and me. I did not engage in any conduct that could conceivably be seen as a breach

of any duty. But the fact that I never even owed a duty to Mr. Liddle warrants rejecting Mr. Liddle's request.

11.    Notably, the fact that I was never a partner is an important distinction between myself and Blaine Bortnick. The Court previously considered objections by Blaine Bortnick to Debtors' Rule 2004 Request to him and issued an order for an examination. However, at the time, there was no trustee for Liddle & Robinson – so the firm aspect of the request was ripe – and the partnership relationship between Mr. Bortnick and Mr. Liddle provided at least some basis to think claims could exist. No such relationship exists here. In addition, Mr. Bortnick signed a personal guaranty of the firm's debt to Counsel Financial – I did not – and was involved in the litigation between the Debtors and Counsel Financial – I was not. As a result, I am at least several additional steps removed from the relationship between Mr. Bortnick and Debtors that provided a potential basis for his examination but not mine.

### III.    The Debtors' Request Is Being Pursued Based on Personal Animosity, Not on the Merits or for Any Legitimate Purpose

12.    I inquired whether Mr. Liddle would, similar to the status of Liddle & Robinson's request, put his request for this examination on hold with respect to the personal bankruptcy while the trustee decides how to proceed on behalf of the firm. Mr. Liddle refused to do so. In fact, Mr. Liddle's counsel initially refused my request for an adjournment of the objection deadline and the hearing despite being scheduled while I was on vacation and while I was actively engaged in litigation, respectively. (See Exhibit A attached). Fortunately, Mr. Liddle's counsel retracted that position but the reticence to the request shows the animosity with which the current request is pursued.

13.    "Rule 2004 cannot be used for 'purposes of abuse or harassment' and it 'cannot stray into matters which are not relevant to the basic inquiry.'" *In re MF Glob. Inc.*, No. 11-02790

MG, 2013 WL 74580, at *1 (Bankr. S.D.N.Y. Jan. 8, 2013) (quoting *In re Mittco, Inc.,* 44 B.R.

35, 36 (Bankr.E.D.Wis.1984)). But harassment, without bearing on any relevant inquiry, is the

sole purpose here.

14.     Mr. Liddle's personal animosity toward me started when I left Liddle & Robinson.

15.     When I left Liddle & Robinson, I offered to enter into an Of Counsel relationship

with Liddle & Robinson. I was becoming Special Counsel to Rasco Klock Perez & Nieto, LLC

("Rasco Klock") and attorneys are permitted to hold two of counsel positions at the same time.

The Of Counsel relationship I offered to Liddle & Robinson would have had minimal direct cost

to the firm (it was principally based on receiving portions of payments when the firm received

compensation – it was, in essence, a contingency relationship) and would permit me continue to

service Liddle & Robinson's clients. My new client relationships would be serviced through

my new employer, Rasco Klock. As part of my discussions with Rasco Klock prior to joining, I

specifically negotiated that it would permit me to also be of counsel to Liddle & Robinson and

Rasco Klock agreed.

16.     Mr. Liddle rejected the proposed Of Counsel relationship solely because the second

firm I would work for would be Rasco Klock, the firm where his former partner, Blaine Bortnick,

worked. Mr. Liddle stated, in sum and substance, "don't you understand that we are at war with

them." I did not believe that was a rational response to my proposal.

17.     Mr. Liddle countered with a proposal that I could be Of Counsel to Liddle &

Robinson if I did not also join Rasco Klock – he proposed that my new client relationships could

be serviced through my own law firm independent of Liddle & Robinson or Rasco Klock. I did

not accept that proposal and ultimately, Liddle & Robinson and I could not come to an agreement.

18.     Over the few days I attempted to negotiate with Liddle & Robinson, I spoke to many of the clients that I worked with at the firm and advised them what was going on. I did not disparage Liddle & Robinson or Mr. Liddle. I indicated that I was looking for more control over my caseload and to build my own book of business independent of the time constraints of working on Mr. Liddle's cases in addition to the ones I generated. Some of the clients expressed interest in coming with me and I told them that I offered Liddle & Robinson the Of Counsel relationship so there was no reason to leave Liddle & Robinson. I fully expected to start my book of business from scratch.

19.     When Mr. Liddle ultimately and fully rejected my Of Counsel proposal, only then did I accept the clients that wanted to follow me to Rasco Klock. Quite frankly, many more wanted to come with me than I expected and I expect it was a surprise to Mr. Liddle as well.

20.     Mr. Liddle's personal animosity toward me increased, as did his meritless conspiracy theories, when Counsel Financial took action to recover certain sums on a case on which I worked. After leaving Liddle & Robinson, I continued to assist Mr. Liddle on a matter in the United States District Court for the District of New Jersey, including serving as local counsel for his *pro hac vice* application. Mr. Liddle wrongly blamed me for the fact that a contingency fee for the matter was paid to Counsel Financial rather than to Liddle & Robinson. Apparently, Mr. Liddle did not intend to inform Counsel Financial about the contingency fee but, due to a docket entry by the Court in which I had no involvement, Counsel Financial discovered the settlement and took action to have the attorneys' fee portion of the settlement paid directly to it, not to Liddle & Robinson.

21.     I had no intention of depriving Liddle & Robinson of the fee and did not know what, if any, rights Counsel Financial had to that fee. I did not take any action, intentional or

19-10747-shl    Doc 296    Filed 01/16/20    Entered 01/16/20 13:57:48    Main Document
Pg 7 of 27


otherwise, that resulted in depriving Liddle & Robinson of the fee. But, to Mr. Liddle, it was apparently proof of his fictitious conspiracy theory that Mr. Bortnick, Counsel Financial, and myself were all conspiring against him.

