# EXHIBIT 1

# STIPULATION

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re                                                   Chapter 7

JEFFREY LEW LIDDLE,                       Case No. 19-10747 (SHL)

           Debtor.
-----------------------------------------------------------x

**STIPULATION AND ORDER (I) FIXING AND ALLOWING PRE-PETITION LENDERS' LIENS AND CLAIMS; (II) AUTHORIZING CHAPTER 7 TRUSTEE TO SELL WINE COLLECTION FREE AND CLEAR OF LIENS, CLAIMS AND INTERESTS; (II) FIXING A CARVE-OUT FROM THE SALE OF THE WINE PROCEEDS FOR THE BENEFIT OF THE ESTATE; (III) APPROVING AND AUTHORIZING THE DISMISSAL OF STATE COURT APPEALS; (IV) AUTHORIZING THE ABANDONMENT OF CERTAIN ITEMS AND RECORDS LOCATED IN STORAGE FACILITIES**

This Stipulation (the "Stipulation") is made and entered into by and between Angela Tese-Milner, the chapter 7 trustee (the "Trustee") of the estate of Jeffrey Lew Liddle, the above-captioned debtor (the "Debtor"), and Counsel Financial II LLC ("CF2"), LIG Capital LLC ("LIG") and Counsel Financial Holdings LLC ("CF Holdings", and collectively with CF2 and LIG, the "Pre-Petition Lenders"). The Trustee and the Pre-Petition Lenders are each referred to herein as a "Party" and collectively as the "Parties."

## RECITALS

**WHEREAS**, on March 11, 2019 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York; and

**WHEREAS**, by Order signed and dated June 22, 2020, the Debtor's chapter 11 case was converted to a case under chapter 7 and, by Order dated June 24, 2020, the Trustee was appointed; and

**WHEREAS**, the Debtor is an attorney in the State of New York and former partner in the

law firm known as Liddle & Robinson, L.L.P (the "Firm").  In 2016, the Firm commenced a lending relationship with the Pre-Petition Lender; and

**WHEREAS**, on August 4, 2016, the Debtor entered into a Revolving Promissory Note and Allonges thereto dated October 13, 2016 and December 21, 2016 with CF2 as the lender (collectively, the "CF2 Note"); and

**WHEREAS**, the Debtor personally executed a Guaranty of Payment and Performance dated August 5, 2016 (the "CF2 Guaranty"), an absolute and unconditional guaranty of the Firm's payment and performance under the CF2 Note; and

**WHEREAS**, the Debtor executed a Security Agreement dated August 5, 2016 (the "CF2 Security Agreement"), on behalf of the Firm and in his individual capacity; and

**WHEREAS**, each of the CF2 Guaranty and CF2 Security Agreement were also executed by Blaine H. Bortnick, James Ryan Hubbard, and Christine A. Palmiere, former partners of the Firm; and

**WHEREAS**, on October 13, 2016, the Debtor entered into a Term Promissory Note with LIG as the lender (the "LIG Note"); and

**WHEREAS**, the Debtor executed a Guaranty of Payment and Performance dated October 13, 2016 (the "LIG Guaranty"), an absolute and unconditional guaranty of the Firm's payment and performance under the LIG Note; and

**WHEREAS**, the Debtor executed a Security Agreement, dated October 13, 2016 (the "LIG Security Agreement"), on behalf of the Firm and the Debtor, in his individual capacity, and pledged all of their respective assets to secure the Firm's payment and performance under the LIG Note; and

**WHEREAS**, on June 2, 2017, the Debtor executed a Revolving Promissory Note with CF

Holdings as the lender (the "CF Holdings Note"); and

**WHEREAS**, the Debtor executed a Guaranty of Payment and Performance (the "CF Holdings Guaranty"), dated June 2, 2017, an absolute and unconditional guaranty of the Firm's payment and performance under the CF Holdings Note; and

**WHEREAS**, the Debtor executed a Security Agreement dated June 2, 2017 (the "CF Holdings Security Agreement") on behalf of the Firm and the Debtor, in his individual capacity, and pledged substantially all of the Firm's assets and his personal assets to secure the Firm's payment and performance under the CF Holdings Note; and

**WHEREAS,** the Pre-Petition Lenders, between 2016-2018, each filed UCC-1 financing statements with the New York Secretary of State, which statements evidenced the Pre-Petition Lenders'' security interest and liens in all of the Debtor's personal property (collectively, the "UCC Financing Statements");

