William F. Gray, Jr.
Jiun-Wen Bob Teoh
FOLEY HOAG LLP
1301 Avenue of the Americas, 26th Floor
New York, New York 10019
Tel: (212) 812-0400
Fax: (212) 812-0399

*Attorneys for Debtor Jeffrey Lew Liddle*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>JEFFREY LEW LIDDLE,<br><br>Debtor. | Chapter 7<br><br>Case No. 19-10747 (SHL)<br>(Jointly Administered)<br><br>Hearing Date: May 2, 2023 at 2 p.m. |

**OBJECTION BY FOLEY HOAG LLP TO (I) THE FIRST
AND FINAL FEE APPLICATION FOR THE LAW OFFICES OF
TESE-MILNER AS COUNSEL TO ANGELA TESE-MILNER,
CHAPTER 7 TRUSTEE PURSUANT TO 11 U.S.C. SECTION 330, AND
(II) THE FINAL APPLICATION OF ARCHER & GREINER, P.C., COUNSEL
FOR THE CHAPTER 7 TRUSTEE, FOR ALLOWANCE AND PAYMENT
OF FEES AND REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES**

Foley Hoag LLP ("Foley Hoag"), as the holder of an allowed Chapter 11 Administrative Claim, and as the attorneys to Jeffrey Lew Liddle, the debtor (the "Debtor") in the above-captioned individual chapter 7 case, respectfully submits the following objection (the " Objection") to the *First and Final Fee Application for the Law Offices of Tese & Milner as Counsel to Angela Tese-Milner, Chapter 7 Trustee, Pursuant to 11 U.S.C. Section 330* [Docket No. 630-6] (the "Tese & Milner Fee Application") filed by Angela Tese-Milner, as the Chapter 7 trustee (the "Chapter 7 Trustee") and the *Final Application of Archer & Reiner, P.C. as Counsel for the Chapter 7 Trustee, for Allowance and Payment of Fees and Reimbursement of Actual and Necessary Expenses* (the

1

"Archer & Greiner Fee Application," and together with the Tese & Milner Fee Application, (the "Fee Applications"). Foley Hoag respectfully represents as follows:

1. Nearly two years after all the material assets of the Debtor's Estate were fully liquidated, the Chapter 7 Trustee has filed the *Trustee's Final Report* [Docket No. 630] setting forth a distribution plan. There is no distribution for unsecured creditors. Chapter 11 Administrative Claimants are to receive approximately 40% of their unpaid allowed claims. The total Chapter 7 Administration fees of $605,397.51 represent more than 60% of Estate assets available for distribution after satisfaction of secured and tax claims. The uncomplicated nature of the case, the absence of protracted contested litigation, the fact that much of the usual work of the Chapter 7 Trustee was performed by the largest secured creditor in the case, and the disappointing distribution results do not warrant the fee allowances requested.

2. In the Tese-Milner Fee Application, the Law Firm of Tese-Milner, counsel to the Chapter 7 Trustee (the "Tese-Milner Firm"), seeks fees in the amount of $208,743.25 for services rendered for the period from June 14, 2020 through February 14, 2023 (the "Tese-Milner Fees"). In the Archer & Greiner Fee Application, Archer & Greiner, P.C. ("Archer & Greiner," and together with the Tese-Milner Firm, the "Firms") applies for fees in the amount of $179,531.00 and expenses in the amount of $807.37. The total fees and expenses for the Firms (the "Fees") exceed $380,000. The fee requests are excessive in light of the work performed and the results achieved in this case.

3. As the Fee Applications note, this Court should consider fees in light of a number of factors:

> (i) the amount of money involved,
> (ii) the results achieved;
> (iii) the novelty and difficulty of the questions presented;
> (iv) the skill required to perform the legal services;

2

      (v)      the preclusion of other employment;
      (vi)     the customary fee;
      (vii)    awards in similar cases;
      (viii)   time constraints required by the exigencies of the case, including the frequency and amount of time required to be devoted during other than regular business hours;
      (ix)     the expertise, reputation and ability of the attorneys rendering the services; and
      (x)      the nature and length of the professional relationship with the client.

Tese-Milner Fee Application, ¶ 17. Foley Hoag submits that the Fees are excessive in light of these factors as they pertain to this Chapter 7 Case. Prior to the conversion to Chapter 7, the estate's assets had been identified, secured and readied for sale; any possible avoidance actions had been extensively vetted by Counsel Financial, the secured creditor whose deficiency claim made it the largest unsecured creditor; the Debtor had been examined and deposed numerous times in both this case and the related bankruptcy case of Liddle & Robinson;[1] and no analysis of unsecured claims was undertaken. The disposition of all the assets of the Estate, except for the real estate, was largely handled by the secured creditor, Counsel Financial.