22.     Simply put, I am just a former employee of Liddle & Robinson who did my best to help the firm even though I was not being paid. When the situation became financially untenable for me and my family, I had no choice but to move on. I have no information about "acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge." Red. R. Bankr. P. 2004. While broad latitude is given to such examination requests, "a Rule 2004 examination must be both relevant and reasonable." *In re Symington*, 209 B.R. 678, 684 (Bankr. D. Md. 1997) (citation omitted). Moreover, discovery may be granted under Rule 2004 only upon a showing of "good cause." *See, e.g., In re Metiom, Inc.*, 318 B.R. 263, 268 (S.D.N.Y. 2004) ("Generally, good cause is shown if the [Rule 2004] examination is necessary to establish the claim of the party seeking the examination, or if denial of such request would cause the examiner undue hardship or injustice." (quoting *In re Dinubilo*, 177 B.R. 932 (E.D. Cal. 1993)). No good cause exists and Debtors' request is not reasonable.

23.     This is particularly true with respect to Mr. Liddle as the Debtor since we were never partners and, as such, I do not owe any particularly duty to him. The only basis articulated in Debtors' Request is a purported breach of fiduciary duty which does not exist. The request for a Rule 2004 examination should be denied.

## IV.    If the Court Does Consider the Requested Examination, the Topics and Document Requests Should Be Substantially Narrowed

24.     With respect to Debtors' Rule 2004 request, "[t]he court must . . . weigh the relevance of the discovery against the burden it will impose on the producing party. *In re Coffee*

7

*Cupboard, Inc.,* 128 B.R. 509, 514 (Bankr. E.D.N.Y.1991). "[T]he examination should not be so broad as to be more disruptive and costly to the [producing party] than beneficial to the [requesting party]." *In re Texaco Inc.,* 79 B.R. 551, 553 (Bankr. S.D.N.Y.1987)). Under any appropriate balancing, the requests should be narrowed.

A.    <u>Topic A: "Halter's departure from Liddle & Robinson"</u>

25.    At best, this topic is only relevant to Liddle & Robinson, not Mr. Liddle personally. It should be denied as to Mr. Liddle personally and held in abeyance until the newly-appointed trustee chooses whether to pursue it on behalf of Liddle & Robinson.

26.    For the reasons set forth above, no examination of me is appropriate. However, if the Court is inclined to grant the examination by Liddle & Robinson, I have no objection to answering questions about this topic.

B.    <u>Topic B: "Any Liddle & Robinson cases that Halter continued working on following his departure from Liddle & Robinson, including any fee arrangements regarding such cases."</u>

27.    In addition to the fact that there is no basis for an examination of me at all, this topic is also objectionable under New York public policy regarding choice of counsel and on privilege grounds.

28.    New York law requires that a client's ability to follow an attorney to another firm must be unfettered so as not to interfere with the client's choice of counsel. *See, e.g., Denburg v. Parker Chapin Flattau & Klimpl*, 82 N.Y.2d 375, 380 (1993) ("As we made clear, restrictions on the practice of law, which include 'financial disincentives' against competition as well as outright prohibitions, are objectionable primarily because they interfere with the client's choice of counsel: a clause that penalizes a competing attorney by requiring forfeiture of income could 'functionally and realistically discourage' a withdrawing partner from serving clients who might wish to be represented by that lawyer." (quoting *Cohen v. Lord, Day & Lord*, 75 N.Y.2d 95, 98 (1989)). There

8

cannot be a basis to challenge any client's decision to continue using me as counsel after I left Liddle & Robinson.

29.    Furthermore, any discussions I had with clients about me representing them after Liddle & Robinson would be attorney-client communications where the client holds the privilege. I am not at liberty to disclose such communications.

30.    Regardless, at best, this topic is only relevant to Liddle & Robinson, not Mr. Liddle personally. Thus, at a minimum, it should be denied as to Mr. Liddle personally and held in abeyance until the newly-appointed trustee chooses whether to pursue it on behalf of Liddle & Robinson.

    C.    <u>Topic C: "Any agreements between Halter, on the one hand, and Counsel Financial, Rasco Klock or Blaine H. Bortnick, regarding Halter's law practice after he left Liddle & Robinson, Liddle & Robinson, or Liddle & Robinson clients"</u>

31.    I have no agreements with Counsel Financial or Blaine Bortnick, individually.

32.    I do have a Special Counsel agreement with Rasco Klock that governs my relationship with, and compensation from, Rasco Klock. By its terms, the Special Counsel agreement is confidential and cannot be disclosed. In addition, there can be no basis for Debtors – particularly not Mr. Liddle as a personal Debtor – to know the terms of that agreement. It has no bearing on Debtors' claims or liabilities in any way.

33.    Topic C should be stricken as irrelevant. In addition, at best, this topic is only relevant to Liddle & Robinson, not Mr. Liddle personally. Thus, at a minimum, it should be denied as to Mr. Liddle personally and held in abeyance until the newly-appointed trustee chooses whether to pursue it on behalf of Liddle & Robinson.

D.    Topic D: "Any communications with Counsel Financial, Rasco Klock, any former partner of Liddle & Robinson regarding Halter's law practice after he left Liddle & Robinson, Liddle & Robinson, or Liddle & Robinson clients"

34.    I have never had any communications with Counsel Financial regarding my law practice or Liddle & Robinson's clients. The extent of my communications with Counsel Financial is, before or after various appearances related to the Debtors' bankruptcy, Counsel Financial's counsel has offered condolences about Liddle & Robinson's poor treatment of me and the fact that Mr. Liddle brought the firm's current status on himself by paying himself more than he was entitled to and taking on debt instead. Such communications are not relevant to any matter subject to Rule 2004.

35.    The rest of Topic D is unreasonably overbroad, lacks any reasonable basis, and impinges clients' privileges. As Blaine Bortnick is the managing partner of the New York office of my current firm, I have nearly daily conversations with him about my practice of law. I have also co-counselled with other former partners of Liddle & Robinson on a handful of matters and have obviously communicated about those matters with those former partners. There is no basis to examine me regardless those legitimate and necessary communications. In addition, all such discussions would invade the confidentiality and privilege owed to the clients in those matters.