**WHEREAS,** the CF2 Note, the CF 2 Guaranty, the CF 2 Security Agreement, the LIG Note, the LIG Guaranty, the LIG Security Agreement, the CF Holdings Note, the CF Holdings Guaranty, the CF Holdings Security Agreement and the UCC Financing Statements are hereafter collectively referred to as the "Pre-Petition Lenders Loan Documents"); and

**WHEREAS,** the Debtor's bankruptcy filing was in response to, among other things, efforts by CF2 to enforce two judgments each in the amount of $6,546,448.83 entered in New York State Supreme Court, Erie County against the Firm and the Debtor, as guarantor; and

**WHEREAS**, as a result of pre-petition litigation between the Debtor and the Pre-Petition Lenders, there are currently two appeals pending in the New York State Supreme Court, Appellate Division, Fourth Department, namely: (a) the appeal of the order and judgment of the Supreme Court of the State of New York, Erie County, dated March 5, 2019, and entered on the same date

(Appellate Division Docket No. 2019-01661); and (b) the appeal of the order of attachment of the Supreme Court of the State of New York, Erie County, dated March 7, 2019, and entered on the same date (Appellate Division Docket No. 2019-01662) (together, the "Appeals").

**WHEREAS**, on July 29, 2020, the Debtor filed his amended Schedules of Assets (the "Schedules") and the Trustee conducted a section 341 meeting on July 31, 2020; and

**WHEREAS**, CF2 is listed as a secured creditor on Schedule D as holding a $6.5 million judgment lien against all assets except real estate; and

**WHEREAS**, LIG is listed as a secured creditor on Schedule D as holding a $500,000 senior loan against all assets except real estate; and

**WHEREAS**, CF Holdings is listed as a secured creditor on Schedule D as holding a $2 million working capital loan secured by all assets except real estate; and

**WHEREAS,** on September 25, 2019, the Per-Petition Lenders filed the following proofs of claim with the Clerk of the Bankruptcy Court in the Debtor's bankruptcy case:

1) Claim No. 18 filed by CF Holdings in the amount of $2,157,154.12;

2) Claim No. 19 filed by LIG Capital LLC in the amount of $539,007.41; and

3) Claim No. 20 filed by Counsel Financial II LLC in the amount of $6,541,924.84

(collectively, the "Proofs of Claim"); and

**WHEREAS,** the Pre-Petition Lenders have asserted perfected, enforceable and unavoidable first priority liens and security interests in all of the Debtor's estate's personal property; and

**WHEREAS,** the Trustee has reviewed, *inter alia*, the Pre-Petition Lenders Loan Documents and the Proofs of Claim, respectively, and has determined and acknowledges herein, on behalf of and in her capacity as representative of the Debtor's estate, that neither the Trustee

nor the Debtor's estate has any objections, defenses, offsets, rights of recoupment or counterclaims to any of them; and

**WHEREAS**, the Trustee has determined and acknowledges herein, on behalf of and in her capacity as representative of the Debtor's estate, that the Pre-Petition Liens are valid, perfected, enforceable, unavoidable first priority liens and security interests in the Debtor's personal property and collateral described on the attachments to the Proofs of Claim (the "Pre-Petition Liens"), including but not limited to the all of the Debtor's personal property located at or removed from the Debtor's property in Quiogue, New York (the "Quiogue Personalty"), the Wine Collection (as defined below) and the items in the Storage Facilities (as defined below);

**WHEREAS**, the Debtor's Schedules reflect that he has ownership interests in real property located at 560 Main Street in Quiogue, NY and 554 Main Street in Quiogue, NY (collectively, the "Quiogue Properties"); and

**WHEREAS**, the Pre-Petition Lenders filed and recorded judgment liens against the Quiogue Properties (the "Judgment Liens"); and

**WHEREAS**, the Trustee asserts that the Pre-Petition Lenders do not have valid liens on the Quiogue Properties, the Judgment Liens are voidable and has demanded that they be removed; and

**WHEREAS**, the Debtor's Schedules reflect that he holds an interest in a wine collection valued at $125,000 (the "Wine Collection"), which is in storage; and

**WHEREAS**, the Debtor amended his schedule of exempt assets to indicate that ownership of the Wine Collection is shared with his wife and daughter; and

**WHEREAS**, the Trustee and Pre-Petition Lenders dispute any claims or interests asserted by the Debtor's family members and relatives in the Wine Collection; and

**WHEREAS**, according to the Debtor's Schedules and Statement of Financial Affairs ("SOFA") the Debtor may have items in storage at locations including, but not limited to (a) South Fork Storage Corp. in Bridgehampton, NY, and (b) Globe Storage & Moving Co., Inc. in New York, New York (collectively, the "Storage Facilities"); and

**WHEREAS**, the Trustee and the Pre-Petition Lenders have entered into good-faith and arms-length negotiations and agreed to the following terms over, *inter alia*, the validity and extent of the Pre-Petition Liens and claims of the Pre-Petition Lenders, the sale of the Wine Collection, disposition of the Appeals and other personal property belonging to the Debtor's estate.