      4.      In sum, there was very little legal work to be done in the administration of the estate. No novel or difficult legal issues were implicated. There is no claim that work on the case precluded other employment or created significant time pressure on the attorneys involved. Weighing the factors described above, the Court should reduce the fee allowances substantially.

---

[1] The Debtor filed his individual chapter 11 case on March 11, 2019. The Debtor and his counsel also prepared the law firm, Liddle & Robinson, LLP, to file its chapter 11 case on July 22, 2019, Case No. 19-12346. The two cases are jointly administered and were treated as "cases within the cases" of each other. The issues significantly overlapped as to the main claim in the Debtor's individual case, which was the Debtor's guaranty of the law firm indebtedness owed to Counsel Financial. The chapter 11 phase of the Debtor's individual case was heavily litigated, including significant amounts of discovery by Counsel Financial.

**Nature of the Chapter 7 Case**

5. The number of hours the Firms expended on asset recovery and investigation, which total 304.7, are excessive since nearly all the value was concentrated in one significant asset, the Debtor's home located at 560 Main Street, Quiogue NY (the "Hampton Property"). All personal property, including the wine collection, were in storage and readily ascertainable. The Debtor's records had been produced and actively reviewed by Counsel Financial in this case as well as the Liddle & Robinson case. The Chapter 11 Trustee in the Liddle & Robinson case, appointed in December 2019, had also conducted extensive investigations.

6. After the Chapter 7 Trustee was appointed on June 24, 2020, there was very little substantive litigation in this Chapter 7 Case, obviating the need to spend a large amount of time preparing for and responding to litigation. No avoidance actions were initiated. Moreover, no novel or difficult question of law was presented in this Chapter 7 Case. In reality, aside from certain claims by the Debtor for his social security payments and an administrative claim by the Debtor's wife, there was only one claim of any significance that was investigated: Counsel Financial's claim. As set forth below, the investigation of that claim was bungled.

**Results Achieved**

7. There is no distribution on account of unsecured claims. This result is particularly disappointing because the Chapter 7 Trustee made two decisions that very likely deprived the estate of significant assets, thereby reducing the amount of recovery for creditors, administrative claimants, and professionals.[2]

---

[2] Although the Chapter 7 Trustee mentions $ 140 million in claims, Tese-Milner Fee Application, ¶ 1, the majority of that amount was the contingency litigation claim of Andrea Paparella seeking $127 million in damages filed in both the individual and law firm cases. Pursuant to a consensual stipulation to the lift the automatic stay, this claim is being litigated in state court and has been deemed by the Chapter 11 Trustee of Liddle & Robinson to be of nominal value. The Chapter 7 Trustee has had limited involvement in the resolution of that claim.

**A.     The Chapter 7 Trustee Abandoned the Fourth Department Appeal.**

8.     At the time of the Chapter 7 Trustee's appointment one of the major assets of the estate was the Debtor's pending appeal in the Fourth Department against Counsel Financial II LLC ("CFII"), for the judgment (the "Judgment") by the Supreme Court of the State of New York, County of Erie (the "Erie County Court") in favor of CFII in *Counsel Financial II LLC v. Liddle & Robinson LLP, Jeffrey L. Liddle, Blaine H. Bortnick, and James Ryan Hubbard*, Index No. 8174703/2018 (the "Appeal").  Prior to the appointment of the Chapter 7 Trustee, the Debtor had perfected and fully briefed the Appeal to the Fourth Department arguing that the Erie County Court should not have granted CFII's motion for summary judgment in lieu of complaint to recover on a revolving promissory note and guaranty for payment.  The Debtor also appealed the attachment order granted in support of the Judgment.  One of the main arguments in the appeal was that the summary judgment procedure was inapplicable to this type of matter and unfairly precluded the Debtor to pursue counterclaims.  Oral argument was scheduled for a date shortly after the appointment of the Chapter 7 Trustee.  Debtor made numerous offers to brief the Chapter 7 Trustee on the appeal but was rebuffed. In effect, the Chapter 7 Trustee abandoned this asset, settling with Counsel Financial for $10,000.  Archer & Greiner Fee Application ¶ 15.