36.    Topic D should be stricken. In addition, at best, this topic is only relevant to Liddle & Robinson, not Mr. Liddle personally. Thus, at a minimum, it should be denied as to Mr. Liddle personally and held in abeyance until the newly-appointed trustee chooses whether to pursue it on behalf of Liddle & Robinson.

E.     Topic E: "All communications between Halter or anyone else during the 341 Examinations of Jeffrey Lew Liddle"

37.    I do not recall any particular communications between myself and anyone else during the 341 Examinations of Mr. Liddle. Regardless, there is no basis to believe any such communications are relevant to the Rule 2004 topics.

38.    Topic E should be stricken.

F.     Topic F: "Cases in which Halter appeared on behalf of current or former Liddle & Robinson clients without authority to do so"

39.    I have never appeared on behalf of any client without authority to do so. Topic F is nonsense and should be stricken.

40.    Regardless, at best, this topic is only relevant to Liddle & Robinson, not Mr. Liddle personally. Thus, at a minimum, it should be denied as to Mr. Liddle personally and held in abeyance until the newly-appointed trustee chooses whether to pursue it on behalf of Liddle & Robinson.

G.     Document Request No. 1: "Any and all agreements between James W. Halter ('Halter'), on the one hand, and Counsel Financial, Rasco Klock, Blaine H. Bortnick or any former Liddle & Robinson partner, on the other hand, regarding the transition of Liddle & Robinson clients from Liddle & Robinson to any other law firm or attorney"

41.    As mentioned above, I had an agreement with Rasco Klock that I could serve as Of Counsel to Liddle & Robinson while also having a Special Counsel relationship with Rasco Klock. That agreement was oral. It is also non-responsive as it was an agreement about ***not*** transitioning cases from Liddle & Robinson to any other firm.

42.    Also as mentioned above, I have a Special Counsel agreement with Rasco Klock that governs my relationship with, and compensation from, Rasco Klock. No aspect of the agreement addresses Liddle & Robinson clients so it is not responsive to this request as well.

43.     Thus, I do not have any responsive documents. Regardless, because New York public policy requires clients' choice of counsel to be unfettered, the request should be stricken as irrelevant. *See, e.g.*, *Denburg*, 82 N.Y.2d at 380 ("As we made clear, restrictions on the practice of law, which include 'financial disincentives' against competition as well as outright prohibitions, are objectionable primarily because they interfere with the client's choice of counsel: a clause that penalizes a competing attorney by requiring forfeiture of income could 'functionally and realistically discourage' a withdrawing partner from serving clients who might wish to be represented by that lawyer." (quoting *Cohen*, 75 N.Y.2d at 98).

H.     Document Request No. 2: "Any and all communications from August 1, 2016 to present between Halter, on the one hand, and Counsel Financial, Rasco Klock or any former Liddle & Robinson partner, associate or other attorney, on the other hand, regarding the transition of Liddle & Robinson clients from Liddle & Robinson to any other law firm or attorney."

44.     I left Liddle & Robinson in April 2018. Debtors request documents from two years *prior* to that time through the present. Apparently, Mr. Liddle's meritless conspiracy theory includes some theory that I was working against him while I was an employee. That is false.

45.     The documents responsive to this request would concern clients that wanted to follow me to Rasco Klock – I obviously had to communicate with Rasco Klock to transition those clients. Those communications are not the appropriate subject of discovery here. Clients have the right to choose counsel and no claims or liabilities of Debtor can arise from that choice. In addition, the burden of identifying any such documents and making privilege assertions is an enormous burden that would far outweigh any potential benefit to Debtors.

46.     There are additional problems with the request. Many of the documents likely address client confidences and communications that I am not at liberty to reveal.

47.     Document Request No. 2 should be stricken. In addition, at best, this topic is only relevant to Liddle & Robinson, not Mr. Liddle personally. Thus, at a minimum, it should be denied

12

as to Mr. Liddle personally and held in abeyance until the newly-appointed trustee chooses whether to pursue it on behalf of Liddle & Robinson.

  I.  <u>Document Request No. 3</u>: "Any and all communications from August 1, 2016 to present between Halter and any current or former Liddle & Robinson clients regarding Halter's departure from Liddle & Robinson, Halter's continued representation of any such clients, or any efforts to move such clients from Liddle & Robinson."

48.  This Request explicitly calls for communications between myself and clients which are plainly privileged. The client owns the privilege and I am not at liberty to reveal them.

49.  Also, as the clients have an unfettered right to choose counsel, the responsive documents are irrelevant to Debtors' claims and liabilities.

50.  In addition, the burden of identifying any such documents for a three-and-a-half year period and making privilege assertions is an enormous and would far outweigh any potential benefit to Debtors.

51.  Document Request No. 3 should be stricken. In addition, at best, this topic is only relevant to Liddle & Robinson, not Mr. Liddle personally. Thus, at a minimum, it should be denied as to Mr. Liddle personally and held in abeyance until the newly-appointed trustee chooses whether to pursue it on behalf of Liddle & Robinson.

  J.  <u>Document Request No. 4</u>: "All communications between James W. Halter and anyone during the May 1, 2019 341 Examination of Jeffrey Lew Liddle, via text message or e-mail message, including all communications with James R. Hubbard and Blaine H. Bortnick during such examination."

52.  I do not recall any particular communications between myself and anyone else during the 341 Examinations of Mr. Liddle. Regardless, there is basis to believe any such communications are relevant to the Rule 2004 topics.

53.  Document Request No. 4 should be stricken.

K.    Document Request No. 5: "All of Halter's time and billing records at Liddle &
Robinson from July 1, 2016 through his departure."

54.    If Liddle & Robinson was genuinely concerned about making sure it had all time entries to bill clients, that would be a proper request. The context of the Document Request, however, make clear that that is ***not*** Liddle & Robinson's agenda. There is also no possible justification for Mr. Liddle individually to seek this information – he cannot bill clients for my work for Liddle & Robinson.