**NOW, THEREFORE,** subject to approval of this Stipulation by the Court, it is hereby stipulated and agreed by and between the Parties as follows:

1. Incorporation of Recitals. The recitals are incorporated herein by reference.

2. Effective Date. The effective date of this Stipulation and all of its terms shall be the date of entry of a final non-appealable order approving this Stipulation (the "Effective Date").

3. Bankruptcy Court Approval. In the event that the Bankruptcy Court does not approve this Stipulation, the Stipulation shall be null and void and of no force and effect.

4. Sale of Wine Collection by the Trustee. In accordance with section 363(f) of the Bankruptcy Code, the Pre-Petition Lenders consent to the sale of the Wine Collection by the Trustee, free and clear of any liens, claims and interests of the Pre-Petition Lenders, with the Pre-Petition Liens to attach to certain of the proceeds of sale to be distributed in accordance with Paragraph 6 of this Stipulation as set forth below. Within ten (10) days of execution of this Stipulation by the Parties, the Trustee shall seek Court approval for the sale of the Wine Collection, pursuant to section 363 of the Bankruptcy Code.

5. Carve-Out for Benefit of the Estate. Subject to Court approval of conducting an

auction and closing on the sale of the Wine Collection, the Pre-Petition Lenders consent to a carve-out from the Pre-Petition Liens from the proceeds of the sale of the Wine Collection for (a) the Trustee's special liquidator's commission and expenses (the "Special Liquidator Costs"), and (b) Thirty Thousand Dollars ($30,000) for the professional fees and expenses incurred by the Trustee in connection with seeking approval of the sale of the Wine Collection, closing on the sale and the distribution of proceeds therefrom (the "Professional Fees", and together with the Special Liquidator Costs, the "Estate Costs").

6. Wine Collection Proceeds Distribution. After satisfaction of the Estate Costs, the Trustee is hereby authorized to distribute any remaining proceeds from the sale of the Wine Collection, without the need for further order of the Court, as follows: (a) Seventy-Five Percent (75%) to the Pre-Petition Lenders; and (b) Twenty-Five Percent (25%) to the Trustee for the benefit of the Debtor's estate, including the claims of the Pre-Petition Lenders.

7. Release of Judgement Liens. Upon execution of this Stipulation by all the Parties, the Pre-Petition Lenders shall remove or immediately cause to be removed the Judgment Liens they placed on or recorded against the Quiogue Properties.

8. Abandonment of Quiogue Personalty and Items at Storage Facilities; Modification of Automatic Stay. Upon the Effective Date of this Stipulation, (a) the Quiogue Personalty and (b) any items of the Debtor's personal property located at the Storage Facilities shall be deemed abandoned, subject to the continuing Pre-Petition Liens, and (b) the automatic stay is modified to permit CF to enforce and foreclose its security interests in and to the Quiogue Personalty and the Debtor's personal property located at the Storage Facilities, provided that, CF shall remove or cause to be removed the Quiogue Personalty from the Quiogue Properties prior to the Trustee's sale of the Quiogue Properties and shall provide an accounting to the Trustee of any net monies

realized from the disposition or sale of such property. CF shall be authorized to remove the Quiogue Personalty and store such items subject to any interests.

9. <u>Dismissal of Appeals</u>. Upon the occurrence of the Effective Date of this Stipulation, the Pre-Petition Lenders shall transfer Ten Thousand Dollars ($10,000) (the "<u>Appeal Dismissal Payment</u>") to the Trustee, on behalf of the Debtor's estate, as consideration for the Trustee's consent, on behalf of the Debtor's estate, to dismissal of the Appeals. The Pre-Petition Lenders shall make the Appeal Dismissal Payment by certified or bank check made payable to Archer & Greiner, P.C., as attorneys, or by wire transfer in accordance with instructions provided by Trustee's counsel. Upon the occurrence of the Effective Date of this Stipulation and receipt of the Appeal Dismissal Payment by the Trustee, the Trustee shall execute and deliver to counsel for the Pre-Petition Lenders a stipulation of discontinuance of the Appeals and execute any and all other documentation necessary to effectuate the dismissal of the Appeals.