9.     This settlement was a grave error potentially costing the estate hundreds of thousands, and maybe millions of dollars.  This Court should be aware that the same issues on appeal abandoned by the Chapter 7 Trustee were litigated against Counsel Financial by Blaine Bortnick, another former partner of Liddle & Robinson, on nearly identical facts and legal theories. Like the Debtor, Mr. Bortnick had been found liable on his personal guaranty through a summary judgement in lieu of complaint process by Counsel Financial.  Unlike the Chapter 7 Trustee, Mr. Bortnick prosecuted his appeal.  On March 21, 2023, the Fourth Department reversed the lower

5

court's granting of summary judgment overturning a judgment of over $4 million (the "Appellate Decision"). A true and correct copy of the Appellate Decision is attached hereto as **Exhibit A**. Although the Appellate Decision is far from a final judgment on the merits, there can be no doubt that the reversal of the judgement has created an entirely difference posture for settlement discussions for Mr. Bortnick. Critically, the reversal allows Mr. Bortnick to litigate his counterclaims against Counsel Financial, an opportunity denied to the Debtor by the Chapter 7 Trustee's settlement of the Appeal for nuisance value. Especially given that all of the substantive legal work on the appeal had been completed prior to her appointment, it is clear that the abandonment of the Appeal by the Chapter 7 Trustee unnecessarily wasted a substantial estate asset.

       **B.**       **The Chapter 7 Trustee Forfeited Substantial Revenue from the Hamptons Property**

10.       The Chapter 7 Trustee likely forfeited significant estate revenue in her handling of the sale of the Hampton's Property. Prior to the conversion of the case and the appointment of the Chapter 7 Trustee, this Court had approved the retention of Cocoran as real estate broker for the rental of the Hamptons Property. *See Order Authorizing Debtor's Retention of Cocoran as Real Estate Broker* [Docket No. 376], attached hereto as **Exhibit B**. As the Chapter 7 Trustee has acknowledged, the extensive work the Debtor undertook to prepare the property for rental amounted to significant cost savings to the Chapter 7 Trustee in the sale process.[3]

---

[3] An example of this work is the work performed by the Debtor's wife, Tara Liddle, as memorialized in the *Stipulation and Order Reducing and Fixing Administrative Expense Claim No. 40 Filed by Tara Liddle* [Docket No. 628].

11. The Debtor had arranged for the necessary permits to rent the Hamptons Property contemporaneously with the Chapter 7 Trustee's appointment. In fact, their permits were available to be issued. Debtor's counsel explained the leasing status to the Chapter 7 Trustee, including the fact that there were two bidders for the lease, which would have yielded $60,000 to $75,000 monthly rental income. One of the potential renters was also negotiating an option to purchase the Hamptons Property for an amount of approximately $4.8 million. The Chapter 7 Trustee simply refused to continue the lease discussions or pursue these rental or sale opportunities. The Chapter 7 Trustee's rationale was that she was going to sell the property for $6 million within a month. Debtor's counsel communicated the Chapter 7 Trustee's decision to the permit expeditor in an email on July 9, 2020. A true and correct copy of this email is attached as **Exhibit C**. In reality, it took nearly eight (8) months to sell the Hamptons Property for a substantially lower price with no rental income.

12. This unforced error was compounded by the decision of the Chapter 7 Trustee to retain brokers without any local knowledge of Hampton's real estate, a famously particular real estate market. This error was belatedly recognized by the Chapter 7 Trustee when she hired a second set of brokers familiar with the particularities of real estate in the Hamptons four months later, after the end of the selling season. *See* Tese-Milner Fee Application, ¶ 4. These missteps hampered the sale process at a critical time and quite possibly deprived the estate of significant revenues.

13. In sum, it is not difficult to imagine that the proper administration of the estate could have yielded a very different result which could have produced a recovery for unsecured creditors.

14. For the foregoing reasons, Foley Hoag respectfully asks the Court to reduce the Fees requested in the Fee Applications and grant any such other relief as is just, proper, equitable under the circumstances.

Dated: April 18, 2023
      New York, New York

Respectfully submitted,

*/s/ William F. Gray, Jr.*
William F. Gray, Jr.
Jiun-Wen Bob Teoh
FOLEY HOAG LLP
1301 Avenue of the Americas
New York, New York 10019
wgray@foleyhoag.com
jteoh@foleyhoag.com
Tel: (212) 812-0400
Fax: (212) 812-0399

*Attorneys for Debtor Jeffrey Lew Liddle*