55.    Debtors are seeking to make unreasonable demands without basis in search of a reason to harass me. That is not an appropriate use of Rule 2004.

56.    Notably, all of my time was properly recorded and entered prior to leaving Liddle & Robinson. There is no need for any additional documentation. Also, I do not believe I possess any such documentation.

57.    Document Request No. 5 should be stricken or, at a minimum, it should be denied as to Mr. Liddle personally and held in abeyance until the newly-appointed trustee chooses whether to pursue it on behalf of Liddle & Robinson.

L.    Document Request No. 6: "All of Halter's time and billing records for matters he
worked on for former Liddle & Robinson clients following his departure from
Liddle & Robinson."

58.    This request calls for privileged information that would reveal client confidences. Also, the burden of responding to this request far outweighs any benefit to Debtors.

59.    There is no basis for Document Request No. 6 and it should stricken or, at a minimum, it should be denied as to Mr. Liddle personally and held in abeyance until the newly-appointed trustee chooses whether to pursue it on behalf of Liddle & Robinson.

M.    Document Request No. 7: "All retainer agreements for former Liddle & Robinson
clients that Halter entered into following his departure from Liddle & Robinson."

60.    This request calls for privileged information and documents.

14

61. Also, the request is overly broad in that it would theoretically call for agreements with anyone that was *ever* a Liddle & Robinson client. Presumably, Debtors only intended to cover agreements where there was an active matter that transitioned to Rasco Klock. I do not, and could not, know if any client had ever retained Liddle & Robinson previously for an unrelated matter.

62. Finally, at best, the request is relevant to Liddle & Robinson, not Mr. Liddle individually, and, thus, is part of the Rule 2004 request that is held in abeyance

63. Document Request No. 7 should be stricken.

N.    Document Request No. 8: "All agreements between Halter and any third party concerning the transfer of any client from Liddle & Robinson to another lawyer or law firm."

64. No such documents exist.

O.    Document Request No. 9: "Copies of any Liddle & Robinson files or documents, whether in hard copy or electronic form, that Halter copied or otherwise took or obtained from Liddle & Robinson on or after January 1, 2017. This request includes without limitation all files or documents concerning Liddle & Robinson clients in Halter's possession, custody or control, including without limitation all files he received from any other person or source, including other former partners of Liddle & Robinson."

65. First, Debtors do not, and cannot, provide any justification for this Request. No claim or liability of Debtors is at issue.

66. Second, the Request explicitly seeks Documents that are already in the possession of Liddle & Robinson.

67. Third, to the extent Debtors seek documents regarding clients that followed me after I left Liddle & Robinson, the premise of the request is false. Client files belong to clients, not Liddle & Robinson. *Bronx Jewish Boys v. Uniglobe, Inc.*, 166 Misc. 2d 347, 350 (N.Y. Sup. Ct., N.Y. Cnty. 1995) ("attorneys have no possessory rights in the client files other than to protect their fee. In other words, the file belongs to the client."). Despite several clients explicitly instructing Liddle & Robinson to transfer files to me, Liddle & Robinson refused to do so in violation of its

obligations to the clients. Thus, those clients provided to me all of the Liddle & Robinson documents in their possession.

68.    Regardless, at best, this Request is only relevant to Debtor Liddle & Robinson and should be held in abeyance until the trustee decides wither to pursue the request on behalf of the firm. At a minimum, the Request should be denied as to Debtor Jeff Liddle personally.

P.    <u>Document Request No. 10: "All correspondence concerning the matter Franklin v. Compass Partners Investments relating to Halter's representation of the plaintiff following Halter's departure from Liddle & Robinson, including without limitation all correspondence related to any fee agreement."</u>

69.    The Request calls for privileged, attorney-client communications.

70.    The Request is also overly broad in that every communication with Mr. Franklin concerns my representation of him.

71.    Also, I have continually represented Mr. Franklin for the nearly two years since I left Liddle & Robison – most of that time as co-counsel to Mr. Liddle and Liddle & Robinson. It has been an active litigation with nearly constant communication. The burden of responding to this request far outweighs any potential benefit to Debtors.

72.    In addition, the Request is irrelevant as any fee agreements I or Rasco Klock have with Mr. Franklin have no bearing on any claims or liabilities of the Debtors. Mr. Franklin has a right to the counsel of his choice.

73.    Document Request No. 10 should be stricken or, at a minimum, it should be denied as to Mr. Liddle personally and held in abeyance until the newly-appointed trustee chooses whether to pursue it on behalf of Liddle & Robinson.

Q.    <u>Document Request No. 11: "All correspondence concerning the matter Rotger v. Montefiore Medical Center relating to Halter's representation of the plaintiff following Halter's departure from Liddle & Robinson, including without limitation all correspondence related to any fee agreement."</u>

74.    The Request calls for privileged, attorney-client communications.

16

75.    The Request is also overly broad in that every communication with Ms. Rotger concerns my representation of her.

76.    In addition, the Request is irrelevant as any fee agreements I or Rasco Klock have with Ms. Rotger have no bearing on any claims or liabilities of the Debtors. Ms. Rotger has the right to the counsel of her choice.

77.    Finally, Mr. Liddle, the client, and Rasco Klock executed an agreement resolving a dispute regarding apportionment of fees. There is no reason for Debtors to seek the documents responsive to this request.

78.    Document Request No. 11 should be stricken. Regardless, at best, this Request is only relevant to Debtor Liddle & Robinson and should be held in abeyance until the trustee decides wither to pursue the request on behalf of the firm. At a minimum, the Request should be denied as to Debtor Jeff Liddle personally.

R.    Document Request No. 12: "All communications with Blaine Bortnick or Rasco Klock Perez & Nieto LLC regarding the matter Negrete v. Citibank."

79.    The Request calls for privileged communications revealing client confidences.

80.    Also, the Request is particular unreasonable because, as Debtors are aware, *while at Liddle & Robinson*, I was co-counsel with Mr. Bortnick at Rasco Klock on the matter. Mr. Bortnick and I drafted an appeal together and engaged in nearly constant communications while we did so.