10. <u>Allowance of the Proofs of Claim.</u> The Proofs of Claim are hereby respectively deemed allowed in full and not subject to any claim, objection, counterclaim, offset, defense or right of recoupment.

11. <u>Acknowledgement of the Pre-Petition Liens.</u> The Pre-Petition Liens are hereby respectively deemed allowed, valid, enforceable, unavoidable first priority liens upon all of the Debtor's personal property and collateral described on the attachments to the Proofs of Claim, not subject to any claim, objection, counterclaim, offset, defense or right of recoupment by the Trustee on behalf of the Debtor's estate, provided, however, nothing herein shall alter the Court's Decision dated September 26, 2019 (Dkt. 185) denying CFII's lien interest in the Debtor's proceeds from the sale of a coop apartment.

12. <u>Entire Agreement</u>. This Stipulation constitutes the entire agreement between the

Parties with respect to the subject matter hereof and supersedes all prior and contemporaneous oral and written agreement and discussions. This Stipulation may not be modified, amended or terminated except by an instrument in writing signed by an authorized representative of each of the respective Parties.

13. <u>Representations by the Parties</u>. The Parties acknowledge that they are entering into this Stipulation knowingly, freely and voluntarily and that the consideration received by each of them is fair and adequate. The Parties represent and acknowledge that they have conferred with and are represented by, or have been given the opportunity to confer with or be represented by, independent legal counsel of their choice with respect to this Stipulation and all matters covered by or related to its subject matter. The Parties declare that they fully understand all of the terms and provisions of this Stipulation and regard the same to be fair and reasonable.

14. <u>Successors and Assigns</u>. All rights of each Party hereunder shall inure to the benefit of their respective successors and assigns, and all obligations of each Party hereunder shall bind the successors, assigns, heirs, administrators, executors and legal representatives and estate of each Party.

15. <u>Authority of Signatories</u>. The persons executing this Stipulation on behalf of each Party represent and warrant that they have the authority to do so.

16. <u>Governing Law</u>. This Stipulation shall be governed by and interpreted in accordance with the laws of the State of New York, without regard to the conflict of laws of the State of New York.

17. <u>Non-Reliance and Construction</u>. The Parties have decided to execute this Stipulation based on information developed independently and not in reliance on representations of any other party. The Parties agree that each of them has had a full opportunity to participate in

the drafting of this Stipulation and, accordingly, any claimed ambiguity shall be construed neither for nor against any Party.

18. <u>Counterparts</u>.  This Stipulation may be executed in one or more counterparts, including by facsimile or email attachment or executed by any form of electronic means, including DocuSign or DocVerify, each of which shall be deemed an original, but all of which together constitutes one and the same instrument.

19. <u>Jurisdiction</u>.  The Parties agree that the Bankruptcy Court shall retain jurisdiction to resolve any dispute arising from or related to this Stipulation.

Dated: New York, New York
      April 1, 2021                          ARCHER & GREINER, P.C.

                                     By: /s/ Gerard DiConza
                                            Gerard DiConza
                                            Lance A. Schildkraut
                                            1211 Avenue of the Americas
                                            New York, New York 10036
                                            Tel: (212) 682-4940
                                            Email:     gdiconza@archerlaw.com
                                                                           lschildkraut@archerlaw.com

                                            *Counsel for Angela Tese-Milner, the Chapter 7 Trustee*

Dated: New York, New York
      March 31, 2021                       DAVIDOFF HUTCHER & CITRON LLP

                                     By: /s/ Jonathan S. Pasternak
                                          Jonathan S. Pasternak
                                          Robert L. Rattet
                                          Michael D. Katz
                                          605 Third Avenue
                                          New York, New York 10022
                                          Tel: (212) 557-7200
                                          Email:     jsp@dhclegal.com
                                                                   rlr@dhclegal.com
                                                                   mdk@dhclegal.com

                                        *Attorneys for Counsel Financial II, LLC, LIG Capital LLC, and Counsel Financial Holdings LLC*

SO ORDERED
THIS ____ DAY OF APRIL, 2021

_____
HONORABLE SEAN H. LANE
UNITED STATES BANKRUPTCY JUDGE

220705251v1