81.    Mr. Bortnick and I continued to work on the case together after I left Liddle & Robinson – the oral argument in the Second Circuit occurred during that time. Notably, Liddle & Robinson was never discharged as counsel.

82.    Thus, a large number of communications occurred between Mr. Bortnick and I regarding the Negrete matter which reveal client confidences and privileged attorney work

product. Debtors cannot articulate any justification for me to go through that immense documentation – the documents cannot have any bearing on a Rule 2004 matter. At a minimum the burden of responding to this request far outweighs any purported benefit.

83.     The Request is particularly unreasonable because, as Debtors are aware, the matter ended with an adverse ruling.

84.     Document Request No. 12 should be stricken. Regardless, at best, this Request is only relevant to Debtor Liddle & Robinson and should be held in abeyance until the trustee decides wither to pursue the request on behalf of the firm. At a minimum, the Request should be denied as to Debtor Jeff Liddle personally.

      S.     <u>Document Request No. 13: "All communications with Thomas DeDane concerning Halter's representation of DeDane following Halter's departure from Liddle & Robinson."</u>

85.     It appears that Debtors are referencing Thomas Devane. Mr. Devane is a client that chose to follow me to Rasco Klock after Liddle & Robinson rejected my proposal of an Of Counsel relationship. Thus, the Request calls for privileged, attorney-client communications.

86.     The Request is also overly broad in that every communication with Mr. Devane concerns my representation of him.

87.     In addition, Mr. Devane's matter is an active litigation that is still ongoing. The burden of reviewing all communications with Mr. Devane for potentially-responsive documents and asserting privilege is unreasonable and far outweighs any potential benefit to the Debtors.

88.     Regardless, the requested documents are irrelevant to Debtors as Mr. Devane as the right to the counsel of his choice.

89.     Document Request No. 14 should be stricken. Regardless, at best, this Request is only relevant to Debtor Liddle & Robinson and should be held in abeyance until the trustee decides

wither to pursue the request on behalf of the firm. At a minimum, the Request should be denied as to Debtor Jeff Liddle personally.

        T.     <u>Document Request No. 14: "All communications concerning Jay Pila."</u>

90.     Jay Pila is a client that did ***not*** follow me to Rasco Klock and remains a Liddle & Robinson client. Debtors do not, and cannot, provide any justification for production of his documents.

91.     In addition, I never requested that I withdraw as his counsel so my name is still on the docket as his counsel. Mr. Pila recently consented to me filing such a request to withdraw but, through the present, any communications with him are privileged.

92.     As the requested documents are irrelevant, Document Request No. 14 should be stricken.

        U.     <u>Document Request No. 14: "All communications concerning Richard Josephberg."</u>

93.     I had to look up Mr. Josephberg online. Apparently, he was represented by Mr. Bortnick at some point. I have never communicated with anyone regarding Mr. Josephberg (other than citing a New York State appellate division decision in his favor as precedent in briefing unrelated to Mr. Josephberg – to the extent the Request calls for production of such briefing, it is overly broad).

94.     I do not have any responsive documents.

## V.    CONCLUSION

95.     For all the foregoing reasons, Debtors request for a Rule 2004 examination of me should be denied. I am a former employee who did my best to help the firm – without being paid – and I am now rebuilding my career elsewhere. I am owed compensation and unreimbursed expenses by the Debtors and it does not appear that Debtors are even interested in contesting those

claims. It would not be fair or appropriate for me to be pulled into Mr. Liddle's fantasy conspiracy theories.

96.     At minimum, the request as to Debtor Liddle & Robinson should held in abeyance or denied without prejudice to renew if the newly-appointed trustee choses to do so, and, to the extent any of the requested examination is granted, the topics and requests should be significantly curtailed.

97.     Thank you for your consideration.

I hereby declare under penalty of perjury that the foregoing is true and correct.


Dated:  New York, New York
        January 16, 2020

                                    _____
                                            James W. Halter
                                    c/o Rasco Klock Perez & Nieto, LLC
                                    555 Fifth Avenue, 17th Floor
                                    New York, New York 10017
                                    Tel:    (305) 476-7100
                                    Fax:    (305) 718-0639
                                    *Creditor, Pro se*

# EXHIBIT A

**Jim Halter**

| | |
|---|---|
| **From:** | Gray Jr., William <wgray@foleyhoag.com> |
| **Sent:** | Monday, December 23, 2019 4:22 PM |
| **To:** | Jim Halter |
| **Subject:** | Re: Motion for Rule 2004 of Halter |

I will adjourn your time to object for two weeks and schedule the hearing for January 28. Happy Holidays.

Sent from my iPhone

On Dec 23, 2019, at 3:34 PM, Jim Halter <jhalter@rascoklock.com> wrote:


January 2, 2020 at 2:00 p.m.

From: Gray Jr., William <wgray@foleyhoag.com>
Sent: Monday, December 23, 2019 3:23 PM
To: Jim Halter <jhalter@rascoklock.com>
Subject: Re: Motion for Rule 2004 of Halter

Jim, when is the objection due?

Sent from my iPhone

On Dec 23, 2019, at 3:11 PM, Jim Halter <jhalter@rascoklock.com<mailto:jhalter@rascoklock.com>> wrote:


Okay. I will make a motion to adjourn and note that you object.


From: Gray Jr., William <wgray@foleyhoag.com<mailto:wgray@foleyhoag.com>>
Sent: Monday, December 23, 2019 3:08 PM
To: Jim Halter <jhalter@rascoklock.com<mailto:jhalter@rascoklock.com>>; Licker, Michael
<mlicker@foleyhoag.com<mailto:mlicker@foleyhoag.com>>
Subject: Re: Motion for Rule 2004 of Halter

Good luck. Go ahead and object. I was happy to adjourn production but not the objection. Happy Holidays.

Sent from my iPhone

On Dec 23, 2019, at 2:52 PM, Jim Halter
<jhalter@rascoklock.com<mailto:jhalter@rascoklock.com<mailto:jhalter@rascoklock.com%3cmailto:jhalter@
rascoklock.com>>> wrote:


I am not Blaine. The motion is ridiculous and I expect the Court to deny the request in its entirety.

But this exchange is not productive. I am on vacation. All I need is a date to object and a date to appear when I

1

am available.

Jim


From: Gray Jr., William
<wgray@foleyhoag.com<mailto:wgray@foleyhoag.com<mailto:wgray@foleyhoag.com%3cmailto:wgray@fol
eyhoag.com>>>
Sent: Monday, December 23, 2019 2:47 PM
To: Jim Halter
<jhalter@rascoklock.com<mailto:jhalter@rascoklock.com<mailto:jhalter@rascoklock.com%3cmailto:jhalter@
rascoklock.com>>>
Cc: Licker, Michael
<mlicker@foleyhoag.com<mailto:mlicker@foleyhoag.com<mailto:mlicker@foleyhoag.com%3cmailto:mlicker
@foleyhoag.com>>>
Subject: Re: Motion for Rule 2004 of Halter

You are kidding right? We went through this with Blaine. It would just be unnecessary litigation.

Sent from my iPhone

On Dec 23, 2019, at 2:44 PM, Jim Halter
<jhalter@rascoklock.com<mailto:jhalter@rascoklock.com<mailto:jhalter@rascoklock.com%3cmailto:jhalter@
rascoklock.com<mailto:jhalter@rascoklock.com%3cmailto:jhalter@rascoklock.com%3cmailto:jhalter@rascokl
ock.com%3cmailto:jhalter@rascoklock.com>>>> wrote:


I object to any production.

From: Gray Jr., William
<wgray@foleyhoag.com<mailto:wgray@foleyhoag.com<mailto:wgray@foleyhoag.com%3cmailto:wgray@fol
eyhoag.com<mailto:wgray@foleyhoag.com%3cmailto:wgray@foleyhoag.com%3cmailto:wgray@foleyhoag.co
m%3cmailto:wgray@foleyhoag.com>>>>
Sent: Monday, December 23, 2019 2:41 PM
To: Jim Halter
<jhalter@rascoklock.com<mailto:jhalter@rascoklock.com<mailto:jhalter@rascoklock.com%3cmailto:jhalter@
rascoklock.com<mailto:jhalter@rascoklock.com%3cmailto:jhalter@rascoklock.com%3cmailto:jhalter@rascokl
ock.com%3cmailto:jhalter@rascoklock.com>>>>; Licker, Michael
<mlicker@foleyhoag.com<mailto:mlicker@foleyhoag.com<mailto:mlicker@foleyhoag.com%3cmailto:mlicker
@foleyhoag.com<mailto:mlicker@foleyhoag.com%3cmailto:mlicker@foleyhoag.com%3cmailto:mlicker@fole
yhoag.com%3cmailto:mlicker@foleyhoag.com>>>>
Subject: Re: Motion for Rule 2004 of Halter

I will check. How much additional time do you need to produce the documents?

Sent from my iPhone

On Dec 23, 2019, at 1:16 PM, Jim Halter
<jhalter@rascoklock.com<mailto:jhalter@rascoklock.com<mailto:jhalter@rascoklock.com%3cmailto:jhalter@
rascoklock.com<mailto:jhalter@rascoklock.com%3cmailto:jhalter@rascoklock.com%3cmailto:jhalter@rascokl
ock.com%3cmailto:jhalter@rascoklock.com<mailto:jhalter@rascoklock.com%3cmailto:jhalter@rascoklock.co

m%3cmailto:jhalter@rascoklock.com%3cmailto:jhalter@rascoklock.com%3cmailto:jhalter@rascoklock.com%3cmailto:jhalter@rascoklock.com%3cmailto:jhalter@rascoklock.com%3cmailto:jhalter@rascoklock.com>>>>
> wrote:


That was the date that I mentioned I am actively engaged in litigation. I meant what is the date after that one?

From: Gray Jr., William
<wgray@foleyhoag.com<mailto:wgray@foleyhoag.com<mailto:wgray@foleyhoag.com%3cmailto:wgray@foleyhoag.com<mailto:wgray@foleyhoag.com%3cmailto:wgray@foleyhoag.com%3cmailto:wgray@foleyhoag.com<mailto:wgray@foleyhoag.com%3cmailto:wgray@foleyhoag.com%3cmailto:wgray@foleyhoag.com%3cmailto:wgray@foleyhoag.com%3cmailto:wgray@foleyhoag.com>>>>>
Sent: Monday, December 23, 2019 1:15 PM
To: Jim Halter
<jhalter@rascoklock.com<mailto:jhalter@rascoklock.com<mailto:jhalter@rascoklock.com%3cmailto:jhalter@rascoklock.com<mailto:jhalter@rascoklock.com%3cmailto:jhalter@rascoklock.com%3cmailto:jhalter@rascoklock.com<mailto:jhalter@rascoklock.com%3cmailto:jhalter@rascoklock.com%3cmailto:jhalter@rascoklock.com%3cmailto:jhalter@rascoklock.com%3cmailto:jhalter@rascoklock.com>>>>
>
Subject: RE: Motion for Rule 2004 of Halter

January 9 is a hearing on extending exclusivity.

From: Jim Halter
<jhalter@rascoklock.com<mailto:jhalter@rascoklock.com<mailto:jhalter@rascoklock.com%3cmailto:jhalter@rascoklock.com<mailto:jhalter@rascoklock.com%3cmailto:jhalter@rascoklock.com%3cmailto:jhalter@rascoklock.com<mailto:jhalter@rascoklock.com%3cmailto:jhalter@rascoklock.com%3cmailto:jhalter@rascoklock.com%3cmailto:jhalter@rascoklock.com<mailto:jhalter@rascoklock.com%3cmailto:jhalter@rascoklock.com%3cmailto:jhalter@rascoklock.com%3cmailto:jhalter@rascoklock.com<mailto:jhalter@rascoklock.com%3cmailto:jhalter@rascoklock.com%3cmailto:jhalter@rascoklock.com%3cmailto:jhalter@rascoklock.com%3cmailto:jhalter@rascoklock.com%3cmailto:jhalter@rascoklock.com%3cmailto:jhalter@rascoklock.com%3cmailto:jhalter@rascoklock.com%3cmailto:jhalter@rascoklock.com>>>>>
Sent: Monday, December 23, 2019 1:12 PM
To: Gray Jr., William
<wgray@foleyhoag.com<mailto:wgray@foleyhoag.com<mailto:wgray@foleyhoag.com%3cmailto:wgray@foleyhoag.com<mailto:wgray@foleyhoag.com%3cmailto:wgray@foleyhoag.com%3cmailto:wgray@foleyhoag.com<mailto:wgray@foleyhoag.com%3cmailto:wgray@foleyhoag.com%3cmailto:wgray@foleyhoag.com%3cmailto:wgray@foleyhoag.com<mailto:wgray@foleyhoag.com%3cmailto:wgray@foleyhoag.com%3cmailto:wgray@foleyhoag.com%3cmailto:wgray@foleyhoag.com<mailto:wgray@foleyhoag.com%3cmailto:wgray@foleyhoag.com%3cmailto:wgray@foleyhoag.com%3cmailto:wgray@foleyhoag.com%3cmailto:wgray@foleyhoag.com%3cmailto:wgray@foleyhoag.com%3cmailto:wgray@foleyhoag.com%3cmailto:wgray@foleyhoag.com>>>>>
Subject: RE: Motion for Rule 2004 of Halter

When is the next hearing date in the personal bankruptcy?

From: Gray Jr., William
<wgray@foleyhoag.com<mailto:wgray@foleyhoag.com<mailto:wgray@fol
eyhoag.com<mailto:wgray@foleyhoag.com%3cmailto:wgray@foleyhoag.co
m%3cmailto:wgray@foleyhoag.com<mailto:wgray@foleyhoag.com%3cmailto:wgray@foleyhoag.com%3cmai
lto:wgray@foleyhoag.com%3cmailto:wgray@foleyhoag.com%3cmailto:wgr
ay@foleyhoag.com%3cmailto:wgray@foleyhoag.com<mailto:wgray@foley
hoag.com%3cmailto:wgray@foleyhoag.com%3cmailto:wgray@foleyhoag.c
om%3cmailto:wgray@foleyhoag.com%3cmailto:wgray@foleyhoag.com%3
cmailto:wgray@foleyhoag.com%3cmailto:wgray@foleyhoag.com%3cmailto
:wgray@foleyhoag.com%3cmailto:wgray@foleyhoag.com%3cmailto:wgray
@foleyhoag.com%3cmailto:wgray@foleyhoag.com%3cmailto:wgray@foleyhoag.com>>>>>
Sent: Monday, December 23, 2019 12:47 PM
To: Jim Halter
<jhalter@rascoklock.com<mailto:jhalter@rascoklock.com<mailto:jhalter@rascoklock.com%3cmailto:jhalter@
rascoklock.com<mailto:jhalter@rascoklock.com%3cmailto:jhalter@rascokl
ock.com%3cmailto:jhalter@rascoklock.com<mailto:jhalter@rascoklock.co
m%3cmailto:jhalter@rascoklock.com%3cmailto:jhalter@rascoklock.com%
3cmailto:jhalter@rascoklock.com%3cmailto:jhalter@rascoklock.com<mailt
o:jhalter@rascoklock.com%3cmailto:jhalter@rascoklock.com%3cmailto:jh
alter@rascoklock.com%3cmailto:jhalter@rascoklock.com%3cmailto:jhalter
@rascoklock.com%3cmailto:jhalter@rascoklock.com%3cmailto:jhalter@ra
scoklock.com%3cmailto:jhalter@rascoklock.com%3cmailto:jhalter@rascok
lock.com%3cmailto:jhalter@rascoklock.com%3cmailto:jhalter@rascoklock
.com>>>>>
Subject: RE: Motion for Rule 2004 of Halter


Jim,

The discovery in the individual case will continue but we can discuss reasonable adjournments.
Happy Holidays.

From: Jim Halter
<jhalter@rascoklock.com<mailto:jhalter@rascoklock.com<mailto:jhalter@rascoklock.com%3cmailto:jhalter@
rascoklock.com<mailto:jhalter@rascoklock.com%3cmailto:jhalter@rascokl
ock.com%3cmailto:jhalter@rascoklock.com<mailto:jhalter@rascoklock.co
m%3cmailto:jhalter@rascoklock.com%3cmailto:jhalter@rascoklock.com%
3cmailto:jhalter@rascoklock.com%3cmailto:jhalter@rascoklock.com<mailt
o:jhalter@rascoklock.com%3cmailto:jhalter@rascoklock.com%3cmailto:jh
alter@rascoklock.com%3cmailto:jhalter@rascoklock.com%3cmailto:jhalter
@rascoklock.com%3cmailto:jhalter@rascoklock.com%3cmailto:jhalter@ra
scoklock.com%3cmailto:jhalter@rascoklock.com%3cmailto:jhalter@rascok
lock.com%3cmailto:jhalter@rascoklock.com%3cmailto:jhalter@rascoklock
.com>>>>>
Sent: Monday, December 23, 2019 10:47 AM
To: Gray Jr., William
<wgray@foleyhoag.com<mailto:wgray@foleyhoag.com<mailto:wgray@foleyhoag.com%3cmailto:wgray@fol
eyhoag.com<mailto:wgray@foleyhoag.com%3cmailto:wgray@foleyhoag.co
m%3cmailto:wgray@foleyhoag.com<mailto:wgray@foleyhoag.com%3cmai

lto:wgray@foleyhoag.com%3cmailto:wgray@foleyhoag.com%3cmailto:wgr
ay@foleyhoag.com%3cmailto:wgray@foleyhoag.com%3cmailto:wgray@foleyhoag.com<mailto:wgray@foley
hoag.com%3cmailto:wgray@foleyhoag.com%3cmailto:wgray@foleyhoag.c
om%3cmailto:wgray@foleyhoag.com%3cmailto:wgray@foleyhoag.com%3
cmailto:wgray@foleyhoag.com%3cmailto:wgray@foleyhoag.com%3cmailto
:wgray@foleyhoag.com%3cmailto:wgray@foleyhoag.com%3cmailto:wgray
@foleyhoag.com%3cmailto:wgray@foleyhoag.com>>>>>>
Subject: Motion for Rule 2004 of Halter

Bill-

My understanding is that the Rule 2004 Motions in the firm bankruptcy, including the one directed to me, are
on hold for now. Do you still intend to pursue the aspect of the motion related to Jeff's personal bankruptcy at
this time? If so, I will need an adjournment of the objection and hearing dates as I am on vacation through
January 3rd and I will be actively engaged in a litigation on January 9th.

How do you intend to proceed?

Thank you,
Jim Halter


James Halter
Rasco Klock Perez & Nieto, LLC
555 Fifth Avenue
17th Floor
New York, NY 10017
(Main) +1.305.476.7100
(NY Office Direct) +1.305.476.5141
(Facsimile) +1.305.718.0639
jhalter@rascoklock.com<mailto:jhalter@rascoklock.com<mailto:jhalter@rascoklock.com%3cmailto:jhalter@ra
scoklock.com<mailto:jhalter@rascoklock.com%3cmailto:jhalter@rascoklock.com%3cmailto:jhalter@rascoklo
ck.com%3cmailto:jhalter@rascoklock.com<mailto:jhalter@rascoklock.com%3cmailto:jhalter@rascoklock.com
%3cmailto:jhalter@rascoklock.com%3cmailto:jhalter@rascoklock.com%3cmailto:jhalter@rascoklock.com%3c
mailto:jhalter@rascoklock.com%3cmailto:jhalter@rascoklock.com%3cmailto:jhalter@rascoklock.com<mailto:
jhalter@rascoklock.com%3cmailto:jhalter@rascoklock.com%3cmailto:jhalter@rascoklock.com%3cmailto:jhalt
er@rascoklock.com%3cmailto:jhalter@rascoklock.com%3cmailto:jhalter@rascoklock.com%3cmailto:jhalter@
rascoklock.com%3cmailto:jhalter@rascoklock.com%3cmailto:jhalter@rascoklock.com%3cmailto:jhalter@rasc
oklock.com%3cmailto:jhalter@rascoklock.com%3cmailto:jhalter@rascoklock.com%3cmailto:jhalter@rascoklo
ck.com%3cmailto:jhalter@rascoklock.com%3cmailto:jhalter@rascoklock.com%3cmailto:jhalter@rascoklock.c
om>>>>>
http://www.rascoklock.com<http://www.rascoklock.com/>




Any tax advice included in this document and its attachments was not intended or written to be used, and it
cannot be used, for the purpose of avoiding penalties under the Internal Revenue Code.

This email message and any attachments are confidential and may be privileged. If you are not the intended recipient, please notify Foley Hoag LLP immediately -- by replying to this message or by sending an email to postmaster@foleyhoag.com<mailto:postmaster@foleyhoag.com<mailto:postmaster@foleyhoag.com%3cmailto:postmaster@foleyhoag.com<mailto:postmaster@foleyhoag.com%3cmailto:postmaster@foleyhoag.com%3cmailto:postmaster@foleyhoag.com<mailto:postmaster@foleyhoag.com%3cmailto:postmaster@foleyhoag.com%3cmailto:postmaster@foleyhoag.com%3cmailto:postmaster@foleyhoag.com%3cmailto:postmaster@foleyhoag.com%3cmailto:postmaster@foleyhoag.com%3cmailto:postmaster@foleyhoag.com<mailto:postmaster@foleyhoag.com%3cmailto:postmaster@foleyhoag.com%3cmailto:postmaster@foleyhoag.com%3cmailto:postmaster@foleyhoag.com%3cmailto:postmaster@foleyhoag.com%3cmailto:postmaster@foleyhoag.com%3cmailto:postmaster@foleyhoag.com%3cmailto:postmaster@foleyhoag.com%3cmailto:postmaster@foleyhoag.com%3cmailto:postmaster@foleyhoag.com%3cmailto:postmaster@foleyhoag.com%3cmailto:postmaster@foleyhoag.com%3cmailto:postmaster@foleyhoag.com>>>>> -- and destroy all copies of this message and any attachments without reading or disclosing their contents. Thank you.

For more information about Foley Hoag LLP, please visit us at
www.foleyhoag.com<http://www.foleyhoag.com>><http://www.foleyhoag.com>><http://www.foleyhoag.com>><http://www.foleyhoag.com>><%3e><%3e%3chttp:/www.foleyhoag.com%3e%3e%3c%3e%3e><%3e%3chttp:/www.foleyhoag.com%3e%3e%3chttp:/www.foleyhoag.com%3e%3e%3c%3e%3e%3c%3e%3e%3chttp:/www.foleyhoag.com%3e%3e%3c%3e%3e%3e><%3e%3chttp:/www.foleyhoag.com%3e%3e%3chttp:/www.foleyhoag.com%3e%3e%3chttp:/www.foleyhoag.com%3e%3e%3c%3e%3e%3c%3e%3chttp:/www.foleyhoag.com%3e%3e%3c%3e%3e%3c%3e%3e%3c%3e%3chttp:/www.foleyhoag.com%3e%3e%3chttp:/www.foleyhoag.com%3e%3e%3c%3e%3e%3c%3e%3chttp:/www.foleyhoag.com%3e%3e%3c%3e%3e%3e%3e>.